IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:19-CV-272-LCB-LPA

| | |
|---|---|
| MAXWELL KADEL, JASON FLECK, CONNOR THONEN-FLECK, by his next friends and parents, JASON FLECK AND ALEXIS THONEN, JULIA MCKEOWN, MICHAEL D. BUNTING, JR., C.B., by his next friends and parents, MICHAEL D. BUNTING, JR. and SHELLEY K. BUNTING, and SAM SILVAINE, | **DEFENDANTS UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, NORTH CAROLINA STATE UNIVERSITY, AND UNIVERSITY OF NORTH CAROLINA AT GREENSBORO'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| Plaintiffs, | |
| v. | |
| DALE FOLWELL, in his official capacity as State Treasurer of North Carolina, DEE JONES, in her official capacity as Executive Administrator of the North Carolina State Health Plan for Teachers and State Employees, UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, NORTH CAROLINA STATE UNIVERSITY, UNIVERSITY OF NORTH CAROLINA AT GREENSBORO, and NORTH CAROLINA STATE HEALTH PLAN FOR TEACHERS AND STATE EMPLOYEES, | |
| Defendants. | |

## <u>STATEMENT OF THE CASE</u>

Plaintiffs Maxwell Kadel, Jason Fleck, Connor Thonen-Fleck, Alexis Thonen, Julia

McKeown, Michael D. Bunting, Jr., C.B., Shelley K. Bunting and Sam Silvaine, all current

or former employees or dependents of current or former employees of the University of North Carolina at Chapel Hill ("UNC-CH"), North Carolina State University ("NC STATE"), or University of North Carolina at Greensboro ("UNCG") (collectively referred to as "University Defendants") filed a Complaint with this court on March 11, 2019. The named Defendants include Dale Folwell, Dee Jones, UNC-CH, NC STATE, UNCG, and North Carolina State Health Plan For Teachers and State Employees ("Defendant NCSHP" or the "State Health Plan"). Plaintiffs contend that the State Health Plan's exclusion of coverage for gender-confirming healthcare treatment violates their equal protection rights and discriminates against them on the basis of their sex in violation of Title IX and the ACA. They assert an equal protection claim against Folwell and Jones, a Title IX claim against University Defendants, and a claim for violation of the Patient Protection and Affordable Care Act ("ACA") against NCSHP.

As discussed further below, Plaintiffs' Title IX claim against the University Defendants should be dismissed under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure because the court lacks jurisdiction, Plaintiffs lack standing to bring their claim against the University Defendants, and their claim is otherwise legally insufficient. University Defendants have no authority or control over the State Health Plan or its terms or exclusions. Therefore, University Defendants cannot provide Plaintiffs with any remedy they seek and should be dismissed from the lawsuit. Moreover, the claims of Plaintiffs Connor-Thonen Fleck and C.B., whether brought individually or on their behalf by their parents Plaintiffs Jason Fleck and Michael Bunting, Jr. respectively, must be

2

dismissed since Plaintiffs Connor-Thonen Fleck and C.B. were not participants in any University Defendant's educational program and their parents lack standing to assert a Title IX claim on their behalf.

## STATEMENT OF THE FACTS[1]

University Defendants employ, or formerly employed Plaintiffs or Plaintiffs' dependents. (Complaint ¶¶ 7-11) Specifically, UNC-CH employs Plaintiff Kadel, and formerly employed Plaintiff Michael Bunting. (Compl. ¶¶ 7, 10, 110) UNCG employs Plaintiff Fleck. (Compl. ¶ 8) NC STATE employs Plaintiff McKeown, and formerly employed Plaintiff Silvaine. (Compl. ¶¶ 9, 11) Plaintiffs allege they are all current or former enrollees in Defendant NCSHP's Health Plan. (Compl. ¶ 1)

Defendant NCSHP administers comprehensive group health insurance to eligible teachers and other North Carolina state employees, pursuant to N.C.G.S. § 135-48.2. (Compl. ¶ 17) Defendant NCSHP is self-funded and empowered to determine, define, adopt, and remove health care benefits and exclusions. (Compl. ¶ 17)

Defendant NCSHP offers three health care plans to eligible state employees: the (1) 80/20 PPO Plan, the (2) 70/30 PPO Plan, and the (3) High Deductible Health Plan. (Compl. ¶ 43) For all three plans, Blue Cross and Blue Shield of North Carolina serves as the claims administrator and CVS Caremark administers pharmacy benefits. (Compl. ¶ 43)

---

[1] While Plaintiffs' allegations are assumed to be true for the purposes of this motion, University Defendants reserve the right to contest them at the appropriate time if the case proceeds.

Defendant NCSHP's State Health Plan provides pharmacy benefits, mental health benefits, and medical care to covered individuals. (Compl. ¶ 44)

Prior to 2017, Defendant NCSHP's State Health Plan included a categorical coverage exclusion for gender-confirming healthcare. (Compl. ¶¶ 30, 45) In 2016-2017, the North Carolina State Treasurer's Office and the Defendant NCSHP Board of Trustees removed the exclusion for gender-confirming health care. (Compl. ¶ 50) In 2018, Defendant NCSHP reinstated the exclusion for gender-confirming health care. (Compl. ¶¶ 1, 53) In 2019, the State Health Plan also contained the exclusion for gender-confirming health care. (Compl. ¶ 53) Thus, the 2018 and 2019 State Health Plan excluded all gender-confirming health care coverage. (Compl. ¶ 53) Plaintiffs allege that University Defendants violated Title IX by offering Defendant NCSHP's State Health Plan to their employees, despite the clear North Carolina statute not only requiring Defendants to do so, but precluding them from offering any alternative. (Compl. ¶ 143)

## DISMISSAL STANDARDS

Plaintiffs' claims should be dismissed under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure because the court lacks jurisdiction, Plaintiffs lack standing to bring their claims, and their claims are legally insufficient.

For purposes of the University Defendants' Rule 12(b)(1) motion, when determining the existence of subject matter jurisdiction, the Court may look to evidence outside the pleadings without converting a Rule 12(b)(1) motion to a motion for summary judgment. *See, e.g., Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The

plaintiff bears the burden of proving subject matter jurisdiction exists. *See, e.g., Evans*, 166 F.3d at 647.

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

When considering a motion under Rule 12(b)(6), "it is not . . . proper to assume that plaintiffs can prove facts that they have not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *Estate Constr. Co. v. Miller & Smith Holding, Co.*, 14 F.3d 213, 221 (4th Cir. 1994) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). If the complaint does not plead "sufficient factual matter" to state a claim, it must be dismissed. *Id.* Likewise, if the complaint merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it must be dismissed. *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

5

**ARGUMENT**

**I.     PLAINTIFFS LACK STANDING TO BRING A TITLE IX CLAIM AGAINST UNIVERSITY DEFENDANTS BECAUSE THEIR INJURIES ARE NOT TRACEABLE TO ANY CONDUCT BY UNIVERSITY DEFENDANTS AND ARE NOT REDRESSABLE BY COURT INTERVENTION AGAINST UNIVERSITY DEFENDANTS.**

Plaintiffs allege that they are entitled to relief from University Defendants pursuant to Title IX because University Defendants offered "Health Plans that categorically exclude coverage of gender-confirming health care on the basis of sex[.]"  (Complaint ¶ 144) Plaintiffs lack standing to bring this claim against University Defendants.

"When standing is challenged, the plaintiff bears the burden of proving each of these prongs." *Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F. Supp. 2d 510, 515 (D. Md. 2010) (citing *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002)).  Furthermore, "[p]ursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant challenging standing may move to dismiss an action for lack of subject-matter jurisdiction," and "[w]hen such a motion is filed, '[t]he plaintiff has the burden of proving that subject matter jurisdiction exists.'" *Brown v. R&B Corp. of Va.*, 267 F. Supp. 3d 691, 695 (E.D. Va. 2017) (quoting *Evans*, 166 F.3d at 647).

"Article III of the U.S. Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (citing U.S. Const. art. III, § 2).  "'One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).

6

To invoke federal jurisdiction a plaintiff bears the burden of establishing three "irreducible minimum requirements" of Article III standing:

 (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest);
(2) causation (i.e. a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and
(3) redressability (i.e. it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Id.* (quoting *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013) (internal alterations and quotation marks omitted)).

> **A.** **Plaintiffs cannot show any alleged harm is traceable to University Defendants because the General Assembly gave sole authority to Defendant NCSHP to establish and implement health care coverage under the State Health Plan.**

In order to meet the elements of standing to sue the University Defendants, Plaintiffs must be able to show that their alleged harm (denial of their medical claims by Defendant NCSHP) is somehow traceable to University Defendants. This they cannot do.

"With respect to the traceability element, the Court has reasoned that '[t]he injury must be fairly traceable to the challenged action, and the relief from the injury must be likely to follow from a favorable decision . . .'" *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 623 (4th Cir. 2018). "Thus, a plaintiff must show that the actual or threatened injury complained of in the case is 'fairly . . . traceable to the challenged action of the defendant.'" *Crutchfield v. United States Army Corps of Eng'rs*, 230 F. Supp. 2d 687, 694 (E.D. Va. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). In other words, "Plaintiffs must demonstrate that the injury they

have suffered was caused by the challenged conduct of Defendants, and not by the independent action of some third party." *Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474, 481 (M.D.N.C. 2004) (citations omitted).

In the case at bar, the alleged challenged conduct was committed by Defendant NCSHP – the state administrative agency with the authority and responsibility for administering the State Health Plan -- and not by University Defendants. One of the most basic principles of administrative law is that a state administrative agency is an "inanimate, artificial creature of statute." *High Rock Lake Partners, LLC v. N.C. Dep't of Transp.*, 366 N.C. 315, 318, 735 S.E.2d 300, 303 (2012). "Its form, shape, and authority are defined by the Act by which it was created." *Id.* "It is as powerless to exceed its authority as is a robot to act beyond the limitations imposed by its own mechanism." *Id.* at 318-19, 735 S.E.2d at 303 (citation omitted). A state agency "possesses only those powers expressly granted to it by our legislature or those which exist by necessary implication in a statutory grant of authority." *Id.* at 319, 735 S.E.2d at 303 (citing *Lee v. Gore*, 365 N.C. 227, 230, 717 S.E.2d 356, 359 (2011)). And, state agencies are statutorily and constitutionally required to remain within the confines of the authority granted to them by the General Assembly. *See* N.C.G.S. § 150B-51(b)(2) (2017) (setting forth redress if state agencies act "[i]n excess of the statutory authority or jurisdiction of the agency"); N.C. Const. art. III, § 11 (requiring that "all administrative departments, agencies, and offices of the State and their respective functions, powers, and duties shall be allocated by law").

Here, the General Assembly specifically and solely authorized the State Treasurer, Executive Administrator, and the Board of Trustees of the State Health Plan to administer the Health Plan. *See* N.C.G.S. § 135-48.2(a) (2017) ("The State of North Carolina undertakes to make available a State Health Plan . . . exclusively for the benefit of eligible employees, eligible retired employees, and certain of their eligible dependents, which will pay benefits in accordance of the terms of this Article."). The State Treasurer, Executive Administrator, and Board of Trustees of the State Health Plan are the sole fiduciaries for the State Health Plan. *Id.* The Board of Trustees has the statutory duty to approve the benefits programs, the State Treasurer appoints staff to assist with implementation of the State Health Plan, and the State Treasurer retains the statutory authority to "administer and operate the State Health Plan." *See* N.C.G.S. §§ 135-48.22, 135-48.23, 135-48.30(a) (2017). Furthermore, all "benefits shall be provided under contracts between the [Health] Plan and the claims processors selected by the [Health] Plan." N.C.G.S. § 135-48.32(a) (2017). In addition, "new employees must be given the opportunity to enroll or decline enrollment for themselves and their dependents within 30 days from the date of employment or from first becoming eligible on a partially contributory or other contributory basis." N.C.G.S. § 135-48.42(a) (2017).

Thus, by statute, University Defendants have no fiduciary duty over the State Health Plan, do not select or administer its terms, and have no authority over the State Health Plan's benefits or exclusions or claims processing. University Defendants have no

9

authority with respect to the decisions made as to what medical procedures will or will not be covered by the State Health Plan.

In fact, even if University Defendants wished to offer a health insurance plan as a fringe benefit to their employees outside of Defendant NCSHP's Health Plan, they could not. State law requires University Defendants to offer Defendant NCSHP's State Health Plan to their employees and former employees. *See* N.C.G.S. § 135-48.42(a) (2017) (all "new employees **must** be given the opportunity to enroll [in the State Health Plan] or decline enrollment for themselves and their dependents within 30 days from the date of employment or from first becoming eligible on a partially contributory or other contributory basis.") (emphasis added).

The General Assembly has not provided express or implied authority for University Defendants to purchase or offer any other plan other than Defendant NCSHP's State Health Plan. While the North Carolina General Assembly has set forth authority for the Board of Governors of the University of North Carolina to purchase liability insurance contracts (N.C.G.S. § 116-219 (2017)), defend all suits or actions against individual health-care practitioners who are covered by a self-insured program of liability insurance (N.C.G.S. § 116-220 (2017)), establish a self-insurance trust fund (N.C.G.S. § 116-220.1 (2017)), and purchase commercial insurance (N.C.G.S. § 116-11(13a) (2017)), none of these statutes provides the requisite authority for University Defendants to offer any other health plan other than Defendant NCSHP's Health Plan. As such, University Defendants – even if they desired to do so—cannot purchase or offer a separate health plan. *See also* North

Carolina Attorney General Advisory Opinions (Exhibits A and B) (concluding that without express or implied authorization to do so, an individual State agency cannot purchase separate liability insurance for its employees).

In light of these statutory realities, it is clear that any alleged injury of Plaintiffs is traceable only to Defendant NCSHP and is not traceable to University Defendants, Plaintiffs have failed to establish standing to bring a Title IX claim against University Defendants and, therefore, their claim should be dismissed.

**B. Plaintiffs cannot show the relief they seek can be redressed by University Defendants because the General Assembly solely gave authority to Defendant NCSHP to establish and implement coverage under the Health Plan.**

In addition to failing to demonstrate that Plaintiffs' alleged harm is traceable directly to University Defendants, Plaintiffs cannot show that University Defendants have the ability to provide them with the relief they seek. "Redressability requires a plaintiff to show that it is likely, rather than merely speculative, that a favorable decision will redress the injury." *Crutchfield*, 230 F. Supp. 2d at 694 (citing to *Defenders of Wildlife*, 504 U.S. at 560). "Stated differently, 'the redressability requirement ensures that a plaintiff personally would benefit in a tangible way from the court's intervention.'" *Id.* at 695 (quoting *Friends of the Earth v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 162 (2000)). "[R]edressability assures the effectiveness of judicial involvement. Plaintiffs must show that it is likely, and not merely speculative, that a favorable decision will remedy the injury." *Mullinax*, 311 F. Supp. 2d at 481.

11

As noted above, "[a]n injury sufficient to meet the . . . elements of the standing inquiry must result from the actions of the [defendant], not from the actions of a third party[.]" *Mirant Potomac River, LLC v. U.S. Envtl. Prot. Agency*, 577 F.3d 223, 226 (4th Cir. 2009). For example, "there is no redressability when, even if the plaintiff were to prevail, a party not before the court would still be free to engage in the offending action." *Eagle on All. v. Jewell*, No. 2:13-cv-371, 2014 U.S. Dist. LEXIS 125939, at *11 (E.D. Va. Sept. 4, 2014) (citing *Levine v. Vilsack*, 587 F.3d 986, 991-95 (9th Cir. 2009) (holding that plaintiffs lack standing where redressability depends on third parties altering their behavior); *Klamath Water Users Ass'n v. FERC*, 534 F.3d 735, 739-41 (D.C. Cir. 2008) (finding no redressability where petitioner's relief relied on actions by third parties not before the court and petitioner failed to show that a favorable decision would significantly increase the likelihood of relief). "Speculative redressability is clearly insufficient to confer Article III standing." *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Servs. US, LLC*, No. 3:16cv799, 2017 U.S. Dist. LEXIS 163214, at *51-52 (E.D. Va. Sept. 30, 2017) (citation omitted), *aff'd*, 736 F. App'x 412 (4th Cir. 2018).

Here, Plaintiffs lack standing to bring a Title IX claim against University Defendants because even a favorable decision from the Court on this claim would not remedy the injury when the injury was caused by the actions of Defendant NCSHP. Only Defendant NCSHP has the ability to remedy the alleged offending action; that is, address the provision within the State Health Plan that denies coverage for gender-confirming health care. Plaintiffs have not and cannot allege that University Defendants have the

ability to make the changes to the State Health Plan that would provide them with relief. As any remedy can only be redressed by the Defendant NCSHP, Plaintiffs lack standing to sue University Defendants and the Title IX claim should be dismissed.

## II.    IF THIS COURT FINDS THAT PLAINTIFFS HAVE STANDING TO SUE UNIVERSITY DEFENDANTS, THIS COURT SHOULD STILL DISMISS PLAINTIFFS' TITLE IX CLAIM BECAUSE PLAINTIFFS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In addition to lacking standing to press their Title IX claim of discrimination in employment based on sex against University Defendants, Plaintiffs also have failed to state a cognizable claim for relief required by Rule 12(b)(6).  To allege a prima facie case for disparate treatment discrimination under Title IX, Plaintiffs must establish that (1) they are members of a protected class, (2) they suffered an unfavorable action, and (3) but for their membership in the protected class, the adverse action would not have occurred.  *Haley v. Va. Commonw. Univ.*, 948 F. Supp. 573, 578 (E.D. Va. 1996) (citing *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 238 (4th Cir. 1982)).  *See Jennings v. Univ. of N.C.,* 482 F.3d 686, 717 (4th Cir. 2007) (stating the "courts of appeals have looked to the Supreme Court's Title VII jurisprudence when interpreting Title IX.").  In support of element (3), plaintiffs typically allege that they were treated differently from other similarly situated employees outside the protected class.  *See Coleman v. Md. C.A.,* 626 F.3d 187, 190 (4th Cir. 2010) (construing Title VII race discrimination claim), *aff'd sub nom Coleman v. C.A. of Md.,* 566 U.S. 30 (2012). Here, Plaintiffs fail to allege any facts supporting elements (2) or (3) of their prima facie case – that they suffered an adverse action by the University Defendants

13

or that the University Defendants treated them differently from other similarly situated employees.

With respect to element (2) of their prima facie case (adverse action), the Supreme Court in *Davis v. Monroe County Board of Education* made clear that "a recipient of federal funds may be liable in damages under Title IX **only for its own misconduct**" and that "[t]he **recipient itself** must . . . 'subject [persons] to discrimination' . . . in order to be liable." 526 U.S. 629, 640-41 (1999) (emphasis added). As noted above, the Defendant NCSHP is responsible for providing the same State Health Plan to all of its enrollees, (Compl. ¶ 1), and it is the State Treasurer, Executive Administrator, and Board of Trustees of the State Health Plan that are the sole fiduciaries for the State Health Plan and that determines the State Health Plan's terms. Plaintiffs do not, and cannot allege, that the University Defendants were responsible for the alleged adverse action at issue – the exclusion of gender-confirming care from coverage under the State Health Plan. (Compl. ¶ 46)

Plaintiffs also have not alleged facts to support element (3) of their prima facie case, that the University Defendants treated them differently from similarly situated employees outside their protected class. As required by statute, University employees are provided the opportunity to enroll in the State Health Plan when they become employed by the University Defendants. This opportunity to enroll in the State Health Plan is offered equally in a non-discriminatory manner, regardless of any protected class considerations and participation in the plan is entirely voluntary. Plaintiffs make no allegations that

University Defendants failed or refused to allow certain employees the opportunity to enroll in the State Health Plan based on a protected class, or that University Defendants otherwise treated any of the Plaintiffs differently based on their protected class. While the State Health Plan may differentiate between coverage for different persons under the State Health Plan, the Complaint is devoid of any allegations that University Defendants treated employees differently based on any protected class.  In the absence of any allegations that Plaintiffs suffered an adverse action by University Defendants or that the University Defendants treated Plaintiffs differently than other similarly situated individuals, Plaintiffs' Title IX claim against the University Defendants must be dismissed.

III.    **THIS COURT SHOULD DISMISS THE TITLE IX CLAIMS BROUGHT ON BEHALF OF CONNOR THONEN-FLECK AND C.B. BECAUSE MINOR CHILDREN ARE NOT A PART OF THE EDUCATIONAL PROGRAM OR ACTIVITY AND THEIR PARENTS HAVE NO STANDING TO BRING CLAIMS ON THEIR BEHALF.**

There is an additional reason for dismissing the claims brought on behalf of Connor Thonen-Fleck and C.B: they are minor children not participating in an educational program or activity with University Defendants and their parents have no standing to bring claims on their behalf.  Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination **under any educational program or activity** receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a) (2012); see also 34 C.F.R. § 106.31 (2018) (emphasis supplied). Plaintiffs bring Title IX claims on behalf of two minors, Connor Thonen-Fleck and C.B, but   neither of the two minors is part of the educational program or activity of any

15

University.  There are no allegations that they are enrolled as a student with University Defendants, employed by University Defendants, or have any prior student or employee affiliation with any University Defendants.  Rather, the only allegations in the Complaint are that they are dependents of parents who are employed or previously employed by a University Defendant.  (Compl. ¶¶ 8, 10)   Title IX protections only extend to participants in an educational program receiving federal financial assistance.  As Plaintiffs Connor Thonen-Fleck and C.B. were not participants in any of the University Defendants' educational programs, they have no viable Title IX claim.

Moreover, the parents of Connor Thonen-Fleck and C.B., Plaintiffs Jason Fleck and Michael Bunting, Jr., lack standing to assert a Title IX claim on behalf of their children. Plaintiffs Jason Fleck and Michael Bunting, Jr. do not purport to sue for discrimination based on their own gender identity, but the gender identity of their dependents.  Title VII, and by analogy Title IX, forbids discrimination on the basis of an individual's *own* protected status.  *See, e.g., Childress v. City of Richmond*, 134 F.3d 1205, 1206-07 (4th Cir. 1998) (en banc) (holding white male plaintiffs did not have standing to bring Title VII discrimination claim for conduct directed at black and female co-workers).  Plaintiffs Fleck and Bunting cannot maintain a valid Title IX discrimination claim based on alleged gender discrimination against their transgender dependent children.  *Cf. Tovar v. Essentia Health*, 857 F.3d 771, 774 (8th Cir. 2017) (holding employee lacked standing to pursue Title VII discrimination claim on behalf of transgender dependent).  As Plaintiffs Connor Thonen-Fleck and C.B. were not participants in any of the University Defendants' educational

16

programs and their parents do not have standing to pursue a Title IX claim on their behalf, their claims (whether asserted individually or on behalf by their parents) must be dismissed.

IV.  **IN THE ABSENCE OF CONTROLLING AUTHORITY RECOGNIZING A CAUSE OF ACTION FOR GENDER IDENTITY DISCRIMINATION UNDER TITLES VII OR IX IN THE FOURTH CIRCUIT, PLAINTIFFS' TITLE IX CLAIM AGAINST UNIVERSITY DEFENDANTS SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) OR STAYED PENDING THE SUPREME COURT'S CONSIDERATION OF *HARRIS FUNERAL HOMES*.**

Plaintiffs' Title IX claim against the University Defendants relies on the premise that the definition of "sex" in Title IX includes gender identity. However, the state of the law on the question of whether sex discrimination in Titles IX and VII includes gender identity discrimination is unclear. The United States Supreme Court has not yet addressed that question, although a case currently pending before that Court presents the issue in the context of a Title VII claim. *See R.G. & G.R. Harris Funeral Homes, Inc. v. Equal Emp't Opportunity Comm'n*, No. 18-107, 2019 U.S. LEXIS 2846 (U.S. Apr. 22, 2019) (granting certiorari to address whether Title VII prohibits discrimination against transgender people based on (1) their status as transgender or (2) sex stereotyping under *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)).

The United States Court of Appeals for the Fourth Circuit has not considered the question, *see Finkle v. Howard Cty.*, 640 F. App'x 245, 248 n.3 (4th Cir. 2016) (declining to decide whether transgender persons comprise a protected class under Title VII since employer had not raised argument on appeal); *M.A.B. v. Bd. of Educ. of Talbot Cty.*, 286 F. Supp. 3d 704, 714 (D. Md. 2018) (noting Fourth Circuit "has not applied *Price Waterhouse* in the context of claims brought by transgender persons, or gender stereotyping

17

claims more generally, under Title VII"), but two federal district courts outside of North Carolina but in the Fourth Circuit have concluded that claims of discrimination on the basis of transgender status are per se actionable under a gender stereotyping theory. *See M.A.B.*, 286 F. Supp. 3d at 714; *Grimm v. Gloucester Cty. Sch. Bd.*, 302 F. Supp. 3d 730, 746-47 (E.D. Va. 2018). However, in the absence of any Supreme Court or Fourth Circuit Court of Appeals decision recognizing a cause of action for gender identity discrimination pursuant to Titles IX and VII, Plaintiffs' claim against the University Defendants should be dismissed.

Notwithstanding the argument above, in the event that the Court does not find the arguments for dismissal persuasive and as an alternative to ruling on this issue during the pendency of *R.G. & G.R. Harris Funeral Homes*, the University Defendants move in the alternative for a stay of these proceedings until the Supreme Court issues its decision in that case.

## CONCLUSION

Because of the foregoing, Defendants University of North Carolina at Chapel Hill, North Carolina State University, and University of North Carolina at Greensboro respectfully request that this Court dismiss all of Plaintiff's claims with prejudice against the University Defendants based upon Rules 12(b)(1), 12(b)(2) and 12(b)(6). The University Defendants further respectfully move the Court to stay all discovery in this matter pending resolution of their Motion to Dismiss, in the interest of judicial economy

18

and in order to streamline the issues for the parties, and to provide such other relief as it

deems proper.

This the 8th day of July, 2019.

JOSHUA H. STEIN
Attorney General


/s/Kimberly D. Potter
Kimberly D. Potter
Special Deputy Attorney General
NC State Bar No. 24314
kpotter@ncdoj.gov


/s/Catherine F. Jordan
Catherine F. Jordan
Special Deputy Attorney General
NC State Bar No. 34030
cjordan@ncdoj.gov

NC Department of Justice
PO Box 629
Raleigh, NC 27602
Tel: 919-716-6920
Fax: 919-716-6764

*Attorneys for Defendants University of North Carolina at Chapel Hill, North Carolina State University, and University of North Carolina at Greensboro*

## CERTIFICATE OF COMPLIANCE

I hereby certify that Defendants University of North Carolina at Chapel Hill, North Carolina State University, and University of North Carolina at Greensboro's Memorandum in Support of Motion to Dismiss is in compliance with Local Rule 7.3(d)(1) of in that the body of this brief, including headings and footnotes, does not exceed 6,250 words as indicated by Microsoft Word, the program used to prepare this document.

This the 8th day of July, 2019.

/s/ Kimberly D. Potter
Kimberly D. Potter
Special Deputy Attorney General

<u>**CERTIFICATE OF SERVICE**</u>

I certify that the foregoing **DEFENDANTS UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, NORTH CAROLINA STATE UNIVERSITY, AND UNIVERSITY OF NORTH CAROLINA AT GREENSBORO'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered users.

This the 8th day of July, 2019.

<u>/s/Kimberly D. Potter</u>
Kimberly D. Potter
Special Deputy Attorney General