# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MAXWELL KADEL; JASON FLECK;
CONNOR THONEN-FLECK, by his next
friends and parents, JASON FLECK and
ALEXIS THONEN; JULIA MCKEOWN;
MICHAEL D. BUNTING, JR.; C.B., by his
next friends and parents, MICHAEL D.
BUNTING, JR. and SHELLEY K. BUNTING;
and SAM SILVAINE,

*Plaintiffs*,

v.

DALE FOLWELL, in his official capacity as
State Treasurer of North Carolina; DEE
JONES, in her official capacity as Executive
Administrator of the North Carolina State
Health Plan for Teachers and State Employees;
UNIVERSITY OF NORTH CAROLINA AT
CHAPEL HILL; NORTH CAROLINA
STATE UNIVERSITY; UNIVERSITY OF
NORTH CAROLINA AT GREENSBORO;
and NORTH CAROLINA STATE HEALTH
PLAN FOR TEACHERS AND STATE
EMPLOYEES,

*Defendants*.

Case No. 1:19-cv-00272-LCB-LPA

**PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS BY
DEFENDANTS FOLWELL, JONES, AND THE NORTH CAROLINA STATE
HEALTH PLAN FOR TEACHERS AND STATE EMPLOYEES**

# Table of Contents

TABLE OF AUTHORITIES..............................................................................iii

INTRODUCTION ........................................................................................ 1

STATEMENT OF FACTS ............................................................................ 1

QUESTIONS PRESENTED .......................................................................... 2

LEGAL STANDARD ................................................................................... 3

ARGUMENT................................................................................................ 3

I.     PLAINTIFFS HAVE STATED A VALID EQUAL PROTECTION CLAIM ....... 3

      A.     The Exclusion discriminates based on sex, which requires heightened scrutiny................................................................ 4

            1.  The Exclusion discriminates facially and intentionally ................ 4

            2.  The Exclusion constitutes sex discrimination ............................... 7

      B.     The Exclusion discriminates on the basis of transgender status, which also requires heightened scrutiny. ..................................... 10

      C.     Cost savings cannot excuse invidious discrimination, let alone justify dismissal of Plaintiffs' claims. ......................................... 11

      D.     Ms. Jones is a proper defendant, and no joinder of additional parties is required. ..................................................................... 13

II.    PLAINTIFFS HAVE STATED A VALID CLAIM UNDER THE ACA ............. 15

      A.     NCSHP has waived sovereign immunity by accepting funds subject to ACA nondiscrimination requirements. ........................ 15

      B.     The law has never required that nondiscrimination statutes name specific kinds of claims or plaintiffs to waive immunity. ................ 19

      C.     Plaintiffs state a valid ACA claim because the Exclusion discriminates facially and intentionally...................................... 21

i

D.      Title IX prohibits health coverage discrimination based on sex. ................ 22

CONCLUSION .............................................................................................................. 24

Case 1:19-cv-00272-LCB-LPA   Document 34   Filed 08/05/19   Page 3 of 37

# Table of Authorities

## Cases

*Adams v. Sch. Bd. of St. Johns Cty.*,
318 F. Supp. 3d 1293 (M.D. Fla. 2018) ......................................................................... 22

*Adkins v. City of New York*,
143 F. Supp. 3d 134 (S.D.N.Y. 2015) ............................................................................ 11

*Alexander v. Choate*,
469 U.S. 287 (1985) ....................................................................................................... 12

*Am. Gen. Life & Accident Ins. Co. v. Wood*,
429 F.3d 83 (4th Cir. 2005) ............................................................................................. 3

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
548 U.S. 291 (2006) ....................................................................................................... 20

*Atascadero State Hospital v. Scanlon*,
473 U.S. 234 (1985) ....................................................................................................... 16

*Barnes v. City of Cincinnati*,
401 F.3d 729 (6th Cir. 2005) ........................................................................................... 8

*Bassett v. Snyder*,
59 F. Supp. 3d 837 (E.D. Mich. 2014) .......................................................................... 12

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*,
458 U.S. 176 (1982) ....................................................................................................... 20

*Bd. of Educ. of the Highland Local Sch. Dist. v. United States Dep't of Educ.*,
208 F. Supp. 3d 850 (S.D. Ohio 2016) ................................................................... 11, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................... 3

*Bennett v. Ky. Dep't of Educ.*,
470 U.S. 656 (1985) ....................................................................................................... 19

*Benning v. Georgia*,
391 F.3d 1299 (11th Cir. 2004) ..................................................................................... 20

Case 1:19-cv-00272-LCB-LPA   Document 34   Filed 08/05/19   Page 4 of 37

*Bostic v. Schaefer*,
   760 F.3d 352 (4th Cir. 2014) ........................................................................... 13

*Bowen v. Gillard*,
   483 U.S. 587 (1987) ........................................................................................ 10

*Boyd v. Bulala*,
   877 F.2d 1191 (4th Cir. 1989) ......................................................................... 13

*Boyden v. Conlin*,
   341 F. Supp. 3d 979 (W.D. Wis. 2018) ............................................. 6, 7, 8, 9, 18, 20, 21

*Bray v. Alexandria Women's Health Clinic*,
   506 U.S. 263 (1993) .......................................................................................... 7

*City of Los Angeles, Dep't of Water and Power v. Manhart*,
   435 U.S. 702 (1978) ................................................................................... 23, 24

*Cleburne v. Cleburne Living Ctr.*,
   473 U.S. 432 (1985) ........................................................................................ 10

*Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*,
   421 F.3d 170 (3rd Cir. 2005) ............................................................................. 4

*Davis v. Monroe Cty. Bd. of Educ.*,
   526 U.S. 629 (1999) ........................................................................................ 21

*Diaz v. Brewer*,
   656 F.3d 1008 (9th Cir. 2011) ......................................................................... 12

*Edelman v. Jordan*,
   415 U.S. 651 (1974) ........................................................................................ 11

*Esparza v. Univ. Med. Ctr. Mgmt. Corp.*,
   No. CV 17-4803, 2017 WL 4791185 (E.D. La. Oct. 24, 2017) ...................... 16, 18, 19

*Etsitty v. Utah Transit Authority*,
   502 F.3d 1215 (10th Cir. 2007) ....................................................................... 21

*Evancho v. Pine-Richland Sch. Dist.*,
   237 F. Supp. 3d 267 (W.D. Pa. 2017) .............................................................. 11

iv

*Ex Parte Young*,
   209 U.S. 123 (1908) ........................................................................................... 13

*F.V. v. Barron*,
   286 F. Supp. 3d 1131 (D. Idaho 2018) ........................................................... 11

*Fabian v. Hosp. of Cent. Conn.*,
   172 F. Supp. 3d 509 (D. Conn. 2016) ........................................................... 9, 23

*Flack v. Wis. Dep't of Health Servs.*,
   328 F. Supp. 3d 931 (W.D. Wis. 2018) ........................................ 6, 9, 11, 18, 20

*Franciscan All., Inc. v. Burwell*,
   227 F. Supp. 3d 660 (N.D. Tex. 2016) ........................................................... 22

*Frontiero v. Richardson*,
   411 U.S. 677 (1973) ......................................................................................... 6, 9

*Geduldig v. Aiello*,
   417 U.S. 484 (1974) ......................................................................................... 6, 7

*Glenn v. Brumby*,
   663 F.3d 1312 (11th Cir. 2011) ........................................................................ 8

*G.G. v. Gloucester Cty. Sch. Bd.*,
   822 F.3d 709 (4th Cir. 2016) ........................................................................... 22

*Graham v. Richardson*,
   403 U.S. 365 (1971) ......................................................................................... 11

*Grimm v. Gloucester Cty. Sch. Bd.*,
   302 F. Supp. 3d 730 (E.D. Va. 2018) ........................................ 8, 10, 11, 20, 22

*Jackson v. Birmingham Bd. of Educ.*,
   544 U.S. 167 (2005) ......................................................................................... 20

*Lane v. Pena*,
   518 U.S. 187 (1996) ...................................................................................... 16, 18

*Levy v. Kansas Dep't of Soc. & Rehab. Servs.*,
   789 F.3d 1164 (10th Cir. 2015) ...................................................................... 18

*Litman v. George Mason Univ.*,
   186 F.3d 544 (4th Cir. 1999) ............................................................... 15, 16, 18

*M.A.B. v. Bd. of Educ. of Talbot Cty.*,
   286 F. Supp. 3d 704 (D. Md. 2018) ............................................. 8, 10, 11, 22

*Madison v. Virginia*,
   474 F.3d 118 (4th Cir. 2006) .............................................................. 15, 16, 17

*Massachusetts v. U.S. Dep't of Health & Human Servs.*,
   682 F.3d 1 (1st Cir. 2012) ............................................................................. 12

*Mem'l Hosp. v. Maricopa Cty.*,
   415 U.S. 250 (1974) ................................................................................ 11, 12

*Morrison v. Garraghty*,
   239 F.3d 648 (4th Cir. 2001) .......................................................................... 4

*Oncale v. Sundowner Offshore Servs., Inc.*,
   523 U.S. 75 (1998) ....................................................................................... 23

*Orr v. Orr*,
   440 U.S. 268 (1979) ....................................................................................... 5

*Phillips v. Martin Marietta Corp.*,
   400 U.S. 542 (1971) ..................................................................................... 12

*Plyler v. Doe*,
   457 U.S. 202 (1982) ................................................................................ 10, 12

*Prescott v. Rady Children's Hosp. San Diego*,
   265 F. Supp. 3d 1090 (S.D. Cal. 2017) ....................................................... 22

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989) ....................................................................................... 6

*Reed v. Reed*,
   404 U.S. 71 (1971) ......................................................................................... 6

*Regents of Univ. of California v. Bakke*,
   438 U.S. 265 (1978) ..................................................................................... 24

*Rosa v. Park West Bank & Trust Co.*,
   214 F.3d 213 (1st Cir. 2000) ......................................................................... 8

*RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*,
   921 F. Supp. 1457 (M.D.N.C. 1995) ........................................................... 14

*S.C. Wildlife Fed'n v. Limehouse*,
   549 F.3d 324 (4th Cir. 2008) ....................................................................... 14

*Saah v. Contel Corp.*,
   978 F.2d 1256 (4th Cir. 1992) ..................................................................... 13

*Schroer v. Billington*,
   577 F. Supp. 2d 293 (D.D.C. 2008) ............................................................... 9

*Schwenk v. Hartford*,
   204 F.3d 1187 (9th Cir. 2000) ................................................................. 8, 21

*Sessions v. Morales-Santana*,
   137 S. Ct. 1678 (2017) .................................................................................. 8

*Shapiro v. Thompson*,
   394 U.S. 618 (1969) ............................................................................... 11, 12

*Shaw v. Reno*,
   509 U.S. 630 (1993) ..................................................................................... 10

*Shelley v. Kraemer*,
   334 U.S. 1 (1948) ........................................................................................... 5

*Sossamon v. Texas*,
   563 U.S. 277 (2011) ..................................................................................... 18

*Students & Parents for Privacy v. U.S. Dep't of Educ.*,
   No. 16-CV-4945, 2016 WL 6134121 (N.D. Ill. Oct. 18, 2016) .................... 19

*Tovar v. Essentia Health*,
   No. CV 16-100, 2018 WL 4516949 (D. Minn. Sept. 20, 2018) .................... 20

*Ulane v. E. Airlines, Inc.*,
   742 F.2d 1081 (7th Cir. 1984) ..................................................................... 21

vii

*United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
   707 F.3d 451 (4th Cir. 2013)......................................................................3

*United States v. Arlington Cty., Va.*,
   669 F.2d 925 (4th Cir. 1982)....................................................................14

*United States v. Giddins*,
   858 F.3d 870 (4th Cir. 2017)....................................................................22

*United States v. Virginia*,
   518 U.S. 515 (1996)..............................................................................7, 9

*West Virginia Department of Health & Human Resources v. Sebelius*,
   649 F.3d 217 (4th Cir. 2011)....................................................................19

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
   858 F.3d 1034 (7th Cir. 2017)..................................................4, 7, 8, 21, 24

*Windsor v. U.S.*,
   699 F.3d 169 (2d Cir. 2012)....................................................................11

## Statutes

20 U.S.C. § 1681(a) ..................................................................................24

42 U.S.C. § 18116 ..............................................................................passim

42 U.S.C. § 18116(a) ....................................................................17, 18, 24

42 U.S.C. § 2000cc–1(a) ...........................................................................16

42 U.S.C. § 2000d-7 .................................................................................18

42 U.S.C. § 2000d-7(a)(1) ...................................................................16, 17

## Rules

F.R.C.P. 12(b)(1) .......................................................................................3

F.R.C.P. 12(b)(6) .......................................................................................3

viii

F.R.C.P. 12(b)(7) ................................................................................................. 3

F.R.C.P. 19 ................................................................................................... 3, 14

F.R.C.P. 19(a)(1)(A) ...................................................................................... 14

ix

**INTRODUCTION**

The North Carolina State Health Plan for Teachers and State Employees ("NCSHP" or the "Plan") provides health coverage to eligible state employees and dependents. Unlike non-transgender enrollees in NCSHP, transgender enrollees face a sweeping exclusion that denies coverage for medically necessary gender-confirming health care, including counseling, hormone therapy, and surgical care (the "Exclusion"). The same medical treatment, however, is insured for non-transgender Plan members. While all health plans must draw coverage lines, they may not be drawn along invidious lines to balance the budget on the backs of a vulnerable minority, while the favored majority receives that care. This is what the Exclusion does.

Plaintiffs are current and former state employees and their dependents who challenge the Exclusion, as relevant here, under the Equal Protection Clause and Affordable Care Act. Defendants Dale Folwell, Dee Jones, and NCSHP (collectively, "NCSHP Defendants") move to dismiss those claims. ECF No. 33 ("Mot."). Plaintiffs' well-pleaded allegations that the Exclusion expressly and intentionally targets transgender enrollees for discriminatory treatment based on sex and transgender status more than satisfy the plausibility threshold required at this stage. Defendants articulate no adequate justification for the Exclusion, much less one that can be credited at the pleading stage. Plaintiffs' claims should be allowed to proceed.

**STATEMENT OF FACTS**

Plaintiffs Maxwell Kadel, Julia McKeown, Sam Silvaine, Connor Thonen-Fleck,

1

and C.B. are transgender. Compl. ¶¶ 7-11. Their health care providers have prescribed medically necessary treatment, which may include counseling, hormone therapy, and surgery. Compl. ¶¶ 61,64,72,73,86,95,115,117. NCSHP contains a categorical Exclusion that discriminates against them on the basis of sex and transgender status by denying them coverage for these medically necessary treatments. Compl. ¶ 2. These same treatments are covered for non-transgender enrollees. *Id.*

In 2016, the Treasurer's Office removed the Exclusion of gender-confirming care for the 2017 Plan. Compl. ¶ 50. Defendants Folwell and Jones, however, ensured that the Exclusion was reinstated for the 2018 and 2019 Plans, which exclude all coverage for treatment in connection with "gender transformation" and "sex changes or modifications," in the outmoded parlance of the Plan. Compl. ¶¶ 54,55. The only people who require treatments related to gender-confirming health care are transgender people. Compl. ¶ 46. Further, because the Exclusion is only for gender-confirming health care, non-transgender enrollees receive coverage for the same treatments that transgender enrollees do not. Compl. ¶ 46.

## QUESTIONS PRESENTED

1. Does Count I state a plausible claim that the Exclusion violates the Equal Protection Clause of the Fourteenth Amendment by discriminating on the basis of sex and transgender status?

2. Does Count III state a plausible claim that the Exclusion violates the Affordable Care Act by discriminating on the basis of sex?

2

## LEGAL STANDARD

Defendants invoke Rules 12(b)(1), (6), and (7) in their motion to dismiss. Defendants' sole, terse reference to 12(b)(1), however, provides no explanation of why they say Plaintiffs' claims should be purportedly be dismissed.  Mot. at 7.

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim to relief that is plausible on its face." *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quote omitted).  This requires merely that a plaintiff advance their claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Defendants also reference dismissal under Rule 12(b)(7) for failure to join a necessary party, but in the sparest of terms.  Mot. at 7 n.1.  The party asserting a Rule 12(b)(7) defense bears the burden of showing that a person not joined is necessary and indispensable pursuant to Rule 19.  *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir.2005).  Defendants fail to carry this burden.

## ARGUMENT

## I.   PLAINTIFFS HAVE STATED A VALID EQUAL PROTECTION CLAIM

Although Defendants' motion to dismiss rests on several errors, they concede the crux of Plaintiffs' case by acknowledging that the Plan "cannot, of course, selectively deny health insurance coverage."  Mot. at 11-12.  That selective, discriminatory denial of coverage to transgender members lies at the heart of Plaintiffs' claims, and Plaintiffs'

3

well-pleaded allegations about this discriminatory treatment state a plausible equal protection claim.

### A. The Exclusion discriminates based on sex, which requires heightened scrutiny.

#### 1. The Exclusion discriminates facially and intentionally.

To state an equal protection claim, a plaintiff must plausibly allege that "he has been treated differently from others with whom he is similarly situated," either facially or as "the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Defendants repeatedly claim that Plaintiffs have alleged mere disparate impact, Mot. at 7-8, 12, but this is inaccurate. Plaintiffs' well-pleaded allegations show the Exclusion's facial discrimination, obviating the need to show discriminatory intent. *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3rd Cir. 2005). Here, the express text of the Exclusion itself—which prohibits coverage for "treatment in conjunction with proposed *gender* transformation" and "*sex* changes"—lays bare the intent to discriminate based on sex. Compl. ¶ 55. Even if the Exclusion did not explicitly refer to "gender transformation" and "sex changes"—thus expressly targeting treatments that concern the physical characteristics of a person's sex—where a "policy cannot be stated without referencing sex," it is expressly "based upon a sex-classification." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017).

While no further inquiry into intent is required, there can be no question that the Exclusion is intentional, and Defendants' arguments otherwise strain credulity. Mot. at

4

14-15.  Under the prior Treasurer, the discriminatory Exclusion was removed from the 2017 Plan.  Compl. ¶ 50.  Defendant Folwell, however, commented publicly on it, ensured that it was reinstated in 2018 after he assumed office, and Defendants Folwell and Jones negotiated and approved the Exclusion in the 2018 and 2019 contracts.  Compl. ¶¶ 53-54.  Eliminating coverage for gender-confirming care thus was not accidental or inadvertent, but targeted and deliberate.

Contrary to Defendants' suggestion, showing animus is not necessary.  Mot. at 15.  Its presence is an additional indicator of discriminatory intent, but as the Supreme Court has repeatedly clarified, it does not matter whether governmental discrimination is motivated by hostility, misunderstanding, or even a well-intentioned desire "to compensate for … past discrimination."  *Orr v. Orr*, 440 U.S. 268, 283 (1979).  The Equal Protection Clause's command remains the same: the government may not discriminate based on sex without exceedingly persuasive justification.

Defendants claim that the Exclusion is unreviewable because "*everyone*" is denied coverage for "gender transformation" or "sex changes or modifications."  Mot. at 11-12.  This is not a serious argument.  As Plaintiffs allege, "the only people who require treatments related to gender-confirming health care are transgender people."  Compl. ¶ 46.  Defendants do not, and could not, claim otherwise.  The Supreme Court has rejected Defendant's argument in other contexts, and this Court should do the same.  *Cf. Shelley v. Kraemer*, 334 U.S. 1, 21–22 (1948) (rejecting argument that racially restrictive

covenants were not discriminatory because such covenants could be enforced against the privileged white majority).

Defendants misleadingly suggest that Plaintiffs seek a "fundamental right to a medical procedure" or "governmental aid." Mot. at 11, 13. That is not Plaintiffs' claim. Plaintiffs invoke the Equal Protection Clause, not a due process right, and seek coverage only on the same terms that others similarly situated already receive. While it may be true, to use Defendants' example, that a state may not be required to "cover abortion," Mot. at 11, no state could fund abortions to terminate pregnancies for only women of a certain race. Once a state offers coverage, it must do so on non-discriminatory terms. That is all Plaintiffs seek here.

Finally, *Geduldig v. Aiello*, 417 U.S. 484 (1974), has no relevance to this case. First, *Geduldig* was decided before the Supreme Court recognized the viability of sex stereotyping claims in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989), and has no bearing on that claim here. Second, *Geduldig* did not hold that pregnancy-based classifications *never* violate the Equal Protection Clause, instead concluding more narrowly that not every pregnancy classification is an explicit sex-based classification "like those considered in" *Reed v. Reed*, 404 U.S. 71 (1971) and *Frontiero v. Richardson*, 411 U.S. 677 (1973). *Geduldig*, 417 U.S. at 496. n.20. Here, courts have had no trouble identifying the sex-based classification explicit in refusals of coverage for gender-confirming care. *See, e.g.*, *Boyden v. Conlin*, 341 F. Supp. 3d 979, 995 (W.D. Wis. 2018); *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 948 (W.D. Wis. 2018).

6

Subsequent decisions of the Supreme Court make clear that "[s]ome activities may be such an irrational object of disfavor that, if they are targeted, and … happen to be engaged in exclusively or predominantly by a particular class of people, an intent to disfavor that class can readily be presumed." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993); *id.* (a "tax on wearing yarmulkes is a tax on Jews"). *Bray* aptly describes the Exclusion here, since the need to undergo medical transition exclusively applies to transgender people. Compl. ¶ 46; *see also Boyden*, 341 F. Supp. 3d at 1000 (rejecting arguments about *Geduldig*).

### 2. The Exclusion constitutes sex discrimination.

"All gender-based classifications … warrant heightened scrutiny." *United States v. Virginia*, 518 U.S. 515, 555 (1996) (quotes omitted). The burden of demonstrating the actual justification for the classification "is demanding" and "rests entirely on the State." *Id.* at 533. The Exclusion constitutes a sex-based classification for at least three independent reasons. First, as explained above, the Exclusion facially discriminates based on sex. *See Whitaker*, 858 F.3d at 1051 (policy barring transgender students from sex-specific restrooms was facially discriminatory because it "[could not] be stated without referencing sex"); *see also Boyden*, 341 F. Supp. 3d at 995 (denying access to coverage because of one's sex assigned at birth—*e.g.*, covering vaginoplasty for a woman whose sex assigned at birth is female, but not a transgender woman whose sex assigned at birth was male—is a "straightforward" sex discrimination).

7

Second, the great weight of case law holds that discrimination because a person is transgender inherently relies on impermissible sex stereotypes. *See, e.g.*, *Grimm v. Gloucester Cty. Sch. Bd.*, 302 F. Supp. 3d 730, 747 (E.D. Va. 2018) ("this Court joins the District of Maryland in concluding that discrimination on the basis of transgender status constitutes gender stereotyping because by definition, transgender persons do not conform to gender stereotypes") (quotation marks omitted); *M.A.B. v. Bd. of Educ. of Talbot Cty.*, 286 F. Supp. 3d 704, 715 (D. Md. 2018).

For close to half a century the Supreme Court has "viewed with suspicion laws that rely on 'overbroad generalizations' based on gender." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1692 (2017). Consistent with this guidance, the First, Sixth, Seventh, Ninth, and Eleventh Circuit Courts of Appeals have found that discrimination based on a transgender person's failure to adhere to gender stereotypes is discrimination on the basis of sex. *Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213, 215 (1st Cir. 2000); *Barnes v. City of Cincinnati*, 401 F.3d 729, 739 (6th Cir. 2005); *Whitaker*, 858 F.3d at 1047; *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000); *Glenn v. Brumby*, 663 F.3d 1312, 1318-19 (11th Cir. 2011). Indeed, "[a] person is defined as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes." *Glenn*, 663 F.3d at 1316.

As *Boyden* explained, an exclusion for gender-confirming care requires transgender people to maintain the "characteristics of their [birth-assigned] sex," which "entrenches" the sex-stereotyped "belief that transgender individuals must preserve the

8

genitalia and other physical attributes of their [birth-assigned] sex over not just personal preference, but specific medical and psychological recommendations to the contrary." 341 F. Supp. 3d at 997. So too, here.

Third, discrimination based on gender transition is necessarily because of sex, just as discrimination based on religious conversion is necessarily because of religion. Firing an employee because she converted religion "would be a clear case of discrimination 'because of religion,'" even if the employer "harbors no bias toward either Christians or Jews but only 'converts.'" *Schroer v. Billington*, 577 F. Supp. 2d 293, 306 (D.D.C. 2008); *accord Fabian v. Hosp. of Cent. Conn.*, 172 F. Supp. 3d 509, 527 (D. Conn. 2016). The same principle applies here. The Exclusion expressly prohibits care when it is for purposes of "treatment in conjunction with proposed gender *transformation*" and "sex *changes*"—making clear that the fact of transition is targeted for discriminatory treatment. Compl. ¶ 55; *see also Flack*, 328 F. Supp. 3d at 949.

Like the exclusion of care for "gender reassignment" in *Boyden*, and "transsexual surgery" in *Flack*, the Exclusion here "singles out a … claimant's transgender status (as gender non-conforming) as the basis for denying medical treatment … [t]his is text-book discrimination based on sex." *Flack*, 328 F. Supp. 3d at 950. Accordingly, the Exclusion's sex-based classification must "be subject to close judicial scrutiny"— although it cannot survive any level of review. *Frontiero*, 411 U.S. at 682; *Virginia*, 518

U.S. at 530.[1]

**B. The Exclusion discriminates on the basis of transgender status, which also requires heightened scrutiny.**

Heightened scrutiny applies for the additional reason that the Exclusion also classifies based on transgender status. Courts have repeatedly subjected government classifications based on transgender status to heightened scrutiny, including in this circuit. *See Grimm*, 302 F. Supp. 3d at 749-50; *M.A.B.*, 286 F. Supp. 3d at 719-22. Courts often consider whether the class (1) has been historically "subjected to discrimination," *Bowen v. Gillard*, 483 U.S. 587, 602 (1987); (2) has a defining characteristic that "frequently bears [a] relation to ability to perform or contribute to society," *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440-41 (1985); (3) has "obvious immutable, or distinguishing characteristics that define them as a discrete group," *Bowen*, 483 U.S. at 602; and (4) is "a minority or politically powerless." *Id.* While not all considerations need point toward heightened scrutiny, and the first two alone may be dispositive, *Plyler v. Doe*, 457 U.S. 202, 216 n.14, (1982), all indicia are present for transgender people.

---

[1] Defendants incorrectly argue that "[o]nly facially discriminatory classifications receive heightened scrutiny." Mot. at 11. Instead, the level of scrutiny is determined by the classification itself. *See, e.g.*, *Shaw v. Reno*, 509 U.S. 630, 643-44 (1993) (race-based classifications are strictly scrutinized regardless of whether the law evinces that classification on its face, or is "ostensibly neutral but … an obvious pretext for racial discrimination") (quote omitted). Regardless of whether the Court views the classifications here as facial or intentional, they must be reviewed under heightened scrutiny because they are based on sex and transgender status.

10

"[T]ransgender people as a class have historically been subject to discrimination or differentiation; [] they have a defining characteristic that frequently bears no relation to an ability to perform or contribute to society; [] as a class they exhibit immutable or distinguishing characteristics that define them as a discrete group; and [] as a class, they are a minority with relatively little political power." *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 288 (W.D. Pa. 2017); Compl. ¶ 135. Multiple courts, including courts in this circuit, have come to the same conclusion. *See*, *e.g.*, *Grimm*, 302 F. Supp. 3d at 749-50; *M.A.B.*, 286 F. Supp. 3d at 719-22; *Flack*, 328 F. Supp. 3d at 953; *F.V. v. Barron*, 286 F. Supp. 3d 1131, 1145 (D. Idaho 2018); *Bd. of Educ. of the Highland Local Sch. Dist. v. United States Dep't of Educ.*, 208 F. Supp. 3d 850, 873 (S.D. Ohio 2016); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 139-140 (S.D.N.Y. 2015).

### C. Cost savings cannot excuse invidious discrimination, let alone justify dismissal of Plaintiffs' claims.

While heightened scrutiny should apply, Defendants' main justification for the Exclusion—that healthcare "is not free"—cannot satisfy any level of review, let alone support dismissal of Plaintiffs' claims. Mot. at 15. It is beyond peradventure that a state may not "protect the public fisc by drawing an invidious distinction." *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250, 263 (1974); *see also Graham v. Richardson*, 403 U.S. 365, 374-75 (1971); *Shapiro v. Thompson*, 394 U.S. 618, 633 (1969), *overruled in part on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974); *Windsor v. U.S.*, 699 F.3d 169, 186-87 (2d Cir. 2012) (rejecting cost as basis for refusal to recognize same-sex

11

couples' marriages), *aff'd*, 570 U.S. 744 (2013); *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 682 F.3d 1, 14 (1st Cir. 2012). Defendants must "do more than show" that denying equal coverage to transgender people "saves money," *Shapiro*, 394 U.S. at 633—otherwise, this does nothing "more than justify [the] classification with a concise expression of an intention to discriminate," *Plyler*, 457 U.S. at 227.[2] This applies under any level of review. *See Diaz v. Brewer*, 656 F.3d 1008, 1014 (9th Cir. 2011) (cost savings could not justify denying family health coverage to same-sex domestic partners even under rational basis review); *Bassett v. Snyder*, 59 F. Supp. 3d 837, 851-54 (E.D. Mich. 2014).

Defendants observe that medical care for transgender people is individualized, Mot. at 16—as is true of all medical care. The fact that transition-related needs may vary does not excuse a categorical ban on all such care—just as discrimination against the subset of women with pre-school-age children cannot be justified simply because not all women have children. *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 544 (1971) (per curiam).

Defendants' cited authorities do not help their argument. Mot. at 15-16. *Alexander v. Choate*, for example, was a case about a Medicaid benefit—inpatient hospital care—that *every* plan member could access. 469 U.S. 287, 289 (1985). This

---

[2] The cost-saving rationale also is implausible given that any savings would be negligible, if not "illusory." *See Mem'l Hosp.*, 415 U.S. at 265 (delayed medical care can cause a patient needless deterioration, requiring more expensive future care and possibly causing disability, which can strain state social services); *Bassett*, 59 F. Supp. 3d at 853.

12

case is different, where Plaintiffs challenge terms that allow non-transgender people to access care that transgender people are categorically denied.  *See also* Mot. at 17 (citing *Saah v. Contel Corp.*, 978 F.2d 1256, 2 (4th Cir. 1992) (generally applicable insurance cap on psychiatric care); *Boyd v. Bulala*, 877 F.2d 1191, 1193 (4th Cir. 1989) (generally applicable cap on medical malpractice recovery)).  Reliance on the Americans with Disabilities Act ("ADA"), Mot. at 17-18, also is misplaced, given the different analytical framework that applies to constitutional claims.  Nor does anything about Plan officials' fiduciary duties, Mot. at 17, allow the burden of cost savings to be shunted onto the backs of transgender Plan members alone.  No one contests that insurers must set limits for coverage; the Equal Protection Clause requires that the benefits and burdens be shared among all Plan members alike.[3]

**D.    Ms. Jones is a proper defendant, and no joinder of additional parties is required.**

Defendants assert in a single, unsupported sentence that Executive Administrator Dee Jones should be dismissed because she does not determine Plan benefits.  Mot. at 7 n.1.  But *Ex Parte Young* confirms the propriety of suing officials with *enforcement* power to ensure effective injunctive relief, regardless of their role in enacting the challenged policy.  209 U.S. 123, 161 (1908); *see also Bostic v. Schaefer*, 760 F.3d 352, 371-72 (4th Cir. 2014) (finding county clerk and state registrar proper defendants in

---

[3] Plaintiffs agree that Plaintiff Sam Silvaine's equal protection claim under Count I of the complaint may properly be dismissed without prejudice since he is no longer enrolled in NCSHP.  Mot. at 18 n.5.

13

challenge to Virginia's marriage ban, even though they had no role in enacting it). Here, Ms. Jones' connection to enforcement is direct and expressly codified, since she is "statutorily authorized to negotiate, renegotiate, and execute contracts with third parties" for health insurance with the consent of the Treasurer. Compl. ¶ 13. Retaining Ms. Jones as a defendant thus ensures that an "injunction will be effective with respect to the underlying claim." *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008).

Defendants also claim in passing that this court must either join all members of the Board of Trustees or dismiss Plaintiffs' equal protection claim. Mot. at 7 n.1. Defendants misconstrue Rule 19, which requires that a person "be joined as a party if … in [their] absence, the court cannot accord *complete* relief among *existing parties*." F.R.C.P. 19(a)(1)(A) (emphasis added). *See also United States v. Arlington Cty., Va.*, 669 F.2d 925, 929 (4th Cir. 1982) ("Complete relief refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought.") (citations omitted). Here, complete resolution between Plaintiffs and NCSHP Defendants does not require joinder of every Board member. Even if the Court concluded that all Board members are necessary, the proper remedy is joinder or leave to amend the complaint—not dismissal. *See RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 921 F. Supp. 1457, 1463 (M.D.N.C. 1995), *aff'd sub nom. RPR & Assocs., Inc. v. O'Brien/Atkins Assocs., P.A.*, 103 F.3d 120 (4th Cir. 1996).

14

## II. PLAINTIFFS HAVE STATED A VALID CLAIM UNDER THE ACA

### A. NCSHP has waived sovereign immunity by accepting funds subject to ACA nondiscrimination requirements.

Defendants argue that Plaintiffs fail to state a viable ACA claim because NCSHP retains Eleventh Amendment immunity. Mot. at 18. NCSHP has waived its immunity, however, by accepting funds unequivocally conditioned on compliance with the ACA's nondiscrimination obligations. The two other district courts to consider similar claims have also concluded that acceptance of those funds waives immunity.

Congress may rely on the Spending Clause to attach nondiscrimination conditions to federal funding. *Madison v. Virginia*, 474 F.3d 118, 124 (4th Cir. 2006). This is a permissible method of encouraging conformance with federal policy, because states may decide whether to decline the grant. *Id.* Congress has no obligation to disburse funds free of conditions because "such funds are gifts" that states may choose to accept. *Litman v. George Mason Univ.*, 186 F.3d 544, 552 (4th Cir. 1999) (quote omitted). A state thus waives immunity by accepting funds "when Congress expresses a clear intent to condition participation in the programs" on waiver of immunity. *Litman*, 186 F.3d at 550 (quotes omitted).

Defendants' primary argument is that no waiver can be found because the ACA does not "expressly and unequivocally" demand it. Mot. at 18; *id.* at 19. But that unequivocal waiver is provided by the Civil Rights Remedies Equalization Act ("CRREA"), which governs claims under Section 1557 of the ACA.

15

Congress enacted CRREA as a response to *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985), which held that Congress had not clearly abrogated states' immunity in the Rehabilitation Act. *See Lane v. Pena*, 518 U.S. 187, 198 (1996). CRREA was intended to provide that abrogation, stating in relevant part:

> A State shall not be immune under the Eleventh Amendment … from suit in Federal court for a violation of section 504 of the Rehabilitation Act …, title IX …, the Age Discrimination Act …, title VI …, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7(a)(1). In other words, "Congress struck a bargain with the states: if a federal statute prohibits discrimination on a certain basis by recipients of federal money, then a state entity that receives federal money is subject to suit … for violations of that nondiscrimination provision." *Esparza v. Univ. Med. Ctr. Mgmt. Corp.*, No. CV 17-4803, 2017 WL 4791185, at *6 (E.D. La. Oct. 24, 2017).

As the Supreme Court has recognized, CRREA "provide[s] the sort of unequivocal waiver that our precedents demand." *Lane*, 518 U.S. at 198; *see also Litman*, 186 F.3d at 554. CRREA's waiver of immunity is not limited to the four statutes expressly named, but applies equally to the ACA as a "[f]ederal statute prohibiting discrimination by recipients of [f]ederal financial assistance." 42 U.S.C. § 2000d-7(a)(1).

Defendants argue that CRREA's reference to any other "[f]ederal statute prohibiting discrimination" does not effect a waiver under *Madison*, but that misreads the case. Mot. at 20-21. *Madison* involved a prisoner seeking damages under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). *Madison*, 474 F.3d at

16

122-23.  Virginia argued that its immunity had not been waived pursuant to RLUIPA, which *Madison* rejected, and that it could not be subjected to monetary damages, which *Madison* accepted.  *Id.* at 130-32.  This distinction is important:  Defendants seek to dismiss Plaintiffs' ACA claim wholesale, but even *Madison* found that there was "nothing unfair about holding Virginia to its side of the bargain" and finding liability after the state accepted funds subject to RLUIPA's requirements.  *Madison* instead rejected only plaintiff's claims for money damages under CRREA—but for reasons wholly inapplicable here.

*Madison* found that for CRREA's catchall provision to authorize damages, RLUIPA "must be like the statutes expressly listed" in CRREA.  474 F.3d at 133.  "At a minimum, this would seem to require that a statute be aimed at discrimination."  *Id.*  As Defendants concede, that is what Section 1557 does.  Mot. at 20 (admitting "Section 1557 of the ACA prohibits discrimination"); *see also* 42 U.S.C. § 18116(a).  Defendants strain to distinguish Section 1557 from the other statutes listed in CRREA, casting Section 1557 as different because it is part of a healthcare reform law, and because the statutes listed in CRREA involve only one kind of discrimination, while Section 1557 prohibits multiple kinds of discrimination.  Mot. at 20-21.  This misses the point.

Section 1557 is not just similar to the statutes listed in CRREA, but *expressly incorporates* their prohibited grounds of discrimination and enforcement mechanisms.  *Compare* 42 U.S.C. § 2000d-7(a)(1) (CRREA's express waiver of immunity under Section 504, Title IX, the Age Discrimination Act, and Title VI) *with* 42 U.S.C.

Case 1:19-cv-00272-LCB-LPA   Document 34   Filed 08/05/19   Page 27 of 37

§ 18116(a) (Section 1557's prohibition of discrimination the grounds in those identical statutes). For these reasons, *Boyden* and *Esparza* offer more persuasive analysis than *Levy v. Kansas Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1171 (10th Cir. 2015)). Mot. at 21. As *Esparza* explains, the waiver provisions applicable to ADA and Rehabilitation Act at issue in *Levy* are simply different than the "clear evidence of Congress's intent" supplied by CRREA for ACA claims. *Esparza*, 2017 WL 4791185, at *7 n.36.

Defendant also claims that *Sossamon v. Texas*, 563 U.S. 277, 290 (2011), requires that a waiver of sovereign immunity appear in the ACA itself. Mot. at 18-19. But that would render CRREA superfluous and ignores that CRREA's waiver of immunity has been upheld repeatedly. *See, e.g.*, *Lane*, 518 U.S. at 192, 198 (although a waiver is lacking in the Rehabilitation Act, CRREA provides the "unequivocal waiver that our precedents demand"); *Litman*, 186 F.3d at 554 (Title IX need not contain express waiver of immunity; finding CRREA's waiver effective).

Two district courts have considered this specific question, both concluding that CRREA applies to Section 1557. *Boyden*, 341 F. Supp. 3d at 998-99; *Esparza*, 2017 WL 4791185, at *7 (if an entity is subject to Section 1557, "then—pursuant to the terms of § 2000d-7—that entity has waived its immunity"); *cf. Flack*, 328 F. Supp. 3d at 950 (rejecting argument that transgender plaintiffs could not hold Wisconsin liable under ACA because of insufficient notice). As *Esparza* explains, "Congress does indeed know

18

how to draft an effective waiver—and Congress did so with § 1557," which "fits within the four corners" of CRREA.  2017 WL 4791185, at *8.

### B. The law has never required that nondiscrimination statutes name specific kinds of claims or plaintiffs to waive immunity.

Defendants next argue that acceptance of funds does not waive immunity absent a "clear statement" from Congress about the ACA's application to transgender plaintiffs. Mot. at 21.  But there is no requirement that each application of a statute, or potential plaintiff, be identified before defendants are subject to suit.  In fact, this argument was rejected in *West Virginia Department of Health & Human Resources v. Sebelius*, 649 F.3d 217, 223 (4th Cir. 2011).  West Virginia claimed that, under *Pennhurst*, it could not be subject to Medicaid Act conditions based on its acceptance of funding without "a 'super-clear statement' of conditions in the Medicaid Act."  *Id.*  But this "misreads *Pennhurst*," which does not require Congress to "prospectively resolve every possible ambiguity concerning particular applications" of a statute.  *Id.* at 223-24 (quoting *Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 669 (1985)).  There is no requirement that each violation be "specifically identified and proscribed in advance."  *Bennett*, 470 U.S. at 666; *see also Students & Parents for Privacy v. U.S. Dep't of Educ.*, No. 16-CV-4945, 2016 WL 6134121, at *20 (N.D. Ill. Oct. 18, 2016) (rejecting argument that Title IX does not provide notice of transgender plaintiffs' claims) (quotations omitted), report and recommendation adopted, No. 16-CV-4945, 2017 WL 6629520 (N.D. Ill. Dec. 29, 2017).

"[S]o long as a spending condition has a clear and actionable prohibition of discrimination, it does not matter that the manner of that discrimination can vary widely."

19

*Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir. 2004); *see also Tovar v. Essentia Health*, No. CV 16-100, 2018 WL 4516949, at *3 (D. Minn. Sept. 20, 2018) (finding adequate notice that Title IX encompasses discrimination against transgender people). Indeed, "Title IX funding recipients 'have been on notice that they could be subjected to private suits for intentional sex discrimination under Title IX since 1979,' … and 'have been put on notice by the fact that ... cases ... have consistently interpreted Title IX's private cause of action broadly to encompass diverse forms of intentional sex discrimination.'" *Grimm*, 302 F. Supp. 3d at 746 n.11 (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 182 (2005)).

This is particularly true of Title IX, which has an implied cause of action and does "not list *any* specific discriminatory practices." *Jackson*, 544 U.S. at 175. *See also Flack*, 328 F. Supp. 3d at 950 ("defendants' least persuasive … argument is that § 1557 cannot … cover transgender status without violating the Spending Clause"); *Boyden*, 341 F. Supp. 3d at 999 (rejecting argument that "States would not have known that Title IX or Section 1557 reached [transgender status] claims").

Defendants' other cited cases—involving different statutes—shed no light on the notice that has long-existed about the availability of sex discrimination claims under Title IX. Mot. at 22 (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 190 n.11 (1982) (involving the Education for All Handicapped Children Act) and *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006) (involving the Individuals with Disabilities Education Act)). Nor is

20

Defendants' position improved by claiming that notice of every specific application of a statute must exist at the statute's conception, "when the ACA was passed in 2010." Mot. at 22. *See Boyden*, 341 F. Supp. 3d at 999 (rejecting argument that waiver turns on "the reach of federal antidiscrimination law only so far as anticipated at the time a state accepted federal funds"). Defendants misrepresent the state of the law protecting transgender plaintiffs from sex discrimination, which spans nearly two decades. *See, e.g.*, *Schwenk*, 204 F.3d at 1202.[4] Defendants also misunderstand how these principles operate for nondiscrimination funding conditions. For example, no funding recipient could reasonably claim immunity for sexual harassment, even though it "had not been recognized or considered by the courts" when Congress first enacted Title IX. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 664 (1999) (Kennedy, J., dissenting). Defendants' argument fares no better here.

### C. Plaintiffs state a valid ACA claim because the Exclusion discriminates facially and intentionally.

As explained in Section I.A.1, the Exclusion discriminates based on sex both facially and intentionally. That analysis applies equally to Plaintiffs' ACA claim. Defendants' assertion that no disparate impact claim can be raised under Title IX or the

---

[4] Defendants also cite *Ulane v. E. Airlines, Inc.*, 742 F.2d 1081 (7th Cir. 1984), Mot. at 23, but the Seventh Circuit has since held that sex stereotyping claims are indeed available to transgender plaintiffs. *Whitaker*, 858 F.3d at 1047. Additionally, *Etsitty v. Utah Transit Authority* assumed without deciding that a sex stereotyping claim *is* available to transgender plaintiffs. 502 F.3d 1215, 1224 (10th Cir. 2007).

21

ACA, Mot. at 24—while questionable—need not be resolved.[5] Defendants' attempt to

recast Plaintiffs' claim as sounding in "disparate impact" is simply incorrect and fails

under the same analysis for Plaintiffs' equal protection claim. Mot. at 23; Section I.A.1.

**D.      Title IX prohibits health coverage discrimination based on sex.**

Defendant claims that Plaintiffs' ACA claim must fail because differential

treatment of transgender people falls outside the statute's prohibition on sex

discrimination. But the Exclusion discriminates based on sex for the same reasons as

described in Section I.A.2; *see also Prescott v. Rady Children's Hosp. San Diego*, 265 F.

Supp. 3d 1090, 1098 (S.D. Cal. 2017) (ACA prohibits discrimination based on

transgender status). Defendants' sole argument is that "sex" must be restricted to its

meaning in dictionaries at Title IX's enactment in 1972. Mot. at 25. Defendants cite the

*dissent* in *G.G. v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 736 (4th Cir. 2016), vacated

and remanded, 137 S. Ct. 1239, (2017), but the *majority* found that dictionaries did not

"universally" prescribe any rigid definition. *Id.* at 721-22;[6] *Adams v. Sch. Bd. of St.*

*Johns Cty.*, 318 F. Supp. 3d 1293, 1321 (M.D. Fla. 2018) (same; collecting authorities);

---

[5] While not central here, Defendants repeatedly misconstrue *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660 (N.D. Tex. 2016), as a "nationwide injunction" that "invalidated the HHS regulation" clarifying that blanket exclusions of gender-confirming care violate the ACA. Mot. at 4, 24. Far from it, *Franciscan* merely preliminarily enjoined HHS from enforcing the regulation, with no effect on private litigants' claims. *Id.* at 696.

[6] Although the Supreme Court vacated the judgment in *G.G.*, 822 F.3d 709, two courts in this circuit have recognized that the decision "remains binding law" in the absence of a superseding en banc or Supreme Court opinion—neither of which has occurred here. *Grimm*, 302 F. Supp. 3d at 743 n.6; *M.A.B.*, 286 F. Supp. 3d at 712 n.5; *see also United States v. Giddins*, 858 F.3d 870, 886 n.12 (4th Cir. 2017).

*Highland*, 208 F. Supp. 3d at 866, n.4 ("dictionaries from that era defined 'sex' in myriad ways"); *Fabian*, 172 F. Supp. 3d at 526. Regardless, "statutory prohibitions often go beyond the principal evil" contemplated at a given time; it is "the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-80 (1998).

Defendants also argue that Plaintiffs have not identified an "action that disadvantages them," but that fundamentally misconstrues the complaint. Mot. at 26. Plaintiffs do not claim that "sex stereotypes alone *are* discrimination." Mot. at 26. Far from it, Plaintiffs have alleged multiple concrete harms imposed on them by the denial of coverage. Compl. ¶¶ 65-66,76-80,88-89,106-111,120-123.

Defendants also err in arguing that a claim is only stated where "members of one sex suffer disadvantages which members of the other sex" do not. Mot. at 26 (quote omitted). The Exclusion challenged here is not immunized from review because it subjects both transgender men and women to sex-based discrimination. The key question under the ACA and Title IX is whether the *individual's* sex has been taken into account. As *Manhart* explained in the Title VII context, that statute makes it "unlawful 'to discriminate against any *individual* ... because of such *individual's* ... sex.'" *City of Los Angeles, Dep't of Water and Power v. Manhart*, 435 U.S. 702, 708 (1978) (quote omitted). The "focus on the individual is unambiguous," and "precludes treatment of individuals as simply components" of a sex-based class. *Id.* It requires instead "that we focus on fairness to individuals rather than fairness to classes." *Id.* at 709.

23

"This same principle of *individual* fairness is embodied in Title VI," *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 416 n.19 (1978), and as Defendants concede, "Section 1557 has the same operative text as Title VI and Title IX." Mot. at 9; *see also* 42 U.S.C. § 18116(a) (ACA's requirement that "an *individual* shall not … be subjected to discrimination") (emphasis added); 20 U.S.C. § 1681(a) (Title IX's requirement that "[n]o *person* … be subjected to discrimination") (emphasis added). Accordingly, the "simple test" that applies is whether a person has been treated "in a manner which but-for that person's sex would be different." *Manhart*, 435 U.S. at 711 (quote omitted). That describes the Exclusion exactly. Plaintiff Kadel, for example, is denied hormone therapy because his birth-assigned sex was female; but-for his birth-assigned sex, he would otherwise qualify for this care under the Plan. Compl. ¶ 2,65; *see Whitaker*, 858 F.3d at 1051 (exclusion barring both transgender boys and girls from restrooms matching their identity still classifies each of them based on sex).

## CONCLUSION

For the reasons above, Defendants' motion to dismiss Counts I and III of Plaintiffs' complaint should be denied.

\* \* \*

24

Dated: August 5, 2019

Respectfully submitted,

/s/ Amy E. Richardson

Amy E. Richardson
N.C. State Bar No. 28768
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Telephone: 919-429-7386
Facsimile: 202-730-1301
arichardson@hwglaw.com

Deepika H. Ravi*
HARRIS, WILTSHIRE & GRANNIS LLP
919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Telephone: 202-730-1300
Facsimile: 202-730-1301
dravi@hwglaw.com

Noah E. Lewis*
TRANSGENDER LEGAL DEFENSE AND
    EDUCATION FUND, INC.
20 West 20th Street, Suite 705
New York, NY 10011
Telephone: 646-862-9396
Facsimile: 646-930-5654
nlewis@transgenderlegal.org

Meredith Taylor Brown*
Tara L. Borelli*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
730 Peachtree Street NE, Suite 640
Atlanta, GA 30318-1210
Telephone: 404-897-1880
Facsimile: 404-897-1884
tbrown@lambdalegal.org
tborelli@lambdalegal.org

Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY  10005
Telephone: 212-809-8585
Facsimile: 212-809-0055
ogonzalez-pagan@lambdalegal.org

*Counsel for Plaintiffs*

* Appearing by special appearance pursuant to L.R. 83.1(d).

25

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing brief is in compliance with Local Rule 7.3(d)(1)

because the body of this brief, including headings and footnotes, does not exceed 6,250

words as indicated by Microsoft Word, the program used to prepare this document.

Dated:  August 5, 2019

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Telephone: 919-429-7386
Facsimile: 202-730-1301
arichardson@hwglaw.com

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered users.

Dated: August 5, 2019

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Telephone: 919-429-7386
Facsimile: 202-730-1301
arichardson@hwglaw.com