# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MAXWELL KADEL; JASON FLECK; CONNOR THONEN-FLECK, by his next friends and parents, JASON FLECK and ALEXIS THONEN; JULIA MCKEOWN; MICHAEL D. BUNTING, JR.; C.B., by his next friends and parents, MICHAEL D. BUNTING, JR. and SHELLEY K. BUNTING; and SAM SILVAINE, | Case No. 1:19-cv-00272-LCB-LPA |

*Plaintiffs*,

v.

DALE FOLWELL, in his official capacity as State Treasurer of North Carolina; DEE JONES, in her official capacity as Executive Administrator of the North Carolina State Health Plan for Teachers and State Employees; UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL; NORTH CAROLINA STATE UNIVERSITY; UNIVERSITY OF NORTH CAROLINA AT GREENSBORO; and NORTH CAROLINA STATE HEALTH PLAN FOR TEACHERS AND STATE EMPLOYEES,

*Defendants*.

## PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS BY UNIVERSITY DEFENDANTS

**Table of Contents**

TABLE OF AUTHORITIES................................................................................ii

INTRODUCTION ........................................................................................... 1

STATEMENT OF FACTS................................................................................ 3

ARGUMENT.................................................................................................. 5

I.  PLAINTIFFS SATISFY ARTICLE III STANDING REQUIREMENTS
    AGAINST UNIVERSITY DEFENDANTS ............................................. 5

    A.  Plaintiffs have Article III standing because Plaintiffs' injuries are
        fairly traceable to University Defendants....................................... 5

    B.  Plaintiffs have Article III standing because University Defendants
        can, and should, redress Plaintiffs' injuries................................... 9

    C.  Plaintiffs Jason Fleck, Connor Thonen-Fleck, Mike Bunting, and
        C.B. meet statutory standing requirements under Title IX ........................ 12

II. PLAINTIFFS' TITLE IX CLAIM IS PLED PROPERLY AND
    SUFFICIENTLY ................................................................................. 16

III. UNIVERSITY DEFENDANTS HAVE FAILED TO SUPPORT THEIR
     REQUEST FOR AN INDEFINITE STAY............................................ 17

CONCLUSION ............................................................................................. 19

i

# Table of Authorities

## Cases

*Arizona Governing Committee For Tax Deferred Annuity & Deferred Compensation Plans v. Norris*, 463. U.S. 1073 (1983) ........................................... 6, 8, 9

*Bennett v. Spear*,
520 U.S. 154 (1977) ........................................................................................ 7

*Blue Moon Fiduciary, LLC v. Hutcheson*,
No. 1:12CV78, 2012 WL 13034813 (M.D.N.C. July 9, 2012)....................... 18

*Carcano v. McCrory*,
203 F. Supp. 3d 615 (M.D.N.C. 2016)....................................................... 9, 10

*Childress v. City of Richmond*,
134 F.3d 1205 (4th Cir. 1998).................................................................... 15

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976) ................................................................................ 18, 19

*Doe v. Bayer Corp.*,
*367* F. Supp. 2d 904 (M.D.N.C. 2005)........................................................ 18

*Friends for Ferrell Parkway, LLC v. Stasko*,
282 F.3d 315 (4th Cir. 2002)........................................................................ 7

*Jackson v. Birmingham Board of Education*,
544 U.S. 167 (2005) ..................................................................................... 14

*John & Jane Doe 2 v. Ortho-Clinical Diagnostics, Inc.*,
335 F. Supp. 2d 614 (M.D.N.C. 2004)......................................................... 18

*Landis v. North American Co.*,
299 U.S. 248 (1936) ................................................................................ 17, 18

*Lexmark International, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ................................................................................. 7, 12

*Lindblad v. J&I Services, Inc.*,
No. 4:18-CV-1336-RBH-TER, 2019 WL 653968 (D.S.C. Jan. 30, 2019)............... 14, 5

*Newport News Shipbuilding and Dry Dock Co. v. Equal Employment Opportunity Commission*, 462 U.S. 669 (1983)................................................. 7

ii

*North Haven Board of Education v. Bell,*
    456 U.S. 512 (1982) ...................................................................................... 6, 7 12, 13

*Preston v. Virgina ex rel. New River Community College,*
    31 F.3d 203 (1994) ...................................................................................................... 6, 7

*Sehler v. Prospect Mortgage, LLC,*
    No. 1:13CV473 JCC/TRJ, 2013 WL 5184216 (E.D. Va. Sept. 16, 2013) ............. 18, 19

*Shelley v. Kraemer,*
    334 U.S. 1 (1948) ............................................................................................................ 17

*Sierra Club v. United States Department of the Interior,*
    899 F.3d 260 (4th Cir. 2018) ......................................................................................... 10

*Terry v. Chauffeurs, Teamsters & Helpers, Local 391,*
    81 B.R. 394 (M.D.N.C. 1987) ........................................................................................ 18

*Tovar v. Essentia Health,*
    857 F.3d 771 (8th Cir. 2017) .................................................................................... 13, 14

*Utah v. Evans,*
    536 U.S. 452 (2002) ........................................................................................................ 11

*White v. Ally Financial Inc.,*
    969 F. Supp. 2d 451 (S.D.W. Va. 2013) ........................................................................ 18

*Williford v. Armstrong World Industries, Inc.,*
    715 F.2d 124 (4th Cir. 1983) ......................................................................................... 18

*Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC,*
    141 F. Supp. 3d 428 (M.D.N.C. 2015) ........................................................................... 18

## Rules

Federal Rule of Civil Procedure Rule 12(b)(1) ................................................................ 5

Federal Rule of Civil Procedure Rule 12(b)(2) ................................................................ 2

Federal Rule of Civil Procedure Rule 12(b)(6) ....................................................... 16, 17

## Statutes

iii

Title VII of the Civil Rights Act, 42 U.S.C. § 2000e ............................................ 13, 14, 15

Title IX of the Civil Rights Act, 20 U.S.C. § 1681 .................................................... passim

**United States Constitution**

U.S. Const. art. III, § 2 .............................................................................................. 5–11, 19

iv

# INTRODUCTION

Plaintiffs are current employees, dependents of current employees, or former employees of the University of North Carolina at Chapel Hill ("UNC"), North Carolina State University ("NCSU") and the University of North Carolina at Greensboro ("UNCG") (collectively, "University Defendants"). Plaintiffs enrolled themselves and their dependents in the North Carolina State Health Plan for Teachers and State Employees ("NCSHP"). The NCSHP now contains a sweeping exclusion that denies medically necessary coverage for gender-confirming health care, including counseling, hormone therapy, and surgical care (the "Exclusion"). As transgender individuals, Plaintiffs or their dependents need this medically necessary care. As employees of the University Defendants or their dependents, they are entitled to it.

In their Motion to Dismiss, University Defendants attempt to deflect the responsibility for the discrimination Plaintiffs are suffering on the basis of their sex. They first argue that Plaintiffs lack standing because University Defendants did not establish or implement the NCSHP—though they offer and administer it. University Defendants are mistaken. To have standing, Plaintiffs must merely show that their injuries are fairly traceable to University Defendants. Because they receive federal funds, University Defendants have an obligation to refrain from discriminating on the basis of sex in the terms of employment, including discrimination in the health insurance they offer and administer. And the NCSHP is the only employer-sponsored health insurance

1

that University Defendants offer. As purveyors of the NCSHP, University Defendants are causing and contributing to Plaintiffs' injuries.

University Defendants also argue that a favorable decision against them would not eliminate the Exclusion. Again, they miss the mark. So long as Plaintiffs would personally benefit from the court's intervention, they have standing to pursue their claim against the University Defendants—and an order from this Court prohibiting University Defendants from discriminating on the basis of sex would personally benefit Plaintiffs.

University Defendants next repackage their standing arguments to claim that Plaintiffs' Title IX Claim is not properly pled. They once again argue that they play no role in discriminating against Plaintiffs. Again, University Defendants *do* play a role in this discrimination—they offer a discriminatory health care plan. Further, they argue that Plaintiffs were given the same opportunity to enroll in the NCSHP as any other state employee—but offering everyone the same opportunity to enroll in a discriminatory health plan does not cure the discrimination.

Finally,[1] University Defendants argue that, in the alternative, the Court should stay this case indefinitely until the Supreme Court issues a ruling in *R.G. & G.R. Harris Funeral Homes, Inc. v. Equal Emp't Opportunity Comm'n*, No. 18-107 (U.S. petition for cert. filed Jul. 24, 2018). Yet the Fourth Circuit requires University Defendants to justify

---

[1] While University Defendants reference dismissal under Rule 12(b)(2) in their Statement of the Case, Dismissal Standards, and Conclusion sections, support for that argument is noticeably absent from their Argument. This Court should disregard University Defendants' unsubstantiated request for dismissal under Rule 12(b)(2).

2

a request for a stay with clear and convincing circumstances outweighing potential harm to Plaintiffs, and University Defendants utterly fail to provide any reasoning. Nor can they. Plaintiffs are suffering ongoing harm; if a stay is granted, Plaintiffs' harm will multiply.

University Defendants' Motion to Dismiss must be denied.

## STATEMENT OF FACTS

University Defendants are education programs or activities receiving federal financial assistance. Compl. ¶¶ 14–16. They offer the NCSHP to employees and their dependents. Mot. at 10. Plaintiffs are current employees, dependents of current employees, or former employees of the University Defendants, and, as a result, they all are or were enrollees in, and entitled to receive benefits from, the NCSHP. Compl. ¶¶ 1, 7–11. In particular, Plaintiffs Maxwell Kadel and Mike Bunting Jr. are current and former employees of UNC, respectively, and C.B. is Plaintiff Bunting's dependent. Compl. ¶¶ 7, 10. Plaintiffs Julia McKeown and Sam Silvaine are current or former employees of NCSU. Compl. ¶¶ 9, 11. Plaintiff Jason Fleck is an employee of UNCG and Connor Thonen-Fleck is his dependent. Compl. ¶ 8. Defendant Folwell, as Treasurer, has the power and duty to administer and operate the NCSHP and to set benefits. Compl. ¶ 12. Defendant Dee Jones, as Executive Administrator, is authorized to negotiate and execute contracts with third parties related to performance of her duties as Executive Administrator. Compl. ¶ 13.

3

Defendant NCSHP is a corporation that administers group health insurance to North Carolina state employees. Compl. ¶ 17. The NCSHP offers three Health Plans to state employees: (1) the 80/20 PPO Plan, (2) the 70/30 PPO Plan, and (3) the High Deductible Health Plan. Compl. ¶ 43. Blue Cross and Blue Shield of North Carolina serves as claims administrator and CVS Caremark administers pharmacy benefits; covered services include medically necessary pharmacy benefits, mental health benefits, and medical care, such as surgical benefits. Compl. ¶¶ 43–44.

In 2016–2017, the Treasurer's Office removed the Exclusion of gender-confirming health care for 2017 Health Plans. Compl. ¶ 50. In November 2016, the Treasurer's Office engaged a consulting firm to determine whether the NCSHP was likely a covered entity within the meaning of Section 1557 of the ACA. Compl. ¶ 51. The consulting firm concluded that it was a covered entity and therefore needed to comply with Section 1557's non-discrimination provisions. Compl. ¶ 51. Defendants Folwell and Jones, however, ensured "the 2018 and 2019 Health Plans categorically exclude coverage for all gender-confirming health care for the purpose of treating gender dysphoria." Compl. ¶ 55.

Because the only people who require treatment related to gender-confirming health care are transgender people, denying coverage for such medically necessary health care necessarily discriminates against transgender people. Compl. ¶ 46. Further, because the exclusion is only for gender-confirming health care, non-transgender enrollees receive medically necessary coverage that transgender enrollees, as a result of this

4

discrimination on the basis of their sex, do not.  Compl. ¶ 46.  This targeted

discrimination against transgender enrollees violates the Equal Protection Clause, Title

IX, and Section 1557.  Compl. ¶ 5.

## ARGUMENT

## I.    PLAINTIFFS SATISFY ARTICLE III STANDING REQUIREMENTS AGAINST UNIVERSITY DEFENDANTS

University Defendants do not dispute that Plaintiffs have been, and are being,

injured.  Instead, University Defendants urge this court to dismiss Plaintiffs' Title IX

claims for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1).  In

support, University Defendants advance two arguments.  Both lack merit.

First, University Defendants attempt to evade responsibility for the injury they are

causing by arguing that Plaintiffs' injuries are not caused by University Defendants and

cannot be redressed by University Defendants and that Plaintiffs therefore have not

satisfied Article III standing requirements.  Mot. at 6–13.  Second, University Defendants

argue that even if Plaintiffs Jason Fleck, Connor Thonen-Fleck, Mike Bunting Jr., and

C.B.'s injuries are traceable to them, these Plaintiffs lack statutory standing under Title

IX of the Civil Rights Act.  Mot. at 15–17.

University Defendants are wrong on both counts.

### A.    Plaintiffs have Article III standing because Plaintiffs' injuries are fairly traceable to University Defendants.

University Defendants argue that they had no role in establishing the NCSHP or

the Exclusion and thus have no causal relationship to Plaintiffs' injuries.  Mot. at 9–10.

5

University Defendants also argue that they have no legal authority to remove the challenged Exclusion. Mot. at 10. For Article III standing purposes, University Defendants' arguments misstate the standard for tracing causation and do not support a motion to dismiss for lack of standing. Plaintiffs Maxwell Kadel, Mike Bunting Jr., and C.B.'s injuries are fairly traceable to UNC. Plaintiffs Julia McKeown and Sam Silvaine's injuries are fairly traceable to NCSU. Plaintiffs Jason Fleck and Connor Thonen-Fleck's injuries are fairly traceable to UNCG.

University Defendants are or were the employers of Plaintiffs Maxwell Kadel, Mike Bunting Jr., Julia McKeown, Sam Silvaine, and Jason Fleck. As dependents of Jason Fleck and Mike Bunting Jr., respectively, Connor Thonen-Fleck and C.B. receive their health insurance through UNCG and UNC, respectively. As employers, University Defendants are responsible for the terms and conditions of employment, including employer-sponsored health insurance. *See, e.g., Ariz. Governing Comm. For Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073, 1089 (1983) (Marshall, J., concurring) (per curium) ("[E]mployers are ultimately responsible for the 'compensation, terms, conditions, [and] privileges of employment' provided to employees . . . ."). University Defendants receive federal funds and thus accept liability for discrimination on the basis of sex that arises in "any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Employment discrimination on the basis of sex is actionable under Title IX against educational institutions receiving federal funds. *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 512

6

(1982); *Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 205 (4th Cir. 1994).

"Health insurance and other fringe benefits are 'compensation, terms, conditions, or privileges of employment.'" *See Newport News Shipbuilding and Dry Dock Co. v. Equal Emp't Opportunity Comm'n*, 462 U.S. 669, 682 (1983). By offering transgender employees and dependents, like Plaintiffs, the discriminatory NCSHP as the only source of employer-sponsored health insurance, the University Defendants are directly causing, contributing to, and responsible for the harm flowing from the challenged Exclusion.

Article III's "case or controversy" requirement requires only that "there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant . . . ." *Bennett v. Spear*, 520 U.S. 154, 167 (1977). Here, as the employers offering and sponsoring the NCSHP, University Defendants are causally connected to the Exclusion and liable for resulting injuries. University Defendants' argument that they are not *directly* responsible for the Exclusion is irrelevant to the standing analysis, as "the 'fairly traceable' standard is 'not equivalent to a requirement of tort causation.'" *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 324 (4th Cir. 2002) (quoting *Nat. Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 n.7 (4th Cir. 1992)). *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is *not* a requirement of Article III standing, which requires *only* that the plaintiff's injury be fairly traceable to the defendant's conduct." (emphasis added)). By purveying the

7

discriminatory health plan to their employees as a benefit of employment, resulting in the inability of employees to access medically necessary health care, University Defendants have caused Plaintiffs harm—and that harm is fairly traceable to University Defendants.

Separately, the University Defendants argue they cannot offer a health insurance plan other than the NCSHP because they are required by state law to offer the NCSHP. Mot. at 10 ("all new employees **must** be given the opportunity to enroll"). This argument is spurious because the statute does not bar University Defendants from offering options additional to "the opportunity to enroll" in the NCSHP. Their co-defendants state the law correctly:

> North Carolina allows public employers to provide additional health coverage to employees at their own cost. Under N.C. Gen. Stat. §116-17.2, Universities can cover treatments not included under the Health Plan, such as treatment for gender dysphoria. See also N.C. Gen. Stat. §126.95 (state agencies); N.C. Gen. Stat. §115D-25.2 (community colleges); N.C. Gen. Stat. §115C-341.1 (school boards). The Health Plan provides baseline coverage; it does not prevent employers from offering additional benefits.

Mot. at 5.[2] Indeed, in the context of a deferred compensation plan, the Supreme Court has gone so far as to require an employer who "could not find a third party willing to treat

---

[2] Possibly anticipating their co-defendants' argument, the University Defendants also assert that the General Assembly has not provided express or implied authority for them to offer another health plan, citing two Attorney General Advisory Opinions, which advised the Public Officers and Employees Liability Insurance Commission and the North Carolina State Ports Authority to seek authority from the General Assembly to purchase separate excess liability insurance policies. Mot. at 10–11, Exs. A–B. Those state agencies are not similarly situated to University Defendants, however. University Defendants, which are research institutions with alternative, non-public funding sources, could have used those funds to purchase supplemental insurance, just as state universities in other states have done. For example, the Arizona state health plan does not offer

8

his employees on a nondiscriminatory basis" to "either supply the fringe benefit himself, without the assistance of a third party, or not provide it at all." *Ariz. Governing Comm.*, 463 U.S. at 1091. Or, University Defendants could have refused federal funding. The crux of University Defendants' argument is that they are powerless to do anything other than offer and administer the NCSHP. That is not the case. They chose not to exercise their other options. University Defendants' actions have violated Title IX.

**B.**   **Plaintiffs have Article III standing because University Defendants can, and should, redress Plaintiffs' injuries.**

University Defendants also argue that "Plaintiffs cannot show that University Defendants have the ability to provide them with the relief they seek" because University Defendants are required by state law to offer the NCSHP to employees and do not have the authority to offer any other plan.[3] Mot. at 11–12. Again, University Defendants' argument misses the mark.

This Court has already rejected this argument in *Carcaño v. McCrory*, 203 F. Supp. 3d 615, 630 (M.D.N.C. 2016). There, as here, a university defendant (UNC) argued in response to transgender plaintiffs' Title IX claim that it was "in a difficult

---

health coverage for domestic partners, so the University of Arizona purchases an alternative plan to provide such coverage. *See* https://hr.arizona.edu/employees-affiliates /benefits/insurance-benefits; https://hr.arizona.edu/employees-affiliates/benefits/ insurance-benefits/university-arizona-alternative-health-plans.

[3] University Defendants focus solely on their claimed inability to modify the NCSHP, but they ignore the fact that Plaintiffs also seek damages. While enjoining University Defendants from offering discriminatory health coverage will prevent future harm, awarding damages would remedy the harm Plaintiffs suffered in the past.

9

position . . . caught in the middle between state and federal law." *Carcaño*, 203 F. Supp. 3d at 630. "The university ha[d] repeatedly indicated that it will—indeed, it must— comply with State law." *Id.* at 631. This Court found nonetheless that the plaintiffs had presented "a justiciable case or controversy" and permitted the Title IX lawsuit against the university to proceed. *Id.* at 632.

Plaintiffs and University Defendants agree that "Plaintiffs must show that it is likely, and not merely speculative that a favorable decision will remedy the injury." Mot. at 11. *See also Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)). Plaintiffs and University Defendants also agree that Plaintiffs must show they would "personally would benefit in a tangible way from the court's intervention." *Id.* at 284 (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 162 (4th Cir. 2000) (en banc)). *See* Mot. at 11. What University Defendants omit, however, is that Plaintiffs' showing, that they would personally benefit from the court's intervention, is enough. *Sierra Club*, 899 F.3d at 284.

University Defendants claim that because they cannot set terms of the NCSHP, Plaintiffs lack standing as to them. They narrowly define the remedy as only eliminating the discriminatory Exclusion within the NCSHP. Redressability, however, concerns whether the court's intervention would benefit Plaintiffs in a personal and tangible way. *See id.* at 260. There is no dispute, here, that the requested intervention would benefit Plaintiffs. If the Court enjoins any group of Defendants (Folwell and Jones, the

10

University Defendants, or the NCSHP) from offering or administering discriminatory health care coverage, Plaintiffs will no longer suffer discrimination at the hands of those Defendants; and as discussed *supra* at 8, if enjoined from discriminating, University Defendants could offer additional health coverage beyond that required by the plan. Additionally, the availability of damages for the care Plaintiffs have been discriminatorily denied eliminates all doubt about whether Plaintiffs would personally benefit from the Court's intervention.

*Utah v. Evans* offers a helpful illustration of the rule. There, Utah challenged a method of supplementing census data which had the effect of awarding a seat in the United States House of Representatives to North Carolina instead of to Utah, and sought an injunction compelling census officials to amend the official census report. *Utah v. Evans*, 536 U.S. 452, 458–59 (2002). North Carolina intervened in the case and argued the statutes governing the census process made redress of Utah's harm legally impossible. *Id.* at 459. The Supreme Court held that because neither statute posed an absolute legal barrier to relief, it was likely that Utah's victory would bring about the ultimate relief Utah sought, albeit indirectly. *Id.* at 463–64 (finding Utah's harm redressable because "the practical consequence" of the Court's order "would amount to a significant increase in the likelihood that [Utah] would obtain relief that directly redresses the injury suffered.").

**C.** **Plaintiffs Jason Fleck, Connor Thonen-Fleck, Mike Bunting, and C.B. meet statutory standing requirements under Title IX.**

University Defendants argue that minor Plaintiffs Connor Thonen-Fleck and C.B. do not have statutory standing because "Title IX protections only extend to participants in an education program receiving federal financial assistance" and they were not themselves participants in University Defendants' educational programs. Mot. at 16. University Defendants argue that Plaintiffs Jason Fleck and Michael Bunting, Jr., the parents of Connor Thonen-Fleck and C.B., "lack standing to assert a Title IX claim on behalf of their children" because Title IX "forbids discrimination on the basis of an individual's *own* protected status." *Id.* In short, University Defendants believe that when it comes to discrimination in employer-sponsored health care affecting one of their employees' dependent children, Title IX offers no relief.

Not so. For a plaintiff to have statutory standing, she must "fall[] within the class of plaintiffs whom Congress has authorized to sue under" the relevant statute, which is known as the "zone of interest." *Lexmark Int'l, Inc.*, 572 U.S. at 128. This zone of interests test is not "especially demanding" and "forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that' Congress authorized the plaintiff to sue." *Id.* at 130 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012)).

Plaintiffs Connor Thonen-Fleck and C.B. have standing because they fall within the zone of interest of Title IX, which provides that "*[n]o person in the United States*

12

shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."  20 U.S.C.A. § 1681 (emphasis added).  Moreover, Title IX is interpreted broadly to achieve its anti-discrimination purposes.  *N. Haven Bd. of Ed.*, 456 U.S. at 521 ("There is no doubt that if we are to give Title IX the scope that its origins dictate, we must accord it a sweep as broad as its language.") (internal quotations omitted).  There is no dispute that Conner Thonon-Fleck and C.B. are persons in the United States, that they are entitled to the benefit of the State Health Plan by virtue of their parents' employment by the Universities, and that the Plan, as offered by the Universities, is subject to Title IX.  Title IX is not limited to the "participants" in an educational program—it also applies to individuals who would "benefit" from the program.  It is contrary to the text and the broad anti-discrimination purposes of Title IX to exclude the beneficiaries of the health plan.

As to Plaintiffs Jason Fleck and Michael Bunting, Jr., University Defendants argue that "Title VII, and by analogy Title IX, forbids discrimination on the basis of an individual's *own* protected status."  Mot. at 16 (quoting *Childress v. City of Richmond*, 134 F.3d 1205, 1206–07 (4th Cir. 1998) (en banc)).  They also cite *Tovar v. Essentia Health*, 857 F.3d 771, 774 (8th Cir. 2017) for the proposition that Plaintiffs Fleck and Bunting, Jr. cannot maintain a valid Title IX claim based on gender discrimination against their dependent children.  But in *Tovar*, the plaintiff filed a lawsuit based on Title VII, not Title IX, and the court relied on the specific language of the Title VII statute in

13

rendering its decision. *See id.* at 775–76 (finding Title VII prohibits discrimination "because of <u>such individual's</u> … sex" and because Tovar alleged she was discriminated against based on her son's sex, not her own, "[b]y its terms the protections of Title VII do not extend to such discrimination.").

The Supreme Court has already rejected this argument, because the text of Title IX differs critically from Title VII in that it is not limited to discrimination based on the plaintiff's *own* sex, but applies broadly to all discrimination "on the basis of sex." *Compare* Title VII ("It shall be an unlawful employment practice for an employment agency to … discriminate against, any individual because of *his . . . sex*") (emphasis added) *with* Title IX ("No person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance") (emphasis added). In *Jackson v. Birmingham Bd. of Educ.*, the Court held:

> Nor are we convinced by the Board's argument that . . . Jackson is not entitled to invoke [Title IX] because he is an "indirect victi[m]" of sex discrimination. Brief for Respondent 33. The statute is broadly worded; it does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint. If the statute provided instead that "no person shall be subjected to discrimination on the basis of *such individual's* sex," then we would agree with the Board. Cf. 42 U.S.C. § 2000e–2(a)(1) ("It shall be an unlawful employment practice for an employer ... to discriminate against any individual ... because of *such individual's* race, color, religion, sex, or national origin" (emphasis added)). However, Title IX contains no such limitation.

544 U.S. 167, 179 (2005). Here, Plaintiffs Fleck and Bunting, Jr. were denied their benefits on the basis of sex. The analysis does not change because they were not

14

themselves denied coverage. Title IX protects employees from discrimination, including in the terms of their fringe benefits. Because employees without transgender dependents are not denied coverage for those dependents on the basis of sex, Fleck and Bunting, Jr. are denied the same compensation that other employees receive, because of sex. The sex discrimination in the NCSHP thus directly injures Fleck and Bunting, Jr., in violation of Title IX.

Additionally, *Childress*, on which University Defendants also rely, is inapposite here. In *Childress*, white male plaintiffs who observed discrimination against their coworkers argued that this violated their own rights under Title VII. A more recent case, *Lindblad v. J&I Services, Inc.*, illustrates how *Childress* does not apply. *Lindblad v. J&I Servs., Inc.*, No. 4:18-CV-1336-RBH-TER, 2019 WL 653968 (D.S.C. Jan. 30, 2019). In *Lindblad*, a white female plaintiff was reprimanded for refusing to make hiring decisions on the basis of race. 2019 WL 653968 at *1. The court explained that the white male plaintiffs in *Childress* merely *observed* the discrimination whereas the plaintiff in *Lindblad* was penalized for refusing to *participate* in the discrimination. *Id.* at *4. In *Lindblad*, the court determined the plaintiff had statutory standing and noted that the "zone of interests" test confers statutory standing on any person with an interest arguably sought to be protected by the statute. *Id.* (citing *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011)). Unlike the white male coworkers in *Childress*, and similar to the plaintiff in *Lindblad*, Plaintiffs Jason Fleck and Michael Bunting, Jr. have statutory standing because they are not mere observers. They are being denied the benefits of their

15

employment due to sex discrimination and are suffering financial and emotional harm as a result.

## II. PLAINTIFFS' TITLE IX CLAIM IS PLED PROPERLY AND SUFFICIENTLY

University Defendants claim that Plaintiffs' Title IX claim should be dismissed pursuant to Rule 12(b)(6) because (1) the University Defendants claim no role in the discrimination against Plaintiffs, and (2) University Defendants gave Plaintiffs the same opportunity to enroll in the same health plan as any other state employee. Mot. at 13–15. Both arguments gloss over University Defendants' role in the ongoing discrimination against Plaintiffs.

University Defendants' first argument—that they are not "responsible for the alleged adverse action at issue"—merely repackages their standing argument, already addressed above. *See supra* at 5–15. University Defendants need not be directly responsible for the harm suffered by Plaintiffs—it is enough that they are responsible for making a discriminatory health care plan the sole option available to their employees and could (but have chosen not to) redress the injury this causes.

University Defendants' second argument—that they offer the same health plan to all their employees and therefore have not subjected Plaintiffs to discriminatory treatment—misses the mark. "Because the only people who require treatments related to gender-confirming health care are transgender people, denying coverage for such health care necessarily discriminates against transgender people." Compl. ¶ 46. Further,

16

because the exclusion applies specifically to gender-confirming health care, non-transgender enrollees receive coverage for treatments that, because of their sex, transgender enrollees do not. Compl. ¶ 46. University Defendants cannot evade accountability by offering each of their employees the same opportunity to enroll in a discriminatory health plan. *Cf. Shelley v. Kraemer*, 334 U.S. 1, 21–22 (1948) (rejecting the argument that racially restrictive covenants were not discriminatory because such covenants could be enforced against the privileged white majority). Their Rule 12(b)(6) defense must be denied.

## III. UNIVERSITY DEFENDANTS HAVE FAILED TO SUPPORT THEIR REQUEST FOR AN INDEFINITE STAY

University Defendants argue, in the alternative, that this Court should delay this case indefinitely[4] until the United States Supreme Court issues its ruling in *R.G. & G.R. Harris Funeral Homes, Inc. v. Equal Emp't Opportunity Comm'n*. Mot. at 17. University Defendants do not cite any law justifying their request that Plaintiffs' plea for redress of the harm they are suffering should be put on hold while other, unrelated litigants resolve their claims. Nor can they.

A party seeking a stay of proceedings:

> [M]ust make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in

---

[4] *R.G.* is not scheduled for oral argument before the Supreme Court until October 8, 2019. *See* https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/ html/public/18-107.html. As a practical matter, any decision would therefore not be issued until next year.

one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). *See also Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (citing *Landis*, and finding that "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative," and refusing appellants' request for stay); *Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC*, 141 F. Supp. 3d 428, 451–52 (M.D.N.C. 2015) (citing *Landis* and refusing request for stay); *Blue Moon Fiduciary, LLC v. Hutcheson*, No. 1:12CV78, 2012 WL 13034813, at *1–2 (M.D.N.C. July 9, 2012) (same); *Doe v. Bayer Corp.*, 367 F. Supp. 2d 904, 914 (M.D.N.C. 2005) (same); *John & Jane Doe 2 v. Ortho-Clinical Diagnostics, Inc.*, 335 F. Supp. 2d 614, 633 (M.D.N.C. 2004) (same); *Terry v. Chauffeurs, Teamsters & Helpers, Local 391*, 81 B.R. 394, 398 (M.D.N.C. 1987) (same).

University Defendants have not even attempted to show they will suffer any hardship or inequity if they are required to proceed with this case. In contrast, Plaintiffs have suffered, and are suffering, hardship as a result of University Defendants' role in denying them medically necessary care. It is unlikely that a decision will be issued until near the end of next year's term, in June 2020. Courts in this Circuit have recognized that a year-long stay imposes significant hardship on Plaintiffs. *See White v. Ally Fin. Inc.*, 969 F. Supp. 2d 451, 463 (S.D.W. Va. 2013) (denying motion to stay plaintiffs would "suffer a delay of potentially over a year while this case is stayed pending the Supreme Court's decision"); *Sehler v. Prospect Mortg., LLC*, No. 1:13CV473 JCC/TRJ,

2013 WL 5184216, at *3 (E.D. Va. Sept. 16, 2013) (denying stay because "[t]he delay anticipated here is four to six months," which "is a significant period of delay").

This is not one of the "rare circumstances" that justifies requiring a litigant to stand aside. University Defendants' request for a stay should be denied. [5]

## CONCLUSION

For the foregoing reasons, this Court should deny University Defendants' Motion to Dismiss.

* * *

---

[5] As part of their stay argument, University Defendants also state in passing that this case should be dismissed "in the absence of any Supreme Court or Fourth Circuit Court of Appeals decision recognizing a cause of action for gender identity discrimination pursuant to Titles IX and VII." Mot. at 18. It is a misapprehension of Article III of the Constitution to argue that federal courthouse doors are shut to all plaintiffs seeking relief under federal statutes until the Supreme Court rules on how the statutes apply to their specific circumstances. Rather—absent a reason for abstention, which University Defendants have not argued—district courts have "a virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).

19

Dated: August 5, 2019

Respectfully submitted,

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Telephone: 919-429-7386
Facsimile: 202-730-1301
arichardson@hwglaw.com

Deepika H. Ravi*
HARRIS, WILTSHIRE & GRANNIS LLP
919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Telephone: 202-730-1300
Facsimile: 202-730-1301
dravi@hwglaw.com

Noah E. Lewis*
TRANSGENDER LEGAL DEFENSE AND
    EDUCATION FUND, INC.
20 West 20th Street, Suite 705
New York, NY 10011
Telephone: 646-862-9396
Facsimile: 646-930-5654
nlewis@transgenderlegal.org

Meredith Taylor Brown*
Tara L. Borelli*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
730 Peachtree Street NE, Suite 640
Atlanta, GA 30318-1210
Telephone: 404-897-1880
Facsimile: 404-897-1884
tbrown@lambdalegal.org
tborelli@lambdalegal.org

Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: 212-809-8585
Facsimile: 212-809-0055
ogonzalez-pagan@lambdalegal.org

*Counsel for Plaintiffs*

*Appearing by special appearance pursuant to L.R. 83.1(d)

20

Dated: August 5, 2019

Respectfully submitted,

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Telephone: 919-429-7386
Facsimile: 202-730-1301
arichardson@hwglaw.com

Deepika H. Ravi*
HARRIS, WILTSHIRE & GRANNIS LLP
919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Telephone: 202-730-1300
Facsimile: 202-730-1301
dravi@hwglaw.com

Noah E. Lewis*
TRANSGENDER LEGAL DEFENSE AND
    EDUCATION FUND, INC.
20 West 20th Street, Suite 705
New York, NY 10011
Telephone: 646-862-9396
Facsimile: 646-930-5654
nlewis@transgenderlegal.org

Meredith Taylor Brown*
Tara L. Borelli*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
730 Peachtree Street NE, Suite 640
Atlanta, GA 30318-1210
Telephone: 404-897-1880
Facsimile: 404-897-1884
tbrown@lambdalegal.org
tborelli@lambdalegal.org

Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: 212-809-8585
Facsimile: 212-809-0055
ogonzalez-pagan@lambdalegal.org

*Counsel for Plaintiffs*

*Appearing by special appearance pursuant to L.R. 83.1(d)

20

Case 1:19-cv-00272-LCB-LPA   Document 35   Filed 08/05/19   Page 25 of 27

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing brief is in compliance with Local Rule 7.3(d)(1) because the body of this brief, including headings and footnotes, does not exceed 6,250 words as indicated by Microsoft Word, the program used to prepare this document.

Dated: August 5, 2019

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Telephone: 919-429-7386
Facsimile: 202-730-1301
arichardson@hwglaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered users.

Dated: August 5, 2019

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Telephone: 919-429-7386
Facsimile: 202-730-1301
arichardson@hwglaw.com

*Counsel for Plaintiffs*