IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:19-cv-00272

| | |
|---|---|
| MAXWELL KADEL; JASON FLECK; CONNOR THONEN-FLECK, by his next friends and parents, JASON FLECK and ALEXIS THONEN; JULIA MCKEOWN; MICHAL D. BUNTING, JR.; C.B., by his next friends and parents, MICHAEL D. BUNTING, JR. and SHELLEY K. BUNTING; and SAM SILVAINE, <br><br>    Plaintiffs, <br><br>    v. <br><br>DALE FOLWELL, in his official capacity as State Treasurer of North Carolina; DEE JONES, in her official capacity as Executive Administrator of the North Carolina State Health Plan for Teachers and State Employees; UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL; NORTH CAROLINA STATE UNIVERSITY; UNIVERSITY OF NORTH CAROLINA AT GREENSBORO; and NORTH CAROLINA STATE HEALTH PLAN FOR TEACHERS AND STATE EMPLOYEES, <br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY TREASURER DALE FOLWELL, EXECUTIVE ADMINISTRATOR DEE JONES, AND THE NORTH CAROLINA STATE HEALTH PLAN FOR TEACHERS AND STATE EMPLOYEES**

1

# TABLE OF CONTENTS

I. PLAINTIFFS' COMPLAINT DOES NOT CONTAIN SUFFICIENT ALLEGATIONS OF DISCRIMINATORY INTENT TO STATE A CLAIM FOR RELIEF UNDER THE EQUAL PROTECTION CLAUSE ............................................. 2

    A. The coverage exclusion is not a discriminatory classification............................. 3

    B. Plaintiffs have not alleged either intentional discriminatory application or that adoption of the coverage exclusion was motivated by discriminatory animus. ........................................................................................................ 6

    C. Cost is a rational basis for insurance coverage decisions. ...................................... 8

II. NORTH CAROLINA'S SOVEREIGN IMMUNITY PRECLUDES JURISDICTION OVER PLAINTIFFS' AFFORDABLE CARE ACT CLAIM ............... 9

III. THE UNIVERSITY DEFENDANTS MISSTATE THEIR AUTHORITY TO OFFER ADDITIONAL BENEFIT COVERAGE TO PLAINTIFFS .............................. 12

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Rumsfeld*, 464 F.3d 456 (4th Cir. 2006) ................................................................... 5

*Agostini v. Felton*, 521 U.S. 203 (1997) .................................................................................... 5

*Armour v. City of Indianapolis*, 566 U.S. 673 (2012) ................................................................ 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 3

*Atascadero State Hospital v. Scanlon*, 473 U.S. 926 (1985) .................................................... 10

*Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71 (1988) ....................................................... 8

*Benning v. Georgia*, 391 F.3d 1299 (11th Cir. 2004) .............................................................. 11

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) .......................................  5, 6

*Camreta v. Greene*, 563 U.S. 692 (2011) ................................................................................ 11

*F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307 (1993) .............................................................. 8

*Flaming v. Univ. of Texas Med. Branch*, No. CV H-15-2222, 2016 WL 727941, (S.D. Tex. Feb. 24, 2016) ................................................................................................................................ 3

*Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660 (N.D. Tex. Dec. 31, 2016) .................... 7

*Gann v. Schramm*, 606 F. Supp. 1442 (D. Del. 1985) ............................................................... 3

*Geduldig v. Aiello,* 417 U.S. 484 (1974) ........................................................................... 5, 6, 9

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008) ............................................................... 2

*Graham v. Richardson*, 403 U.S. 365 (1971) ............................................................................ 8

*Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62 (4th Cir. 2016) ................................ 2, 5

*Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000) ..................................................................... 9

*Lane v. Pena*, 518 U.S. 187 (1996) .......................................................................................... 10

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ....................................................... 8

*McMain v. Peters*, No. 2:13-CV-01632-AA, 2018 WL 3732660 (D. Or. Aug. 2, 2018) ............ 4

*Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250 (1974) ................................................................ 8

*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) .............................................. 11, 12

*Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256 (1979) .............................................................. 3

*Plyler v. Doe*, 457 U.S. 202 (1982) ............................................................................................ 9

*Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) .................................................................. 2

*R.G. & G.R. Harris Funeral Homes, Inc. v. E.E.O.C.*, 139 S. Ct. 1599 (2019) .......................... 3

*Ricci v. DeStefano*, 557 U.S. 557 (2009) ................................................................................... 8

*Shapiro v. Thompson*, 394 U.S. 618 (1969) .................................................................................. 9

*Snowden v. Hughes*, 321 U.S. 1 (1944) ....................................................................................... 6

*Sossamon v. Texas*, 563 U.S. 277 (2011) .................................................................................. 10

*St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003 (7th Cir. 2019) ....... 8

*Students v. U.S. Dep't of Educ.*, No. 16-CV-4945, 2016 WL 6134121 (N.D. Ill Oct. 18, 2016) . 11

*Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810 (4th Cir. 1995) ........................................ 6, 7

*U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131 (4th Cir. 2014). ....... 2

*W. Virginia Dep't of Health & Human Res. v. Sebelius*, 649 F.3d 217 (4th Cir. 2011) ................ 10

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017) ......... 4

*Williams v. Hansen*, 326 F.3d 569 (4th Cir. 2003) ........................................................................ 3

## Statutes and Regulations

42 U.S.C. § 2000d-7 .................................................................................................................. 9

## I. PLAINTIFFS' COMPLAINT DOES NOT CONTAIN SUFFICIENT ALLEGATIONS OF DISCRIMINATORY INTENT TO STATE A CLAIM FOR RELIEF UNDER THE EQUAL PROTECTION CLAUSE.

A Motion to Dismiss tests whether Plaintiffs' complaint states "a claim to relief that is plausible on its face." *U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014). The Complaint is especially important here because Plaintiffs nowhere allege a violation of Title VII of the Civil Rights Act, although their Response repeatedly cites Title VII cases. *E.g.*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). By citing cases from this related, but distinct, area of law, Plaintiffs improperly shift the burden of production, if not the burden of proof, onto the Plan Defendants to justify the coverage exclusion. But it is Plaintiffs who must, in their Complaint, "negate every conceivable basis which might support" the decision not to spend additional taxpayer funds for specific medical treatments, in this case for gender dysphoria. *Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008).

To allege an Equal Protection violation, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated" and that this "unequal treatment was the result of intentional or purposeful discrimination." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 82 (4th Cir. 2016). Such intentional discrimination can be shown by (1) a law or policy that "**expressly classifies**" on the basis of a protected category, (2) "a facially neutral law or policy that has been applied in an intentionally discriminatory manner," or (3) "a facially neutral statute or policy that is neutrally applied" but which "nonetheless has an adverse effect on a protected group" and

2

"**the adoption of the statute or policy was motivated by discriminatory animus.**" *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003) (emphasis added).

The Complaint must include "well-pleaded facts" that "permit the court to infer more than the possibility," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), that the coverage exclusion exists partially "because of" its adverse effects upon transgender individuals, *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Plaintiffs' Complaint lacks such allegations, so it should be dismissed.[1]

### A. The coverage exclusion is not a discriminatory classification.

As with other health insurers, the Plan makes its coverage decisions based on medical diagnoses, not a beneficiary's gender. "[A] function of medical diagnosis is to determine in what ways individuals are *not similarly situated* so that they can be treated accordingly." *Gann v. Schramm*, 606 F. Supp. 1442, 1447 (D. Del. 1985). Providing different medical treatment for different medical diagnoses is not discriminatory.

This remains true even when different diagnoses might have the same prescribed treatment. "A diagnosis of degenerative disc disease with chronic low back pain is different in fact from a diagnosis of cancer" though both patients can benefit from the same pain medicine. *Flaming v. Univ. of Texas Med. Branch*, No. CV H-15-2222, 2016 WL 727941, at *9 (S.D. Tex. Feb. 24, 2016). An individual with testicular cancer may need testosterone injections, but that person is not 'similarly situated' to someone with gender dysphoria. *See*

---

[1] Even without a Title VII claim, this Court should pause further proceedings and await the Supreme Court's decision in *R.G. & G.R. Harris Funeral Homes, Inc. v. E.E.O.C.*, 139 S. Ct. 1599 (2019). The Supreme Court will hear argument three weeks after briefing is complete on Defendants' motions to dismiss, and the Court's reasoning will be instructive. The Plan Defendants have proposed this course of action to the other parties since the grant of certiorari in April without success.

*McMain v. Peters*, No. 2:13-CV-01632-AA, 2018 WL 3732660, at *3–4 (D. Or. Aug. 2, 2018), *aff'd,* No. 18-35766, 2019 WL 3321883 (9th Cir. July 24, 2019) (no violation of Equal Protection of inmate seeking testosterone injections even though inmates with similar symptoms *and* a diagnosis of Klinefelter Syndrome receive injections). Gender dysphoria is not a covered illness under the Plan, so the Plan does not provide Plaintiffs' desired medical treatment. Conversely, if Plaintiffs have appendicitis, the Plan will pay for an appendectomy. In neither case, does the Plan make a coverage decision based on Plaintiffs' gender or gender identity.[2]

Because the coverage exclusion relies upon medical diagnoses, not gender, the cases involving transgender bathroom usage are inapposite. In those cases, officials segregated bathrooms *based on gender*. As the Seventh Circuit noted, this makes the bathroom policy inherently a sex-classification because the "policy cannot be stated without referencing sex, as the School District decides which bathroom a student may use **based upon the sex listed on the student's birth certificate**." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017) (emphasis added); Response at 4 (partial quote from *Whitaker*).

---

[2] Plaintiffs cannot avoid dismissal by re-characterizing the Complaint. The Complaint does not allege that the Plan denies transgender individuals "coverage for these medically necessary treatments" while "[t]hese same treatments are covered for non-transgender enrollees." Response at 2. Rather, the Complaint asserts that "[o]ther NCSHP enrollees who are not transgender do not face a categorical exclusion barring coverage for health care that is medically necessary for them based on their sex and receive coverage for the same care that is denied to transgender enrollees." Complaint ¶2. This latter statement represents the kind of "naked assertions devoid of further factual enhancement" that cannot withstand a motion to dismiss. *Oberg*, 745 F.3d at 136.

The coverage exclusion's "vocabulary is not sex specific," so it is not a facial classification.[3] *Adkins v. Rumsfeld*, 464 F.3d 456, 468 (4th Cir. 2006). *Geduldig* therefore controls. This Court cannot—as Plaintiffs urge—invoke other Supreme Court decisions and "conclude [these] more recent cases have, by implication, overruled an earlier precedent." *Agostini v. Felton*, 521 U.S. 203, 237 (1997). Only the Supreme Court has "the prerogative of overruling its own decisions," *id.*, and *Geduldig* squarely rejected Plaintiffs' argument. Like Plaintiffs, Justice Brennan's dissent argued that whenever "the State employs a legislative classification that distinguishes between beneficiaries solely by reference to gender-linked disability risks, the Court is not … free to sustain the statute on the ground that it rationally promotes legitimate governmental interests." *Geduldig v. Aiello*, 417 U.S. 484, 503 (1974) (Brennan, J., dissenting). The Court held otherwise: "[w]hile it is true that only women can become pregnant it does not follow that every legislative classification concerning pregnancy is a sex-based classification," so officials can exclude coverage "on any reasonable basis" as with "any other physical condition." *Id.* at 497 n.20.

Moreover, one of Plaintiffs' cited cases, *Bray v. Alexandria Women's Health Clinic,* re-affirms *Geduldig*. *Bray* held that opposition to abortion—a policy affecting only women—does not "*ipso facto* [] discriminate invidiously against women as a class." 506 U.S. 263, 271 (1993). Individuals with gender dysphoria are a subset of transgender

---

[3] While the exclusion uses the word "sex" once—excluding coverage of "sex changes"—the use of that word is not enough to require heightened scrutiny. The coverage exclusion must treat one person "differently from others with whom he is similarly situated" on the basis of gender. *Kerr*, 824 F.3d at 82. *See Adkins*, 464 F.3d at 468 (Statute that defines "spouse" as "husband or wife" is facially gender-neutral.).

5

individuals; they are not a protected class of their own. A "class cannot be defined simply as the group of victims of the tortious action." *Id.* at 269. ("women seeking abortion" not protected class).[4]

Indeed, *Geduldig*'s logic is more important now than ever before, when genetic medicine promises cures tied to the quintessential immutable characteristic: the human genome. The Equal Protection Clause does not require medical treatment without regard to cost whenever an illness—whether genetic hemophilia or gender dysphoria—is linked to an immutable characteristic and is more common for individuals of one race, religion, ethnicity, or other protected class than the general population.

### B. Plaintiffs have not alleged either intentional discriminatory application or that adoption of the coverage exclusion was motivated by discriminatory animus.

"If a classification is not explicitly stated, the plaintiff bears the initial burden of proving that a classification was nonetheless intentionally utilized." *Sylvia Dev. Corp. v. Calvert Cty., Md.*, 48 F.3d 810, 819 (4th Cir. 1995) (citing *Snowden v. Hughes,* 321 U.S. 1, 8 (1944)).

As with other allegations, Plaintiffs must plead facts that show discrimination, not just "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Fourth Circuit caselaw identifies what Plaintiffs must allege:

> Several factors have been recognized as probative of whether a decision making body was motivated by a discriminatory intent, including: (1) evidence of a "consistent pattern" of actions by the decision making body

---

[4] *Bray* acknowledged that "[s]ome activities may be such an irrational object of disfavor that, if they are targeted, and if they also happen to be engaged in exclusively or predominantly by a particular class of people, an intent to disfavor that class can readily be presumed," 506 U.S. at 270, but this simply restates the Court's longstanding law on pretext, and the Complaint makes no such allegations.

6

> disparately impacting members of a particular class of persons; (2) historical background of the decision, which may take into account any history of discrimination by the decision making body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4) contemporary statements by decisionmakers on the record or in minutes of their meetings.

*Sylvia Dev. Corp.*, 48 F.3d at 819.

Plaintiffs allege none of these facts; the Complaint alleges only what the coverage exclusion explicitly provides: the Health Plan does not cover gender transformation. Indeed, the Complaint demonstrates that the coverage exclusion is a longstanding policy that predates Plaintiffs' new medical research. *Compare* Complaint ¶¶27,30,41 (citing information dated from 2011-14) *with id.* ¶45 ("At all relevant times, the Health Plans have contained a categorical exclusion of coverage for transition-related health care, with the exception of the 2017 plan year."). Nor does the Complaint allege that the 2017 Plan year changes, or their expiration, reflect discriminatory intent. The change was "to comply with federal law and federal regulation," Complaint ¶¶50,53, and a federal court enjoined the applicable regulation only a few weeks after the Health Plan acted, *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660 (N.D. Tex. Dec. 31, 2016). Finally, Plaintiffs cite only one statement by the Treasurer, and that statement provides a gender-neutral, legitimate basis for government decision-making: cost. *See* Mem. in Support of Mtn. to Dismiss at 14-15.[5]

---

[5] Again, Plaintiffs re-characterize the Complaint. The Response states the Treasurer and Administrator Jones "ensured that [the exclusion] was reinstated in 2018" and "negotiated and approved the Exclusion in the 2018 and 2019 contracts." Response at 15. This is incorrect. In 2016, the prior Treasurer and the Board removed the coverage exclusion for the 2017 Plan year only. Complaint ¶50. Reinstatement occurred by operation of law, which is why the Complaint says only that Plan Defendants "failed to take action to block the reinstatement" of the coverage exclusion. Complaint ¶53.

### C. Cost is a rational basis for insurance coverage decisions.

Plaintiffs' citation to Title VII cases improperly shifts the burden of production to the Plan Defendants. This is because, under Title VII, a plaintiff need not allege an improper motive to survive a motion to dismiss. Unlike here, Title VII prohibits "practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Thus, in Title VII cases, the defendant and not the plaintiff must "articulate some legitimate, nondiscriminatory reason" to justify the disproportionately adverse effect. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Because this is an Equal Protection challenge, not a Title VII case, Defendants do not need to provide *any* justification for the coverage exclusion. Rather, Plaintiffs' Complaint must demonstrate that no rational person could imagine "any reasonably conceivable state of facts that could provide a rational basis" for the policy. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

"[C]ost savings may serve as a rational basis for classifications." *St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1012 (7th Cir. 2019) (citing *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 84 (1988)). The Supreme Court has even upheld the "interest[] in reducing … administrative costs" as sufficient. *Armour v. City of Indianapolis*, 566 U.S. 673, 684 (2012).

Plaintiffs cannot overcome their burden by citing cases from the Supreme Court's fundamental rights jurisprudence, which are limited to specific areas of law. *See* Response at 11 (citing *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250 (1974) (right of interstate travel);

8

*Graham v. Richardson*, 403 U.S. 365 (1971) (immigration classifications by States); *Shapiro v. Thompson*, 394 U.S. 618 (1969) (right to travel)). In those cases, the Court went beyond rational basis review. *E.g.*, *Plyler v. Doe*, 457 U.S. 202, 239 (1982) (Powell, J., concurring) ("[T]he Court properly may require that the State's interests be substantial and that the means bear a 'fair and substantial relation' to these interests.").

At current spending rates, the Plan estimates that it will run out of money by 2023. "NC State Health Plan Announces Network for 2020," Press Release, N.C. Department of the State Treasurer (Aug. 8, 2019) *available at* https://bit.ly/2OPuyak. North Carolina has legitimate interests in "maintaining the self-supporting nature of its insurance program," "distributing the available resources in such a way as to keep benefit payments at an adequate level," and "maintaining the contribution rate at a level that will not unduly burden participating employees." *Geduldig*, 417 U.S. at 496. Decisions not to expand coverage are part of this effort.

## II. NORTH CAROLINA'S SOVEREIGN IMMUNITY PRECLUDES JURISDICTION OVER PLAINTIFFS' AFFORDABLE CARE ACT CLAIM.

"[T]he Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). Catch-all language in a provision enacted in 1986 does not supply the waiver of sovereign immunity needed to enforce § 1557.

First, nothing in 42 U.S.C. § 2000d-7 indicates it was intended to apply to future statutes. Section 2000d-7 was not a standalone piece of legislation entitled the "Civil Rights Remedies Restoration Act." The provision was one of the "Technical and Miscellaneous

9

Provisions" attached to the Reauthorization of the Rehabilitation Act of 1973 during Senate consideration. 100 Stat. 1807, 1845 (1986). The Senate Committee report says the provision's intent is to reverse the Supreme Court's decision in *Atascadero State Hospital v. Scanlon*, 473 U.S. 926 (1985), which held sovereign immunity barred suits against States to enforce the Rehabilitation Act. S.Rep.No. 99-388 at 27 (1986). The Committee report notes that similar language to the Rehabilitation Act exists in Title VI, Title IX, and the Age Discrimination Act of 1973. *Id.* The Committee then says: "Other federal statutes which prohibit discrimination by recipients of Federal financial as[s]istance are also included." *Id.* Nothing indicates Congress clearly intended this waiver to apply to statutes enacted *in the future*. "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Nor has the Fourth Circuit rejected the need for a clear statement for a waiver of sovereign immunity. In *W. Virginia Dep't of Health & Human Res. v. Sebelius,* West Virginia argued that the federal government could not deduct an overpayment from the State's Medicaid allocation because the deduction was not authorized in statute. 649 F.3d 217 (4th Cir. 2011). The court was not considering a waiver of sovereign immunity when it held that "given the ever-increasing complexity of modern legislation, Congress need not spell out every condition with flawless precision for a provision to be enforceable." *Id.* at 223. For a waiver of sovereign immunity, flawless precision is required: demand for a waiver "must be unequivocally expressed in the text of the relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011).

10

Plaintiffs' other cases, again involving bathroom facilities in educational institutions, reinforce the lack of a clear demand for waiver. Those cases held that the meaning of "sex" in Title IX was ambiguous and could therefore be interpreted by federal regulation.[6] *Students v. U.S. Dep't of Educ.*, No. 16-CV-4945, 2016 WL 6134121, at *18 (N.D. Ill. Oct. 18, 2016) (holding "sex" is ambiguous in Title IX and, therefore, permits interpretation by federal agency). Plaintiffs' theories of discrimination cannot be upheld because the underlying statute is "ambiguous" for purposes of interpretative deference and then become "clearly expressed" for purposes of a waiver of sovereign immunity. Section 1557 does not provide the "clear and actionable prohibition of discrimination" needed to enforce Plaintiffs' claims against the States. *Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir. 2004).

Finally, unlike the underlying provisions identified in §1557 of the ACA, there is no indication in §1557 that *any* federal funds will be withheld for a failure to waive sovereign immunity. Plaintiffs may argue that this means that *all* federal funding connected to health care will be withheld, but the Supreme Court has already concluded that such threats, when they include all of the Medicaid program, represent "economic dragooning that leaves the States with no real option" but to acquiesce. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 582 (2012). Such conditions are unconstitutionally coercive under the Spending Clause. Though "Congress' power to legislate under the spending power is

---

[6] The Fourth Circuit's decision in *Grimm* has no effect here. Lower courts are not free to defy the Supreme Court, which has vacated that opinion. Vacatur "rightly strips the decision below of its binding effect" and "clears the path for future relitigation." *Camreta v. Greene*, 563 U.S. 692, 713 (2011).

11

broad, it does not include surprising participating States with post-acceptance or 'retroactive' conditions." *Id.* at 584.

### III. THE UNIVERSITY DEFENDANTS MISSTATE THEIR AUTHORITY TO OFFER ADDITIONAL BENEFIT COVERAGE TO PLAINTIFFS.

Plan Defendants agree that University Defendants cannot **replace** the State Health Plan with a different comprehensive health insurance program. University Defendants Mem. in Support of Mtn. to Dismiss at 10. This is not to say, however, that the University Defendants cannot **supplement** the Plan's coverage. They do so now. University Defendants provide their employees the option to purchase a limited insurance policy for (1) Cancer and twenty-nine other specified diseases, such as muscular dystrophy, and (2) the additional costs of a critical illness.[7] University Defendants could provide coverage for gender dysphoria treatment if they chose to do so.

---

[7] These plans are described at https://unc.live/2KJC4yg (UNC-Chapel Hill); https://bit.ly/2YXywll (UNC-Greensboro); and https://bit.ly/2MlvOA1 (NCSU).

12

Dated this 19th day of August, 2019.

Respectfully submitted by,

| | |
|---|---|
| */s/ Sam M. Hayes* | */s/ John G. Knepper* |
| Sam M. Hayes | John G. Knepper |
| N.C. Bar. No. 25552 | Wyo. Bar No. 7-4608 |
| General Counsel | LAW OFFICE OF JOHN G. KNEPPER, LLC |
| North Carolina Department of | Post Office Box 1512 |
|    the State Treasurer | Cheyenne, WY 82003-1512 |
| 3200 Atlantic Avenue | Telephone: (307) 632-2842 |
| Raleigh, North Carolina 27604 | Facsimile: (307) 432-0310 |
| Telephone: (919) 814-4000 | John@KnepperLLC.com |
| Sam.Hayes@nctreasurer.com | |

*/s/ Kevin G. Williams*
Kevin G. Williams
N. C. Bar No. 25760

*/s/ Mark A. Jones*
Mark A. Jones
N.C. Bar No. 36215
BELL, DAVIS & PITT, P.A.
100 North Cherry St., Suite 600
Winston-Salem, NC 27120-1029
Telephone: (336) 722-3700
Facsimile: (336) 722-8153
kwilliams@belldavispitt.com
mjones@belldavispitt.com

13

Case 1:19-cv-00272-LCB-LPA   Document 37   Filed 08/19/19   Page 16 of 18

**CERTIFICATE OF WORD COUNT**

Pursuant to L.R. 7.3(d)(1), the undersigned certifies that this Brief complies with the word limit contained in L.R. 7.3(d)(1), using the word count feature of the word processing software in making this certification.

*/s/ John G. Knepper*
John G. Knepper
Wyo. Bar No. 7-4608
LAW OFFICE OF JOHN G. KNEPPER, LLC
Post Office Box 1512
Cheyenne, WY 82003-1512
Telephone: (307) 632-2842
Facsimile: (307) 432-0310
John@KnepperLLC.com

*/s/ Kevin G. Williams*
Kevin G. Williams
N. C. Bar No. 25760

*/s/ Mark A. Jones*
Mark A. Jones
N.C. Bar No. 36215
BELL, DAVIS & PITT, P.A.
100 North Cherry St., Suite 600
Winston-Salem, NC 27120-1029
Telephone: (336) 722-3700
Facsimile: (336) 722-8153
kwilliams@belldavispitt.com
mjones@belldavispitt.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

This the 19th day of August, 2019.

*/s/ Kevin G. Williams*
