IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:19-CV-272-LCB-LPA

| | |
|---|---|
| MAXWELL KADEL, JASON FLECK, CONNOR THONEN-FLECK, by his next friends and parents, JASON FLECK AND ALEXIS THONEN, JULIA MCKEOWN, MICHAEL D. BUNTING, JR., C.B., by his next friends and parents, MICHAEL D. BUNTING, JR. and SHELLEY K. BUNTING, and SAM SILVAINE, <br><br> Plaintiffs, <br><br> v. <br><br> DALE FOLWELL, in his official capacity as State Treasurer of North Carolina, DEE JONES, in her official capacity as Executive Administrator of the North Carolina State Health Plan for Teachers and State Employees, THE UNIVERSITY OF NORTH CAROLINA AT CHAPEL HILL, NORTH CAROLINA STATE UNIVERSITY, UNIVERSITY OF NORTH CAROLINA AT GREENSBORO, and NORTH CAROLINA STATE HEALTH PLAN FOR TEACHERS AND STATE EMPLOYEES, <br><br> Defendants. | **REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO UNIVERSITY DEFENDANTS' MOTION TO DISMISS** |

Defendants The University of North Carolina at Chapel Hill, North Carolina State University and University of North Carolina at Greensboro (collectively "University Defendants"), by and through counsel, submit University Defendants' Reply to Plaintiffs' Response in Opposition to University Defendants' Motion to Dismiss.

1

## I. PLAINTIFFS FAILED TO MEET STANDING REQUIREMENTS.

Plaintiffs insist that they have Article III standing to sue the University Defendants, contending that "[b]y offering transgender employees and dependents, like Plaintiffs, the discriminatory NCHSP as the only source of employer-sponsored health insurance, the University Defendants are directly causing, contributing to, and responsible for the harm flowing from the challenged Exclusion." (Pls. Br. p. 7)

This argument ignores plain and unambiguous North Carolina law to the contrary. As explained in the University Defendants' opening brief, the State of North Carolina, not the University Defendants, established and maintains the State Health Plan ("the Plan") for State employees. N.C. Gen. Stat. § 135-48.2(a) (2017). The State Treasurer, Executive Administrator, and the State Health Plan Board of Trustees – not the University Defendants – oversee and operate the Plan and determine what health services will be covered. N.C. Gen. Stat. §§ 135-48.2(a), 135-48.22, and 135.23 (2017). The Plan – not the University Defendants – exercises the powers and privileges of a corporation to administer the Plan, which is required to be "comprehensive in coverage." N.C. Gen. Stat. § 135-48.2(a). At the direction and oversight of the Executive Administrator and the Plan's Board of Trustees, the Plan pays benefits and administrative costs from health benefit trusts established by the State. N.C. Gen. Stat. § 135-48.5(a) (2017). The General Assembly – not the University Defendants – decides on and appropriates in each biennial budget and appropriations act the contributions to be made to the Plan for all State employees,

including employees of the University Defendants. Sections 35.19(d) and 35.19(e) of the Current Operations Appropriations Act of 2017, Session Law 2017-57.

Plaintiffs ignore the fact that the Plan participants employed by the University Defendants are eligible to participate in the Plan because North Carolina law classifies them as State employees pursuant to Article 1 of Section 126 and Article 3B of Section 135. *See* N.C. Gen. Stat. § 135-48.42(a) (2017) (stating that "new employees must be given the opportunity to enroll or decline enrollment for themselves and their dependents within 30 days from the date of employment or from first becoming eligible on a partially contributory or other contributory basis"). Like other State institutions and agencies, the University Defendants have no role in creating, establishing, maintaining, or supervising the Plan. They do not identify and select the health plan to offer. Because eligibility for the Plan participation results entirely from status as a State employee, nothing in Chapter 135 authorizes University Defendants or any other State agency to cease participation in the Plan, alter the benefits coverage offered by the Plan, or direct the funds appropriated to the Plan by the General Assembly to another health benefits arrangement.[1]

None of the cases cited by Plaintiffs advances their argument, because in each case cited, unlike the University Defendants, the defendants had a choice about the challenged

---

[1] In contrast to State universities and agencies, local government units may decide whether or not to participate in the State Health Plan and offer the coverage to their employees. *See* N.C. Gen. Stat. § 135-48.47(a) (2017). No such option is provided to the University Defendants or other State agencies, because participation in the State Health Plan is determined by status as a State employee, not by any decision or action of the State employing unit.

3

coverage. In *Ariz. Governing Comm. For Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073 (1983), the employer-petitioners administered the deferred compensation plan for the respondent employees, including inviting private companies to submit bids, and the State selected several companies to participate in its deferred compensation plan. *Id.* at 1076. Thus, the employer had a choice as to which companies administered the deferred compensation plan. *Id.* In *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669 (1983), the petitioner-employer chose to amend its health insurance plan to provide benefits to some employees but not others. *Id.* at 670-71.

Here, the University Defendants do not have a choice about the terms and conditions of the administration of the Plan. The North Carolina General Assembly specifically and solely authorized the State Treasurer, Executive Administrator, and the Board of Trustees of the Plan to administer the Plan, and offered it to the eligible State employees associated with the University Defendants. *See* N.C. Gen. Stat. § 135-48.2(a) (2017); N.C. Gen. Stat. § 135-48.42(a) (2017). The injury that Plaintiffs allege is incurred, if at all, by the terms of the Plan, and the University Defendants have no role in setting those terms and no ability to alter those terms. Thus, even if Plaintiffs can establish an injury, that injury cannot be traced to the University Defendants.

Plaintiffs' reference to *Friends for Ferrell Parkway v. Stasko*, 282 F.3d 315 (4th Cir. 2002) actually supports the University Defendants' position. In that case, the court held that because another third party had decision-making power over the issue between the parties, the plaintiff lacked standing to sue. *Id.* at 320-324. Here, as in *Friends for*

4

*Ferrell Parkway*, third parties (the State Treasurer, Executive Administrator, and the Board of Trustees of the Plan) have the sole decision-making power over the Plan.

Plaintiffs assert that the University Defendants could correct any alleged unlawful discrimination in coverage caused by the Plan by offering "options additional" to the Plan through a cafeteria plan under Section 125 of the Internal Revenue Code. *See* 26 U.S.C. § 125 (2012). Yet, employers are never required to offer cafeteria plans. If an employer voluntarily decides to offer such a plan and meets the qualification requirements of the Internal Revenue Code, employees may elect to choose between a taxable benefit (such as cash) or a qualified benefit payable with pre-tax compensation, such as group life insurance, adoption assistance, accident or health coverage, or dependent care assistance. State law provides authority for the University of North Carolina to establish its own cafeteria plan, but it has not done so. *See* N.C. Gen. Stat. § 116-17.2 (2017). State Defendants assert that the University Defendants have already exercised such authority by purchasing cafeteria plans for cancer and critical illness coverage. The cancer and critical illness policies referred to by State Defendants, as well as the NC Flex Plan, are established, offered, and administered through the Office of State Human Resources (OSHR), not by the University Defendants. *See* https://oshr.nc.gov/state-employee-resources/benefits/ncflex/ncflex-resources-new-employees. As such, University employees are able to participate in those policies because of their status as State employees. While University Defendants may have the discretionary authority to establish their own cafeteria plans, State Defendants have cited no legal authority that would require

5

University Defendants to offer cafeteria plans in order to compensate for shortcomings of their Plan.

Plaintiffs, casting their lot with the other State Defendants, invite the Court to conclude that if the State Defendants established and operated a health plan that engages in unlawful discrimination against State employees, then Title IX obligates the University Defendants to establish an entirely separate employee benefit plan to correct the unlawful discrimination. Without basis in Title IX itself or the cases interpreting it, Plaintiffs argue that Title IX converts an employer's voluntary choice about whether to offer a cafeteria plan into a mandate to offer such a plan to correct potential unlawful discrimination by others.

That is not what the law requires. Plaintiffs must identify a wrongful act by the University Defendants in order to maintain their Title IX claim. *See Baynard v. Malone*, 268 F.3d 228, 237 (4th Cir. 2001) (a school district may be liable under Title IX "only for its own misconduct") (citation omitted). By arguing that the University Defendants should voluntarily offer a cafeteria plan with "options additional" to the Plan, Plaintiffs effectively concede the essential problem with their claim: the University Defendants have nothing to do with the Plan's offerings or operations. There is no authority to support the proposition that Title IX requires that the University Defendants establish a new plan to correct plan coverage offered by others. Even if Plaintiffs can demonstrate injury resulting from unlawful discrimination in the Plan, then, the University Defendants cannot provide redress

6

for those injuries, nor do they have the legal authority to implement any remedies that might be ordered by the Court.

## II. PLAINTIFFS CONNOR THONEN-FLECK AND C.B. LACK STANDING BECAUSE THEY ARE NOT ENGAGED IN ANY EDUCATIONAL PROGRAM OR ACTIVITY AND THEIR PARENTS HAVE NO STANDING TO BRING CLAIMS ON THEIR BEHALF.

Plaintiffs have not cited, and University Defendants are unaware, of any case holding that Plaintiffs Connor Thonen-Fleck and C.B. or their parents have the requisite statutory standing to bring a Title IX action in this case. The one court that has addressed this precise issue rejected statutory standing for the dependent child. *See Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 955 (D. Minn. 2018) (holding employee lacked standing to pursue Title VII discrimination claim on behalf of transgender dependent). While Plaintiffs attempt to distinguish *Tovar* as a Title VII case, and not a Title IX case, this distinction is without merit. *See, e.g., Preston v. Com. of Va. ex rel. New River Cmty. Coll.*, 31 F.3d 203, 207 (4th Cir. 1994) ("Title VII, and the judicial interpretations of it, provide a persuasive body of standards to which we may look in shaping the contours of a private right of action under Title IX."); *Bartges v. Univ. of N. C. at Charlotte*, 908 F. Supp. 1312, 1332 (W.D.N.C. 1995), *aff'd*, 94 F.3d 641 (4th Cir. 1996) (same).

Plaintiffs' own allegations demonstrate that they are seeking the exact type of relief as requested in *Tovar* – relief for alleged discrimination in the provision of an employment benefit. (*See* Compl. ¶ 1) ("As part of compensation for employment, the State of North Carolina provides its employees with health coverage for them and their dependents through the NCSHP…"); *see also* Compl. ¶ 146 (claiming that University Defendants

7

"offer[ed] a compensation package that denies fringe benefits to Plaintiffs on the basis of sex"). Plaintiffs' surface-level attempt to distinguish *Tovar* should be rejected.

Furthermore, Plaintiffs conveniently ignore Title IX's express regulatory language that disavows Plaintiffs' theory of standing. *See* 34 C.F.R. § 106.56(b) (2012) (prohibiting federal funding recipients from discrimination in "making fringe benefits available to employees or make fringe benefits available to spouses, families, or dependents of employees different *upon the basis of employee's sex.*") (emphasis added.) As the University Defendants emphasized in their original brief, the parents of Plaintiffs Thonen-Fleck and C.B. do not and cannot make any assertion that the Plan discriminated against them on the basis of their *own sex*.

Plaintiffs' reliance on *Jackson v. Birmingham Bd. of Educ.* is also misplaced. *Jackson* dealt with whether a male coach had standing to assert a private right of action for retaliation under Title IX for complaints he made behalf of his female student-athletes. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 179 (2005). Here, of course, the parents of Plaintiffs Thonen-Fleck and C.B. do not seek recovery for Title IX retaliation, but seek to assert claims on behalf of their dependent children, who were never participants in any educational program or activity of the University Defendants.

Moreover, in analogous contexts, courts inside and outside the Fourth Circuit routinely dismiss non-employee and non-student Title IX claims for lack of standing because they have not been subjected to discrimination under an education program or activity. *See, e.g., Rossley v. Drake Univ.*, 336 F. Supp. 3d 959, 965 (S.D. Iowa 2018);

8

*Lopez v. Regents of the Univ. of Cal.*, 5 F. Supp. 3d 1106, 1114 (N.D. Cal. 2013); *Seiwert v. Spencer-Owen Cmty. Sch. Corp.*, 497 F. Supp. 2d 942, 954 (S.D. Ind. 2007); *Burrow ex rel. Burrow v. Postville Cmty. Sch. Dist.*, 929 F. Supp. 1193, 1199 (N.D. Iowa 1996) (rejecting standing of parent where neither of her "[p]arents were students at [the high school] nor were they personally excluded from, denied the benefits of or subjected to discrimination under an educational program or activity within the meaning of Title IX"); *cf. Arora v. Daniels*, No. 3:17-CV-134, 2018 WL 1597705, at *8 (W.D.N.C. Apr. 2, 2018) ("[Title IX] has been interpreted, based on its plain language, to only apply to students and participants in educational programs.").

The sound reasoning in these analogous cases applies here. As it is undisputed that Plaintiffs Connor Thonen-Fleck and C.B. were not students or participants of any educational program or activity of the University Defendants, any claims by them, or by their parents, must be dismissed.

### III. PLAINTIFFS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Plaintiffs attempt to evade Rule 12(b)(6) dismissal of their Title IX claim by revisiting the same argument they made with respect to standing – by arguing that the University Defendants "are responsible for making a discriminatory health care plan the sole option available to their employees and could (but have chosen not to) redress the injury this causes." (Pls. Br. p. 16) As discussed in Section I, Plaintiffs cite no authority holding that Title IX requires the University Defendants to correct an allegedly discriminatory plan selected, offered, and administered by another party (the State

9

Defendants) and which the University Defendants have no legal authority to offer an alternative. The statute cited by Plaintiffs and the State Defendants, N.C. Gen. Stat. § 116-17.2, simply authorizes the University to offer a Section 125 cafeteria plan if it chooses to, which it has not yet done and has no legal obligation to do. Title IX, in the same spirit as all other federal anti-discrimination law, simply requires that if an institution does provide a benefit to its employees, it does so in a nondiscriminatory manner. *See* 34 C.F.R. § 106.56(b)(1); *see also Newport News*, 462 U.S. at 684 (holding that employer's insurance plan violated Title VII and unlawfully gave married male employees benefit package for their dependents that was less inclusive than the dependency coverage provided to married female employees); *Saks v. Franklin Covey Co.*, 316 F.3d 337, 344 (2d Cir. 2003) (explaining that "[u]nder Title VII, the proper inquiry in reviewing a sex discrimination challenge to a health benefits plan is whether sex-specific conditions exist, and if so, whether exclusion of benefits for those conditions results in a plan that provides inferior coverage to one sex"). For this reason, and as further explained in the University Defendants' opening brief, Plaintiffs' Title IX claim must be dismissed pursuant to Rule 12(b)(6).

**IV. THIS COURT SHOULD STAY THIS CASE BECAUSE CURRENT CASES PENDING BEFORE THE SUPREME COURT WILL DETERMINE THE ISSUE PRESENTED IN THIS CASE OF FIRST IMPRESSION.**

Plaintiffs conclude their Response by opposing the entry of any stay of these proceedings pending the final resolution of *R.G. & G.R. Harris Funeral Homes, Inc. v. Equal Emp't Opportunity Comm'n*, No. 18-107, 2019 WL 1756679 (U.S. Apr. 22, 2019)

10

on the grounds that the University Defendants have not made the showing required for such a stay. Plaintiffs contend that any stay should be denied because "University Defendants have not even attempted to show they will suffer any hardship or inequity if they are required to proceed with this case" and that "Plaintiffs have suffered, and are suffering, hardship as a result of University Defendants' role in denying them medically necessary care." (Pls. Br. p. 18)

Putting aside the point for now that the University Defendants have not denied these Plaintiffs medically necessary care, Plaintiffs omit any discussion of the third factor that should be considered when ruling on any motion to stay, which is particularly salient here: judicial economy. "The decision whether to grant a stay is discretionary, and within the inherent power of the court 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *White v. Ally Fin. Inc.*, 969 F. Supp. 2d 451, 461 (S.D. W. Va. 2013) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). In addition to considering "hardship and equity to the moving party if the action is not stayed" as well as "potential prejudice to the non-moving party," the Court should consider interests of judicial economy. *Id.* at 462. In particular, "[a] district court ordinarily has discretion to delay proceedings when a higher court will issue a decision that may affect the outcome of the pending case." *Id.* at 461-62.

Given that *R.G. and G.R. Harris Funeral Homes* presents the question of whether sex discrimination in Titles IX and VII includes gender identity discrimination, an issue also raised by the parties in this case, principles of judicial economy weigh in favor of

11

staying this case through the final resolution of that one case (not "indefinitely" as Plaintiffs have attempted to characterize it). In the event the Court is inclined not to rule on the University Defendants' motion to dismiss at this juncture, this Court should stay this case until the Supreme Court issues its decision in that case.

This the 18th day of September, 2019.

                                        JOSHUA H. STEIN
                                        Attorney General

                                        /s/Catherine F. Jordan
                                        Catherine F. Jordan
                                        Special Deputy Attorney General
                                        NC State Bar No. 34030
                                        cjordan@ncdoj.gov

                                        NC Department of Justice
                                        PO Box 629
                                        Raleigh, NC 27602
                                        Tel: 919-716-6920
                                        Fax: 919-716-6764

*Attorneys for Defendants University of North Carolina at Chapel Hill, North Carolina State University, and University of North Carolina at Greensboro*

12

# CERTIFICATE OF COMPLIANCE

I hereby certify that Defendants University of North Carolina at Chapel Hill, North Carolina State University, and University of North Carolina at Greensboro's Reply to Plaintiffs' Response in Opposition to University Defendants' Motion To Dismiss is in compliance with Local Rule 7.3(d)(1) of in that the body of this brief, including headings and footnotes, does not exceed 3,125 words as indicated by Microsoft Word, the program used to prepare this document.

This the 18th day of September, 2019.

/s/Catherine F. Jordan
Catherine F. Jordan
Special Deputy Attorney General

## CERTIFICATE OF SERVICE

I certify that the foregoing Reply to Plaintiffs' Response in Opposition to University Defendants' Motion To Dismiss was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered users.

This the 18th day of September, 2019.

/s/Catherine F. Jordan
Catherine F. Jordan
Special Deputy Attorney General