# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MAXWELL KADEL; JASON FLECK;
CONNOR THONEN-FLECK, by his next
friends and parents, JASON FLECK and
ALEXIS THONEN; JULIA MCKEOWN;
MICHAEL D. BUNTING, JR.; C.B., by his
next friends and parents, MICHAEL D.
BUNTING, JR. and SHELLEY K. BUNTING;
and SAM SILVAINE,

                *Plaintiffs*,

          v.

DALE FOLWELL, in his official capacity as
State Treasurer of North Carolina; DEE
JONES, in her official capacity as Executive
Administrator of the North Carolina State
Health Plan for Teachers and State Employees;
UNIVERSITY OF NORTH CAROLINA AT
CHAPEL HILL; NORTH CAROLINA
STATE UNIVERSITY; UNIVERSITY OF
NORTH CAROLINA AT GREENSBORO;
and NORTH CAROLINA STATE HEALTH
PLAN FOR TEACHERS AND STATE
EMPLOYEES,

                *Defendants*.

Case No. 1:19-cv-00272-LCB-LPA

**PLAINTIFFS' SUGGESTION OF
SUBSEQUENTLY DECIDED
AUTHORITY**

1

**<u>PLAINTIFFS' SUGGESTION OF SUBSEQUENTLY DECIDED AUTHORITY</u>**

Pursuant to Local Rule 7.3(i), Plaintiffs Maxwell Kadel, Jason Fleck, Connor Thonen-Fleck, Julia McKeown, Michael D. Bunting, Jr., C.B., and Sam Silvaine (collectively, the "Plaintiffs'), respectfully submit this suggestion of subsequently decided authority as an addendum to their briefs in opposition to Defendants' motions to dismiss. (ECF No. 34, 35)

Plaintiffs filed their briefs on August 9, 2019. The opinion and order in *Toomey v. State of Arizona*, No. 4:19-CV-00035-RM-LAB (D. Ariz.), was issued on December 23, 2019. A copy of the opinion and order is attached hereto as Exhibit A

***

Dated: January 2, 2020

Respectfully submitted,

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Telephone: 919-429-7386
Facsimile: 202-730-1301
arichardson@hwglaw.com

Deepika H. Ravi*
HARRIS, WILTSHIRE & GRANNIS LLP
919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Telephone: 202-730-1300
Facsimile: 202-730-1301
dravi@hwglaw.com

Noah E. Lewis*
TRANSGENDER LEGAL DEFENSE AND
    EDUCATION FUND, INC.
20 West 20th Street, Suite 705
New York, NY 10011
Telephone: 646-862-9396
Facsimile: 646-930-5654
nlewis@transgenderlegal.org

Meredith Taylor Brown*
Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: 212-809-8585
Facsimile: 212-809-0055
tbrown@lambdalegal.org
ogonzalez-pagan@lambdalegal.org

Tara Borelli*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
730 Peachtree Street NE, Suite 640
Atlanta, GA 30318-1210
Telephone: 404-897-1880
Facsimile: 404-897-1884
tborelli@lambdalegal.org

*Counsel for Plaintiffs*

* Appearing by special appearance pursuant to L.R. 83.1(d)

3

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically with the Clerk of

Court using the CM/ECF system which will send notification of such filing to all

registered users.

Dated: January 2, 2020

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Telephone: 919-429-7386
Facsimile: 202-730-1301
arichardson@hwglaw.com

**EXHIBIT A**

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Russell B Toomey, | No. CV-19-00035-TUC-RM (LAB) |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, | |
| Defendants. | |

Pending before the Court are Defendants State of Arizona, Gilbert Davidson, and Paul Shannon's (collectively, "State Defendants") Motion to Dismiss (Doc. 24), Magistrate Judge Leslie A. Bowman's Report and Recommendation ("R&R") on the Motion to Dismiss (Doc. 46), and the parties' Objections to the R&R (Docs. 49, 51, 52.)[1] The Court held oral argument on October 2, 2019, at which time it took under advisement the Motion, the R&R, and the Objections. (Doc. 65.) For the following reasons, the R&R will be adopted in part, modified in part, and rejected in part, and State Defendants' Motion to Dismiss will be denied.

. . . .

. . . .

---

[1] Also pending is Plaintiff's Motion to Certify Class (Doc. 28), which will be resolved separately.

# I.     Background

Plaintiff Dr. Russell B. Toomey is a transgendered male. (Doc. 1 at 12.) "He has a male gender identity, but the sex assigned to him at birth was female." (*Id.*) Dr. Toomey has been living as a male since 2003 and has received medically necessary hormone therapy and chest reconstruction surgery as treatment for diagnosed gender dysphoria. (Doc. 1 at 12; Doc. 24 at 2.) Dr. Toomey is employed as an Associate Professor at the University of Arizona. (Doc. 1 at 4.) His health insurance ("the Plan") is a self-funded plan provided by the State of Arizona. (*Id.* at 3, 10.) While the Plan provides coverage for most medically necessary care, including care related to transsexualism and gender dysphoria such as mental health counseling and hormone therapy, "gender reassignment surgery" is excluded from coverage. (*Id.* at 3, 10, 13; Doc. 24 at 3.)

At the recommendation of his doctor, Dr. Toomey sought preauthorization for a total hysterectomy from his provider, Blue Cross Blue Shield of Arizona ("BCBSAZ"). (Doc. 24 at 3.) BCBSAZ refused to approve the procedure due to the Plan's exclusion of "gender reassignment surgery." (*Id.* at 4.) Subsequently, Dr. Toomey filed an Equal Employment Opportunity Commission ("EEOC") Charge against the Arizona Board of Regents ("ABOR") alleging sex discrimination under Title VII. (Doc. 24–1.) Upon receiving a Notice of Right to Sue, he filed this lawsuit. (Doc. 39 at 15.) Plaintiff seeks declaratory relief, "including but not limited to a declaration that Defendants . . . violated Title VII and . . . the Equal Protection Clause," as well as permanent injunctive relief "requiring Defendants to remove the Plan's categorical exclusion of coverage for gender reassignment surgery and evaluate whether [Plaintiff's] . . . surgical care for gender dysphoria is 'medically necessary' in accordance with the Plan's generally applicable standards and procedures." (Doc. 1 at 22.)

State Defendants filed the pending Motion to Dismiss on March 18, 2019. (Doc. 24.) State Defendants argue this action should be dismissed because: (1) Plaintiff failed to exhaust the Plan's internal appeals process before bringing suit; (2) Plaintiff fails to properly state a Title VII sex discrimination claim; (3) Plaintiff fails to properly state a

Fourteenth Amendment Equal Protection claim; (4) sovereign immunity bars Plaintiff's claims against State Defendants; and (5) Plaintiff failed to exhaust his Title VII remedies because he failed to file an EEOC charge against the State of Arizona or the Arizona Department of Administration ("ADOA") (Doc. 24; *see also* Doc. 41).

On June 24, 2019, Magistrate Judge Bowman issued an R&R recommending that State Defendants' Motion to Dismiss be partially granted and partially denied. (Doc. 46.) The R&R rejects State Defendants' argument concerning failure to exhaust the Plan's internal appeals process, finding that the Plans' exhaustion provision was ambiguous and that it was unclear whether the parties intended the appeals process to apply to Title VII and Equal Protection challenges. (*Id.* at 5.)  The R&R recommends dismissing Plaintiff's Title VII claim as non-viable and therefore does not reach the issue of administrative exhaustion with respect to the Title VII claim. (*Id.* at 5–8, 11.) The R&R recommends denying State Defendants' Motion to Dismiss with respect to Plaintiff's Equal Protection claim on the grounds that Plaintiff has "alleged facts that, if true, could justify a heightened level of scrutiny" under the Equal Protection Clause. (*Id.* at 9.) With respect to sovereign immunity, the R&R finds that this case "falls comfortably within the *Ex Parte Young* exception." (*Id.* at 10.)

All parties filed Objections (Docs. 49; 51; 52) and Plaintiff and State Defendants filed Responses (Docs. 56; 57; 60). Defendants Arizona Board of Regents, Ron Shoopman, Larry Penley, Ram Krishan, Bill Ridenour, Lyndel Manon, Karrin Taylor Robson, Jay Heiler, and Fred DuVal object to the R&R only "to the extent that the dismissal of the Title VII claim does not apply to all parties." (Doc. 51.) State Defendants object to the R&R's findings and recommendations regarding Plaintiff's Equal Protection claim, exhaustion of the Plan's internal appeals process, and sovereign immunity. (Doc. 52.) Plaintiff objects to the R&R's findings and recommendations regarding his Title VII claim. (Doc. 49.)

On October 22, 2019, Judge Bowman denied State Defendants' Motion to Stay Proceedings Pending U.S. Supreme Court Decision in *R.G. & G.R. Harris Funeral Homes v. EEOC*, 2019 WL 1756679 (2019). (Docs. 41, 66.)

- 3 -

## II.    Standard of Review

### A.  Review of Report and Recommendation

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by a magistrate judge.  28 U.S.C. § 636(b)(1).  The district judge must "make a de novo determination of those portions" of the magistrate judge's "report or specified proposed findings or recommendations to which objection is made."  *Id.*

### B.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to file a motion to dismiss for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation omitted).   To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court evaluating a motion to dismiss must view the complaint "in the light most favorable to the plaintiff."  *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990).  All well-pleaded factual allegations of the complaint must be accepted as true; however, legal conclusions and other conclusory statements are not entitled to a presumption of truth.  *Iqbal*, 556 U.S. at 678–79, 681.

Federal Rule of Civil Procedure 12(b)(1) permits dismissal of a claim when the Court lacks subject-matter jurisdiction over the claims presented. Fed. R. Civ. P. 12(b)(1). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, [it] must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). A failure to exhaust administrative remedies bars federal subject-matter jurisdiction "where the exhaustion statute explicitly limits the grant of subject matter jurisdiction and is an integral part of the statute granting jurisdiction." *McBride Cotton & Cattle Corp. v. Veneman*, 290 F.3d 973, 979 (9th Cir. 2002).

### III.    Discussion

#### A. Administrative Exhaustion

Regulations implementing the Public Health Services Act require health insurance plans to provide internal processes for "full and fair review" of adverse benefits decisions. *See* 45 C.F.R. § 147.136(b); 29 C.F.R. § 2560.503–1(h). These requirements apply both to those health plans subject to the Employee Retirement Income Security Act ("ERISA") and those not subject to ERISA. Although ERISA does not explicitly require exhaustion of administrative remedies, federal courts have held that "an ERISA plaintiff claiming a denial of benefits must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (internal quotation omitted); *see also Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980) ("federal courts have the authority to enforce the exhaustion requirement in suits under ERISA" and "as a matter of sound policy they should usually do so").

Exhaustion is not required if "resort to the administrative route is futile or the remedy inadequate." *Amato*, 618 F2d at 568 (internal quotation omitted); *see also Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 252 (3d Cir. 2002) (courts require exhaustion of administrative remedies for ERISA claim benefits but not for claims of substantive statutory violations). Furthermore, ERISA's court-created exhaustion requirement applies only if the relevant plan requires exhaustion.  *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1298–99 (9th Cir. 2014).

Here, the Plan contains an exhaustion provision stating that "no action at law or in equity can be brought to recover on this Plan until the appeals procedure has been exhausted as described in this Plan." (Doc. 1–2 at 77.) The R&R found that this exhaustion provision was ambiguous and that it was not clear if the parties intended the internal appeals process to apply to a Title VII or Equal Protection Clause challenge to a Plan exclusion; therefore, the R&R held that the intent of the parties was a matter for determination by the trier of fact based on extrinsic evidence. (Doc. 46 at 3–5.) State

- 5 -

Defendants object, arguing that the Plan's exhaustion provision is unambiguous and that it required Plaintiff to exhaust the Plan's internal appeals process prior to suing. (Doc. 52 at 2-6; *see also* Doc. 26 at 6–8.) Plaintiff responds that the exhaustion requirement is inapplicable because Plaintiff is not seeking to recover on the Plan but, instead, is seeking to have the Plan declared unlawful under Title VII and the Equal Protection Clause. (Doc. 57 at 3–6.)

The Court agrees with Plaintiff that the Plan's exhaustion provision is inapplicable to the claims asserted in this litigation. Contrary to State Defendants' assertions, Plaintiff is not seeking to "recover on th[e] Plan." Rather, Plaintiff is seeking declaratory and injunctive relief for alleged violations of Title VII and the Equal Protection Clause. (Doc. 1 at 16–22.) Neither the administrative exhaustion doctrine, nor the Plan itself, bars Plaintiff's suit. The Court will deny State Defendants' Motion to Dismiss to the extent it argues that Plaintiff's claims are barred by a failure to exhaust administrative remedies.

## B. Sovereign Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state . . ." U.S. Const. Amend. XI. The doctrine of sovereign immunity has been interpreted to bar suits against an unconsenting state brought by private parties, whether or not they are citizens of that state, and regardless of the nature of the relief sought. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *but see* 42 U.S.C. § 2000d-7 (sovereign immunity does not bar suit against a state for a violation of specified federal statutes prohibiting discrimination, including Title VI, if the state receives federal funds).

The *Ex Parte Young* exception to the doctrine of sovereign immunity permits actions seeking prospective injunctive relief against a state officer whose acts allegedly violate federal law. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("a court need only conduct a straightforward inquiry into whether [the] complaint

- 6 -

alleges an ongoing violation of federal law and seeks relief properly characterized as prospective"); *but see Edelman v. Jordan*, 415 U.S. 651, 678 (1974) (the Eleventh Amendment bars a retroactive payment by the state of benefits found to have been wrongfully withheld).

Defendants contend that the doctrine of sovereign immunity bars Plaintiff's claims against Defendants Davidson and Shannon as state officers. (Doc. 24 at 14–15.) Defendants contend that Plaintiff is actually seeking "a reversal of the Health Plan's August 10, 2018 denial of coverage for his gender reassignment surgery." (*Id.* at 15.) Defendants characterize Plaintiff's remedy as "in fact, a 'retroactive payment of benefits'" that is barred by the Eleventh Amendment pursuant to *Edelman v. Jordan*, 415 U.S. 651 (1974). (*Id.*)

The R&R found that Plaintiff's "proposed remedy is entirely prospective" and therefore "falls comfortably within the *Ex Parte Young* exception." (Doc. 46 at 10.) As discussed *supra*, Plaintiff is seeking injunctive and declaratory relief, not a recovery of benefits under the Plan. He is not seeking any remedy based on his past denial of coverage but, instead, prospective relief requiring his surgery to be evaluated for medical necessity under the Plan's generally applicable standards and procedures. State Defendants' Motion to Dismiss, and their Objection to the R&R's findings on sovereign immunity, rely upon a mischaracterization of Plaintiff's requested relief. The R&R is adopted in full with respect to its findings on sovereign immunity. The Court will deny the Motion to Dismiss to the extent it argues that this action is barred by the doctrine of sovereign immunity.

## C.  Title VII of the Civil Rights Act

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Health insurance is a term, condition, or privilege of employment under Title VII. *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682 (1983). An employer violates Title VII if, but for the individual's sex, the employer's treatment of the individual would

- 7 -

be different. *City of L.A., Dep't of Water & Power v. Manhart*, 435 U.S. 702, 711 (1978). Gender discrimination at work based on sex stereotyping or perceived gender nonconformity is also prohibited by Title VII. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240 (1989). Both men and women are protected by Title VII's prohibition on sex discrimination. *See id.* at 251 (Title VII "strike[s] at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." (internal quotation omitted)); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–81 (1998) (same-sex sexual harassment is actionable under Title VII).

Sex discrimination can occur in the context of either "disparate treatment" or "disparate impact." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009); *see also Healey v. Southwood Psychiatric Hosp.*, 78 F.3d 128, 131 (3d Cir. 1996). Under a disparate impact theory, a prima facie case of discrimination occurs when a facially neutral policy affects members of a protected class in a discriminatory manner. *Dothard v. Rawlinson*, 433 U.S. 321, 328–29 (1977). This triggers a burden-shifting analysis wherein the employer must prove that its practices are legitimately related to job performance or business necessity. *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, (1973). "Proof of discriminatory motive is not required under a disparate impact theory." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (internal quotation and alteration omitted).

Under a disparate treatment theory, a prima facie case is made when "an employer has treated a particular person less favorably than others because of a protected trait." *Ricci*, 557 U.S. at 577 (internal quotation and alterations omitted). Such cases present "the most easily understood type of discrimination." *Id.* (internal quotation omitted). Where the policy at issue is facially discriminatory, a disparate treatment—rather than disparate impact—analysis is appropriate. *Healey*, 78 F.3d at 131. "[A] disparate treatment claim cannot succeed unless the employee's protected trait [] played a role in the [employer's decision-making process] and had a determinative influence on the outcome." *Hazen Paper Co.*, 507 U.S. at 610. In some situations, discriminatory motive can "'be inferred from the

mere fact of differences in treatment.'" *Id.* at 609 (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15 (1977)).

United States Circuit Courts are divided on whether discrimination based on a person's transgender or transsexual identity constitutes sex discrimination for purposes of Title VII. Some courts have found that transgender individuals are a protected class in and of themselves; others have found that such individuals are protected, not by virtue of their status as transgendered, but by applying the analysis used in cases finding sex discrimination against cisgendered (i.e. not transgendered) individuals. *See, e.g.*, *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000) (a transgender individual states a viable sex discrimination claim if the perpetrator was motivated by the victim's real or perceived non-conformance to socially constructed gender norms); *EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 574–75 (6th Cir. 2018), *cert. granted in part sub nom. R.G. & G.R. Harris Funeral Homes, Inc. v. EEOC*, 139 S. Ct. 1599 (2019) ("discrimination on the basis of transgender and transitioning status violates Title VII"); *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1222 (10th Cir. 2007) ("transsexuals are not a protected class under Title VII"); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 575 (6th Cir. 2004) ("a label, such as 'transsexual,' is not fatal to a sex discrimination claim where the victim has suffered discrimination because of his or her gender non-conformity"); *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011) ("discrimination against a transgender individual because of her gender-nonconformity is sex discrimination").

District Courts in the Ninth Circuit have found that discrimination based on transgender or transsexual identity violates Title VII. *See Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1099 (S.D. Cal. 2017) ("discrimination on the basis of transgender identity is discrimination on the basis of sex"); *Roberts v. Clark Cnty. Sch. Dist.*, 215 F. Supp. 3d 1001, 1014 (D. Nev. 2016) ("discrimination against a person based on transgender status is discrimination 'because of sex' under Title VII"); *Erickson v. Bartell Drug Co.*, 141 F. Supp. 2d 1266, 1271 (W.D. Wash. 2001) ("disparate treatment based on unique, sex-based characteristics . . . is sex discrimination prohibited by Title

1 VII.")

2    In the current 2019–2020 term, the Supreme Court will address whether Title VII

3 prohibits discrimination against transgender people based on (1) their status as

4 transgendered or (2) sex stereotyping under *Price Waterhouse v. Hopkins*, 490 U.S. 228

5 (1989). *R.G. & G.R. Harris Funeral Homes, Inc. v. EEOC*, 139 S. Ct. 1599 (2019).

6 Congress has not explicitly added transgender status to the list of protected classes under

7 Title VII, though such legislation has been proposed. *See, e.g.*, The Equality Act: H.R. 5,

8 116th Cong. (2019).

9    The R&R found that Plaintiff's Title VII claim fails as a matter of law because

10 discrimination based on a person's transsexual status is not discrimination based on sex.

11 (Doc. 46 at 8.) The Court disagrees and finds that Plaintiff has alleged a sufficient factual

12 and legal basis to survive dismissal of his Title VII claim. Discrimination based on

13 transgender status or identity is discrimination based on sex because, but for the

14 individual's sex, the employer's treatment of the individual would be different. *Manhart*,

15 435 U.S. at 711. The sex characteristic is inseparable from transgender identity: had

16 Plaintiff been born a male, rather than a female, he would not suffer from gender dysphoria

17 and would not be seeking gender reassignment surgery. *See Schwenk*, 204 F.3d at 1201–

18 02 (Plaintiff's transsexuality was at least one motivating factor for the attack and therefore

19 it occurred "because of gender"). Title VII's prohibition against sex discrimination is not

20 limited to acts of overt harassment, and *Schwenk*'s reasoning is persuasive here.

21    Like the plaintiff in *Schwenk*, Plaintiff's alleged harm occurred because his natal

22 sex does not match his gender identity. The Plan at issue covers cisgender individuals

23 requiring medically necessary hysterectomies but does not cover transgender individuals

24 requiring medically necessary hysterectomies for the purpose of gender reassignment. Had

25 Plaintiff required a hysterectomy for any medically necessary purpose other than gender

26 reassignment, the Plan would have covered the procedure. This narrow exclusion of

27 coverage for "gender reassignment surgery" is directly connected to the incongruence

28 between Plaintiff's natal sex and his gender identity. Discrimination based on the

- 10 -

incongruence between natal sex and gender identity—which transgender individuals, by definition, experience and display—implicates the gender stereotyping prohibited by Title VII. *See Prescott*, 265 F. Supp. 3d at 1099 ("by definition, a transgender individual does not conform to the sex-based stereotypes of the sex that he or she was assigned at birth") (internal quotation and alteration omitted); *see also Price Waterhouse*, 490 U.S. at 250.

Defendants assert that the State must engage in line-drawing in order to contain health care costs. This may be so, but such line drawing, when it results in unjustified disparate treatment or impact based on sex or gender, violates Title VII. Were Plaintiff a cisgender female, the Plan would cover Plaintiff's medically necessary hysterectomy. The Plan's disparate treatment of Plaintiff's medical needs—its exclusion of coverage for gender reassignment surgery—potentially qualifies as sex discrimination because it negatively impacts those, and only those, who do not conform to the gender identity typically associated with the sex they were assigned at birth.

Defendants also assert that the exclusion targets a "service" rather than transgender individuals. However, transgender individuals are the only people who would ever seek gender reassignment surgery. No cisgender person would seek, or medically require, gender reassignment. Therefore, as a practical matter, the exclusion singles out transgender individuals for different treatment. Defendants' bare assertion that the exclusion is "neutral" is insufficient to support dismissal of the claim.

Whether the Plan's categorical exclusion of a surgical procedure necessary to treat a medical condition arising from Plaintiff's transgender status constitutes impermissible sex discrimination or gender-stereotyping is not a matter for the Court to determine on a motion to dismiss. However, the Court finds that Plaintiff has alleged facts sufficient to proceed with his Title VII claim. Therefore, the Court rejects the R&R's findings on the Title VII claim. State Defendants' Motion to Dismiss will be denied as to the Title VII claim.[2]

---

[2] Based on the Court's denial of State Defendants' Motion to Dismiss as to Plaintiff's Title VII claim, the Objection of Defendants Arizona Board of Regents, Ron Shoopman, Larry Penley, Ram Krishan, Bill Ridenour, Lyndel Manon, Karrin Taylor Robson, Jay Heiler, and Fred DuVal (Doc. 51) will be denied as moot. The Court notes, however, that if these

- 11 -

1

#### D. Title VII Exhaustion

2      Title VII requires a complainant to file a charge with the EEOC within one hundred

3 and eighty days after the alleged unlawful employment practice occurred. 42 U.S.C. §

4 2000e-5(e)(1). The Complainant must provide notice of the charge to "the person against

5 whom such charge is made within ten days" of filing the charge." *Id.* "One function of the

6 administrative charge is to provide information to enable the EEOC to determine the scope

7 of the alleged violation and to attempt conciliation." *Kaplan v. Int'l All. of Theatrical &*

8 *Stage Emp. & Motion Picture Mach. Operators of U.S. & Canada*, 525 F.2d 1354, 1359

9 (9th Cir. 1975), *abrogated on other grounds by Laughon v. Int'l Alliance of Theatrical*

10 *Stage Employees*, 248 F.3d 931 (9th Cir. 2001). The charge must be sufficient to notify the

11 recipient that employment discrimination is claimed. *See Cooper v. Bell*, 628 F.2d 1208,

12 1211 (9th Cir. 1980).

13      A plaintiff's failure to "substantially comply" with the EEOC claim presentation

14 requirements requires the dismissal of Title VII claims for lack of subject-matter

15 jurisdiction. *Sommatino v. United States*, 255 F.3d 704, 707–11 (9th Cir. 2001) (district

16 court lacked subject-matter jurisdiction over Title VII claims where complainant

17 communicated with EEOC counselor but never filed formal charge). "[T]he jurisdictional

18 scope of a Title VII claimant's court action depends upon the scope of both the EEOC

19 charge and the EEOC investigation." *Id.* at 709 (internal quotation omitted). The court has

20 jurisdiction over "charges of discrimination that are like or reasonably related to the

21 allegations in the EEOC charge, or that fall within the EEOC investigation which can

22 reasonably be expected to grow out of the charge of discrimination." *Id.* (internal quotation

23 omitted).

24      Generally, "Title VII claimants may sue only those named in the EEOC charge[.]"

25 *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (1990). However, "Title VII charges can be brought

26 against persons not named in an E.E.O.C. complaint as long as they were involved in the

27 acts giving rise to the [] claims." *Id.* at 1458–59 (internal quotation omitted). Furthermore,

28

Defendants sought dismissal of Plaintiff's Title VII claim, they should have filed a Motion
to Dismiss or joined the State Defendants' Motion to Dismiss.

the court has jurisdiction over defendants not named in the charge if "the EEOC or defendants themselves should have anticipated" that they would be named in a Title VII suit. *Id*. at 1459 (internal quotation omitted). Additionally, "if the respondent named in the EEOC charge is a principal or agent of the unnamed party, or if they are substantially identical parties, suit may proceed against the unnamed party." *Id*. (internal quotation omitted).

State Defendants contend that because Plaintiff named only ABOR in his EEOC Charge and not the State of Arizona or the ADOA, he failed to exhaust his administrative remedies and this Court lacks subject-matter jurisdiction over his Title VII claim. (Doc. 24 at 16–17). The R&R did not reach this argument. The Court finds that the State of Arizona was involved in the acts giving rise to Plaintiff's Title VII claim. *See Sosa*, 920 F.2d at 1458–59. Furthermore, the State of Arizona reasonably should have anticipated that it would be named in a Title VII suit arising from Plaintiff's EEOC charge. *Id*. at 1459. Therefore, the Court has jurisdiction over the Title VII claim against the State of Arizona. The Court will deny State Defendants' Motion to Dismiss to the extent it argues failure to exhaust Title VII administrative remedies.

### E.  Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "[L]egislation is presumed to be valid" under the Equal Protection Clause unless it classifies people based on inherently suspect characteristics such as race, national origin, or gender. *Id.* at 440–41; *Graham v. Richardson*, 403 U.S. 365, 372 (1971). Heightened judicial scrutiny may apply where the individual is a member of a "discrete and insular minority," *Graham*, 403 U.S. at 372, or has an "immutable characteristic determined solely by the accident of birth" that bears no relationship to his or her ability to contribute to society, *Frontiero v. Richardson*, 411 U.S. 677, 686–87 (1973).

- 13 -

In the case of governmental classifications based on gender, an "exceedingly persuasive" justification is required. *United States v. Virginia*, 518 U.S. 515, 531 (1996). A gender classification fails unless it is "substantially related to the achievement of an important governmental interest." *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 855 (9th Cir. 2001). Application of this "heightened" or "intermediate" scrutiny standard shifts the burden of proof to the government to show that the standard has been met. *Id.* at 855. The burden of proof creates "a rebuttable presumption of unconstitutionality for state-sponsored gender discrimination." *Id*. Heightened scrutiny for gender-based classifications, as opposed to classifications based on non-suspect statuses, is necessary because "the sex characteristic frequently bears no relation to ability to perform or contribute to society." *Frontiero*, 411 U.S. at 686.

In contrast, a government action or classification "neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity" and is subject to only rational-basis review. *Heller v. Doe*, 509 U.S. 312, 319–21 (1993). "[L]egislation is presumed to be valid and will be sustained if the classification [] is rationally related to a legitimate state interest." *Cleburne*, 473 U.S. at 439. There must be "a rational relationship between the disparity of treatment and some legitimate government purpose." *Heller*, 509 U.S. at 320. The burden rests with the party attacking the classification to "negative every conceivable basis which might support it." *Id*.

The difference between non-suspect classifications and suspect classifications is whether "individuals in the group . . . have distinguishing characteristics relevant to interests the State has the authority to implement[.]" *Cleburne*, 473 U.S. at 441 (citing *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976)). Classes warranting heightened scrutiny are those "discrete and insular" groups that are "saddled with such disabilities," "subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Murgia*, 427 U.S. 307, 313 (1976) (internal quotation omitted).

"[A] bare desire to harm a politically unpopular group cannot constitute a legitimate

- 14 -

government interest." *Romer v. Evans*, 517 U.S. 620, 634 (1996). Furthermore, a state's "valid interest in preserving [] fiscal integrity" and limiting its expenditures do not justify "invidious classification[s]" between citizens. *Shapiro v. Thompson*, 394 U.S. 618, 633 (1969), *overruled in part on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974); *see also Collins v. Brewer*, 727 F. Supp. 2d 797, 811 (D. Ariz. 2010), *aff'd sub nom. Diaz v. Brewer*, 656 F.3d 1008 (9th Cir. 2011) (cost concerns could not justify denying insurance coverage to same-sex couples under rational basis review); *but see IMS Health Inc. v. Sorrell*, 630 F.3d 263, 276 (2d Cir. 2010) (state has a "substantial interest" in lowering health care costs). When the cost of health insurance for a class of persons excluded from coverage comprises only a small percentage of the State's health insurance expenditures for its employees, an Equal Protection claim is strengthened. *Collins*, 727 F. Supp. 2d at 811-12.

The R&R found that Plaintiff "has alleged facts that, if true, could justify a heightened level of scrutiny," and that State Defendants had not shown that the Plan's exclusion of gender reassignment surgery would survive a heightened level of scrutiny. (Doc. 46 at 9-10.) State Defendants object, arguing that rational basis review is applicable and that, even if a heightened level of scrutiny were to apply, the Plan's exclusion would survive such scrutiny based on the governmental interest in containing and reducing health care costs. (Doc. 52 at 6-10.) Plaintiff responds that, in the Ninth Circuit, transgender status is a suspect or quasi-suspect classification subject to heightened scrutiny. (Doc. 57 at 9 (citing *Karnoski v. Trump*, 926 F.3d 1180, 1200 (9th Cir. 2019).) Plaintiff further argues that, under any standard of scrutiny, State Defendants' asserted interest in reducing health care costs is insufficient as a matter of law to justify "treating the costs associated with transition-related surgery differently from the costs associated with other medically necessary treatments." (*Id.* at 10-11.)

Plaintiff has alleged a sufficient factual and legal basis to survive the Motion to Dismiss on his Equal Protection claim. The Court agrees with the R&R that Plaintiff has alleged sufficient facts that, if true, could justify a heightened level of scrutiny. But even

- 15 -

were the Court to apply rational basis review to Plaintiff's Equal Protection claim—requiring the government to show only that the exclusion of gender reassignment surgery is rationally related to a legitimate interest—it is not certain that Plaintiff's claim would fail that test. The Court finds *Romer v. Evans* instructive. 517 U.S. 620 (1996). In that case, the United States Supreme Court held that a Colorado state law that precluded any government action designed to protect people who were not heterosexual from discrimination violated the Equal Protection clause. *Id.* at 624. The Court applied rational basis review to the state law and found that it bore no rational relationship to a legitimate state interest. *Id.* at 632–35. The Court also found that the state law was motivated by animosity toward non-heterosexuals and that classifications based purely on animosity toward a "politically unpopular group" are unconstitutional. *Id.* at 634–35.

Limiting health care costs is a legitimate state interest, but that interest cannot be furthered by arbitrary classifications or by harming a politically unpopular or vulnerable group. *See Collins*, 727 F. Supp. 2d at 811. Plaintiff has alleged facts plausibly showing that the Plan's exclusion of gender reassignment surgery is not rationally related to a legitimate government interest. Therefore, the Motion to Dismiss will be denied as to the Equal Protection claim.

**IT IS ORDERED**:

1. Plaintiff's Objection to the Report and Recommendation (Doc. 49) is **granted**.

2. Defendants State of Arizona, Andy Tobin, and Paul Shannon's Objection (Doc. 52) is **overruled**.

3. Defendants Arizona Board of Regents, Ron Shoopman, Larry Penley, Ram Krishna, Bill Ridenour, Lyndel Manson, Karrin Taylor Robson, Jay Heiler, and Fred DuVal's Objection (Doc. 51) is **overruled as moot**.

4. The Report and Recommendation (Doc. 46) is **adopted in part, rejected in part, and modified in part**, as set forth above.

. . . .

. . . .

1     5. Defendants State of Arizona, Andy Tobin, and Paul Shannon's Motion to Dismiss

2     (Doc. 24) is **denied**.

3     Dated this 20th day of December, 2019.

4

5

6

7                                  _____

8                                   Honorable Rosemary Márquez

                                    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28