THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION
FILE No. 1:19-CV-00272-LCB-LPA

|  |  |  |
|---|---|---|
| MAXWELL KADEL, | ) | |
| | ) | |
| Plaintiff, | ) | **NORTH CAROLINA** |
| | ) | **DEPARTMENT OF PUBLIC** |
| v. | ) | **SAFETY'S MEMORANDUM OF** |
| | ) | **LAW IN SUPPORT OF** |
| JASON FLECK, *et al.*, | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| Defendants. | ) | *Fed. R. Civ. P. 56* |
| | ) | *Local Rules 7.3 and 56.1* |
| | ) | |
| | ) | |

**NOW COMES** Defendant, North Carolina Department of Public Safety

("Defendant NCDPS" or "NCDPS"), by and through undersigned counsel, Special Deputy

Attorney General James B. Trachtman, and respectfully submits this Memorandum of Law

in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules

of Civil Procedure and Local Rules 7.3 and 56.1.

## NATURE OF THE MATTER BEFORE COURT

Plaintiffs allege in their First Amended Complaint ("Amended Complaint") that

Defendant NCDPS is intentionally discriminating against Plaintiff Dana Caraway on the

basis of her sex by only offering her a healthcare coverage plan that excludes from its

coverage "gender-confirming healthcare" treatment for transgender individuals like Ms.

Caraway who suffer from gender dysphoria. ECF-75 at ¶¶ 175-88 ("COUNT IV").

Plaintiffs contend NCDPS has thus violated Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), by providing discriminatory compensation, terms, conditions, and privileges of employment. ECF-75 at ¶¶ 175-88. For this alleged Title VII violation, Plaintiffs seek declaratory and injunctive relief, as well as compensatory damages, including for alleged out-pocket expenses and emotional distress. ECF-75 pp. 45-46; Ex. 1 p. 15, ¶ 14; pp. 18-19, ¶¶ 19, 20.

The healthcare coverage plan offered by Defendant NCDPS is the only healthcare coverage plan the agency is authorized by law to offer, namely, the North Carolina State Health Plan for Teachers and State Employees ("Defendant NCSHP" or the "State Health Plan" or the "Plan"). Plaintiffs seek relief from Defendant NCDPS, despite North Carolina statutory law and other applicable authorities plainly requiring NCDPS to provide the State Health Plan as its employees' only healthcare coverage option and precluding it from offering any viable alternatives.

Defendant NCDPS now moves the Court for summary judgment on the grounds that the record evidence establishes that there are no genuine issues of material fact and that it is entitled to prevail as a matter of law. The record evidence demonstrates Plaintiffs have no standing to sue NCDPS under Title VII. This Court therefore lacks jurisdiction and should dismiss Plaintiffs' action as against NCDPS. Defendant NCDPS is also entitled to prevail because Plaintiffs cannot establish that NCDPS actually committed a Title VII violation.

**STATEMENT OF THE CASE**

The original group of Plaintiffs, all current or former employees or dependents of current or former employees of certain North Carolina state universities (collectively "University Defendants") enrolled in the State Health Plan, commenced the present action by Complaint (the "Original Complaint") filed with this Court on March 11, 2019. ECF-1. Plaintiffs named as defendants the University Defendants, the State Health Plan, North Carolina State Treasurer Dale Folwell ("Defendant State Treasurer"), and State Health Plan Executive Administrator Dee Jones ("Defendant Plan Executive Administrator"). *Id.* In their Original Complaint, Plaintiffs alleged they were transgender individuals suffering from gender dysphoria. *Id.* at ¶¶ 1, 57-123. They contended that the State Health Plan's exclusion of coverage for gender-confirming healthcare treatment for gender dysphoria violated their Equal Protection Rights under the federal Constitution, Title IX of the of the Education Amendments of 1972, and the Patient Protection and Affordable Care Act. *Id.* at ¶¶ 124-57. Plaintiffs and the University Defendants have since entered into a settlement agreement, and upon the parties' request, the Court dismissed with prejudice Plaintiffs' claims against the University Defendants. ECF-110 and -112. Defendant NCSHP pursued an interlocutory appeal of this Court's order denying its motion to dismiss, about which a petition for writ of certiorari is currently pending in the United States Supreme Court. ECF-50, -51, -52, -113, -114, -118, and -127.

With permission of the Court, Plaintiffs filed their Amended Complaint on March 9, 2021, adding Plaintiff Caraway as a plaintiff, NCDPS as a defendant, and the Title VII

claim detailed in the *Statement of the Case* above. ECF-75. Defendant NCDPS filed an answer on April 16, 2021. ECF-96. The parties completed discovery in October 2021, and all dispositive motions are due today, November 30, 2021. *9/28/2021 and 10/06/2021 Text Orders.*

## STATEMENT OF THE FACTS

All Plaintiffs, including Plaintiff Caraway, allege in their Amended Complaint that they are transgender individuals who have been diagnosed with gender dysphoria. ECF-75 at ¶¶ 7-12 and 66-138. To define the term "transgender," Plaintiffs rely upon the description thereof in *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021). Ex. 1 pp. 17-18, ¶ 18. According to *Grimm*, transgender individuals are those "people who 'consistently, persistently, and insistently' express a gender that, on a binary, we would think of as opposite to their assigned sex." *Grimm*, 972 F.3d at 594 (citations omitted).

Plaintiffs also allege that gender dysphoria is a medical condition transgender individuals can suffer when "an incongruence they feel between gender identity and the body's other sex characteristics" results in "a feeling of clinically significant stress and discomfort born out of experiencing that something is fundamentally wrong." ECF-75 at ¶ 32. According to Plaintiffs, "gender dysphoria can also result in severe anxiety, depression, and suicidal ideation or suicide without adequate treatment." *Id.* at ¶ 33.

Plaintiff Caraway is a current employee of Defendant NCDPS and is enrolled in the State Health Plan. ECF-75 at ¶¶ 132-33; ECF-96 at ¶¶ 132-33. The State Health Plan does

not purchase health insurance for state employees like Plaintiff Caraway. It administers a self-funded comprehensive group healthcare coverage plan to eligible North Carolina state employees. *See* N.C.G.S. § 135-48.2(a) (2019); Ex. 2 p. 14. More specifically, the Plan provides certain pharmacy, mental health, and medical care benefits. ECF-75 at ¶ 49; ECF-96 at ¶ 49; *see, e.g., 2021 Employee Benefit Booklets*, available at https://bit.ly/2JiG2gr (last visited Nov. 29, 2021). It offers three plan options to eligible state employees. ECF-75 at ¶ 48; ECF-96 at ¶ 48; *see, e.g., 2021 Employee Benefit Booklets*, available at https://bit.ly/2JiG2gr. These benefits are provided via contracts between the State Health Plan and what relevant statutes term "claims processors" selected by the Plan. *See* N.C.G.S. § 135-48.32(a) (2019). Blue Cross and Blue Shield of North Carolina serves as the claims processor for the three above-noted plans, and CVS Caremark administers the pharmacy benefits. ECF-75 at ¶ 48; ECF-96 at ¶ 48.

The Office of Defendant State Treasurer administers and operates the State Health Plan and, among myriad other duties, sets "benefits, premium rates, co-pays, deductibles, and coinsurance percentages and maximums, subject to approval by the Board of Trustees." N.C.G.S. §§ 135-48.20, -48.22, -48.24(b), and -48.30(a) (2019). Defendant Plan Executive Administrator is appointed by Defendant State Treasurer and has several duties and responsibilities in managing the Plan. *See* N.C.G.S. §§ 135-48.23, and -48.24(a) (2019); Ex. 2 p. 14. Defendant State Treasurer, Defendant Plan Executive Administrator, and the Plan's Board of Trustees "carry out their duties and responsibilities as fiduciaries for the Plan." N.C.G.S. § 135-48.2(a).

Relevant to the instant case, since the 1990's, with the exception of the 2017 plan year, Defendant NCSHP has not provided coverage for the following: (1) "Psychological assessment and psychotherapy treatment in conjunction with proposed gender transformation"; and (2) "Treatment or studies leading to or in connection with sex changes or modifications and related care." Ex. 2 p. 16; *Minutes of Dec. 1-2, 2016 Board Meeting* pp. 6-8, available at https://bit.ly/2KVkhqr (last visited Nov. 29, 2021)); *see, e.g.*, *2021 Employee Benefit Booklets*, available at https://bit.ly/2JiG2gr (70/30 Plan Booklet pp. 51, 55; 80/20 Plan Booklet pp. 51, 56; High-deductible Plan Booklet pp. 48, 52). Plaintiff's definition of "gender-confirming health care" includes, but is not limited to, the above-noted treatments, studies, and assessments. *See generally* ECF-75 at ¶¶ 40-42; Ex. 3 at ¶¶ 11-12.

Defendant NCDPS is an agency of the State of North Carolina and is an employer as defined in Title VII. ECF-75 at ¶ 18; ECF-96 at ¶ 18. Defendant NCDPS has no independent authority or control over the benefits the State Health Plan offers qualified North Carolina employees. *See* N.C.G.S. § 135-48.1 *et seq.* (2019); *see also* Ex. 4 at ¶ 3; Ex. 4A at ¶ 22. North Carolina law prohibits State agencies, including Defendant NCDPS, from providing any general health insurance policies or health insurance coverage other than what is offered through the State Health Plan, including supplemental health insurance policies covering gender-confirming health care. S*ee* N.C.G.S. §§ 143B-601, 135-48.2(a), 135-48.22, 135-48.23, 135-48.30(a), 135-48.42(a), and 150B-51(b)(2) (2019); *Advisory Ops. from N.C. Atty Gen.*, dated Nov. 2, 1995, Oct. 3, 2001, and Mar. 26, 2002 (attached

to Ex. 4A as Exs. B, C, and D); *see also* NC Const. Art. III, § 11 ("[A]ll administrative departments, agencies, and offices of the State and their respective functions, powers, and duties shall be allocated by law . . . ."); *see also* Ex. 4 at ¶ 3; Ex. 4A. at ¶ 22. No North Carolina statute "provides requisite authority for Defendant [NC]DPS to offer any other health plan other than the State Health Plan, even if Defendant [NC]DPS desired to do so- including for medical treatments related to gender, gender identity, nonconformity with sex stereotypes, transgender status, and gender transition." Ex. 4A at ¶ 22.

## ARGUMENT

### *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the moving party has the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. An issue is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*,

550 U.S. 372, 380 (2007). "'[M]ere speculation,' however, cannot create a genuine factual dispute, nor can 'the building of one inference upon another.'" *DAG Petroleum Suppliers, L.L.C. v. BP P.L.C.*, 268 F. App'x 236, 242 (4th Cir. 2008) (citation omitted). The "opponent [to a proper summary judgment motion] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]" *Scott*, 550 U.S. at 380. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue [exists].'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## ARGUMENT

I. **PLAINTIFF CARAWAY LACKS STANDING TO BRING A TITLE VII CLAIM AGAINST NCDPS, BECAUSE HER ALLEGED INJURY IS NOT TRACEABLE TO ANY CONDUCT BY NCDPS.**

As noted above, Plaintiffs allege on behalf of Plaintiff Caraway that Defendant NCDPS violated Title VII because it offered her a healthcare coverage plan that excludes coverage of gender-confirming health care on the basis of her sex. ECF-75 at ¶¶ 175-88.

A critical component of Article III standing is absent from Plaintiffs' claim against NCDPS, causation. The State Health Plan made the healthcare coverage decision about which Plaintiffs complain. Defendant NCDPS did not make the decision as a matter of fact,

nor could it as a matter of law. Accordingly, Plaintiffs' claims brought on behalf of Plaintiffs Caraway against Defendant NCDPS fail for lack of standing.

## A. Applicable Law

### 1. Standing

"Article III of the U.S. Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (quoting U.S. Const. art. III, § 2). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)).

> To invoke federal jurisdiction a plaintiff bears the burden of establishing three "irreducible minimum requirements" of Article III standing:
>
> (1) an injury-in-fact (*i.e.*, a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.*, a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Beck*, 848 F.3d at 269 (quoting *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013) (internal alterations and quotation marks omitted)). "When standing is challenged, the plaintiff bears the burden of proving each of these prongs." *Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F. Supp. 2d 510, 515 (D. Md. 2010) (citing *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002)).

Plaintiffs satisfy their burden to establish they have standing "in the same way as any other matter on which [a] plaintiff bears the burden of proof, *i.e.*, with the manner and

degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage," trial courts "presume that general factual allegations embrace those specific facts that are necessary to support the claim," and therefore, such "allegations of injury resulting from the defendant's conduct may suffice to survive a motion to dismiss." *Id.* (citation, internal quotation marks, and alteration omitted).

"In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* (quoting Fed. R. Civ. P. 56(e)).

### 2. Title VII

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). "Health insurance and other fringe benefits are [considered] 'compensation, terms, conditions, or privileges of employment.'" *See Newport News Shipbuilding and Dry Dock Co. v. Equal Emp't Opportunity Comm'n*, 462 U.S. 669, 682 (1983) (quoting 42 U.S.C. § 2000e-2(a)(1)).

Plaintiffs allege in their Amended Complaint that NCDPS "intentionally violated Title VII," thereby indicating they are alleging a Title VII violation based upon disparate treatment. ECF-75 at ¶ 187. Absent direct evidence, to establish a prima facie case of sex

discrimination under Title VII based upon disparate treatment with regards to compensation, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Servs*., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

**B. Plaintiffs cannot show any alleged harm is traceable to Defendant NCDPS because the General Assembly granted sole authority to Defendant NCSHP to establish and implement healthcare coverage under the State Health Plan.**

To meet the requirements for standing to sue Defendant NCDPS, Plaintiffs must show that the alleged harm, denial of medical claims by Defendant NCSHP, is somehow traceable to NCDPS. This they cannot do.

"With respect to the traceability element, the [Fourth Circuit] has reasoned that '[t]he injury must be fairly traceable to the challenged action[.]'" *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 623 (4th Cir. 2018) (citation omitted). "Thus, a plaintiff must show that the actual or threatened injury complained of in the case is 'fairly . . . traceable to the challenged action of the defendant.'" *Crutchfield v. U.S. Army Corps of Eng'rs*, 230 F. Supp. 2d 687, 694 (E.D. Va. 2002) (quoting *Lujan*, 504 U.S. at 560) (alterations in original). In other words, "[p]laintiffs must demonstrate that the injury they have suffered was caused by the challenged conduct of Defendants, and not by the independent action of some third party." *Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474, 481 (M.D.N.C. 2004) (citations omitted). The criterion does not require a plaintiff to show the causation required to sustain a tort claim. *Libertarian Party of Va. v. Judd*, 718

F.3d 308, 315-16 (4th Cir.), *cert. denied*, 571 U.S. 1071 (2013). Rather, it requires only a "sufficient connection between the plaintiff's injury and the conduct of the defendant," *id.* at 316, sometimes characterized as a "genuine nexus" between the two. *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000). Such a requirement ensures that a plaintiff's injury is "not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citation, internal quotation marks, and alteration omitted); see *also* 13A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3531.5 (3d ed. 1998), Westlaw (database updated Apr. 2021) (indicating that standing's traceability requirement can raise an issue of whether plaintiffs have "sued the wrong defendant.").

In the case at bar, while it is undisputed that NCDPS employs Plaintiff Caraway, it is also undisputed that the agency did not make any alleged decision regarding the healthcare coverage terms that Plaintiffs allege are discriminatory. The alleged challenged conduct was committed solely by Defendant NCSHP -- the state administrative agency with the authority and responsibility for administering the State Health Plan -- and not by Defendant NCDPS.

One of the most basic principles of administrative law is that a state administrative agency is an "inanimate, artificial creature of statute." *High Rock Lake Partners, LLC v. N.C. Dep't of Transp.*, 366 N.C. 315, 318, 735 S.E.2d 300, 303 (2012). "Its form, shape, and authority are defined by the Act by which it was created." *Id.* (citation omitted). "It is as powerless to exceed its authority as is a robot to act beyond the limitations imposed by

its own mechanism." *Id.* A state agency "possesses only those powers expressly granted to it by our legislature or those which exist by necessary implication in a statutory grant of authority." *Id.* at 319, 735 S.E.2d at 303 (citing *Lee v. Gore*, 365 N.C. 227, 230, 717 S.E.2d 356, 359 (2011)). And state agencies are statutorily and constitutionally required to remain within the confines of the authority granted to them by the General Assembly. *See* N.C.G.S. § 150B-51(b)(2) (setting forth redress if state agencies act "[i]n excess of the statutory authority or jurisdiction of the agency"); N.C. Const. art. III, § 11 (requiring that "all administrative departments, agencies, and offices of the State and their respective functions, powers, and duties shall be allocated by law").

The North Carolina General Assembly has delegated to NCDPS several powers and duties, none of which includes the power to administer the State Health Plan. *See* N.C.G.S. § 143B-601. More importantly, the General Assembly specifically and solely authorized the State Treasurer, Executive Administrator, and the Board of Trustees of the State Health Plan to administer the Plan. *See* N.C.G.S. § 135-48.2(a) ("The State of North Carolina undertakes to make available a State Health Plan . . . exclusively for the benefit of eligible employees, eligible retired employees, and certain of their eligible dependents, which will pay benefits in accordance of the terms of this Article."). The State Treasurer, Executive Administrator, and Board of Trustees are the sole fiduciaries for the Plan. *Id*. The Board of Trustees has the statutory duty to approve the benefits programs, the State Treasurer appoints staff to assist with implementation of the State Health Plan, and the State Treasurer retains the statutory authority to "administer and operate the State Health Plan."

*See* N.C.G.S. §§ 135-48.22, -48.23, and -48.30(a). Furthermore, all "benefits shall be provided under contracts between the [State Health] Plan and the claims processors selected by the Plan." N.C.G.S. § 135-48.32(a). Thus, by statute, NCDPS has no fiduciary duty over the State Health Plan, does not select or administer its terms, has no authority over the Plan's benefits or exclusions or claims processing, and has no authority with respect to the decisions made as to what medical procedures will or will not be covered by the State Health Plan.

In fact, even if NCDPS wished to offer a different health insurance plan as a fringe benefit to their employees outside of the State Health Plan, they could not. This is because state law *requires* Defendant NCDPS to offer the State Health Plan to their current and former employees.[1] *See* N.C.G.S. § 135-48.42(a) (2019) (providing that all "new employees *must* be given the opportunity to enroll [in the State Health Plan] . . . ." (emphasis added)). Plan participants employed by Defendant NCDPS are eligible to participate in the Plan only because North Carolina law classifies them as state employees. *See* N.C.G.S. § 135-48.2(10) and -42(a).

The North Carolina General Assembly has not provided express or implied authority

---

[1] For comparison, local government units in North Carolina, unlike state agencies, may decide whether or not to participate in the State Health Plan and to offer its coverage to their employees. *See* N.C.G.S. § 135-48.47(a) (2019). No such option is provided to Defendant NCDPS or other State agencies, because participation in the State Health Plan is determined by someone's status as a State employee, not by any decision or action of the State employing unit.

for Defendant NCDPS to purchase or offer any plan other than Defendant NCSHP's State Health Plan. As such, Defendant NCDPS -- even if it desired to do so -- cannot purchase or offer a separate health plan. *See also Advisory Ops. of the N.C. Atty Gen.*, dated Nov. 2, 1995 and Mar. 26, 2002 (attached to Ex. 4A as Exs. C and D) (concluding that without express or implied authorization to do so, an individual State agency cannot purchase separate liability insurance for its employees). As Defendant NCDPS's insurance regulation expert, former North Carolina Insurance Commissioner Wayne Goodwin, points out in his report, "[a]s currently interpreted by the Attorney General of North Carolina, North Carolina law prohibits State agencies, including Defendant [NC]DPS, from providing any general health insurance policies or health insurance coverage other than what is offered through the State Health Plan, including supplemental health insurance policies for gender confirming care." Ex. 4A at ¶ 3.

The assertions and opinions of Jamison Green, Ph.D., Plaintiffs' proffered expert in "transgender health care access issues," are not in opposition to Mr. Goodwin's assertions or opinions and evince no factual dispute among the parties. Ex. 5 at ¶ 4. Dr. Green does opine that employers "whose health insurance plans contain an exclusion for gender confirming care have a variety of viable options that can be utilized to provide their transgender employees with access to that care." Ex. 5 at ¶¶ 3, 26. However, as Mr. Goodwin notes, North Carolina state government agencies, including Defendant NCDPS, are unable to provide, and are in fact prohibited from providing, the options Dr. Green identifies for coverage of gender confirming care to transgender employees and their

eligible dependents. Ex. 4A at ¶ 3. Dr. Green's opinion as to what health benefits employers can provide is not specific to North Carolina state agencies. It does not account for the realities facing those agencies, including that North Carolina statutes and other authority noted above do not authorize, and even prohibit them, from providing such coverage. *See* Ex. 4A at ¶¶ 19-27, 30-37.

Moreover, even if North Carolina State agencies like NCDPS were authorized to provide supplemental coverage, such coverage could not duplicate the coverage provided by the State Health Plan. Ex. 4A at ¶¶ 26-27 and 31; *cf. Advisory Ops. of N.C. Atty Gen.*, dated October 3, 2001 (attached to Ex. 4A as Ex. D) (opining that certain types of voluntary indemnity plans for State employees were not duplicative and were therefore permitted under this statute). In other words, such a supplemental plan would have to cover *only* gender-confirming healthcare treatments, *id.,* and offering health insurance solely for gender-confirming care is not a viable option for NCDPS. To the knowledge of former Commissioner Goodwin, there is no health insurance plan which only covers gender-confirming health care. Ex. 4A at ¶¶ 26 and 31. Plaintiffs present no evidence to the contrary. Mr. Goodwin also explains why the other possibilities for coverage referenced by Dr. Green are not viable options for NCDPS. *Compare* Ex. 4A at ¶¶ 19-27, 30-37, *with* Ex. 5 at ¶¶ 21-25. Here again, this creates no factual dispute, given Dr. Green's opinion does not take North Carolina law into consideration. Indeed, there is no genuine dispute as to any material fact. The only viable healthcare coverage option NCDPS can offer employees is the State Health Plan, an option about which NCDPS has no authority to

17

define the scope of its coverage. On these facts, Plaintiffs cannot establish traceability and therefore fail to satisfy a critical requirement for Article III standing.

Prior to this Court's dismissing Plaintiffs' claims against University Defendants following the parties' settlement, those defendants filed a motion to dismiss alleging, among other things, lack of subject matter jurisdiction based upon arguments similar to those Defendant NCDPS advances in the instant memorandum of law. *See* ECF-30 and -31. The Court rejected the University Defendant's arguments, concluding that Plaintiffs satisfied Article III standing requirements. ECF-45.

That decision does not bind the Court to reject Defendant NCDPS's arguments supporting its motion for summary judgment. Nor is it persuasive. The Court's rejection of University Defendants' arguments came at a different stage in the litigation. Because the University Defendants filed a motion to dismiss, the Court was required to and did rely on the allegations in Plaintiffs' Original Complaint. ECF-45 p. 8; *see Lujan,* 504 U.S. at 561. The Court itself recognized this in denying the motion to dismiss. ECF-45 p. 8. A different standard now applies, requiring Plaintiffs to fully support their allegations. S*ee Lujan,* 504 U.S. at 561. This they have not done.

Post-discovery, Plaintiffs have not provided any support for the allegations in their Amended Complaint by which they attempt to sustain their claim that Defendant NCDPS is liable under Title VII. It is undisputed, and the relevant evidence supports, that Defendant NCDPS did not make the decision to exclude gender-confirming healthcare coverage from the State Health Plan. Nor did NCDPS have any authority to choose a healthcare coverage

option for its employees other than what was offered through the Plan. Moreover, even assuming NCDPS could provide a coverage option for gender-confirming healthcare treatment, such an option cannot duplicate any coverage provided by the State Health Plan, and that type of coverage option simply does not exist. There is no evidence to show NCDPS and NCSHP had any type of relationship rendering NCDPS liable under Title VII, or that NCDPS itself delegated any authority to NCSHP to administer healthcare coverage to its employees. This is primarily because, as discussed *supra*, NCDPS did not have any authority to delegate that responsibility.

Finally, it is undisputed that certain statutory provisions require Defendant NCDPS to have some contact with the State Health Plan. *See, e.g.*, N.C.G.S. §§ 135-48.1(13), -48.37A, and -48.46 (2019); *see also* Ex. 6 pp. 3-4, ¶¶ 3a, 3b, and 4. However, none of that contact supports Plaintiffs' allegations in their Amended Complaint regarding their incorrect characterization of the relationship between NCDPS and the Plan. *See* ECF-75 at ¶¶ 20, 21, 22, 23, 179, 180, 181. Most importantly, absolutely nothing about NCDPS's contact with the State Health Plan concerns the selection of healthcare benefits and in no way makes the harm here, denial of coverage for gender-confirming health care, traceable to NCDPS. Rather, NCDPS's contact with the Plan consists solely of ministerial duties, and the majority of those duties are strictly dictated by statute. *See, e.g.*, N.C.G.S. §§ 135-48.1(13), -48.37A, and -48.46. Even under those statutes, it is the Plan and its fiduciaries which direct decision making and have ultimate decision-making authority. *Id.* And NCDPS has no power to negotiate or control its statutory duties. At bottom, "[b]ecause the

State Health Plan is self-funded and empowered by statute to determine, define, adopt, and remove healthcare benefits and exclusions--as also alleged in the Plaintiffs' Complaint--Defendant [NC]DPS is required to act within the confines of the State Health Plan's authority and control." Ex. 4A at ¶ 20. Here again, NCSHP's decision to, as Plaintiffs allege, not provide coverage for gender-confirming treatment, is simply not traceable to NCDPS. Accordingly, Plaintiffs fail to satisfy the requirements for standing, and their Title VII claim against NCDPS should be dismissed.

At least one other district court reached a similar conclusion based upon facts which were analogous to those in the present case. In *Boyden v. Conlin*, No. 17-cv-264, 2018 U.S. Dist. LEXIS 79753, *2-*6 (W.D. Wis. May 11, 2018) (unpublished order attached as Ex. 7), transgender Plaintiffs, employees of a state university system, sued, among other defendants, the university system's board of regents and university officials in federal district court. Plaintiffs raised a Title VII claim, among others, alleging discrimination because the healthcare coverage provided to them by the university system as a benefit of their employment, a state group health insurance plan, did not cover treatments for gender dysphoria. *Id.* at *2-*6. The district court dismissed the action as against defendant university board and officials at the pleading stage. *Id.* at *8-*10. The court pointed out that the only action Plaintiffs alleged the defendant university board and officials took was to hire the plaintiffs, making them eligible for the state group health insurance plan. *Id.* at *9-*10. The court concluded the defendant board and officials "themselves, therefore, played no role in selecting, offering or providing that health insurance. As such, plaintiffs

[were] unable to trace causation back fairly to the [defendant regents], and those defendants must be dismissed for lack of standing." *Id.* at *10 (footnote omitted); *see also Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (dismissing action brought against Louisiana's governor and attorney general in which the plaintiffs sought to enjoin the operation of a state statute because, among other reasons, there was no allegation that the governor or attorney general committed any act which "caused, will cause, or could possibly cause any injury to [the plaintiffs]").

Here, Plaintiffs alleged in their Amended Complaint that Plaintiff Caraway was an employee of NCDPS. *See, e.g.*, ECF-75 at ¶ 12. Plaintiffs made additional allegations in their Amended Complaint. But the other allegations possibly relevant to establishing the alleged harm, denial of medical claims by Defendant NCSHP, is somehow traceable to NCDPS are, at this stage of the litigation, unsupported by any evidence. As in *Boyden*, NCDPS's decision to hire Plaintiff Caraway alone does not establish the necessary nexus between NCDPS and the alleged harm, denial of medical claims by Defendant NCSHP based upon its exclusion of coverage for gender-confirming healthcare treatment. NCDPS "played no role in selecting, offering or providing [the State Health Plan]. As such, [P]laintiffs are unable to trace causation back fairly to [NCDPS]," and the claim against NCDPS "must be dismissed for lack of standing." *Boyden*, No. 17-cv-264, 2018 U.S. Dist. LEXIS 79753, at *10 (footnote omitted).

In light of the statutory realities, it is clear that any alleged injury of Plaintiff Caraway's is traceable only to Defendant NCSHP and not to Defendant NCDPS. Plaintiffs

have therefore failed to establish Plaintiff Caraway's standing to bring a Title VII claim against Defendant NCDPS, and the claim should be dismissed.

## II. DEFENDANT NCDPS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS CANNOT ESTABLISH THE CAUSATION NECESSARY TO PROCEED UNDER TITLE VII.

As indicated, Plaintiffs are claiming that NCDPS violated Title VII by providing Plaintiff Caraway with discriminatory compensation, terms, conditions, and privileges of employment. ECF-75 at ¶¶ 175-88. Because Plaintiffs cannot prove the causation necessary to substantiate Plaintiff Caraway's Title VII claim against NCDPS, NCDPS is entitled to summary judgment, and the Title VII claim against NCDPS should be dismissed.

"Causation in fact . . . is a standard requirement of any tort claim," including claims of employer discrimination brought under federal statutes. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346 (2013). It requires "proof that the defendant's conduct did in fact cause the plaintiff's injury." *Id.* "Although causation is generally a factual question for the jury, it becomes a question of law in cases where reasoning minds cannot differ." *Doe v. Bd. of Educ.*, 982 F. Supp. 2d 641, 662 (D. Md. 2013) (citations and internal quotation marks omitted), *aff'd per curiam*, 605 Fed. Appx. 159 (4th Cir. 2015) (unpublished).

In the present case, "reasoning minds cannot differ." *Id.* None of the evidence gathered in discovery establishes that NCDPS's conduct "did in fact cause [Plaintiff Caraway's alleged] injury." *Nassar*, 570 U.S. at 346. As discussed in detail *supra*, it is undisputed, and the relevant evidence establishes, that Defendant NCDPS did not make the decision to exclude gender-confirming healthcare from the State Health Plan. Nor did

NCDPS have any authority to choose a healthcare coverage option for its employees other than what was offered through the Plan. Moreover, offering its employees non-duplicative coverage for gender-confirming health care to supplement what coverage is provided to employees under the Plan is not a viable option, even if the law does not prohibit NCDPS from providing such coverage. There is no evidence to show NCDPS and NCSHP had any type of relationship rendering NCDPS liable under Title VII, or that NCDPS itself delegated any authority to NCSHP to administer healthcare coverage to its employees.

It follows that Plaintiffs are unable to prove Defendant NCDPS caused the alleged injury and, thus, unable to prove the causation necessary to establish its Title VII claim against NCDPS. It follows that NCDPS is entitled to summary judgment, and the Title VII claim against the agency should be dismissed.

## CONCLUSION

For the reasons set forth herein, Defendant NCDPS respectfully requests that its Motion for Summary Judgment be granted and that the Title VII claim asserted in this action against it be dismissed.

This the 30th day of November, 2021.

**JOSHUA H. STEIN**
**ATTORNEY GENERAL**

JOSHUA H. STEIN
Attorney General

/s/ James B. Trachtman
James B. Trachtman
Special Deputy Attorney General
N.C. State Bar No. 22360
N.C. Department of Justice
Public Safety Section
P. O. Box 629
Raleigh, North Carolina 27602-0629
Telephone:  (919) 716-6943
Facsimile:  (919) 716-6761
E-Mail:  jtrachtman@ncdoj.gov

## CERTIFICATE OF WORD COUNT

The undersigned counsel hereby certifies that the foregoing **NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** contains less than 6,250 words. This count includes the body of the brief and headings, but does not include the caption, signature lines, this certificate or the certificate of service. As such, this brief complies with Local Rule 7.3(d)(1).

DATED:  November 30, 2021.

/s/ James B. Trachtman
James B. Trachtman
Special Deputy Attorney General

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date indicated above, I electronically filed the foregoing **NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will provide electronic notification to counsel.

DATED:  November 30, 2021.

/s/ James B. Trachtman
James B. Trachtman
Special Deputy Attorney General
