**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

|  |  |
|---|---|
| MAXWELL KADEL, et al., | |
| *Plaintiffs*, | |
| v. | No. 1:19-cv-00272-LCB-LPA |
| DALE FOLWELL, et al., | |
| *Defendants*. | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT NORTH CAROLINA,
DEPARTMENT OF PUBLIC SAFETY'S MOTION FOR SUMMARY
JUDGMENT**

# TABLE OF CONTENTS

I.    Introduction......................................................................................................1

II.   Facts .................................................................................................................1

III.  Argument ..........................................................................................................4

    A.    DPS incorrectly argues that no one is liable under Title VII
        for its discrimination against Sgt. Caraway because the State
        has created a separate agency to administer the Plan............................4

    B.    Sgt. Caraway has standing to sue DPS.................................................8

        i.    Causation....................................................................................8

        ii.   Redressability..........................................................................14

    C.    DPS's merits argument is unavailing because DPS caused
        Sgt. Caraway's injury.........................................................................17

IV.   Conclusion ......................................................................................................18

## I. Introduction

Defendant State of North Carolina, Department of Public Safety ("DPS") seeks summary judgment on three grounds. First, it argues that it is legal for the State to provide Plaintiff Sgt. Dana Caraway with discriminatory health coverage because even though DPS is her employer, it is purportedly not responsible for the terms of her health coverage (the "Plan"); and although the North Carolina State Health Plan for Teachers and State Employees ("NCSHP") is purportedly responsible for the Plan, it is not her employer. This argument is as contrary to Title VII as it sounds. Second, DPS argues that, because it does not set the Plan's terms, and is required under state law to provide the Plan to her, Sgt. Caraway does not have standing to sue it. But this ignores the fact that DPS offers and provides the Plan, and that in doing so it takes numerous actions that cause Sgt. Caraway injury, which this Court can redress—and also, that it is legally irrelevant whether state law obliges DPS to discriminate. Third, DPS repackages its standing argument as a merits argument, but this fails for the same reason as its standing argument. Sgt. Caraway respectfully requests that the Court deny DPS's motion and instead grant summary judgment to Sgt. Caraway. *See* Pls.' Mot. Summ. J., ECF No. 178.

## II. Facts

DPS is an employer within the meaning of Title VII. DPS's Answer Am. Compl. ¶ 18, ECF No. 96; NCSHP's Answer Am. Compl. ¶ 18, ECF No. 85; Joint Mot. for Entry of

1

Stipulation, ECF No. 104-1; Order Granting Stipulation, ECF No. 105; Ex.[1] 7 Admis. 1. Part of the compensation DPS provides its employees is the Plan. ECF No. 96 ¶ 18; Ex. 4 Admis. 6; Ex. 12, 88:10-89:25. Sgt. Caraway is a longstanding employee of DPS, which requires her to have health coverage, and so she has been a Plan member since her hiring. Caraway Decl. ¶¶ 2, 16, ECF No. 179-9.

NCSHP is self-funded and determines what health plans "are available to state employees through their employment." ECF No. 96 ¶ 179; Ex. 14, 13:3-14:6. DPS provides its employees access to the Plan in several ways. Ex. 12, 88:10-89:25. Designated DPS employees are health benefit representatives who facilitate their colleagues' enrollment in NCSHP coverage upon hiring and during annual open enrollment, and serve as "first line of contact" for questions about their coverage. Ex. 14, 24:11-13, 16:23-17:11; Ex. 12, 90:6-8. DPS staff verify newly hired employees' eligibility to enroll in NCSHP. Ex. 12, 88:22-90:5. They enter information that allows the State Controller to deduct the employees' premiums. Ex. 12, 90:19-24. When a DPS employee requests a change to health insurance because of a qualifying life event, DPS staff review relevant documents and decide whether to approve the requested change. Ex. 14, 14:18-16:22. DPS can request an exception from NCSHP to allow an employee to reenroll after losing coverage for non-payment. Ex. 6 Interrog. 3(b); Ex. 14, 28:3-29:12. DPS contributes $521.96 per employee per month to fund the Plan. Ex. 7 Admis. 2; Ex. 14, 10:16-11:18.

---

[1] All references to "Ex." refer to exhibits attached to the Declaration of Amy Richardson filed at ECF No. 180.

The Plan categorically excludes coverage of "[p]sychological assessment and psychotherapy treatment in conjunction with proposed gender transformation" and "[t]reatment or studies leading to or in connection with sex changes or modifications and related care" (the "Exclusion"). Exs. 8-9.[2] The Exclusion bars coverage of gender-confirming care to alleviate gender dysphoria, which necessarily affects transgender people, as gender dysphoria, by definition, is the clinically significant distress or problems with functioning that may be associated with being transgender. Ex. 24(a), ¶¶ 17-18; Ex. 26, ¶¶ 18, 26. *See also Toomey v. Arizona*, No. 19-cv-00035, 2019 WL 7172144, at *6 (D. Ariz. Dec. 23, 2019) ("[T]ransgender individuals are the only people who would ever seek gender reassignment surgery. No cisgender person would seek, or medically require, gender reassignment. Therefore, as a practical matter, the exclusion singles out transgender individuals for different treatment."). Moreover, because the Exclusion only applies to gender-confirming care, cisgender members receive coverage for medically-necessary care—such as hormone therapy, Ex. 2 Admis. 1, Ex. 5 Admis. 2; puberty-delaying hormone treatment, Ex. 5 Admis. 2; mammoplasty and breast reconstruction, Ex. 2 Admis. 2, Ex. 5 Admis. 3; vaginoplasty, Ex. 2 Admis. 3; and hysterectomy, Ex. 2 Admis. 4—that their transgender peers, because of their sex, are denied.

---

[2] NCSHP's Rule 30(b)(6) designee testified, however, that NCSHP does not enforce the first exclusion related to psychotherapy, Ex. 12, 49:8-23, and Defendants' motion clarifies that the former exclusion has not been enforced for decades and will be removed from the 2022 benefits booklets. Mem. Supp. NCSHP's Mot. Partial Summ. J. at 8 n.2, ECF No. 137. Accordingly, it is the Exclusion for "[t]reatment or studies leading to or in connection with sex changes or modifications and related care" that is at issue.

3

DPS requires Sgt. Caraway to maintain health coverage. ECF No. 179-9 ¶ 16. She contributes the same $50 per month premium as other NCSHP members, which is deducted from her DPS paycheck. ECF No. 179-9 ¶ 17; Ex. 7; Suppl. Decl. of Amy Richardson Ex. A, 109:3-11, 109:18-25.[3] Sgt. Caraway is also a transgender woman who requires gender-affirming care to alleviate gender dysphoria. ECF No. 179-9 ¶¶ 8, 19-23, 28. However, the Plan has refused to cover her care because of the Exclusion. ECF No. 179-9 ¶¶ 24, 28; Ex. 22, 64:6-10. Defendants' discriminatory denial of coverage forced Sgt. Caraway to pay out of pocket for some treatments and forgo others, at significant detriment to her health and financial cost to her. ECF No. 179-9 ¶¶ 24-33.

## III. Argument

### A. *DPS incorrectly argues that no one is liable under Title VII for its discrimination against Sgt. Caraway because the State has created a separate agency to administer the Plan.*

DPS argues it cannot be liable for the discriminatory Exclusion in the Plan because, while it is Sgt. Caraway's employer, it's not responsible for the Plan, Mem. in Supp. of DPS's Mot. Summ. J. 21-22, ECF No. 133—and in fact Sgt. Caraway does not even have standing to complain. *Id*. at 8-22. The remaining Defendants ("Plan Defendants") argue that, while they are responsible for the Plan, they cannot be held liable either, because they are not Sgt. Caraway's employer. ECF No. 137 at 20-28.

---

[3] All references to "Suppl. Decl. of Amy Richardson, Ex. A" refer to the exhibit attached to the Supplemental Declaration of Amy Richardson filed today in connection with the present brief.

This is incorrect. DPS cannot discriminate against its employees on the basis of sex, in violation of federal law, merely because the State has created a separate agency to administer employee health coverage. *See Boyden v. Conlin*, 17-CV-264-WMC, 2018 WL 2191733, at *2 (W.D. Wis. May 11, 2018) ("[D]efendants are trying to perform a sort of 'magic trick.' By arguing that only [Wisconsin's Group Insurance Board] is responsible for health insurance, but that neither GIB nor [Wisconsin's Department of Employee Trust Funds] is an employer, defendants are essentially arguing that the State of Wisconsin is entirely immunized from Title VII claims."); *Lange v. Houston Cty.*, 499 F. Supp. 3d 1258, 1272 (M.D. Ga. 2020) ("The Sheriff's Office argues that the Title VII claims should be dismissed because it has no control over setting the terms of the Plan; the County argues that the . . . Title VII claims should be dismissed because [a Sheriff's Deputy] is not a County employee. . . . The Court rejects both arguments."), *recons. denied*, 5:19-CV-392 (MTT), 2020 WL 7634054 (M.D. Ga. Dec. 22, 2020). Sex discrimination in the provision of benefits is illegal, 42 U.S.C. § 2000e-2(a)(1),[4] and "[s]ince employers are ultimately responsible for the 'compensation, terms, conditions, [and] privileges of employment' provided to employees, an employer that adopts a fringe-benefit scheme that discriminates among its employees on the basis of . . . sex . . . violates Title VII regardless of whether third parties are also involved in the discrimination." *Ariz. Governing Comm. for Tax Deferred Annuity & Deferred Comp. Plans v. Norris*, 463 U.S. 1073, 1089, 1090-91 (1983)

---

[4] *See also Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 682 (1983) ("Health insurance and other fringe benefits are 'compensation, terms, conditions, or privileges of employment' [under Title VII]").

5

("It would be inconsistent with the broad remedial purposes of Title VII to hold that an employer who adopts a discriminatory fringe benefit plan can avoid liability on the ground that he could not find a third party willing to treat his employees on a nondiscriminatory basis."); *Los Angeles, Dep't of Water & Power v. Manhart*, 435 U.S. 702, 718 n.33 (1978) ("[A]n employer can[not] avoid his responsibilities by delegating discriminatory programs to corporate shells."); *Butler v. Drive Auto. Indus. of Am., Inc*., 793 F.3d 404, 415 (4th Cir. 2015) (Title VII does not allow "an employer who exercises actual control [to] avoid Title VII liability by hiding behind another entity.").

Here, DPS and NCSHP are both liable under Title VII as Sgt. Caraway's "employer." By offering benefits with a discriminatory term set by its third-party administrator (NCSHP), and by participating in the provision of those benefits, DPS is liable under Title VII as the principal in a principal-agent relationship with NCSHP. "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (reviewing cases); *see also, e.g., Norris* at 463 U.S. at 1087-90 (state agency liable for discriminatory acts of its benefits administrator); *Manhart*, 435 U.S. at 718 n.33 (city agency liable for discriminatory acts of its benefits administrator); *Lange*, 499 F. Supp. 3d at 1271 (at motion to dismiss stage, sheriff's department may be liable for discriminatory acts of county benefits administrator); *see also generally Crowder v. Fieldcrest Mills, Inc.*, 569 F. Supp. 825, 828 (M.D.N.C. 1983) ("If [third party benefit administrators] were not

'employers,' then the purposes of Title VII . . . could be frustrated by employers delegating to such parties authority over terms and conditions of employment.").

DPS and NCSHP are also jointly and severally liable as "joint employers" of Sgt. Caraway, *see Butler*, 793 F.3d at 409-10 (adopting joint employer doctrine under Title VII to ensure "remedial purpose of Title VII" and "prevent[] those who effectively employ a worker from evading liability by hiding behind another entity") (citing *inter alia Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 310 (4th Cir. 2006) (other citations omitted)); *Schultz*, 466 F.3d at 301, 310 (joint and several liability applies to joint employers). Under the joint employer doctrine, where two or more entities "share or co-determine . . . the essential terms and conditions of employment," *both* are employers, and one does not cease to be an employer merely because the other exercises control over some aspect of the employment relationship. *Butler*, 793 F.3d at 408-10, 414 (the purpose of joint employer analysis is to "capture[] the reality of modern employment in which 'control' of an employee may be shared by two or more entities"). The principal guidepost, however, remains the common law element of control: "Otherwise, an employer who exercises actual control could avoid Title VII liability by hiding behind another entity." *Id.* at 415. Here, even assuming *arguendo* DPS is correct that NCSHP alone has "control" over the Plan, DPS nevertheless remains jointly and severally liable for NCSHP's acts as Sgt. Caraway's employer under the rule of *Butler*.

B.     *Sgt. Caraway has standing to sue DPS.*

To have Article III standing a plaintiff must prove she suffered 1) an injury in fact 2) causally connected to the defendant, 3) that is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992).   At the summary judgment stage, the plaintiff establishes standing by "set[ting] forth by affidavit or other evidence specific facts which for purposes of the summary judgment motion will be taken to be true." *Id.* at 561 (internal quotations omitted) (quoting Fed. R. Civ. Pro. 56(e)).  When a plaintiff is the object of a government action she challenges, "there is ordinarily little question that the action or inaction has caused [her] injury, and that a judgment preventing or requiring the action will redress it." *Id.* at 561–62.

i.     <u>Causation</u>

DPS does not dispute whether Sgt. Caraway suffered an injury.  ECF No. 133 at 11-12.  Instead, DPS argues that because the Plan Defendants dictate the terms of the Plan, DPS cannot have caused that injury. *Id.*  This position misstates the causal relationship required to establish standing.  Sgt. Caraway's injuries are fairly traceable to DPS.

As this Court has already ruled, Article III's standing causation requirement is not "equivalent to a requirement of tort causation."  Order Den. Mot. to Dismiss 7, ECF No. 45 (quoting *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 623 (4th Cir. 2018)).   It demands only that that the plaintiff's injury be "fairly traceable to the defendant's conduct," which "merely requires a causal connection between the defendant's conduct and the plaintiff's injury, such that 'there is a genuine nexus' between the two."

ECF No. 45 at 8 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) and *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000)).

It is unremarkable for a plaintiff to have standing to sue for an injury caused both by the defendant and a third party. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013) (concluding plaintiff had standing because the defendant was "at least in part responsible" for his injuries, "notwithstanding the presence of another proximate cause" indisputably beyond all defendants' control); *see also Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 500-01 (7th Cir. 2005) ("[A] plaintiff does not lack standing merely because the defendant is one of several persons who caused the harm." (citing *Warth v. Seldin*, 422 U.S. 490, 504-05 (1975) and *Lujan,* 504 U.S. at 562)).

In a challenge to a law or policy created by one arm of a state government and effectuated by another, the causation requirement can be met by showing the defendant implemented the challenged policy. *See, e.g., Nelson v. Warner,* 12 F.4th 376, 385 (4th Cir. 2021) (a plaintiff's injury was traceable to the representative of the state's ballot commissioner who prepared ballots "in accordance with the state's ballot-order statute")*; Baten v. McMaster,* 967 F.3d 345, 353 (4th Cir. 2020), as amended (July 27, 2020) (injury from winner-take-all electoral system enacted by legislature was fairly traceable to state election officials who "implemented and enforced" it); *Bostic v. Schaefer,* 760 F.3d 352, 372 (4th Cir. 2014) (plaintiffs' injury from Virginia statute prohibiting same-sex couples

from getting married was fairly traceable to the actions of the court clerk who issued and filed marriage licenses and to the registrar who created the license application form in accordance with state law, and affirming summary judgment). This is so even when a defendant's role in causing the harm consists of ministerial actions he is obliged to take by statute. *Strickland v. Alexander*, 772 F.3d 876, 886 (11th Cir. 2014) (plaintiff's injury was fairly traceable to county clerk following who executed obligatory "ministerial duties" related to garnishment of plaintiff's funds); *see also, e.g., Nelson*, 12 F.4th at 385; *Bostic*, 760 F.3d at 370-72.

DPS nevertheless disclaims causing Sgt. Caraway's injuries because it argues only NCSHP has authority to set the Plan's terms. ECF No. 133 at 12-13. DPS's position misconstrues the standard for tracing causation. DPS offers the Plan to Sgt. Caraway as part of her compensation and (along with NCSHP) provides it to her. This creates a genuine nexus between DPS's conduct and Sgt. Caraway's injury.

This Court, at the motion to dismiss stage, held that an adequate nexus for standing was established by allegations that the "employing unit," there the University Defendants, "'offer[ed]' . . . the Plan to Plaintiffs and 'participate[d]' . . . in its availability." ECF No. 45 at 8. The Court further opined that additional indicia of those Defendants' involvement in the Plan also supported causation, including that they funded the plan through direct contributions, and "play[ed] an active role in collecting erroneous payments" and in "settling claims." ECF No. 45 at 9. It is now established on an undisputed record that

DPS, Sgt. Caraway's employing unit, was even more involved than that in offering the Plan to its employees and participating in making it available to them.

First, DPS offers the Plan to its employees. It is part of Sgt. Caraway's compensation. Ex. 4 Admis. 6; Suppl. Decl. of Amy Richardson Ex. A, 109:3-11,18-25; Ex. 7. She is eligible for it by virtue of her employment with DPS. Ex. 12, 88:10-89:25. DPS requires Sgt. Caraway to have health insurance, and she has therefore been a member of the Plan throughout her tenure with DPS. ECF No. 179-9 ¶ 16.

Second, DPS participates in making the Plan available to its employees. DPS staff serve as health benefit representatives, who enroll their colleagues in the Plan and are the "first line of contact" for questions about insurance. Ex. 12, 90:1-18; Ex. 14, 16:23-17:11, 24:7-23. DPS staff verify newly hired employees' eligibility to enroll. Ex. 12, 89:9-90:18; Ex 14, 22:1-13. When a DPS employee requests a change to health insurance because of a qualifying life event, DPS staff review relevant documents and decide whether to approve the requested change. Ex. 14, 14:18-16:22. DPS can request an exception from NCSHP to allow an employee whose coverage lapsed for non-payment to reenroll. Ex. 6 Interrog. 3(b); Ex. 14, 28:3-29:12. DPS staff enter information that allows the State Controller to deduct the employees' premiums. Ex. 12, 90:19-24. Sgt. Caraway contributes $50 per month to the plan through a deduction from her DPS paycheck. ECF No. 179-9 ¶ 17. DPS also contributes $521.96 per employee per month to fund the Plan. Ex. 7 Admis. 2; Ex. 14, 11:3-18.

Through its actions offering the Plan and participating in its availability, DPS has more than sufficient nexus with Sgt. Caraway's injury to establish a causal connection. *See* ECF No. 45 at 8-9; *see also Bostic*, 760 F.3d at 372 (holding injury to couple denied a marriage license was traceable to the registrar of vital records by virtue of her role in creating the marriage license application form).

DPS makes two arguments to the contrary: It has no "independent authority or control over the benefits NCSHP offers," ECF No. 133 at 6, 12-14, 18-19, and it is required by law to offer the Plan and no other insurance. ECF No. 133 at 7, 14-17. Both are unavailing.

First, as discussed above, because DPS offers the plan and participates in making it available to Sgt. Caraway, her injury is fairly traceable to DPS. Article III imposes no additional requirement of "authority" or "control." DPS's characterization of its involvement as "ministerial," ECF No. 133 at 18, is likewise irrelevant. DPS cites no authority in its bid for a "ministerial" exception to standing. It is well-settled that, for standing purposes, a defendant's ministerial role in implementing a policy established or controlled by others suffices to establish causation. *See, e.g., Nelson*, 12 F.4th at 385; *Bostic,* 760 F.3d at 372; *Strickland,* 772 F.3d at 886 ("[Defendant] identifies no support for the notion that an injury cannot be deemed 'fairly traceable' to ministerial conduct. We decline to reach such a conclusion.").

Second, whether DPS is obliged by state law to provide a health plan that violates federal law is irrelevant. "Th[e] Constitution, *and the Laws of the United States which*

*shall be made in Pursuance thereof* . . . shall be the supreme Law of the Land." U.S. Const. art. VI (emphasis added). "[S]tate laws are preempted [under Art. VI] when they conflict with federal law. This includes cases where compliance with both federal and state regulations is a physical impossibility, and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (internal citations and quotation marks omitted). A state law that mandates discrimination in violation of federal law, therefore, simply must not be followed. *See, e.g., Green v. Sch. Bd. of New Kent Cty.*, 391 U.S. 430, 432-35 (1968) (after *Brown v. Board,* 347 U.S. 483 (1954), school boards could not lawfully comply with state laws mandating racial segregation in public schools).[5]

DPS's reliance on *Boyden* is misplaced because the facts of that case are different. *See* App. to Mem. in Supp. of DPS's Mot. Summ. J. at Ex. 7, ECF No. 134-8. There, the

---

[5] Because DPS's argument that state law precludes them from providing non-discriminatory coverage other than or in addition to the Plan is irrelevant, Plaintiffs do not rely on any opinions of Dr. Jamison Green, nor do they intend to call him as a witness at trial. Plaintiffs have previously advised DPS that they do not intend to rely on his report. For the same reason, the assertions of DPS's expert Wayne Goodwin in support of that argument are also irrelevant and fail to create any disputes of material fact. Sgt. Caraway's Title VII claims do not depend on contesting any of the opinions offered by Mr. Goodwin, but instead rely on the undisputed facts discussed above. In any case, most of Mr. Goodwin's opinions are legal in nature and therefore inadmissible. *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible."); *Allstate Ins. Co. v. Rochkind*, 381 F. Supp. 3d 488, 510 (D. Md. 2019) ("[T]estimony that states a legal conclusion is not admissible.").

13

court dismissed certain defendants who were alleged to have "no role in selecting, offering, or providing" the plan in question. *Boyden*, 2018 WL 2191733, at *4 (plaintiffs did not "allege any acts or omissions by the Employer Defendants" that caused their injury; "Employer Defendants did nothing more than hire the plaintiffs, making them *eligible* for group health insurance"). Here, as detailed above, it is undisputed that DPS offers the Plan to Sgt. Caraway and participates, along with NCHSP, in making it available to her and administering its implementation. Moreover, *Boyden* rejected the very same "magic trick" to make responsibility for discrimination vanish that Defendants are collectively trying to perform here. *See supra* at 5.

     ii.     <u>Redressability</u>

As a corollary of arguing it is required by state law to offer the Plan and unable to offer her anything else, DPS takes the position that Sgt. Caraway lacks standing because it cannot do anything to remedy her injury. ECF No. 133 at 14-18. Although DPS does not frame its argument as such, this is really an argument about redressability, not causation. This argument is also misplaced.

The redressability requirement of standing is met when a judgment will likely redress the plaintiff's injury. *Lujan*, 504 U.S. at 561. A plaintiff "need not show that a favorable decision will relieve their every injury," only that they "personally would benefit in a tangible way from the court's intervention." *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284-85 (4th Cir. 2018) (some internal punctuation omitted) (first quoting *Larson v. Valente*, 456 U.S. 228, 242-44 & n.15 (1982); and then quoting *Friends of the*

*Earth*, 204 F.3d at 162).  It is enough that the court can mitigate, even if not eliminate, the injury.  *Sierra Club*, 899 F.3d at 285 ("The removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability."); *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir.  2014) ("When establishing redressability a plaintiff need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm." (citation omitted)).

It is sufficient that a judgment would provide at least partial relief.  *Bostic,* 760 F.3d at 371 (holding a court order enjoining clerk and registrar of vital records from enforcing the law would redress plaintiffs' injuries).  Thus, a judgment against a state government defendant implementing a policy created by a different branch or agency of the state government satisfies the requirement, even where the defendant lacks authority to voluntarily correct the underlying violation of law.  ECF No. 45 at 9 (concluding that although only State Defendants can "formally lift the Exclusion," an order awarding damages to plaintiffs would redress their injuries); *see also, e.g., Baten*, 967 F.3d at 353 ("[I]t is within the judicial power to enjoin the *use* of an unlawful system, even though a court could not order South Carolina specifically to *adopt* the proportional system of appointing Electors, as the plaintiffs might prefer.") (emphasis added); *Bostic*, 760 F.3d at 371; *Wolfson v. Brammer*, 616 F.3d 1045, 1056-57 (9th Cir. 2010) (rejecting argument, in suit seeking injunction against officials charged with enforcing judicial ethics codes issued by state supreme court, that plaintiff lacks standing because they "cannot obtain revision

15

of the Code from these defendants," since they "may nevertheless obtain a form of effective redress in this action"). A defendant's inability to change a policy underlying the injury it is causing by effectuating the policy is immaterial once the redressability requirement is met.

So here, Sgt. Caraway has established redressability because she "personally would benefit in a tangible way from *the court's* intervention." *Sierra Club,* 899 F.3d at 284 (emphasis added). Sgt. Caraway seeks an award of monetary damages to compensate her for her out-of-pocket expenses spent on uncovered medical care and for her emotional distress. First Am. Compl. 46, ECF No. 75. An award of damages would allow Sgt. Caraway to obtain the medical care Defendants have refused to cover and make her whole from past discrimination. *See* ECF No. 45 at 9-10. It is well within this Court's power to order DPS to pay Sgt. Caraway damages, and DPS does not argue otherwise. 42 U.S.C. § 2000e-5(g) (back pay); 42 U.S.C. § 1981a (compensatory damages).

Moreover, an injunction forbidding DPS from offering Sgt. Caraway a discriminatory health plan would end its discrimination against her, thus providing a form of redress for the harm she experiences from sex discrimination—regardless of any state law that, absent the injunction, would compel DPS to discriminate. *See e.g., Baten*, 967 F.3d at 353; *Bostic,* 760 F.3d at 371; *Wolfson*, 616 F.3d at 1056-57; *cf. Green*, 391 U.S. at 432-35 (agencies not permitted to follow illegal state statutes).

DPS's reliance on *Okpalobi v. Foster*, 244 F.3d 405, 426-427 (5th Cir. 2001), is misplaced. There, the Fifth Circuit concluded plaintiffs lacked standing to sue Louisiana's

attorney general and governor over a statute creating a private right of action because the defendants were not charged with enforcing the statute, nor could they prevent private parties from bringing suit. *Id.* Here, as detailed above, DPS offers the Plan to Sgt. Caraway and participates in providing it to her, and accordingly an injunction or award of damages against DPS will redress her injuries.

C.    *DPS's merits argument is unavailing because DPS caused Sgt. Caraway's injury.*

DPS additionally argues it should be awarded summary judgment on the merits of Sgt. Caraway's Title VII claim because it has not caused her injury. This argument fails for the same reasons that it does as a standing argument. By offering the Plan, and providing it together with NCSHP, DPS did cause Sgt. Caraway's injury. *See supra* at 11.

"When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1739 (2020) ("This can be a sweeping standard. Often, events have multiple but-for causes. So, for example, if a car accident occurred *both* because the defendant ran a red light *and* because the plaintiff failed to signal his turn at the intersection, we might call each a but-for cause of the collision.").

Here, DPS does not contest whether sex is the but-for cause of Sgt. Caraway's injury. *See* ECF No. 133 at 8. Rather, it argues it did not cause Sgt. Caraway's injury

because it did not do anything to adopt the Plan's terms, and because it had no choice but to cause Sgt. Caraway's injury, because that is what state law requires. *Id.* at 21-22.

DPS's argument fails because, even if true, it does not negate all of the acts DPS *does* undertake in offering the Plan to its employees and participating in making it available to them, from verifying eligibility to funding the Plan to making paycheck deductions to answering employee questions. *See supra* at 2. All of these are necessary for the Plan to be provided to DPS employees, including Sgt. Caraway, and thus are a but-for cause of her injury. The fact that NCSHP wrote the Plan terms, and the argument that state law prohibits DPS from offering Sgt. Caraway anything different, are both at most additional but-for causes—which themselves may also "trigger the law," but do not leave DPS free of the obligation to comply with it.

Defendants' argument that it is "not viable" to offer supplemental coverage similarly fails as a matter of law. It is long settled that a government employer cannot evade Title VII "liability on the ground that he could not find a third party willing to treat his employees on a nondiscriminatory basis . . . ." *Norris*, 463 U.S. at 1090. There is no exception in the plain text of Title VII for employers to argue they do not need to comply with the law because they are constrained to offer only discriminatory benefits.

## IV. Conclusion

For the foregoing reasons, this Court should deny DPS' motion for summary judgment, and instead grant summary judgment to Sgt. Caraway.

Dated: December 30, 2021

Respectfully submitted,

/s/ Amy E.  Richardson
Amy E. Richardson
N.C. State Bar No. 28768
Lauren E. Snyder
N.C. State Bar No. 54150
HARRIS WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Phone: 919-429-7386 | Fax: 202-730-1301
arichardson@hwglaw.com

Deepika H. Ravi*
Grace H. Wynn*
HARRIS WILTSHIRE & GRANNIS LLP
1919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Phone: 202-730-1300 | Fax: 202-730-1301
dravi@hwglaw.com

Michael W. Weaver*
Adam M. Safer*
MCDERMOTT WILL & EMERY
444 W. Lake St., Suite 4000
Chicago, IL 60606
Phone: 312-984-5820 | Fax: 312-984-7700
mweaver@mwe.com

Dmitriy G. Tishyevich*
Warren Haskel*
MCDERMOTT WILL & EMERY
One Vanderbilt Avenue
New York, NY  10017-3852
Phone: 212-547-5534 | Fax: 646-417-7668
dtishyevich@mwe.com

Lauren H. Evans*
MCDERMOTT WILL & EMERY
500 North Capitol Street, N.W.
Washington, D.C.  20001-1531
Phone: 202-756-8864 | Fax: 202-591-2900

/s/ Tara L.  Borelli
Tara L. Borelli
Carl S. Charles*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1 West Court Square, Ste.  105
Decatur, GA 30030
Telephone: 404-897-1880
Facsimile: 404-506-9320
tborelli@lambdalegal.org

Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: 212-809-8585
Facsimile: 212-809-0055
ogonzalez-pagan@lambdalegal.org

David Brown*
Ezra Cukor*
TRANSGENDER LEGAL DEFENSE AND
EDUCATION FUND, INC.
520 8th Ave, Ste. 2204
New York, NY 10018
Telephone: 646-993-1680
Facsimile: 646-993-1686
dbrown@transgenderlegal.org

levans@mwe.com

*Counsel for Plaintiffs*

\* Appearing by special appearance pursuant to L.R. 83.1(d).

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief is in compliance with Local Rule 7.3(d)(1) because the body of this brief, including headings and footnotes, does not exceed 6,250 words as indicated by Microsoft Word, the program used to prepare this document.

Dated: December 30, 2021  /s/ Amy E. Richardson
             Amy E. Richardson
             N.C. State Bar No. 28768
             HARRIS, WILTSHIRE & GRANNIS LLP
             1033 Wade Avenue, Suite 100
             Raleigh, NC 27605-1155
             Phone: 919-429-7386
             Fax: 202-730-1301
             arichardson@hwglaw.com

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered users.

Dated:  December 30, 2021

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Phone: 919-429-7386
Fax: 202-730-1301
arichardson@hwglaw.com