IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MAXWELL KADEL, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DALE FOLWELL, in his official capacity as State Treasurer of North Carolina, *et al.*, <br><br> *Defendants*. | 1:19-cv-00272-LCB-LPA |

**REPLY BRIEF OF *AMICI CURIAE* THE AMERICAN MEDICAL ASSOCIATION AND SEVEN ADDITIONAL HEALTH CARE ORGANIZATIONS IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE AN AMICUS BRIEF**

Pursuant to L.R. 7.5, the American Medical Association ("AMA"), the American Academy of Pediatrics, American College of Obstetricians and Gynecologists, the American Psychiatric Association, the Endocrine Society, the North American Society for Pediatric and Adolescent Gynecology, National Association of Nurse Practitioners in Women's Health, and the Society of OB/GYN Hospitalists (together, "*Amici*") respectfully submit this Reply in support of their motion for leave to submit a brief as *amici curiae* (the "Motion"). As set forth below, Defendants' arguments for opposing leave to file *Amici's* brief are meritless,

1

particularly in view of the fact that several of these *Amici* already have served exactly this role on the same issues in a recent case before the Fourth Circuit.

## I. *Amici* Are Experts in their Fields, Not Expert Witnesses.

Proposed *Amici* are eight leading medical, mental health, and other health care organizations. Collectively, *Amici* represent hundreds of thousands of physicians, nurses and mental-health professionals, including specialists in family medicine, mental health, internal medicine, endocrinology, obstetrics and gynecology. As leading healthcare providers both within the State of North Carolina and beyond, *Amici* are in a unique position to inform the Court about the proper treatments for people experiencing gender dysphoria, the negative health outcomes when gender dysphoria is left untreated, and other health concerns that could arise from lack of coverage by State health care plans, which will directly impact the *Amici's* ability to care for their patients. *Amici's* expertise in a particular field, however, does not mean that they are expert *witnesses*.

Defendants spend over half their brief arguing that *Amici* are seeking to serve as expert witnesses in this case and are not complying with Fed. R. Civ. P. 26. (Doc. 186, at 2–7). That argument is completely inapt: *Amici* have not been retained as expert witnesses by any party to this case and are not receiving any compensation whatsoever for submitting their brief. *See* L.R. 7.5(d). *Amici*, unlike the parties' expert witnesses, do not opine on the care owed to the individual plaintiffs in this

case, the evidence at issue, or the wrongdoing or liability of the specific defendants in this case. *Amici* are not witnesses of any sort.

Moreover, unlike a typical expert witness, *Amici* have a direct interest and stake in the outcome of this litigation, because of the patients they serve. *Amici's* ability to serve those patients, including their ability to provide necessary treatments to those patients, will be affected by the decision in the present case. *Amici*'s brief therefore seeks to inform the Court of the medical consensus regarding what it means for their patients to be transgender; the protocols for the treatment of gender dysphoria, which include living in accordance with one's gender identity in all aspects of life; and the predictable harms to the health and well-being of transgender individuals who are denied access to necessary medical treatments.

As *amicus curiae*, and *not* as expert witnesses, prior *amicus* briefs submitted by the proposed *Amici* have been accepted – and cited extensively – by federal and state courts throughout the country, including the Fourth Circuit and the U.S. Supreme Court. Proposed *Amicus* AMA, for example, has been granted leave to file hundreds of *amicus* briefs over the years. Those briefs have been cited favorably in judicial decisions at the district court level, *see, e.g.*, *United States v. Jefferson*, No. CRIM. 97-276 04 MJD, 2015 WL 501968 at *3 n. 1 (D. Minn. Feb. 5, 2015), *aff'd*, 816 F.3d 1016 (8th Cir. 2016) ("[T]he Court found the Amici Curiae brief of the American Medical Association . . . to be excellent resources . . ."); before courts of

3

appeals (including the Fourth Circuit), *see, e.g.*, *Peters v. Aetna Inc.,* 2 F.4th 199, 234 (4th Cir. 2021), *petition for cert. filed*, No. 21-761 (U.S. Nov. 22, 2021) ("This interpretation is bolstered by the brief of *amici*, the American Medical Association . . . ."); *Kohl by Kohl v. Woodhaven Learning Ctr.,* 865 F.2d 930, 933 n. 2 (8th Cir. 1989) ("We are indebted to the American Medical Association for its excellent amicus curiae brief, which is the source of much of our information . . . ."); and before the Supreme Court of the United States (*see, e.g.*, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 78, 208 L. Ed. 2d 206 (2020) (Breyer, J. dissenting) (citing AMA *amicus curiae* brief); *Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 288 (1987) ("[W]e agree with *amicus* American Medical Association . . . ."). The other proposed *Amici* have also filed *amicus* briefs that have likewise garnered citations and appreciation from the reviewing court. *See, e.g.*, *Stenberg* v. *Carhart*, 530 U.S. 914, 932–936 (2000) (quoting American College of Obstetricians and Gynecologists ("ACOG") brief extensively and referring to ACOG as a "significant medical authority"); *Jefferson*, 2015 WL 501968, at *3 n. 1 ("the Court found the Amici Curiae brief of the . . American Psychiatric Association . . . to be excellent resources in preparing for this resentencing, and would recommend that a court that is resentencing a defendant in light of Miller consult these references.").

Particularly notable is that the Fourth Circuit recently relied on and quoted extensively from a substantially similar *amicus* brief filed by some of the same

*Amici*—the American Academy of Pediatrics, the AMA, and the American Psychiatric Association—on the very same subject matter presented here. *See Grimm v. Gloucester Cty. Sch. Bd.,* 972 F.3d 586 (4th Cir. 2020). *Grimm* involved a transgender student's lawsuit against a school district, alleging that its policy requiring students to use bathrooms based on their birth-assigned sex and its refusal to amend the plaintiff's school records to reflect his gender identity violated the Equal Protection Clause and Title IX. *Id.* at 593. The relevant portions of the *amicus* brief accepted by the court in *Grimm* are substantially identical to the brief submitted in this case (and written by one of the same law firms as on the brief here, Jenner & Block LLP) and addressed the same pertinent background as presented here: namely, what it means to be transgender and the medical and mental health issues that transgender individuals face. Recognizing the value of the information and insights presented by the *Amici Curiae*, the Fourth Circuit devoted three pages of its opinion to a recitation of the information provided in the *Amici's* brief, with extensive quotations from the brief. *Id.* at 594–96. As the court put it, "[w]ith that essential grounding, we turn to the facts of this case." *Id.* at 597.

*Amici* believe that the information contained in their proposed brief will assist the Court in its deliberations by presenting a complete and accurate description of the medical conditions and treatments at issue in the pending case, from the unique perspective that the *Amici* can offer as healthcare providers. As the Fourth Circuit

5

described it in *Grimm*, the information provided by *Amici* on these topics is the "essential grounding" to inform the Court as it turns to the facts of the case. 972 F.3d at 597.

Finally, Defendants' argument, taken to its logical conclusion, would prohibit *any amicus* from ever submitting a brief. If the Court should not consider the information submitted by an *amicus* in its deliberations, as urged by Defendants (Doc. 186, at 6–7), then no *amicus* could ever be helpful to the Court, and LR 7.5 would serve no purpose. Defendants' argument should be summarily rejected.

## II. *Amici* Have Particular Expertise Not Possessed by Any Party.

As courts around the country have recognized, *amicus* briefs are appropriate and useful when, as here, the proposed *Amici* have "particular expertise not possessed by any party." *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.). As in *Grimm* and in this case, the proposed *Amici* often file *amicus* briefs when the issue before the court is uniquely within their knowledge or expertise and when they believe that they may be able to assist the Court in understanding relevant medical and scientific information. *Amici* have rigorous approval processes for *amicus* briefs, the touchstone of which is an assessment of whether a case is one in which there is sufficient medical and scientific research, data, and literature relevant to one or more questions before the court so that they

6

can usefully contribute to the court's understanding of that question. *Amici* regard this case as presenting such questions.

As Defendants acknowledge, *amici* are "allowed at the trial level where . . . they have a special interest in the subject matter of the suit." (*Id.* at 7) (citation omitted). As explained above, *Amici's* concern for and knowledge about the effect this Court's decision will have on their constituents' patients and their own ability to care for their patients amply vests *Amici* with the special interest that qualifies them to submit a brief. Defendants' footnote about "neutrality" is confounding. (Doc. 186, at 8 n. 2). Throughout this case, Defendants have demanded strict compliance with the Middle District of North Carolina's Local Rules. Local Rule 7.5(b) requires *Amici* to "identify the party or parties supported." Now that *Amici* have done so, Defendants seek to exclude their proposed brief. Indeed, *Amici* support the Plaintiffs in this case, as patients of their constituents seeking medical care. As such, *Amici* have the special interest required.

Conspicuously, several of the cases cited by Defendants in their opposition (Opp. at 7–8) *granted* motions for leave to file *amicus* briefs for similar reasons. *See City of Columbus v. Trump,* 453 F. Supp. 3d 770, 786 (D. Md. 2020) (granting leave where *amici* "demonstrated a special interest in the outcome of the suit and provided helpful information to the court"); *Bryant v. Better Bus. Bureau of Greater Md, Inc.,* 923 F. Supp. 720, 728 (D. Md. 1996) (granting leave to the National Association for

7

the Deaf to appear as *amicus* in an individual's discrimination lawsuit because the organization "represent[s] large constituencies of individuals which have a vested interest in how the provisions of the ADA are construed and applied" and observing that permitting *amici* "may be advisable where third parties can contribute to the court's understanding") (citation omitted).

Defendants argue that *Amici* will not offer a "new or unique perspective beyond that already presented by the parties" (Doc. 186, at 11 (citation omitted)), but that argument was rejected by the Fourth Circuit in *Grimm*. The Fourth Circuit relied heavily on the substantially similar *amicus* brief presented by some of the same *Amici* to provide the "essential grounding" that assisted the court in its analysis of the facts. 972 F.3d at 597. For example, the Fourth Circuit relied on *Amici's* similar brief for an understanding of gender identity and what it means to be transgender. *Id.* at 594. The court went on to quote *Amici* and their resources extensively regarding health disparities experienced by transgender people, the diagnosis and treatment of gender dysphoria, and the widely accepted standards of care utilized by medical and health professionals in treating transgender people, including young people. *Id.* at 595-96. Notably, Defendants themselves acknowledge that *Amici* will present the Court with fresh information and perspectives that are not presented by the other parties to this case. (Doc. 186, at 2)

("Approximately 50% of the medical articles cited in the proposed *amicus* brief (24 of 46) are not in any of the reports by Plaintiffs' experts").

That is exactly the appropriate role that *Amici* request the opportunity to serve here. The Fourth Circuit welcomed *Amici's* participation and input to inform its analysis, and *Amici* respectfully request that this Court do so as well.

## CONCLUSION

For the foregoing reasons, proposed *Amici*'s motion for leave to submit a brief as *amici curiae* should be granted.

Respectfully submitted, this the 3rd day of January, 2022.

/s/ Sarah M. Saint
Shana L. Fulton
NC State Bar No. 27836
sfulton@brookspierce.com
Sarah M. Saint
NC State Bar No. 52586
ssaint@brookspierce.com
 BROOKS PIERCE McLENDON
HUMPHREY & LEONARD, LLP
Suite 2000 Renaissance Plaza
230 North Elm Street (27401)
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone: 336-373-8850
Fax: 336-378-1001

Matthew D. Cipolla
 JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
(212) 891-1600

9

Howard S. Suskin
D. Matthew Feldhaus
Connor S.W. Rubin
Scott M. De Nardo
  JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 222-9350

Illyana A. Green
  JENNER & BLOCK LLP
1099 New York Avenue NW
Suite 900
Washington, DC 20001
(202) 639-6000

*Counsel for Amici Curiae*

# CERTIFICATE OF WORD COUNT

Pursuant to L.R. 7.3(d)(1) the undersigned counsel hereby certifies that the brief, in support of a motion, which is prepared using a proportionally spaced font, is less than 3,125 words (excluding cover, captions, indexes, tables of authorities, certificates of service, and this certificate of word count, counsel's signature block, and appendixes) as reported by word-processing software used to prepare this brief.

Respectfully submitted, this 3rd day of January 2022.

/s/ Sarah M. Saint

Sarah M. Saint
N.C. State Bar No. 52586
ssaint@brookspierce.com

BROOKS PIERCE McLENDON
HUMPHREY & LEONARD, LLP
Suite 2000 Renaissance Plaza
230 North Elm Street (27401)
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone: 336-373-8850
Fax: 336-378-1001

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's Electronic Filing System to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

Respectfully submitted, this the 3rd day of January 2022.

/s/ Sarah M. Saint

Sarah M. Saint
N.C. State Bar No. 52586
ssaint@brookspierce.com

BROOKS PIERCE McLENDON
HUMPHREY & LEONARD, LLP
Suite 2000 Renaissance Plaza
230 North Elm Street (27401)
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone: 336-373-8850
Fax: 336-378-1001

*Counsel for Amici Curiae*