IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MAXWELL KADEL, *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>DALE FOLWELL, *et al.*,<br>*Defendants*. | No. 1:19-cv-00272-LCB-LPA |

**REPLY IN SUPPORT OF STATE HEALTH PLAN DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I. Plaintiff Caraway's Title VII claim does not lie against the State Health Plan, either as an agent of her actual employer, the North Carolina Department of Public Safety, or as a joint employer.**

Caraway seeks to expand the reach of Title VII, arguing that the State Health Plan (the "Plan") is her "joint employer for purposes of health coverage," ECF No. 188 at 18, or that an "agent" of an employer can have liability under Title VII, *id.* at 13-14.

The Plan is not Caraway's employer because, like most health benefit programs, it does not employ prison guards. Common sense dictates this result, and the Fourth Circuit's rules for Title VII liability align with common sense. An agent can *create* Title VII liability, but the liability belongs to the employer, not the agent. Moreover, "joint employers" must "share or co-determine … the essential terms and conditions of employment." *Butler v. Drive Auto. Indus. of*

*Am., Inc.*, 793 F.3d 404, 408 (4th Cir. 2015). Caraway cannot satisfy *Butler*'s nine-factor analysis and makes no attempt to do so. The Plan is not her "joint employer," and her Title VII claim against the Plan should be dismissed.

### A. Under Title VII, only employers incur liability for agents' actions.

Caraway argues that the Plan is an "agent" of her employer, the North Carolina Department of Public Safety ("DPS"). But the reference to "agent" in the Title VII definition of "employer" is "an unremarkable expression of *respondeat superior*—that discriminatory personnel actions taken by an employer's agent may create liability for the employer." *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994); *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) (definition of employer in Title VII "must be read in the same fashion" as *Birkbeck*'s interpretation of "employer" in Age Discrimination in Employment Act).

Caraway provides two unpersuasive responses. First, Caraway attempts to distinguish between cases where the "agent" is an individual and where the "agent" is an entity. ECF No. 188 at 15. Such a distinction cannot be squared with *Lissau,* which held that Title VII does not allow claims against an agent of an employer. 159 F.3d at 181. *Lissau* does not distinguish between 'types' of agents, and it would be novel if it did. The rule of law does not allow the interpretation of a statutory term—in this case "agent of the employer"—to

vary based on the defendant's identity. It is Caraway's obligation, not the Plan's, to identify some basis for her distinction in the statutory text, and she fails to do so.[1]

Second, Caraway asks this Court to adopt forty-year-old dicta from *Crowder v. Fieldcrest Mills, Inc.*, 569 F.Supp. 825 (M.D.N.C. 1983). *Crowder* speculated that "control of **an aspect** of the terms and conditions of employment" might make an entity an "employer," even though this reasoning played no role in its decision. *Id.* at 828 (emphasis added).

*Butler* overruled such analysis. *Butler* held that "[a]n entity can be held liable in a Title VII action **only if it is an 'employer' of the complainant**" and provides the framework to determine who, precisely, qualifies as such. 793 F.3d at 408 (emphasis added). Title VII's definition of "employer" may include "any agent" of an employer, but **liability** does not extend to a defendant unless it has "joint employer liability." *Id.*

---

[1] While Judge Auld allowed Plaintiffs to amend their Complaint, adding Caraway and her Title VII claim, he held only that, before discovery, Caraway's Title VII claim "does not suffer from futility." ECF No. 74 at 23-24. Judge Auld did not rule that Title VII permits Caraway's claim against the Plan.

- 3 -

### *B. Control over the benefits available under the Plan fails to satisfy the Fourth Circuit's nine-factor analysis of joint employment.*

As Plaintiffs note in their motion for summary judgment, "[h]ealth insurance constitutes an important part of one's compensation for employment." ECF No. 179 at 32 (citing *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682 (1983)). However, "joint employer" status requires more than supplying one part of compensation, no matter how "important." There first must be an employer-employee relationship. It is this "contractual relationship of employment" that "triggers the provision of Title VII governing 'terms, conditions, or privileges of employment.'" *Hishon v. King & Spalding*, 467 U.S. 69, 74 (1984).

Caraway inverts the Title VII analysis, asserting that "control over employee health coverage," a single employee benefit, necessarily constitutes "a high degree of control over the terms of employment." ECF No. 188 at 18. This is clear error; Title VII liability rests on whether the Plan "actually exercise[s] control over an **employee**," not an employee benefit. *Butler*, 793 F.3d at 409. The "provisions of Title VII attach and govern certain aspects of that relationship" only after "a contractual relationship of employment is established." *Hishon*, 467 U.S. at 74.

*Butler*'s "joint employment doctrine" instructs this Court how to identify an employment relationship. "[C]ontrol remains the principal guidepost for determining whether multiple entities can be a plaintiff's joint employers." 793 F.3d at 415. For the Plan and DPS to jointly employ Caraway, both must "exercise significant control" over her work. *Id.* at 408.

As outlined in Plan Defendants' Motion for Partial Summary Judgment, every *Butler* factor shows that the Plan is not Caraway's "joint employer." ECF No. 137 at 21-27. DPS possesses exclusive authority to hire, fire, supervise, discipline, and train Caraway. DPS provides her equipment and place of employment. Caraway works exclusively for the benefit of DPS. Caraway has provided no indicia of an employment relationship with the Plan. Therefore, even if the Plan has "control over employee health coverage," ECF No. 188 at 18, Caraway has not, and cannot, establish that the Plan "exercises **control over an employee** to the extent necessary to be held liable under Title VII," *Butler*, 793 F.3d at 410 (emphasis added). Without an employment relationship, there is no Title VII liability.

### C. Arguments regarding DPS's liability cannot expand Title VII beyond its statutory scheme.

Caraway asserts that if this Court "credits both Defendants' arguments, no one bears any liability at all" under Title VII for her alleged discrimination.

ECF No. 179 at 33. Without elaboration, Caraway argues that this renders "Defendants' positions … untenable." *Id.* It is unsurprising that DPS and the Plan have different perspectives about Title VII. DPS's arguments do not, however, overcome the Fourth Circuit's repeated holdings that Title VII liability for "employers" extends only within the doctrine of *respondeat superior*. *See* ECF No. 133 at 11-21. Even if this Court allows Caraway's Title VII claim to proceed, any such liability would attach only to DPS, not the Plan.[2]

## II. Plaintiffs' Affordable Care Act claims fail as a matter of law.

### A. *This Court should defer to HHS's interpretation of "health care program or activity."*

Plaintiffs fail to establish that the Plan has liability under § 1557 of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116. The U.S. Department of Health and Human Services ("HHS") has interpreted § 1557 to not encompass employer health benefit plans; because the statute is ambiguous, and because

---

[2] DPS disclaims Title VII liability on the basis that it cannot offer health benefits that compete with those offered by the State Health Plan. ECF No. 133 at 6-7 (citing ECF No. 134-5 at 30-37). The North Carolina Attorney General's opinion, however, explicitly permit health benefits that are "over and above rather [than] duplicat[ing]" Plan coverage. ECF No. 134-5 at 30-31. Such is the case for the benefits at issue here.

the agency's regulation is consistent with the text of the statute, this Court must defer to HHS's rule.

As outlined in the Plan Defendants' Motion for Partial Summary Judgment, ECF No. 137 at 28-32, HHS defines "health program or activity" to exclude "an entity principally or otherwise engaged in the business of providing insurance," 85 Fed. Reg. 37160 (June 19, 2020); 45 C.F.R. §92.3(b),(c)(2021). Although this interpretation has been challenged in the courts, it has not been overruled or enjoined, and it remains in full effect. *See Boston All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*, 2021 WL 3667760 at *9 (D. Mass. Aug. 18, 2021); *New York v. U.S. Dep't of Health & Hum. Servs.*, No. 1:20-cv-05583 (Doc. No. 145) (Aug. 23, 2021).

HHS's interpretation of "health program or activity" is entitled to *Chevron* deference. Congress has explicitly authorized HHS to "promulgate regulations to implement" § 1557. 42 U.S.C. § 18116(c). This "delegated legislative power" allows HHS to issue legislative rules, *Guedes v. ATF*, 920 F.3d 1, 17-18 (D.C. Cir. 2019), which "have the force and effect of law," *Guilford Coll. v. Wolf*, 2020 WL 586672, at *4 (M.D.N.C. Feb. 6, 2020) (Biggs, J.).[3]

---

[3] Beyond their statutory arguments, Plaintiffs argue the 2020 HHS regulation is not a "permissible or reasonable" interpretation of the phrase "health

### B. Congress has not "directly spoken to the precise question" of whether employee health benefits plans are "health programs or activities" under § 1557.

Under *Chevron*, the threshold question is whether a statutory provision is "ambiguous," such that Congress has not "directly spoken to the precise question at issue." *Othi*, 734 F. 3d at 265 n.4. Plaintiffs urge this Court to hold that, as a matter of law, the phrase "health program or activity" includes employer health benefit programs such as the Plan. Plaintiffs discern this clear meaning from "common sense" and by reference to other provisions of the Affordable Care Act. ECF No. 188 at 19-20. Neither "common sense" nor these other, scattered terms, however, provides what *Chevron* requires: evidence that "Congress has directly spoken to the precise question at issue." *Othi v. Holder*, 734 F. 3d 259, 265 n.4 (4th Cir. 2013) (quoting *Chevron v. Nat'l Res. Def. Coun.*, 467 U.S. 837, 842 (1984)).

Federal courts have widely agreed that "health program or activity" is ambiguous in the context of the ACA, *Callum v. CVS Health Corp.*, 137 F.Supp.3d 817, 849-50 (D.S.C. 2015), and in other statutory contexts

---

program or activity" because HHS did not provide a "rational explanation" for its interpretation or consider the "harm caused by its new explanation" to individuals such as Plaintiffs. ECF No. 188 at 22, 24. HHS considered and rejected these arguments, as have other courts considering challenges to the 2020 rule.

featuring identical language, *see Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 467-68 (1999); *Currie v. Grp. Ins. Comm'n*, 290 F.3d 1, 6-7 (1st Cir. 2002); *Victim Rts. L. Ctr. v. Cardona*, 2021 WL 3185743 at \*12 (D. Mass. July 28, 2021). This precedent significantly outweighs Plaintiffs' citation to a single district court holding. ECF No. 188 at 17-18 (citing *Fain v. Crouch*, 2021 WL 2657274 at \*2-4 (S.D.W.Va. June 28, 2021)). If anything, the disagreement among the federal courts over the meaning of "health program or activity" should be dispositive proof that ambiguity exists and that Congress has not provided direct guidance. *See Othi*, 734 F.3d at 265 n.4.

In response, Plaintiffs argue that it "defies logic" to conclude that a "health program or activity" does not include health insurance. ECF No. 188 at 19-20. But the State Health Plan is not an insurance plan. Rather, like other arrangements in which an employer pays for employee health care costs, the Plan is an "employee health benefit program." Even the 2016 version of the HHS rule exempted **some** employee health benefit plans from its scope. 81 Fed. Reg. 31376, 31472 (May 18, 2016) (creating 45 CFR § 92.208, which holds an "employee health benefit plan" is covered by § 1557 *only* if the entity is "principally engaged in providing or administering health services" and "receives Federal financial assistance a primary objective of which is to fund the entity's employee health benefit program"). It is therefore incorrect to say

that HHS previously concluded that the phrase "health program or activity" in § 1557 unambiguously extends to all employee health benefit programs. It never has.

Plaintiffs' next argument is that Congress has "spoken directly to the precise question" of whether § 1557 extends to health benefit plans, *Chevron*, 467 U.S. at 842, because it uses similar phrases elsewhere in the Affordable Care Act that appear to refer to insurance products. ECF No. 188 at 18. As an initial matter, the Court should disregard this argument as inconsistent with the Plaintiffs' representations to the U.S. Supreme Court, where they urged that Court to conclude that § 1557 "is itself a federal statute" that can be considered apart from the "omnibus" Affordable Care Act. Brief in Opp., *NCSHP v. Kadel*, No. 21-674 at 14-15 (Dec. 27, 2021).

Moreover, while *Chevron* analysis acknowledges "that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007), *Chevron* does not allow a court to jumble similar phrases into a pastiche. The relevant canon of statutory construction states there is a "natural presumption that **identical** words used in different parts of the same act are intended to have the same meaning," *Atl. Cleaners & Dyers v. U.S.*, 286 U.S. 427, 433 (1932) (emphasis added). None of the phrases

collected by Plaintiffs, or by the *Fain* court, are identical, and their context varies widely. *See Fain* 2021 WL 2657274 at *3; *compare* 42 U.S.C. § 18116 ("health program or activity") *with*, *e.g.*, Patient Protection and Affordable Care Act, 124 Stat. 119, 580 (data collection for "federally conducted or supported health care or public health program or activity"); 124 Stat. 199-201 ("basic health programs" under which States can offer "standard health plans"); 124 Stat. 331 (requiring panel members with expertise in "Federal safety net health programs" and, separately listed, "health plans and integrated delivery systems"); 124 Stat. 333 (referring to "Health programs operated by the Indian Health Service, Indian tribes, tribal organizations, and Urban Indian organizations"); 124 Stat 382 (data measurement for quality improvement in "Federal health programs").[4]

---

[4] Plaintiffs argue § 1557's reference to "contracts of insurance" demonstrates Congress intended to include health benefits plans. ECF No. 188 at 19-20; *Fain*, 2021 WL 2657274 at *3 n.3. This misunderstands health care law. Title VI of the Civil Rights Act of 1964 expressly excludes its application to "a contract of insurance or guaranty." 42 U.S.C. § 2000d-1; 42 U.S.C. § 2000d-4. In 1967, the Department of Health, Education and Welfare issued a regulation concluding that physicians treat patients under Medicare Part B pursuant to a "contract of insurance" and are therefore not subject to Title VI. Sidney D. Watson, *Section 1557 of the Affordable Care Act: Civil Rights, Health Reform, Race, and Equity*, 55 HOW. L.J. 855, 865-66 (2012). § 1557's reference to "contracts of insurance" therefore addresses a separate participant in the health care system: physicians. This is reinforced by the fact that "contract of insurance" in § 1557 is listed with other forms of "federal financial assistance," not as part of a clause modifying "health program or activity." 42 U.S.C. §18116(a).

- 11 -

One cannot infer that these phrases all mean the same thing. Indeed, Plaintiffs identify another antidiscrimination provision in the ACA, § 1553, that applies to every "health care entity" and is defined to specifically include providers *and* health insurance plans. ECF No. 188 at 20-21 (quoting 42 U.S.C. § 18113(b)). That Congress explicitly defined "health care entity" broadly in § 1553 is, contrary to Plaintiffs' assertion, and strong evidence that the phrase "health program or activity" in § 1557 has a different, narrower meaning that does not include a 'health insurance plan' or its like.

Plaintiffs attempt to bolster their textual argument with a floor statement Senator Leahy made *months after* the Senate debated the Affordable Care Act and *after* the ACA had become law. ECF No. 188 at 21-22. The Affordable Care Act, H.R. 3590, passed the Senate on December 24, 2009. 155 Cong. Rec. S13891 (daily ed.). The House of Representatives concurred in the Senate bill on March 21, 2010, clearing it for the President's signature. *See* 156 Cong. Rec. H2153 (daily ed.). The President signed the ACA on March 23, 2010, at a ceremony that began at 12:39 p.m. Remarks on the Patient Protection and Affordable Care Act, 2010 Daily Comp. Pres. Doc. 197. The Senate did not convene until later that day, at 3:13 p.m., when Senator Leahy spoke during debate on a separate piece of legislation, H.R. 4872. 156 Cong. Rec. S1821&1841-44 (daily ed. March 23, 2010). "[W]hatever interpretive force

- 12 -

Case 1:19-cv-00272-LCB-LPA   Document 193   Filed 01/13/22   Page 12 of 17

one attaches to legislative history, the Court normally gives little weight to statements, such as those of the individual legislators, made *after* the bill in question has become law." *Barber v. Thomas*, 560 U.S. 474, 486 (2010).

Ultimately, without the identical phrases required by this interpretive canon, the Court is left with the impermissible "parsing of general terms in the text of the statute" in the hope this "will reveal an actual intent of Congress." *Chevron*, 467 U.S. at 861. As in *Chevron*, "overlapping" terms and "language [that] is not precisely directed to the question" does not provide clear Congressional intent. *Id.* Plaintiffs are left asking this Court to interpret "health program or activity" by "looking at the ACA as a whole." *Fain*, 2021 WL 2657274 at *3. *Chevron* deference exists, however, because sweeping conclusions about the policy goals of the ACA are left to administrative agencies, not courts.

### C. Chevron *requires this Court to defer to HHS's reasonable interpretation of § 1557, which forecloses its application to the Plan.*

Pursuant to the second step of *Chevron*, this Court must defer to HHS's interpretation if it is "based on a permissible construction of the statute." *Schafer v. Astrue*, 641 F.3d 49, 54 (4th Cir. 2011) HHS's analysis of the distinction between "health insurance" and "healthcare" is compatible with the text. *See* 85 Fed. Reg. 37172-74. In particular, as the rule's preamble points

out, when Congress enacted the Civil Rights Restoration Act of 1990, it redefined "program or activity" in the context of other civil rights laws, defining the term 'program' to be, *inter alia*, the "entire … private organization … which is principally engaged in the business of providing … health care." 20 U.S.C. § 1687(3)(A)&3(A)(ii). The agency could certainly make a "reasonable policy choice," *Chevron*, 467 U.S. at 845, to reject Plaintiffs' interpretation and adopt the distinction advanced by a commenter that "paying for healthcare is not providing healthcare," 85 Fed. Reg. 37,172.

Employee health benefit plans are specifically exempted from the term "health program or activity" in § 1557, so the Plan cannot be liable under the Affordable Care Act as a matter of law. Plaintiffs' § 1557 claim should be dismissed.

Respectfully submitted, this the 13th day of January, 2022.


*/s/ John G. Knepper*      */s/ Kevin G. Williams*

| | |
|---|---|
| John G. Knepper | Kevin G. Williams |
| Wyo. Bar No. 7-4608 | N.C. Bar No. 25760 |
| Law Office of John G. Knepper, LLC | |
| 1720 Carey Avenue, Suite 590 | */s/ Mark A. Jones* |
| Cheyenne, WY 82001 | Mark A. Jones |
| Telephone: (307) 632-2842 | N.C. Bar No. 36215 |
| John@KnepperLLC.com | BELL, DAVIS & PITT, P.A. |
| | 100 N. Cherry St., Suite 600 |
| | Winston-Salem, NC 27101 |
| | Telephone: (336) 722-3700 |
| | Facsimile: (336) 722-8153 |
| | kwilliams@belldavispitt.com |
| | mjones@belldavispitt.com |

## CERTIFICATE OF WORD COUNT

Pursuant to L.R. 7.3(d)(1), the undersigned certifies that this Brief complies with the Court's word limit as calculated using the word count feature of the word processing software. Specifically, this Brief contains less than 3,125 words. This count includes the body of the brief and headings, but does not include the caption, signature lines, this certificate or the certificate of service.

This the 13th day of January, 2022.

*/s/ John G. Knepper*
John G. Knepper
Wyo. Bar No. 7-4608
Law Office of John G. Knepper, LLC
1720 Carey Avenue, Suite 590
Cheyenne, WY 82001
Telephone: (307) 632-2842
John@KnepperLLC.com

*/s/ Kevin G. Williams*
Kevin G. Williams
N.C. Bar No. 25760

*/s/ Mark A. Jones*
Mark A. Jones
N.C. Bar No. 36215
BELL, DAVIS & PITT, P.A.
100 N. Cherry St., Suite 600
Winston-Salem, NC 27101
Telephone: (336) 722-3700
Facsimile: (336) 722-8153
kwilliams@belldavispitt.com
mjones@belldavispitt.com

- 16 -

Case 1:19-cv-00272-LCB-LPA   Document 193   Filed 01/13/22   Page 16 of 17

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notification to all counsel of record in this matter.

This the 13th day of January, 2022.

*/s/ John G. Knepper*
John G. Knepper
Wyo. Bar No. 7-4608
Law Office of John G. Knepper, LLC
1720 Carey Avenue, Suite 590
Cheyenne, WY 82001
Telephone: (307) 632-2842
John@KnepperLLC.com

*/s/ Kevin G. Williams*
Kevin G. Williams
N.C. Bar No. 25760

*/s/ Mark A. Jones*
Mark A. Jones
N.C. Bar No. 36215
BELL, DAVIS & PITT, P.A.
100 N. Cherry St., Suite 600
Winston-Salem, NC 27101
Telephone: (336) 722-3700
Facsimile: (336) 722-8153
kwilliams@belldavispitt.com
mjones@belldavispitt.com