THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION
FILE No. 1:19-CV-00272-LCB-LPA

| MAXWELL KADEL, | ) | |
| --- | --- | --- |
| | ) | **NORTH CAROLINA DEPARTMENT** |
| PLAINTIFF, | ) | **OF PUBLIC SAFETY'S RESPONSE TO** |
| | ) | **PLAINTIFF CARAWAY'S MOTION** |
| v. | ) | **FOR SUMMARY JUDGMENT AND** |
| | ) | **REPLY BRIEF IN SUPPORT OF ITS** |
| JASON FLECK, *ET AL.*, | ) | **OWN MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| DEFENDANTS. | ) | |

## INTRODUCTION

Plaintiff Caraway fails to create a genuine issue of material fact on two essential points regarding her Title VII claim against the North Carolina Department of Public Safety (the "Department"). First, the record evidence firmly establishes (and Plaintiff Caraway agrees) that the Department did not and cannot affect the terms of coverage provided by the State Health Plan. Thus, the Department cannot be liable under Title VII for any alleged harm that results from the denial of certain medical coverage. Second, in the context of providing for and excluding certain medical coverage, the State Health Plan's actions cannot be imputed to the Department through basic agency principles. Thus, to the extent that the State Health Plan's policy terms violate Title VII, the Department cannot be liable for any such violation. In short, Plaintiff Caraway's Motion for Summary Judgment (ECF-138) and her Opposition to the Department's Motion for Summary Judgment (ECF-187) do not raise any genuine issues of material fact. Therefore, the Department is entitled to summary judgement as a matter of law on Plaintiff Caraway's Title VII claim.

**ARGUMENT**

**A. Plaintiff Cannot Maintain a Title VII Claim Based on the Terms of Healthcare Coverage Against the Department Where the Department Has No Ability to Affect the Terms of Her Healthcare Coverage.**

As set forth in the Department's supporting memorandum, *see* ECF-133 at 6-7, by law, State agencies, including, the Department, have no option but to provide its eligible employees with access to the health insurance coverage offered through the State Health Plan. *See* N.C.G.S. §§ 143B-601, 135-48.2(a), 135-48.22, 135-48.23, 135-48.30(a), 135-48.42(a), and 150B-51(b)(2) (2019). Moreover, the Department, like other state agencies, has no independent authority or control over the benefits the State Health Plan offers. *See* N.C.G.S. § 135-48.1 *et seq*. Even Plaintiff Caraway appears to acknowledge this reality. *See* ECF-179 at 35-36. Accordingly, the Department's lack of any involvement with the terms of the healthcare coverage offered by the State Health Plan or its ability to even provide access to any other healthcare coverage is conclusively established.

Faced with this reality, Plaintiff Caraway highlights various ministerial acts of the Department, alleging that such acts are evidence that the Department actively discriminates against her. The Court should reject Plaintiff Caraway's contentions, however, because those acts of the Department are immaterial to the terms of healthcare coverage and are merely incidental to the employment of all eligible state employees.

**1. The Evidence Relied Upon By Plaintiff Caraway Does Not Refute the Fact That the Department Has No Ability to Impact the Terms of Healthcare Coverage.**

In support of her own Motion for Summary Judgment and in opposition to the

Department's Motion for Summary Judgment, Plaintiff Caraway contends that the Department "plays an extensive role in facilitating access to the discriminatory coverage." ECF-179 at 34. The so-called "extensive role" which Plaintiff contends the Department plays falls far short of establishing that the Department took any adverse employment action which caused the complained of harm.

As evidence of the Department's "extensive role," Plaintiff Caraway points to the following: (1) that had the Department not hired her, she would not have had access to the State Health Plan; (2) the Department contributes money toward each employees' monthly premiums; (3) that the Department has dedicated HR staff who verify eligibility, assist employees with enrollment, set up payroll deductions, and approve coverage changes for qualifying life events; and (4) that the Department provides assistance to employees who lose coverage if they fail to pay their premiums. ECF-179 at 34, ECF-187 at 4.

These facts, however, do nothing more than provide a list of some incidental and necessary tasks of any large organization that provides its employees with access to healthcare coverage. Moreover, these actions are immaterial here, as they do not pertain whatsoever to the coverage exclusion at issue – nor could they. That is because, as Plaintiff Caraway agrees, the Department is legally obligated to provide access to the State Health Plan, and it has no ability to affect the coverage terms provided by the State Health Plan. (*See* ECF-133 at 6-7, ECF-179 at 35-37). Thus, Plaintiff Caraway does not provide evidence that the Department took any action that is materially related to the healthcare coverage terms provided by the State Health Plan—because no such action exists.

Despite agreeing that the Department has no ability to control the terms of the healthcare coverage, Plaintiff Caraway attempts to impose Title VII liability on the Department simply by virtue and operation of it being an employer. However, the law requires evidence of some adverse employment action. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). Plaintiff Caraway cites no legal authority to support that notion that these sorts of ministerial tasks recited in her filings, *see* ECF-179 at 34, ECF-187 at 4, are sufficient to constitute the type of adverse employment action necessary to support a Title VII claim. This Court should reject Plaintiff Caraway's attempt to label steps that are necessary and ancillary to her employment, and which the Department is legally obligated to undertake, as adverse employment actions.

### 2. The Cases Cited by Plaintiff Caraway Are Distinguishable from the Instant Case.

The case law that Plaintiff Caraway cites, putatively in support of her argument that the Department "plays an extensive role" in the matter at issue, is readily distinguishable. Two cited cases warrant particular attention, *Boyden v. Conlin*, No. 17-cv-264, 2018 U.S. Dist. LEXIS 79753, *2-*6 (W.D. Wis. May 11, 2018) and *Lange v. Hous. Cty.*, 499 F. Supp. 3d 1258, 1272 (M.D. Ga. 2020).

Despite *Boyden* being favorable to the Department's position, Plaintiff Caraway points to the case as support against an argument which the Department does not, in fact, advance. Plaintiff Caraway cites *Boyden* for the argument that the Department and the State Health Plan cannot *collectively* contend that they are immune from Title VII liability. *See*

ECF-187 at 5. She asserts that, in *Boyden*, the district court rejected this "magic trick" where no one is responsible for a Title VII claim, *i.e.*, the plan is not liable because it is not the employer and the employer is not liable because it did not set the terms of the plan. *Id*. However, the Department's argument in support of its Motion for Summary Judgment does not turn on the State Health Plan's potential liability. Rather, the Department noted that, in *Boyden*, the district court dismissed a Title VII action against a defendant university board at the pleading stage because, as here, the only action that Plaintiffs alleged the defendant university board took was to hire the plaintiffs, making them eligible for the state group health insurance. *Id*. Indeed, the Department takes no position as to whether the State Health Plan can be liable for a Title VII violation—only that, on the facts of this case, the Department cannot be liable for such a violation. Accordingly, the argument rejected by the court in *Boyden*, is not actually an argument that the Department is making.

In addition, Plaintiff Caraway claims *Lange* bolsters her contention that the Department's lack of control over the insurance coverage does not preclude Title VII liability. *See* ECF-187 at 7. However, Plaintiff Caraway ignores that, when rejecting one defendant's argument that it could not be liable under Title VII or the ADA, the district court stated that said defendant "does have control over its employees' healthcare: it chose to provide its employees with the County's allegedly discriminatory Plan, and it could remove them from the Plan or provide an alternative plan if it chose to." *Lange*, 499 F. Supp. 3d at 1272. This stands in stark contrast to the Plaintiff Caraway's own concession that "state employers such as DPS do not have control over the health insurance their

employees receive, the plan terms, which third-party administrators are selected, or whether the Exclusion remains in the plan—all of which NCSHP decides." ECF-179 at 35-36. Accordingly, Plaintiff Caraway's reliance upon *Lange* is misplaced.

### B. Basic Agency Precepts Are Inapplicable Because the Department Has Never Had Any Authority to Delegate to the State Health Plan Regarding Terms of Coverage.

Plaintiff Caraway's attempt to impose Title VII liability on the Department for the allegedly discriminatory coverage exclusion by operation of basic agency principles must fail. Plaintiff Caraway contends that "by participating in the provision of [healthcare coverage] benefits, DPS is liable under Title VII as the principal in a principal-agent relationship with" the State Health Plan. ECF-187 at 8. In relying on this principal-agent theory, Plaintiff Caraway overlooks critical elements of agency principles—manifestation and authority.

"Whether the relation of principal and agent had been created depend[s] upon the authority or power delegated." *Creasman v. First Fed. Sav. & Loan Asso.*, 279 N.C. 361, 367, 183 S.E.2d 115, 119 (1971)(internal quotations omitted). "An agent's authority must be conferred by some manifestation by the principal that the agent is authorized to act on the principal's behalf." *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir. 1996) (citing Restat. 2d of Agency, §§ 7-8 (1957)). "A manifestation of the principal's assent to the agent is an element of the definition of a relationship of agency[.]" Restat. 3d of Agency, § 1.03. Thus, the existence of a principal-agent relationship and, therefore, the applicability of basic agency principles, begins with a principal's manifestation relative to

its authority.

A manifestation by the principal is critical whether the authority is actual or apparent. "Actual authority, [] is created by a <u>principal's manifestation</u> to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf." Restat 3d of Agency, § 3.01 (emphasis added). "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is <u>traceable to the principal's manifestations</u>. *Id*. § 2.03 (emphasis added).

Plaintiff Caraway cannot point to any evidence that the Department, as the putative principal manifested to the State Health Plan, as the putative agent, its assent for the State Health Plan to act on its behalf with regard to the terms of healthcare coverage. Thus, Plaintiff Caraway cannot build her agency theory on a foundation of actual authority. Likewise, an agency theory premised on apparent authority cannot hold because there is no evidence of a third party believing that the State Health Plan had some authority to act on behalf the Department that is traceable to the Department's manifestation.

Plaintiff Caraway does not articulate any such theories, nor can she. As Plaintiff Caraway correctly points out "state employers such as DPS do not have control over the health insurance their employees receive, the plan terms, which third-party administrators are selected, or whether the Exclusion remains in the plan—all of which the" State Health Plan decides. ECF-179 at 35-36. Accordingly, the Department never possessed authority

to confer by some manifestation to the State Health Plan as a would-be agent. *See Auvil*, 92 F.3d at 230. Therefore, basic agency principles are not applicable to this case and Plaintiff Caraway's attempt to impute liability to the Department through such principles is without merit.

## CONCLUSION

For the reasons set forth herein, the Department respectfully requests that its Motion for Summary Judgment be granted, that Plaintiff Caraway's Motion for Summary Judgment be denied, and that all claims asserted in this action against the Department be dismissed.

This the 18th day of January, 2022.

**JOSHUA H. STEIN**
**ATTORNEY GENERAL**

/s/ James B. Trachtman
James B. Trachtman
Special Deputy Attorney General
N.C. State Bar No. 22360
N.C. Department of Justice
Public Safety Section
P. O. Box 629
Raleigh, North Carolina 27602-0629
Telephone: (919) 716-6943
Facsimile: (919) 716-6761
E-Mail: jtrachtman@ncdoj.gov

## CERTIFICATE OF WORD COUNT

The undersigned counsel hereby certifies that the foregoing **NCDPS' RESPONSE TO PLAINTIFF CARAWAY'S MOTION FOR SUMMARY JUDGMENT AND REPLY BRIEF IN SUPPORT OF ITS OWN MOTION FOR SUMMARY JUDGMENT** contains less than 3,125 words. This count includes the body of the brief and headings, but does not include the caption, signature lines, this certificate or the certificate of service. As such, this brief complies with Local Rule 7.3(d)(1).

DATED: January 18, 2022.

/s/ James B. Trachtman
James B. Trachtman
Special Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I electronically filed the foregoing **NCDPS' RESPONSE TO PLAINTIFF CARAWAY'S MOTION FOR SUMMARY JUDGMENT AND REPLY BRIEF IN SUPPORT OF ITS OWN MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will provide electronic notification to counsel.

DATED: January 18, 2022.

/s/ James B. Trachtman
James B. Trachtman
Special Deputy Attorney General