# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MAXWELL KADEL, *et al.*,

        *Plaintiffs*,

        v.

DALE FOLWELL, in his official capacity as
State Treasurer of North Carolina, *et al.,*

        *Defendants*.

Case No. 1:19-cv-00272-LCB-LPA

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PETER ROBIE

# TABLE OF CONTENTS

I.    NATURE OF THE CASE AND FACTUAL BACKGROUND ............................. 1

II.   PROCEDURAL BACKGROUND ........................................................... 1

III.  STATEMENT OF THE QUESTION PRESENTED ................................................ 3

IV.   SUMMARY OF THE ARGUMENT ....................................................... 3

V.    ARGUMENT ..................................................................................... 5

      A.    Legal Standard.................................................................................. 5

      B.    Dr. Robie Is Not Qualified To Offer an Expert Opinion on
            Any Issue in This Case. ................................................................... 8

      C.    Dr. Robie's Opinions and Testimony Have No Relevance to
            This Case. ..................................................................................... 11

      D.    Dr. Robie's Opinions and Testimony Are Unreliable................................. 12

      E.    Dr. Robie's Opinions and Testimony Lack Probative Value
            and Are Thus Inadmissible Under Federal Rule Of Evidence 403............. 17

VI.   CONCLUSION ................................................................................. 18

Now come Plaintiffs, by and through their counsel, and respectfully submit this Memorandum of Law in support of their Motion to Exclude the expert testimony of Dr. Peter Robie.

## I.  NATURE OF THE CASE AND FACTUAL BACKGROUND

Plaintiffs are current or former participants in the North Carolina State Health Plan for Teachers and State Employees ("State Health Plan").  As part of compensation for employment, the State of North Carolina ("State") provides health coverage to employees and their dependents through the State Health Plan.  Some employees and their dependents, however, receive less compensation than others: those denied coverage for the gender-affirming care that transgender people require.  The State Health Plan contains sweeping exclusions of such care, while covering the same kinds of treatments for cisgender employees who require them for other reasons.  Defendants thus deny equal treatment to employees who are transgender or have transgender dependents, and harm transgender family members who depend on employees for health care coverage.

## II.  PROCEDURAL BACKGROUND

Pursuant to the Parties' Rule 26(f) Joint Report, adopted by this Court on August 13, 2020, Plaintiffs identified and disclosed expert reports for Dr. George R. Brown and Dr. Loren S. Schechter.  On May 1, 2021, Defendants Dale Folwell, Dee Jones, and the State Health Plan (collectively, "Health Plan Defendants") identified and disclosed reports from the following experts: Dr. Paul R. McHugh, Dr. Paul W. Hruz, Dr. Stephen B. Levine, and Dr. Patrick W. Lappert.  In addition, the Health Plan Defendants identified Defendant

1

Folwell, Defendant Jones, and Dr. Peter W. Robie as experts, but, as permitted by Rule 26(a)(2), they did not disclose any reports.[1] Subsequently, Plaintiffs identified and disclosed expert rebuttal reports for Dr. Randi Ettner, Dr. Dan Karasic, and Dr. Johanna Olson-Kennedy.

The Health Plan Defendants identified Dr. Robie to provide expert testimony on the following issues: (1) "the Board[] [of Trustees'] consideration of requests that the Plan eliminate the current coverage exclusion for gender transition surgery and related hormone treatment"; (2) "the medical knowledge he has shared with other Board members"; and (3) Dr. Robie's opinion that, "in order to provide diagnostic and medical treatment that meets a professional standard of care, primary care physicians must know the chromosomal sex of patients."[2] Disclosure of Expert Witnesses Who Do Not Provide a Written Report Pursuant to Fed. R. Civ. P. 26(a)(2) by Defs. Dale Folwell, Dee Jones, and the North Carolina State Health Plan for Teachers and State Employees 6, May 1, 2021.

Plaintiffs now move to exclude Dr. Robie's opinions and testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and its progeny, because Dr. Robie is not qualified to opine about gender dysphoria or its treatment, and his opinions and

---

[1] Defendant North Carolina Department of Public Safety also identified and disclosed an expert report, but those disclosures are not subject to Plaintiffs' Motion.

[2] A true and accurate copy of the May 1, 2021 Disclosure of Expert Witnesses Who Do Not Provide a Written Report Pursuant to Fed. R. Civ. P. 26(A)(2) by Defendants Dale Folwell, Dee Jones, and the North Carolina State Health Plan for Teachers and State Employees ("State Health Plan Disclosures") is attached as Exhibit A to the Declaration of Deepika Ravi.

2

testimony are neither relevant nor reliable. His opinions and testimony are likewise inadmissible because any probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, waste of time, undue delay, and needless presentation of cumulative evidence. Fed. R. Evid. 403.

## III.    STATEMENT OF THE QUESTION PRESENTED

Whether the testimony of Defendants' expert Dr. Peter Robie should be excluded because it is irrelevant, unreliable, and he is unqualified to offer it in accordance with *Daubert* and the applicable Federal Rules of Evidence.

## IV.    SUMMARY OF THE ARGUMENT

This Court should disqualify Dr. Robie as an expert for a number of reasons.

First, Dr. Robie is not qualified to provide the opinions identified in his disclosure and deposition. Dr. Robie, who practices internal medicine, admits he is not an expert in the diagnosis or treatment of gender dysphoria and has no other relevant experience with diagnosis or treatment of gender dysphoria. Further, although Dr. Robie testified during his deposition regarding the alleged cost of providing gender-confirming care, Dr. Robie admits he is not an expert in the cost of treatment for gender dysphoria. Dr. Robie testified regarding his friendship with Defendant Folwell, yet Dr. Robie's personal relationship with Defendant Folwell does not make him an expert on any matter at issue in this lawsuit. Robie Dep. 18:18–19:7 (testifying that Dr. Robie and Defendant Folwell have "been friends since the 1980s," since Defendant Folwell became Dr. Robie's patient).

3

Second, his opinions are not relevant to the issues to be addressed by this Court. Although Dr. Robie has been designated to testify to the medical knowledge he has shared with other members of the Board of Trustees (the "Board") for the State Health Plan, Dr. Robie testified that the medical knowledge he has shared with the Board pertains to issues wholly unrelated to those before the Court—for example, coverage of continuous glucose monitors for diabetic patients and biological agents for cancer treatment.

Third, even if he were deemed a qualified expert with relevant opinions—and Dr. Robie is not—his opinions are not based on scientific, technical, or other specialized knowledge. Instead, they are based on his own *ipse dixit* and amount to no more than Dr. Robie's pure speculation. Dr. Robie admits that he has never taught on the subject of gender dysphoria and has never conducted research or been published on this subject. And, despite his forty-five years as a medical practitioner, Dr. Robie testified that only four of his patients—all adults—have identified as transgender, to his knowledge.

As Dr. Robie is not qualified to render the proffered opinions, they are neither relevant nor reliable pursuant to the standards set forth in *Daubert* and its progeny. When viewed in the context of Federal Rule of Evidence 403, any probative value of the opinions is substantially outweighed by the danger of unfair prejudice, confusion of issues, waste of time, undue delay, and needless presentation of cumulative evidence and this Court should exclude them.

## V.    ARGUMENT

Dr. Robie's purported expert testimony should be excluded because it does not meet any of the indicia for admissibility under Daubert and the Federal Rules of Evidence.

### A.    Legal Standard

Federal Rule of Evidence 702 places "a special gatekeeping obligation" on a trial court to ensure that an expert's testimony is "*relevant* to the task at hand" and "rests on a *reliable* foundation." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 229–30 (4th Cir. 2017)); *Daubert*, 509 U.S. at 597; *see* Fed. R. Evid. 702, Advisory Comm. Notes (2000 Amendments) (amendment "affirms the trial court's role as gatekeeper," and that "all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful"). The party offering the expert—here, the Health Plan Defendants—carries the burden of establishing the admissibility of an expert's testimony by a preponderance of the evidence. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

The trial court's initial step is to determine whether the proposed expert is qualified to render the proffered opinion. In doing so, a trial court considers an expert's professional qualifications and the expert's "full range of experience and training." *Belk, Inc. v. Meyer Corp., U.S.,* 679 F.3d 146, 162 (4th Cir. 2012), *as amended* (May 9, 2012) (quoting *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009)). If the purported expert lacks the

5

knowledge, skill, experience, training, or education on the issue for which the opinion is proffered, the trial court must exclude the expert. *See, e.g.*, *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989).

Even if the expert is deemed qualified, the trial court must consider the relevancy of the expert's testimony, as it is "a precondition to admissibility." *Sardis*, 10 F.4th at 282 (quoting *Daubert*, 509 U.S. at 592). To be relevant, the testimony must have "a valid scientific connection to the pertinent inquiry." *Sardis*, 10 F.4th at 281 (quoting *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019)) ("Simply put, if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded.").

Finally, if deemed relevant, the trial court will inquire if the opinion is based on a reliable foundation, which focuses on "the principles and methodology" employed by the expert to assess whether it is "based on scientific, technical, or other specialized knowledge and not on belief or speculation." *Sardis*, 10 F.4th at 281 (first quoting *Daubert*, 509 U.S. at 594–95; and then quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). When evaluating whether an expert's methodology is reliable, a court considers, among other things:

> (1) whether the expert's theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error inherent in the expert's theory or technique; and (4) whether the expert's methodology is generally accepted in his field of expertise.

*Sardis*, 10 F.4th at 281 (quotation marks omitted) (quoting *Nease*, 848 F.3d at 229); *see also Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 149–150 (1999); *Daubert*, 509 U.S. at

593–94. While trial courts have "broad latitude" to determine reliability, *Sardis*, 10 F.4th at 281 (quoting *Nease*, 848 F.3d at 299), they still must engage in the gatekeeping process and not simply "delegate the issue to the jury." *Sardis*, 10 F.4th at 281. Even rigorous cross-examination is not a substitute for this Court's gatekeeping role. *See Nease*, 848 F.3d at 231.

In certain situations, when an expert relies upon his experience and training, and not a specific methodology, a modified analysis applies. *See Freeman v. Case Corp.*, 118 F.3d 1011, 1016 n.6 (4th Cir. 1997). When addressing an expert whose methodology is grounded in experience, courts use three factors: "1) how the expert's experience leads to the conclusion reached; 2) why that experience is a sufficient basis for the opinion; and 3) how that experience is reliably applied to the facts of the case." *SAS Inst., Inc. v. World Programming Ltd.*, 125 F. Supp. 3d 579, 589 (E.D.N.C. 2015) (citing *SMD Software v. EMove, Inc.*, 945 F. Supp. 2d 628, 644 (E.D.N.C. 2013)); *see also Nat'l Ass'n for Rational Sexual Offense L. v. Stein*, No. 1:17-CV-53, 2021 WL 736375, at *3 (M.D.N.C. Feb. 25, 2021).

Finally, because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it . . . the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises *more* control over experts than over lay witnesses." *Daubert,* 509 U.S. at 595 (emphasis added) (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991)). As such, "the importance of [the] gatekeeping function cannot be

overstated." *Sardis*, 10 F.4th at 283 (alteration in original) (quoting *United States v. Barton*, 909 F.3d 1323, 1331 (11th Cir. 2018)).

> **B.     Dr. Robie Is Not Qualified To Offer an Expert Opinion on Any Issue in This Case.**

In order to render expert testimony, the witness must possess the requisite "knowledge, skill, experience, training, or education" that would assist the trier of fact. *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting Fed. R. Evid. 702); *Wright v. United States*, 280 F. Supp. 2d 472, 478 (M.D.N.C. 2003) ("A witness may testify as to his specialized knowledge so long as he is qualified as an expert based on any combination of knowledge, skill, experience, training, or education.").   If not qualified, the expert's testimony is unreliable.  *Reliastar Life Ins. Co. v. Laschkewitsch*, No. 5:13-CV-210-BO, 2014 WL 1430729, at *1 (E.D.N.C. Apr. 14, 2014).

Dr. Robie lacks the knowledge, skill, experience, training, or education necessary to qualify him as an expert.  Dr. Robie practices internal medicine and has no other board certifications, specializations, or areas of practice.  Robie Dep. 9:21–10:2; 11:6–11.[3]  Dr. Robie acknowledged in his testimony that he is not an expert in the diagnosis or treatment of gender dysphoria, nor has he *ever* treated a patient for gender dysphoria.  Robie Dep. 11:12–23.   Moreover, Dr. Robie testified that he is not familiar with the Endocrine Society's Clinical Practice Guidelines on Treatment of Gender Dysphoria or Gender Incongruent Persons.  Robie Dep. 33:23–34:1.  Nor does Dr. Robie have a position on the

---

[3] A true and accurate copy of transcript excerpts of the deposition of Dr. Robie ("Robie Dep.") is attached as Exhibit B to the Declaration of Deepika Ravi.

validity of the World Professional Association for Transgender Health Standards of Care for Treatment of Gender Identification Disorder ("WPATH Standards of Care"), Robie Dep. 33:3–10, which are authoritative standards of care for treatment of gender dysphoria. *See, e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 595 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (the WPATH Standards of Care "have been recognized by various courts, including this one, as the authoritative standards of care"). And, when asked if he is "familiar with the DSM 5, the diagnostic and statistical manual of mental disorders definitions," Dr. Robie simply responded, "No." Robie Dep. 33:19–22.

Dr. Robie's lack of experience with diagnosis and treatment of gender dysphoria renders him unfit to offer an expert opinion in this matter. *See, e.g.*, *Mod. Auto. Network, LLC v. E. All. Ins. Co.*, 416 F. Supp. 3d 529, 539 (M.D.N.C. 2019) (affirming the district court's exclusion of an expert because the expert lacked experience relevant to the matters at issue).

Beyond his lack of practical experience, Dr. Robie testified that he has never taught on the subject of gender dysphoria, Robie Dep. 12:21–25; and he has never conducted research on the treatment of gender dysphoria, Robie Dep. 13:4–6, been published in the area of gender dysphoria, Robie Dep. 13:1–3, or peer reviewed any literature on this subject, Robie Dep. 14:8–10. And while Dr. Robie stated he has read medical literature regarding gender dysphoria, he testified that his review was limited to the six months preceding his deposition, and he could not recall the authors of any literature he reviewed. Robie Dep. 13:7–14:7. Dr. Robie's lack of any teaching, research, or peer review

9

experience with the medical care denied to Plaintiffs in this lawsuit disqualifies him from offering an expert opinion in this matter. *See, e.g.*, *Lebron v. Sec'y of Fla. Dep't of Child. and Fams.*, 772 F.3d 1352, 1369 (11th Cir. 2014) (disqualifying purported expert who did not "propos[e] to testify about matters growing naturally and directly out of research [he had] conducted independent of the litigation" (alteration in original) (quoting Fed. R. Evid. 702, Advisory Comm. Notes (2000 Amendments))).

Defendants also designated Dr. Robie to provide expert testimony about "the Board[] [of Trustees'] consideration of requests that the Plan eliminate the current coverage exclusion for gender transition surgery and related hormone treatment." State Health Plan Disclosures at 6. But this is not a subject on which Dr. Robie can be designated as an "expert" because Dr. Robie's testimony on this subject amounts to nothing more than a recitation of his recollection of an October 2018 Board meeting during which such requests were received. Robie Dep. 19:19–23:10; 81:22–83:14. Dr. Robie's mere presence at the meeting cannot qualify him to provide expert testimony about the meeting. And, when asked what testimony he could provide about the Board's consideration of requests that the State Health Plan eliminate the exclusion, Dr. Robie responded, "[t]he cost of the gender transition surgery and related hormone treatment." Robie Dep. 20:7–11. Yet Dr. Robie admits he is not an expert in the cost of treatment for gender dysphoria, Robie Dep. 11:24–12:1, and as discussed in more detail below, he is not qualified to provide reliable expert testimony on this issue.

10

**C.     Dr. Robie's Opinions and Testimony Have No Relevance to This Case.**

This case revolves around whether the Health Plan Defendants' exclusion of coverage for gender-confirming healthcare treatment violates Plaintiffs' equal protection rights and discriminates against them on the basis of their sex in violation of Title VII and the Affordable Care Act.  Dr. Robie's opinions are not relevant as they will not help the "trier of fact to understand the evidence or to determine a fact in issue." *Nease*, 848 F.3d at 229 (quoting *Daubert*, 509 U.S. at 591).  Simply put, Dr. Robie's opinion does not "fit" with the facts at issue. *Bourne ex rel. Bourne v. E.I. DuPont de Nemours & Co.*, 85 F. App'x 964, 966 (4th Cir. 2004); *Viva Healthcare Packaging USA Inc. v. CTL Packaging USA Inc.*, 197 F. Supp. 3d 837, 846 (W.D.N.C. 2016) ("The test for relevance, or fit, considers whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." (quotation marks omitted) (quoting *Daubert*, 509 U.S. at 591)).

For example, although Dr. Robie has been designated to opine about the medical knowledge he has shared with other Board members, Dr. Robie testified that the medical knowledge he has shared pertains to coverage of continuous glucose monitors for diabetic patients and biological agents for cancer treatment, and COVID management, care, and status.   Robie Dep. 23:11–25:12; 31:19–32:14.   These issues bear no relation to the treatment of gender dysphoria involved in this case, and Dr. Robie could not recall any other medical knowledge he has shared with the Board.  Robie Dep. at 24:20–25; 31:19–32:14.

Dr. Robie also provides testimony that, while internally inconsistent, simply does not contravene the relief Plaintiffs seek here. When asked whether surgical care for gender dysphoria can be medically necessary, Dr. Robie characterized it as "elective," but defines "elective" simply to mean "it could be scheduled at an opportune time for the patient and surgeon." Robie Dep. at 68:9–69:13. When asked, "is it correct that some elective care can be medically necessary as determined by the doctor/patient," Dr. Robie acknowledged, "If that's determined, the answer is yes." Robie Dep. 86:5–8. Dr. Robie gave inconsistent testimony on this question: earlier in his deposition, when asked whether if there is ever "a circumstance where a provider and patient together could determine that gender confirming care is medically necessary," Dr. Robie answered, "I don't know." Robie Dep. at 36:22–37:2. Regardless, he does not dispute that treatment for gender dysphoria can be medically necessary. His opinions thus are irrelevant since Plaintiffs simply seek the same opportunity to make individualized showings of medical necessity afforded to all other State Health Plan participants.

**D.     Dr. Robie's Opinions and Testimony Are Unreliable.**

Expert testimony should only be admitted if it is sufficiently reliable. Dr. Robie's opinions are unreliable because they are not grounded in any practical experience, research, or methodology.

While not an exhaustive list, when evaluating whether an expert's methodology is reliable, a trial court will examine:

> (1) whether the expert's theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and

publication; (3) the known or potential rate of error inherent in the expert's theory or technique; and (4) whether the expert's methodology is generally accepted in his field of expertise.

*Sardis*, 10 F.4th at 281 (quotation marks omitted) (citing *Nease*, 848 F.3d at 229).

Dr. Robie fails to meet any of these factors. Again, Dr. Robie testified that he has never taught on the subject of gender dysphoria, Robie Dep. 12:21–25, and he has never conducted research on the treatment of gender dysphoria, been published in the area of gender dysphoria, Robie Dep. 13:1–6, or peer reviewed literature on this subject, Robie Dep. 14:8–10. It is not surprising that Dr. Robie wholly fails to meet any of the threshold criteria to qualify him as an expert because Dr. Robie freely admits that he is *not* an expert on diagnosis or treatment of gender dysphoria. Robie Dep. 11:12–23.

Even putting the *Daubert* factors aside, although Dr. Robie claims his experience is sufficient foundation for his opinions, he fails to address how this purported experience leads to his conclusions and how such experience is reliably applied here. *See SAS Inst., Inc.*, 125 F. Supp. 3d at 589; *see also Nat'l Ass'n for Rational Sexual Offense L.*, 2021 WL 736375, at *3.

For example, Dr. Robie has been designated to testify that "in order to provide diagnostic and medical treatment that meets a professional standard of care, primary care physicians must know the chromosomal sex of patients." State Health Plan Disclosures at 6. Defendants point to Dr. Robie's testimony for the principle that "competent medical care requires every diagnosing physician to know and to consider the patient's biological sex." Defs.' Resp. in Opp'n to Pls.' Mot. for Summ. J. 26, ECF No. 197. Yet, Dr. Robie

13

testified that in his own practice, he does not confirm the chromosomal makeup of his patients, Robie Dep. 29:14–16; 88:1–4, and that he will ask patients about their chromosomal makeup "[o]nly if the nurse says I need to. I can't recall recently where I've been asked to do that." Robie Dep. 87:11–15. Dr. Robie also testified that, despite having been in practice for forty-five years, he formed this opinion only when the present case was filed, around 2019. Robie Dep. 30:3–8. Dr. Robie's recently formed opinion is wholly disconnected from his own experience and does not qualify as an expert opinion. *See, e.g.*, *Nat'l Ass'n for Rational Sexual Offense L.*, 2021 WL 736375, at *3 (excluding expert where offering party failed to establish how expert's "experience leads to his conclusions nor how those experiences have been reliably applied to the facts"); *Lebron*, 772 F.3d at 1369 (disqualifying expert who did not propose "to testify about matters growing naturally and directly out of research [he had] conducted *independent of the litigation*" (alteration in original) (emphasis added) (quoting Fed. R. Evid. 702, Advisory Comm. Notes (2000 Amendments))).

Nor does Dr. Robie have substantial experience on which to draw. By his own testimony, in his forty-five years as a practicing physician, Robie Dep. 78:3–5, to his knowledge, he has treated only *four* patients who identify as transgender, Robie Dep. 88:15–22, and has never treated a patient *for gender dysphoria*, Robie Dep. 11:12–23. Dr. Robie has *never* treated a transgender adolescent or a transgender child. Robie Dep. 88:15–89:5.

14

Dr. Robie testified to his opinion as to gender-confirming surgery for adolescents, Robie Dep. 78:25–79:14, but then supported his opinion with testimony about his "personal experience" with this issue based on his friendship with the parents of a transgender child who underwent "transgender surgery" but who was not Dr. Robie's patient. Robie Dep. 79:15–23. Such anecdotal experience is insufficient to qualify Dr. Robie, an internal medicine practitioner with no specialization in treatment or diagnosis of transgender individuals, as an expert in this area. *See, e.g.*, *Hartke v. McKelway*, 526 F. Supp. 97, 100–01 (D.D.C. 1981) (family practitioner unqualified to establish the standard of care for surgical procedure, where the practitioner "ha[d] never performed the operation in question," "had no training or experience with that procedure," and a "major reason for her conclusion that there was negligence was that the result was unfavorable"); *Cooper*, 259 F.3d at 200 (affirming the exclusion of an expert who "asserted what amounted to a wholly conclusory finding based upon his subjective beliefs rather than any valid scientific method").

Although Dr. Robie testified during his deposition regarding the alleged cost of providing gender-confirming care, Dr. Robie admits he is not an expert in the cost of treatment for gender dysphoria. Robie Dep. 11:21–12:1. Dr. Robie's own testimony bears out his limited knowledge of the cost of gender-confirming care.

Defendants cite Dr. Robie's testimony regarding his goal to "cut the cost of healthcare for our state workers" to support their claim that limiting health care costs is a "legitimate purpose." Defs.' Resp. in Opp'n to Pls.' Mot. for Summ. J. 33–34, ECF No.

197 (citations omitted). Yet Dr. Robie testified that he was not aware of the total cost that the State Health Plan incurred for covering gender-confirming care in 2017. Robie Dep. 37:9–12. Attempting to offer an opinion about cost without gathering the centrally relevant data on this point—i.e., information about the State Health Plan's actual cost of this care in 2017—cannot be supported.

Nor can Dr. Robie's failure to consider the data actually relevant here be rehabilitated by his Internet research. When Dr. Robie testified that he "looked at the cost" of "transgender surgeries," he acknowledged that his research was limited to an Internet browser search in 2008, a review of only "[f]ive or six" websites around August 2018 and October 2018, and another Internet search the week and the day prior to his deposition. Robie Dep. 38:1-39:15; 50:8–51:12; 56:11–21; 78:6–11, Ex. 4. Dr. Robie testified that he spent approximately 2.5 hours total on this Internet research. Robie Dep. 78:6–11. Dr. Robie could not recall many of the sources he reviewed, Robie Dep. 49:4–17; 50:25–51:2, 55:10–56:4, could not recall any of the dates of the website content, and testified that apart from his limited Internet research, he had never otherwise researched the cost of gender-confirming surgery. Robie Dep. 38:7–43:18; 45:19–46:4, 51:18–53:5. Nor has Dr. Robie ever consulted with other medical providers on how much surgery to treat gender dysphoria might cost. Robie Dep. 43:19–25.

When Dr. Robie testified to the "average cost" of gender-confirming surgery, he could not recall which website presented that figure. Robie Dep. 41:3–11. Dr. Robie further testified that the figure he came up with amalgamated the costs for multiple

16

different procedures, even though he admitted not every patient may need or want each procedure because care is "very patient specific." Robie Dep. 65:7-23.

As to his own experience, Dr. Robie testified to a single anecdote, which he "guess[ed]" was in approximately 2008, *see* Robie Dep. 48:11–12, with a transgender individual that he helped look into the cost of gender-confirming surgery. Robie Dep. 47:14-48:1. However, even that anecdote is internally inconsistent, referring to the individual as having "no insurance" and then speaking of the cost for the individual "with that insurance." *Id.*

Such limited research and a single anecdotal experience do not qualify Dr. Robie as an expert in this area, especially given his own admission that he is *not* an expert in the cost of treatment for gender dysphoria. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

**E.    Dr. Robie's Opinions and Testimony Lack Probative Value and Are Thus Inadmissible Under Federal Rule Of Evidence 403.**

Finally, the Court should exclude evidence if its introduction will result in unfair prejudice, confusion of the issues, or misleading testimony. Fed. R. Evid. 403. As noted above, Dr. Robie offers no opinions on any factual dispute in this case, and, in any event, the opinions he offers are irrelevant and unreliable. Thus, consideration of Dr. Robie's testimony would waste time and create confusion. Accordingly, Dr. Robie's testimony

also fails to satisfy the requirements of Federal Rule of Evidence 403 and should be excluded.

## VI.    CONCLUSION

WHEREFORE, based on the foregoing, Plaintiffs respectfully request that this Court grant the instant motion and exclude Dr. Robie's purported expert testimony because it does not meet any of the indicia for admissibility under *Daubert* and the Federal Rules of Evidence.  Accordingly, this Court should exclude Dr. Robie's opinions and testimony in full.


Dated: February 2, 2022

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
Lauren E. Snyder
N.C. State Bar No. 54150
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Phone: 919-429-7386
Facsimile: 202-730-1301
arichardson@hwglaw.com

Michael W. Weaver*
Adam M. Safer*
MCDERMOTT WILL & EMERY
444 W. Lake St., Suite 4000
Chicago, IL 60606
Phone: 312-984-5820
Facsimile: 312-984-7700
mweaver@mwe.com

Dmitriy G. Tishyevich*

Respectfully submitted,

/s/ Deepika H. Ravi
Deepika H. Ravi*
Grace H. Wynn*
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Phone: 202-730-1300
Facsimile: 202-730-1301
dravi@hwglaw.com

Tara Borelli*
Carl S. Charles*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
158 West Ponce De Leon Ave.
Ste. 105
Decatur, GA 30030
Phone: 404-897-1880
Facsimile: 404-506-9320
tborelli@lambdalegal.org

Omar Gonzalez-Pagan*

18

Warren Haskel*
McDermott Will & Emery
One Vanderbilt Avenue
New York, NY 10017-3852
Phone: 212-547-5534
Facsimile: 646-417-7668
dtishyevich@mwe.com

Lauren H. Evans*
McDermott Will & Emery
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
Phone: 202-756-8000
Facsimile: 202-756-8087
levans@mwe.com

Lambda Legal Defense and
Education Fund, Inc.
120 Wall Street, 19th Floor
New York, NY 10005
Phone: 212-809-8585
Facsimile: 212-809-0055
ogonzalez-pagan@lambdalegal.org

David Brown*
Ezra Cukor*
Transgender Legal Defense and
Education Fund, Inc.
520 8th Ave, Ste. 2204
New York, NY 10018
Phone: 646-993-1680
Facsimile: 646-993-1686
dbrown@transgenderlegal.org

*Counsel for Plaintiffs*

\* Appearing by special appearance pursuant to L.R. 83.1(d).

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief is in compliance with Local Rule 7.3(d)(1) because the body of this brief, including headings and footnotes, does not exceed 6,250 words as indicated by Microsoft Word, the program used to prepare this document.

Dated: February 2, 2022

/s/ Deepika H. Ravi
Deepika H. Ravi
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Phone: 202-730-1300
Facsimile: 202-730-1301
dravi@hwglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically with the

Clerk of Court using the CM/ECF system which will send notification of such filing to all

registered users.

Dated: February 2, 2022

/s/ Deepika H. Ravi
Deepika H. Ravi
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Phone: 202-730-1300
Facsimile: 202-730-1301
dravi@hwglaw.com