# EXHIBIT 4

# CODE OF ETHICS OF THE AMERICAN SOCIETY OF PLASTIC SURGEONS

*(PLEASE NOTE: All complaints regarding possible ethical misconduct must be in writing and sent to: EthicsComplaints@plasticsurgery.org or ASPS Ethics Committee, 444 East Algonquin Road, Arlington Heights, IL 60005.)*

## PREAMBLE

As stated in its Bylaws, the American Society of Plastic Surgeons (ASPS) is organized:

To benefit humanity by advancing the art and science of plastic and reconstructive surgery; to promote the highest standard of professional skill and competence among plastic surgeons; to promote the exchange of information among plastic surgeons; to promote the highest standard of personal and professional conduct among plastic surgeons and other Members; to provide the public with information about the scientific progress in plastic and reconstructive surgery; to promote the purpose and effectiveness of plastic surgeons as is consistent with the public interest.

Membership in ASPS is granted to those surgeons who are competent practitioners of the art and science of plastic surgery. Competence in plastic surgery involves attainment and maintenance of high standards of medical and ethical conduct. Medical competence is fostered by successful completion of the examinations of the American Board of Plastic Surgery, The Royal College of Physicians and Surgeons in Canada and/or the Corporation Professionelle des Médecins du Québec. Ethical competence is fostered by the adoption and enforcement of a Code of Ethics, adherence to which is prerequisite for admission to and maintenance of membership in ASPS. Members are expected to act in accord with the General and Specific Principles of the Code of Ethics of ASPS in all their contacts with patients, peers and the general public. Further, Members are individually responsible and accountable for their actions and words, as well as the use of their names, by any individual or entity. Members shall be subject to disciplinary action, including expulsion, for violation of any of the General or Specific Principles of this Code.

Section 1: General Principles

I. The principal objective of the medical profession is to render services to humanity with full respect for human dignity. Members should merit the confidence of patients entrusted to their care, rendering to each a full measure of service and devotion.

II. Members should strive continually to improve medical knowledge and skill, and make available to their patients and colleagues the benefits of their professional achievements. Members have an affirmative duty to disclose new medical advances to patients and colleagues.

III. Members should practice a method of healing founded on a scientific basis, and should not voluntarily associate professionally with anyone who violates this principle.

IV. Members should observe all laws, uphold the dignity and honor of the profession, and accept its self-imposed disciplines. They should expose, without hesitation, illegal or unethical conduct of fellow Members of the profession.



Exhibit 0010
9/30/2021
Dr. Lappert

V. Members may choose whom to serve. In emergency situations, however, Members should render service to the best of their ability. Having undertaken the care of a patient, a Member may not neglect the patient; and until the patient has been discharged, a Member may discontinue services only after giving adequate notice.

VI. Members should provide services under the terms and conditions which permit the free and complete exercise of sound medical judgment and skill.

VII. A Member should seek consultation upon request, in doubtful or difficult cases or whenever it appears that the quality of medical service may be enhanced thereby.

VIII. A Member may not reveal a patient's confidence, any observed characteristics of the patient, or any information obtained from the patient in a professional capacity, without such patient's consent or unless required to do so by law or unless it becomes necessary in order to protect the welfare of the patient or of the community.

IX. The honored ideals of the medical profession imply that the responsibilities of the Member extend not only to the patient, but also to society. Activities, which have the purpose of improving both the health and well-being of the patient and the community, deserve the interest and participation of the Member.

X. To assist the public in obtaining medical services, Members are permitted to make known their services through advertising. Advertising, however, entails the risk that the Member may employ practices that are false, fraudulent, deceptive, or misleading. Regulation is, therefore, necessary and in the public interest. Subsection II of the Specific Principles permits public dissemination of truthful information about medical services, while prohibiting false, fraudulent, deceptive or misleading communications, and restricting direct solicitation.

XI. In their public and private communications with or concerning patients and colleagues made in a professional capacity or environment, Members shall strive to use accurate and respectful language and images.

Section 2: Specific Principles

I. Each Member may be subject to disciplinary action, including expulsion, if:

   A. The member's right to practice medicine is limited, suspended, terminated, or otherwise affected in any state, province, or country for violation of a medical practice act or other statute or governmental regulation or the Member is disciplined by any medical licensing authority.

   B. The Member fails to inform ASPS that the member's right to practice medicine has been limited, suspended, terminated, or otherwise affected in any state, province, or country for violation of a medical practice act, other statute or governmental regulation or, the Member has been disciplined by any medical licensing authority.

   C. The Member is convicted of (or pleads guilty to) a felony or any crime relating to or arising out of the practice of medicine or involving moral turpitude.

D. The Member engages in sexual misconduct in the practice of medicine.

E. The Member is involved in improper financial dealings including, but not limited to:

1. Dividing a fee for medical service with another person licensed to practice medicine who is not a partner or associate of his or hers, unless

    (a) The patient consents to employment of the other person licensed to practice medicine under a full disclosure that a division of fees will be made; and

    (b) A division is made in proportion to the services actually performed and responsibility assigned to each; and

    (c) The total fee charged by all persons licensed to practice medicine is not increased solely by reason of provision for the division of fees.

2. Payment and/or acceptance of rebates or referral fees to or from any person, including agents and employees of the member, in exchange for the referral of patients. Nothing in this Principle shall be construed to prohibit a Member from participating in a referral service, in which the member's paid participation is disclosed, where permitted by state law.

3. Charging exorbitant fees, particularly of a non-contractual nature (e.g., emergency care). Fees, whether for professional fees or associated with the use facilities owned in whole or in part by the Member, are exorbitant when they are wholly disproportionate to the services rendered and care provided. The reasonableness of fees depends upon the novelty and difficulty of the procedures involved; the skill required to provide proper care; the time and labor required; the fee charged for similar services by similarly situated peers; and whether or not the patient had agreed in advance to the fee. Members are responsible for ensuring the reasonableness and appropriateness of fees charged to patients and payors on such Member's behalf either directly or through third party billing services.

4. Except in instances of emergencies or urgent and life threatening disease or injury, nothing in this Principle shall be construed to prohibit a Member from requiring prepayment of professional fees for all elective surgical operations.

5. Nothing contained in this provision shall be construed to limit price competition among Members.

F. The Member uses, participates in or promotes the use of any form of public communication (as defined in Glossary to the Code) or private communication (as defined in the Glossary to the Code) containing a false, fraudulent, deceptive, or misleading statement or claim, including a statement or claim which:

1. Contains a misrepresentation of fact, or fails to state any fact that is necessary to make the statement not deceptive or misleading, when considered as a whole.

2. Omits facts or information of which the public ought to reasonably be informed before selecting a qualified plastic surgeon.

3. Contains photographs, images, or facsimiles of persons that falsely or deceptively portray a physical or medical condition, injury, disease, including obesity, or recovery of relief therefrom.

4. Contains photographs, images, or facsimiles of persons who have received the services advertised, but who have experienced results that are not typical of the results obtained by the average patient, without clearly and noticeably disclosing that fact.

5. Contains photographs, images, or facsimiles of persons before and after receiving services, which use different light, poses, or photographic techniques to misrepresent the results achieved by the individual.

6. Contains a testimonial or endorsement pertaining to the quality of the member's medical care if the experience of the endorser does not represent the typical experience of other patients or if, due to the infrequency and/or complexity of such care, results in other cases cannot be predicted with any degree of accuracy.

7. Contains a testimonial or endorsement pertaining to the quality of the member's medical care or the member's qualifications if the endorser has been compensated by the Member or a third party retained by the Member for making such testimonial or endorsement.

8. Is intended or is likely to create false or unjustified expectations of favorable results.

9. Contains a representation or statement of opinion as to the superior quality of professional services which is not susceptible to verification by the public or contains a statement representing that the Member possesses skills or provides services superior to those of other physicians with similar training unless such representation can be factually substantiated.

10. Appeals primarily to layperson's fears, anxieties, or emotional vulnerabilities.

11. Contains, in reference to any matter material to a patient's decision to utilize a member's services, a representation of fact or implication that is likely to cause an ordinary prudent person to misunderstand or be deceived, or fails to contain reasonable warnings or disclosures necessary to make a representation or implication not deceptive.

12. Contains a guarantee that satisfaction or a cure will result from the performance of the member's services.

13. States or implies that a Member is a board-certified specialist unless the Member is certified by a board recognized by the American Board of Medical Specialties, The

Updated September 25, 2017    4
CHICAGO/#2820866.1

Case 1:19-cv-00272-LCB-LPA   Document 209-5   Filed 02/02/22   Page 5 of 10

Royal College of Physicians and Surgeons in Canada and/or the Corporation Professionelle des Médecins du Québec.

14. Is not identified as a paid advertisement or solicitation unless it is apparent from the context that it is a paid advertisement or solicitation.

15. Is intended or is likely to attract patients by use of exaggerated claims.

G. The Member performs an unjustified surgical operation or a surgical operation that is not calculated to improve or benefit the patient.

H. The Member performs a surgical operation or operations (except on patients whose chances of recovery would be prejudiced by removal to another hospital) under circumstances in which the responsibility for diagnosis or care of the patient is delegated to another who is not qualified to undertake it.

I. The Member participates in a charity raffle, fund raising event, contest or other promotion in which the prize is any procedure, or an integral component of a procedure (e.g. breast implants), as defined in the Glossary to the Code.

J. The Member seeks or obtains a patent for any invention or discovery of a method or process for performing a surgical procedure or employs trade secrets, confidentiality agreements or other methods to limit the availability of medical procedures and the dissemination of medical knowledge.

K. The Member engages in unprofessional conduct in violation of the General Principles of the Code.

II. Advertising

A. Subject to the limitations of Section 2, I, F, a Member may advertise, including advertising through public communications media (as defined in the Glossary of the Code).

B. A Member shall not compensate or give anything of value directly or indirectly to a representative of the press, radio, television, or other public communication media in anticipation of or return for recommending the member's services. A Member shall approve all advertisements before dissemination or transmission, and shall retain a copy or record of all such advertisements in their entirety for one year after its dissemination. A Member shall be held personally responsible for any violation of the Code of Ethics incurred by a public relations, advertising or similar firm which he or she retains, or any entity that advertises on the member's behalf.

C. A Member may use photographs of models in his or her advertisements or other promotional materials. If photographs of models who have not received the services advertised are displayed in a manner that would suggest the model received the services advertised, the advertisement or other promotional material shall clearly and conspicuously state that the model has not received the advertised services.

III. Solicitation

    A. A Member shall refrain from engaging in systematic verbal solicitation (as defined in the Glossary of the Code) of patients in person, by telephone, or through agents.

    B. A Member shall not initiate contact with a prospective patient knowing that the physical, emotional, or mental state or degree of education of the person solicited is such that the person could not exercise reasonable judgment in employing a member.

    C. A Member who has given unsolicited, in-person advice to a layperson that the individual should have medical or health care shall not accept employment resulting from that advice if:

        1. The advice embodies or implies a statement or claim that is false, fraudulent, deceptive or misleading within the meaning of Article I, Section F.

        2. The advice involves the use by the Member of undue influence, coercion, duress, harassment, intimidation, unwarranted promises of benefits, over-persuasion, overreaching, or pressure for immediate response.

        3. The Member has been given notice that the individual non-patient does not want to receive a communication from the member.

IV. Expert Testimony

It is in the public interest that medical expert testimony be readily available, objective and unbiased. Members have an obligation to testify as expert witnesses when appropriate. However, Members may not accept compensation contingent upon the outcome of the litigation, nor agree to testify in any case where the Member has a conflict of interest (including, without limitation, where the Member is or has been the treating physician for the patient at issue or where the physician has a personal or professional relationship with the patient or plaintiff in the case). Members whose testimony, including testimony as to credentials or qualifications, is false, deceptive, or misleading may be subject to disciplinary action, including expulsion. Further to help limit false, deceptive and/or misleading testimony, Members serving as expert witnesses must:

    1. Have recent and substantive experience (as defined in the Glossary of the Code) in the area in which they testify, including, without limitation, experience in the relevant subspecialty or the particular procedure performed on the plaintiff;

    2. Thoroughly review the medical facts and testify to their content fairly, honestly, and impartially;

    3. Be familiar with the standards of practice prevailing at the time of the occurrence,

    4. Provide evidence-based testimony regarding the standard of care, citing peer-reviewed plastic surgery literature where possible and identifying personal opinion as such;

5. Demonstrate (or be prepared to demonstrate) a causal relationship between an alleged substandard practice and a medical outcome;

6. Neither condemn performance that clearly falls within the standard of care in the community nor endorse or condone performance that clearly falls outside of such standard of care; and

7. Not testify that a maloccurence is malpractice.

V. Conflicts of Interest

A Member's clinical judgment and practice must not be affected by economic interest in, commitment to, or benefit from professionally related commercial enterprises or other actual or potential conflicts of interest. Disclosure of professionally-related commercial interests and any other interests that may influence clinical decision-making is required in communications to patients, the public, and colleagues. When a Member's interest conflicts so greatly with the patient's interest as to be incompatible, the Member should make alternative arrangements for the care of the patient.

In the context of Member ownership interest in a commercial venture, the Member has an obligation to disclose the ownership interest to the patient or referring colleagues prior to utilization; the Member's activities must be in strict conformance with the law; and the patient should have free choice to use the Member's facility or therapy or to seek the needed services elsewhere.

VI. Enforcement

Any Member charged with a violation of any ethical standard set forth herein may be subject to disciplinary measures, including censure, suspension or expulsion, as described in Article XXII of the Society's Bylaws.

VII. Glossary

For purposes of this Code and unless the context otherwise requires,

A. "Electronic Media" includes websites, social media forums, blogs, video streams, discussion boards, digital platforms and any means of communication over the internet or similar virtual technology or networks.

B. "Private communication" includes any information, written or otherwise, that is disseminated by a Member and not made known to the general public or nor intended to be made known to the general public at the time it was made.

C. "Procedure" for the purposes of Section 2, Article I(I) of the Code, is defined as a medical service that requires an incision. Examples of services that require an incision include, but are not limited to, facelift, breast augmentation, blepharoplasty and liposuction. Examples of medical services that would not be considered procedures for purposes of Section 2, Article I(I) include, but are not limited to, injections (botulinum toxin, hyaluronic acid), microdermabrasion and other skin surface treatments.

D.  "Public communication" includes any information transmitted orally, in writing, or through Electronic Media, the primary purpose of which is to communicate with the public, or a segment thereof.

E.  "Public communications media" includes, but is not limited to, Electronic Media, television, radio, recorded video or motion picture, telephone, written correspondence, electronic mail/e-mail (other than those which are which are Private Communications), print (i.e. newspaper, magazine, book), marketing materials and branding (i.e. directory, business card, professional announcement card, office sign, letterhead, telephone directory listing or professional notice).

F.  "Recent and substantive experience" means that the Member is familiar with the practice of plastic surgery and the particular procedure performed at the time of the occurrence that is the subject of legal action, was engaged in the practice of plastic surgery for a period of not less than three (3) years prior to the date of the occurrence and has performed the specific procedure in question within three (3) years of the date of being retained as an expert witness.

G.  "Solicitation" is a communication to a specific individual to attract him or her as a patient.

# STATEMENT OF PRINCIPLE OF INFORMED CONSENT

The American Society of Plastic Surgeons recognizes the Member-patient relationship as one of shared decision-making. Through a process of communication and dialogue the Member provides information that allows a patient and/or the patient's authorized representative to make individual choices about his or her medical treatment.

Shared decision-making is at the heart of the doctor-patient relationship and is based on the ethical principles of respect for individual autonomy and dignity.

The process by which Members and patients make decisions together is informed consent. For any surgical operation or treatment, relevant information must be provided, discussed, and understood by the patient and/or the patient's authorized representative. Relevant information for proper informed consent for any procedure may include, but is not limited to:

- Nature of the surgery or treatment

- Indications for the operation

- Expected benefits

- Consequences and side effects of the operation

- Potential risks and adverse outcomes with their probability and severity

- Alternatives to the procedure being considered, and their benefits, risks, and consequences

- Outcome anticipated

- Whether the operation or treatment is experimental or being applied in a manner not approved by the relevant regulatory authorities (e.g. an off-label use or without approval of an Institutional Review Board)

The patient and/or the patient's legally authorized representative(s) should sign a written consent form before any surgical procedures are performed.