IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MAXWELL KADEL, et al.,

    *Plaintiffs*,

v.

DALE FOLWELL, et al.,

    *Defendants*.

No. 1:19-cv-00272-LCB-LPA

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO SEAL EXHIBIT 1 TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PATRICK W. LAPPERT**

As part of Plaintiffs' Motion and accompanying Memorandum to Exclude Expert Testimony of Dr. Patrick W. Lappert, (ECF Nos. 208 and 209), Plaintiffs filed a Motion to Seal a section of Dr. Lappert's Declaration that he labeled as "**CONFIDENTIAL INFORMATION SECTION BELOW**" since it discusses in a very detailed manner Plaintiffs' sensitive medical information and records. (ECF No. 210; ECF No. 209-2 at 47–55) (emphasis in original).

The State Health Plan Defendants ("Defendants") recognize that "documents filed in a lawsuit and containing sensitive medical information may be sealed," (ECF No. 214

1

at 4), but still claim Plaintiffs (including a minor) should not be entitled to any such protection here.[1]

As established in their Motion to Seal, the Motion (i) provides adequate public notice; (ii) explains why less drastic alternatives do not exist; and (iii) identifies why good reasons exist to seal this specific information from public disclosure, which justifies the granting of Plaintiffs' Motion. (ECF No. 210 at 2–3).

In response, the Defendants do not directly dispute any of these facts, nor argue any prejudice since they have access to an unsealed copy of their own expert's declaration, which itself designated the section at issue as confidential. Instead, they raise a generalized concern that granting the motion "runs the risk of significantly limiting the public's right to access to court records."[2] (ECF No. 214 at 6). In doing so, Defendants cherry-pick language from cases that are inapposite. For example, they invoke *Mann v. Berryhill*, No. 4:17-cv-90, 2017 WL 9939476 (E.D. Va. Dec. 19, 2017), several times; yet *Mann* involved a plaintiff's request to seal an *entire case*—a far cry from Plaintiffs' narrowly tailored

---

[1] The State of North Carolina Department of Public Safety Defendant did not join Defendants' motion, and no third party has objected to Plaintiffs' request since Plaintiffs filed their motion to seal on February 2, 2022.

[2] Defendants reference the First Amendment as an apparent basis to deny the motion. (ECF No. 214 at 2–3). However, as the document at issue was filed as part of a *Daubert* motion, any analysis under the First Amendment is unwarranted. *See, e.g., Lord Corp. v. S & B Tech. Prods., Inc.*, No. 5:09-CV-205-D, 2012 WL 895947, at *1 (E.D.N.C. Mar. 15, 2012) ("[T]he documents sought to be sealed have been filed in connection with a motion in limine to exclude expert testimony, and not in support of any motions that seek dispositive relief, and therefore the right of access at issue arises under the common law.").

request before this Court. Defendants also ignore precedent from this Court that contradicts their arguments.[3]

As this Court and other courts in this district have recognized, "[i]f the request is narrowly tailored, sensitive medical information may be sealed." *Boone v. Bd. of Governors of Univ. of N.C.*, 395 F. Supp. 3d 657, 665 (M.D.N.C. 2019), *aff'd*, 858 F. App'x 622 (4th Cir. 2021) (quoting *Bell v. Shinseki*, No. 1:12CV57, 2013 WL 3157569, at *9 (M.D.N.C. June 20, 2013), *aff'd*, 584 F. App'x 42 (4th Cir. 2014)).

For example, in *Boone*, plaintiff Annie Boone's employment as a university police officer was terminated after she was deemed unfit to serve as a result of mental health struggles she experienced after being raped. Boone brought claims against the Board of Governors of the University of North Carolina ("UNC"). UNC sought to file four documents under seal in connection with its summary judgment filing, including medical records from Boone's doctor visits and a medical history statement Boone gave when she applied to UNC, and both UNC and Boone filed briefs supporting the request to seal. This Court ultimately concluded in *Boone* that the motion to seal was narrowly tailored because it only included "medical records which summarize[d] [the] [p]laintiff's medical visits or

---

[3] Defendants' failure to address precedent from this Court is especially surprising as Defendants should be aware of this case law from earlier motion practice in this case. As part of Plaintiffs' motion for summary judgment, Plaintiffs filed a narrowly tailored request to seal portions of Dr. Brown's expert report, which Defendants objected to, requiring Plaintiffs to file a reply brief and identify this precedent. (*See* ECF Nos. 182, 190, 194). In their current response, Defendants do not address any of this precedent, but instead file an almost-verbatim copy of their earlier opposition.

medication or treatment history." *Boone*, 395 F. Supp. 3d at 665. This Court further noted that the parties had filed other relevant medical information, such as excerpts of depositions and other reports, unsealed. *Id.* This Court determined that the parties had "demonstrated a sufficiently compelling interest in preserving the confidentiality of some of Plaintiff's sensitive medical information" and granted the motion to seal. *Id.*

Similarly, in *Bell*, the Court found that a request to seal was narrowly tailored because it included only medical records, as opposed to the entire summary judgment record, and granted the motion to seal. 2013 WL 3157569, at *9.

Here, Plaintiffs seek to seal the narrowest possible portion of the record—nine (9) pages of a fifty-six-page report that discuss in detail Plaintiffs' medical records. Even Defendants' expert, Dr. Lappert, recognized the confidential nature of this information and placed a header at the start of this section: "**CONFIDENTIAL INFORMATION SECTION BELOW**." (ECF No. 209-2 at 47). Plaintiffs' request is even narrower than the requests in *Boone* and *Bell*, where the Court authorized sealing entire documents, as Plaintiffs here only seek to seal a portion of Dr. Lappert's declaration. Plaintiffs' request to seal an excerpt of a fifty-six-page declaration is therefore sufficiently narrowly tailored, particularly in light of the *Boone* and *Bell* courts' authorization to seal entire medical records, and should be granted.

Defendants' concern to the public's right to access court records also misses the point of the underlying motion to exclude Dr. Lappert's testimony. Plaintiffs moved to exclude Dr. Lappert's testimony because, in part, he "gives a smorgasbord of opinions that

he is not qualified to provide, and for which he has no basis." (ECF No. 209 at 1). Plaintiffs attach Dr. Lappert's declaration not to "put their medical diagnoses and treatment at issue," (ECF No. 214 at 6), but instead to demonstrate that Dr. Lappert is not qualified to provide his opinions. Dr. Lappert's declaration is filled with false statements or rank speculation, as set forth in Plaintiffs' motion to exclude his opinions, for example:

- Dr. Lappert represents that he is "Board Certified in Surgery and Plastic Surgery." (ECF No. 209-2 at 1). However, that statement is not true. He has not been board-certified in surgery since 2002 and plastic surgery since 2018. (ECF No. 209 at 6).

- Dr. Lappert criticizes various gender-affirming procedures, (ECF No. 209-2 at 29–39), but he has never actually performed any of those procedures, which violates the Code of Ethics of the American Society of Plastic Surgeons as the Code requires a member to "perform[] the specific procedure in question within three (3) years of the date of being retained as an expert witness." (ECF No. 209 at 8).

- Dr. Lappert claims that gender-affirming surgical and hormonal treatments "have not been accepted by the relevant scientific communities." (ECF No. 209-2 at 40). Again, this is another statement in Dr. Lappert's report that is not true. (ECF No. 209 at 12–13).

- Dr. Lappert asserts that these same scientific communities use "non-scientific" methodology and their guidelines and position statements are "political" and "not the product of a reliable scientific method." (ECF No. 209-2 at 10–11). This is yet another inaccurate statement in Dr. Lappert's report. (ECF No. 209 at 14–15); *see also Grimm v. Gloucester Cty. Sch. Bd.,* 972 F.3d 586, 595 (4th Cir. 2020) (confirming that the WPATH guidelines "represent the consensus approach of the medical and mental health community" and "have been recognized by various courts, including [the Fourth Circuit], as the authoritative standards of care").

- Dr. Lappert avows that surgical and hormone gender-affirming treatments are "experimental" because they are not from randomized clinical trials ("RCTs"). (ECF No. 209-2 at 5–6) ("[P]roperly conducted [RCTs] and long-term treatment outcome studies" are necessary to make

5

"experimental procedures actual, proven treatments."). However, Dr. Lappert conceded that his opinion is groundless because it is common for surgeons to perform procedures that have not been validated by RCT results, and it is not possible to conduct RCTs for hormonal or surgical gender-affirming treatments.

- Dr. Lappert opines that "social contagion and social pressure processes" are the root cause of gender dysphoria, some patients will become "detransitioners" and "drop out of transitioning," and others will experience "regret" after surgery. (ECF No. 209-2 at 21–22, 40). As Dr. Lappert has never treated a single patient for gender dysphoria, none of these opinions are tied to his actual experience as a plastic surgeon and are based on rank speculation. (ECF No. 209 at 18–19).

In their *Daubert* motion, Plaintiffs only refer once to the portion of Dr. Lappert's declaration that they seek to seal. (ECF No. 209 at 19). In his report, Dr. Lappert claims that the potential risks of gender dysphoria treatment were not communicated to individual Plaintiffs prior to the start of such treatment. (ECF No. 209-2 at 50). Again, this is another example of Dr. Lappert's rank speculation since he has never spoken with any Plaintiff and has no idea what Plaintiffs' health-care professionals communicated to any Plaintiff. (ECF No. 209 at 20). Plaintiffs cite to this section of Dr. Lappert's declaration, not to put Plaintiffs' medical diagnoses and treatment at issue, but to show Dr. Lappert is not a reliable expert since he employs rank speculation when rendering his opinions.

Granting the motion to seal would not affect the public's ability to understand the issue at stake, *i.e.*, whether Dr. Lappert is qualified to render various opinions about gender-affirming care, or even the more generalized factual allegations forming the bases for Plaintiffs' claims. *See Briglia v. Ameritas Life Ins. Corp.*, No. 1:14-CV-07968-RBK, 2015 WL 4314062, at *2 (D.N.J. July 14, 2015) ("In this instance, the public's right to access

6

does not outweigh Plaintiff's right to privacy in his medical information, especially since the information Plaintiff seeks to redact is narrowly tailored to ensure that the public is properly apprised of the other allegations which form the basis of Plaintiff's claims."). Indeed, the excerpts "subject to the motion to seal contain or refer to nonpublic personal medical information, . . . for which the public has no proper purpose to seek." *Swindell v. CACI NSS, Inc.*, No. 5:17-CV-00617-D, 2020 WL 698267, at *9 (E.D.N.C. Feb. 10, 2020).[4] That is because there is a "strong policy and interest in protecting the non-disclosure of private health information [that] outweighs the public's modest interest in disclosure of these materials in this case." *Cluck v. Unum Life Ins. Co. of Am.*, No. 2:18-CV-56, 2019 WL 6310058, at *2 (S.D. Ohio Nov. 25, 2019); *cf. United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("There can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection.").[5]

---

[4] This interest is heightened even more when it comes to minors, such as one of the Plaintiffs whose information is discussed in the section at issue. "Courts have repeatedly held that minors' privacy interests in medical and financial information . . . overcome the common law right of access in granting motions to seal." *Mears v. Atl. Se. Airlines, Inc.*, No. 5:12-CV-613-F, 2014 WL 5018907, at *3 (E.D.N.C. Oct. 7, 2014); *see also Finan v. Child Protective Servs.*, No. 1:19CV155, 2019 WL 2106184, at *4 (M.D.N.C. May 14, 2019). Simply put, "[t]he public has no interest in accessing the minor plaintiffs' confidential financial information," let alone a minor's medical information. *Webb v. Murphy-Brown, LLC*, No. 4:14-CV-00152-BR, 2021 WL 1342523, at *2 (E.D.N.C. Apr. 9, 2021).

[5] While the Fourth Circuit has not decided whether there is a constitutional right to privacy in one's medical information, *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 487 (4th Cir. 1992), the Fourth Circuit has recognized that medical records "should receive scrupulously confidential treatment," particularly when stigma may attach to

Moreover, sealing is the only feasible way to protect the sensitive medical information, as the information is relevant and cannot be redacted. In *Equal Employment Opportunity Commission v. Loflin Fabrication LLC*, the medical records at issue "corroborate[d] factual assertions about the dates of [claimant's] treatment and diagnosis found in the EEOC interrogatory answer and the claimant's deposition testimony." No. 1:18-CV-813, 2020 WL 3845020, at *4 (M.D.N.C. July 8, 2020).[6] The Court sealed the medical records, finding that "[t]he public interest [wa]s sufficiently protected by disclosure of this interrogatory answer and by the Court's description of the records, and disclosure of the records themselves would unnecessarily infringe on the claimant's privacy rights." *Id.* Similarly, Plaintiffs here seek to seal a portion of the expert declaration that discuss in inordinate detail aspects of their health and medical care that are not publicly known and which cannot be redacted. These excerpts do, however, corroborate deposition

---

them, *id.*, and both federal law and North Carolina law establish a "strong policy and interest in protecting the non-disclosure of private health information." *See* 42 U.S.C. § 1320d-6 (addressing wrongful disclosure by others of an individual's protected health information); N.C. Gen. Stat. § 58-2-105 (noting that "[a]ll patient medical records in the possession of the Department are confidential and are not public records").

[6] Defendants cite *Bryson*, which cites *Equal Employment Opportunity Commission* for the proposition that "it is difficult to justify keeping secret the nature of a claimed disability in a case involving alleged disability discrimination." (ECF No. 214 at 5–6). *Bryson* is easily distinguished, as discussed below, because the plaintiff's request was overbroad and sought to seal information he had already put into the public record. Defendants' Opposition ignores the fact that the Court sealed the medical records in *Equal Employment Opportunity Commission*, as Plaintiffs describe herein. Moreover, Plaintiffs do not seek to keep confidential the gender dysphoria diagnoses relevant to this matter, or even some of the aspects of their treatment. They instead seek only to protect more personal and sensitive medical facts that bear no relationship to any interest of the public or the underlying motion to exclude Dr. Lappert's opinions.

8

testimony and declarations, among other evidence, that are unsealed and were filed with Plaintiffs' summary judgment and *Daubert* motions. As in *Equal Employment Opportunity Commission*, Plaintiffs' request to seal these excerpts should be granted to avoid unnecessarily infringing on their privacy rights.

Notwithstanding these precedents, Defendants rely heavily on several inapposite cases to support their claim that medical information—even the particularly sensitive information at issue here—cannot be sealed in a case involving medical issues. In each of these cases, however, the plaintiff sought to seal *the entire record*—a request the Court denied because the request was overbroad. *See Mitze v. Saul*, 968 F.3d 689, 691 (7th Cir. 2020) (denying plaintiff's motion to seal "medical information . . . and all other information pertaining to [her] case," including the court's own rulings, and online news articles reporting on those rulings); *United States v. Wood*, No. 13-mj-01654, 2016 WL 5940884 (D. Md. Oct. 13, 2016) (denying plaintiff's request to seal her *entire* case several years after its conclusion); *Mann v. Berryhill*, No. 4:17-cv-90, 2017 WL 9939476, at *1 (E.D. Va. Dec. 19, 2017) (denying as "too broad" plaintiff's request to seal *"all documents filed in the matter"*) (emphasis in original); *see also Bureau of Nat. Affairs v. Chase*, No. ELH-11-1641, 2012 WL 3065352 (D. Md. July 25, 2012) (denying parties' motion to seal almost the entirety of the parties' summary judgment filings and all accompanying exhibits); *Bryson v. CompuCom Systems, Inc.*, No. 1:19-CV-1121, 2021 WL 2451640 (M.D.N.C. June 11, 2021) (denying plaintiff's request to broadly seal information, including dates of

9

employment and job responsibilities, and further denying request to seal medical information which plaintiff's own filings had already publicly disclosed).

Defendants' reliance on these cases is unavailing. In sharp contrast to the cases to which Defendants point, Plaintiffs do not seek to seal this Court's rulings, they do not seek to seal this *entire case,* they do not seek to seal *all* filings before this Court containing medical information, and they do not even seek to seal the entirety of any single filing or exhibit. Plaintiffs narrowly request only that this Court seal a few pages of Dr. Lappert's declaration, which contains particularly sensitive discussion of Plaintiffs' medical records, including intimate details of their experience with gender dysphoria as minors, medical diagnoses, surgery, hormone therapy, and psychotherapy.

Plaintiffs' request is narrowly tailored—even more so than requests that have been previously granted by this Court. As such, Plaintiffs respectfully request that the Court grant their Motion to Seal.

Dated: March 1, 2022

Respectfully submitted,

*/s/ Amy Richardson*
Amy E. Richardson
N.C. State Bar No. 28768
Lauren E. Snyder
N.C. State Bar No. 54150
HARRIS WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Phone: 919-429-7386 | Fax: 202-730-1301
arichardson@hwglaw.com

Tara L. Borelli
Carl S. Charles*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1 West Court Square, Ste. 105
Decatur, GA 30030
Telephone: 404-897-1880
Facsimile: 404-506-9320
tborelli@lambdalegal.org

Deepika H. Ravi*
Grace H. Wynn*
HARRIS WILTSHIRE & GRANNIS LLP
1919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Phone: 202-730-1300 | Fax: 202-730-1301
dravi@hwglaw.com

Michael W. Weaver*
Adam M. Safer*
MCDERMOTT WILL & EMERY
444 W. Lake St., Suite 4000
Chicago, IL 60606
Phone: 312-984-5820 | Fax: 312-984-7700
mweaver@mwe.com

Dmitriy G. Tishyevich*
Warren Haskel*
MCDERMOTT WILL & EMERY
One Vanderbilt Avenue
New York, NY 10017-3852
Phone: 212-547-5534 | Fax: 646-417-7668
dtishyevich@mwe.com

Lauren H. Evans*
MCDERMOTT WILL & EMERY
500 North Capitol Street, N.W.
Washington, D.C. 20001-1531
Phone: 202-756-8864 | Fax: 202-591-2900
levans@mwe.com

Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: 212-809-8585
Facsimile: 212-809-0055
ogonzalez-pagan@lambdalegal.org

David Brown*
Ezra Cukor*
TRANSGENDER LEGAL DEFENSE AND
EDUCATION FUND, INC.
520 8th Ave, Ste. 2204
New York, NY 10018
Telephone: 646-993-1680
Facsimile: 646-993-1686
dbrown@transgenderlegal.org

*Counsel for Plaintiffs*

\* Appearing by special appearance pursuant to L.R. 83.1(d).

11

Case 1:19-cv-00272-LCB-LPA   Document 216   Filed 03/01/22   Page 11 of 13

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief is in compliance with Local Rule 7.3(d)(1) because the body of this brief, including headings and footnotes, does not exceed 3,125 words as indicated by Microsoft Word, the program used to prepare this document.

Dated: March 1, 2022          */s/ Amy Richardson*
Amy E. Richardson
N.C. State Bar No. 28768
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Phone: 919-429-7386
Fax: 202-730-1301
arichardson@hwglaw.com

# CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered users.

Dated: March 1, 2022

*/s/ Amy Richardson*
Amy E. Richardson
N.C. State Bar No. 28768
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Phone: 919-429-7386
Fax: 202-730-1301
arichardson@hwglaw.com