IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MAXWELL KADEL, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DALE FOLWELL, in his official capacity as State Treasurer of North Carolina, *et al.*,<br><br>*Defendants*. | Case No. 1:19-cv-00272-LCB-LPA |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* NO. 3, REGARDING PRONOUN USAGE AND MISGENDERING**

Plaintiffs respectfully submit this memorandum of law in support of their motion *in limine* regarding pronoun usage and misgendering.[1]

## **INTRODUCTION**

A bedrock principle of the United States justice system is that all people must receive fair and equal treatment under the law. This includes the fair treatment of litigants by maintaining an atmosphere of courtesy and civility in the courtroom. Courtesy and respect require the use of language that conforms with a transgender person's gender identity.

Accordingly, Plaintiffs respectfully request that the Court instruct all participants in this case, including litigants, witnesses, and lawyers, to use the pronouns that conform with a person's identity when referring to that person, including transgender Plaintiffs.

## **FACTUAL BACKGROUND**

This case involves the denial equal treatment to state employees who are transgender or have transgender dependents, as a result of the exclusions for coverage of medically necessary gender-affirming care contained within the North Carolina State Health Plan for Teachers and State Employees ("NCSHP").

At least one of the experts that Defendants have indicated they will call as a witness, namely, Dr. Patrick Lappert, repeatedly used pronouns inconsistent with some of the transgender Plaintiffs' identities in his report. In his report, Dr. Lappert referred to Plaintiff

---

[1] Unless otherwise specified, all exhibits cited herein are attached to the contemporaneously filed Declaration of Omar Gonzalez-Pagan.

C.B., a transgender boy, with female pronouns like "her" and "she" (ECF No. 211-2 at 48); referred to Plaintiff Connor Thonen-Fleck, a transgender young man, with female pronouns like "her" and "she" and described him using feminine nouns (ECF No. 211-2 at 51); and referred to Plaintiff Julia McKeown, a transgender woman, with the male pronouns like "him" and "he" and described her using masculine nouns (ECF No. 211-2 at 53-54).[2]

Similarly, other "expert" witnesses that Defendants have indicated they will call at trial has described being transgender as a delusion or stated that social affirmation is wrong. *See, e.g.*, ECF Nos. 207 at 22-23.

Misgendering is the misclassification of someone's gender identity, which includes the use of a gendered pronoun that does not align with a person's gender identity.[3] Studies indicate that transgender people are "frequently misgendered by others" and that "these experiences le[a]d them to feel stigmatized."[4] Misgendering is perceived to be a

---

[2] The portions of Dr. Lappert's referenced herein (pages 47-55) have been filed under seal under docket number 211-2. *See* ECF No. 210 (Motion to Seal).

[3] Kevin A. McLemore, *A Minority Stress Perspective on Transgender Individuals' Experiences With Misgendering*, 3 Stigma & Health 53 (2016). To misgender is to "[r]efer to (someone, especially a transgender person) using a word, especially a pronoun or form of address, that does not correctly reflect the gender with which they identify." Misgender, Oxford University Press, www.lexico.com/en/definition/misgender (accessed June 9, 2022).

[4] McLemore, *supra* note 2, at 54 (citing Kevin A. McLemore, *Experiences of Misgendering: Identity Misclassification of Transgender Spectrum Individuals*, 14 Self & Identity 51 (2014)).

"stigmatizing event because it is associated with psychological distress."[5] Intentionally misgendering transgender people is stigmatizing and causes psychological distress.

Thus, Plaintiffs believe it is necessary to move this Court for an instruction regarding pronoun usage and misgendering.

## ARGUMENT

"All persons involved in the judicial process—judges, litigants, witnesses, and court officers—owe a duty of courtesy to all other participants." *In re Snyder*, 472 U.S. 634, 647 (1985). And transgender people, like all people, must be able to access the courts free from concerns about bias, prejudice, and discrimination. To permit the misgendering of transgender litigants undermines judicial proceedings and risks sacrificing confidence in the fairness and impartiality of the proceedings.

The duty to use the pronouns and honorifics consistent with a litigant's identity is in keeping with the treatment of litigants required by canons of judicial conduct and rules of professional responsibility. For example, federal courts "should require" "those subject to the judge's control" to "be patient, dignified, respectful, and courteous to litigants." Code of Conduct for U.S. Judges, Canon 3(A)(3). And Canon 2 of the American Bar Association's Model Code of Judicial Conduct specifies that judges "shall perform the duties of the judicial office impartially, competently, and diligently" including by "requir[ing] lawyers in proceedings before the court to refrain from manifesting bias or

---

[5] *Id.* at 61.

prejudice, or engaging in harassment . . . against parties, witnesses, lawyers, or others" based upon attributes including sex and gender under Rule 2.3(C). Similar duties apply to lawyers. The American Bar Association's Model Rules of Conduct hold that "it is professional misconduct for a lawyer to … engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of … gender identity … in conduct related to the practice of law." Model Rules of Prof'l Conduct R. 8.4(g) (Am. Bar Ass'n 2018). Such harassment and discrimination include "derogatory or demeaning verbal … conduct." *Id.* (Comment 3).

As such, hundreds of state and federal courts have used pronouns consistent with a transgender litigant's gender identity. Indeed, every Circuit Court of Appeals in the country has issued at least one opinion in which the pronouns consistent with the gender identity of a transgender person were appropriately used. *See, e.g., Kosilek v. Spencer*, 740 F.3d 733 (1st Cir.), *reh'g en banc granted, opinion withdrawn* (Feb. 12, 2014), *on reh'g en banc*, 774 F.3d 63 (1st Cir. 2014); *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 88 (2d Cir. 2012); *U.S. v. Newswanger*, 784 Fed. Appx. 96 (3d Cir. 2019); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 596 (4th Cir. 2020), as amended (Aug. 28, 2020), *cert. denied*, 141 S. Ct. 2878 (2021); *Rush v. Parham*, 625 F.2d 1150 (5th Cir. 1980); *E.E.O.C. v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cnty., Georgia*, 140 S.Ct. 1731 (2020); *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017); *Smith v. Rasmussen*, 249 F.3d 755 (8th Cir. 2001); *Edmo v. Corizon, Inc.*, 935 F.3d 757, 767 (9th

Cir. 2019), *reh'g en banc denied*, 949 F.3d 489 (9th Cir. 2020); Farmer v. Perrill, 275 F.3d 958 (10th Cir. 2001); *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257 (11th Cir. 2020), *cert. denied sub nom. Keohane v. Inch*, 142 S.Ct. 81 (2021); *Farmer v. Moritsugu*, 163 F.3d 610 (D.C. Cir. 1998). So has the Supreme Court, which in *Bostock v. Clayton County, Georgia*, referred to a transgender litigant, Aimee Stephens, by the name and pronouns consistent with her gender identity. *See*, *e.g.*, 140 S.Ct. at 1738 ("*Aimee Stephens* worked at R.G. & G.R. Harris Funeral Homes . . . . When *she* got the job, Ms. Stephens presented as a male.") (emphasis added). The Supreme Court did not see the need to explain why it was referring to Ms. Stephens as "Aimee Stephens" or "she"—it did so without giving the issue a second thought. This approach is consistent with basic notions of common courtesy: Because Ms. Stephens referred to herself as "she," so did the Court.

It is of no consequence that a case may involve litigated issues about gender identity. Courts that have used and required other parties to use the pronouns consistent with a litigant's gender identity have easily distinguished between: (1) a substantive ruling on the merits or a legal or factual finding on a litigant's gender identity, and (2) the respect owed a litigant by using the litigant's correct pronouns. In *Lynch v. Lewis*, No. 7:14-CV-24 HL, 2014 WL 1813725 (M.D. Ga. May 7, 2014), the Court explained:

> The Court and Defendants will use feminine pronouns to refer to the Plaintiff in filings with the Court. Such use is not to be taken as a factual or legal finding. The Court will grant Plaintiff's request as a matter of courtesy, and because it is the Court's practice to refer to litigants in the manner they prefer to be addressed when possible.

5

*2 n.2. *See also*, *e.g.*, Order, *Soule v. Conn. Ass'n of Sch.*, No. 3:20-cv-00201-RNC ((D. Conn. June 16, 2020) (Dkt. No. 121) ("[F]or plaintiffs' counsel to refer to these young people as 'transgender females' in accordance with their gender identity would entail no concession whatsoever relating to the merits of the case."); *DeGroat v. Townsend*, 495 F. Supp. 2d 845, 846 n.4 (S.D. Ohio 2007) ("The Court will use feminine pronouns to refer to the Plaintiff. Such use is not to be taken as a factual or legal finding. Rather, the Court considers it to be a matter of courtesy."); *Littleton v. Prange*, 9 S.W.3d 223, 224 (Tex. Ct. App. 1999) ("Throughout this opinion Christie will be referred to as 'She.' This is for grammatical simplicity's sake, and out of respect for the litigant, who wishes to be called 'Christie' and referred to as 'she.' It has no legal implications.").

The duty of courtesy regarding how litigants self-identify is not limited to transgender persons. Courts have for years deferred to litigants' preferences on other, and perhaps less consequential, issues of identity including the use of maiden names and nicknames. *See*, *e.g.*, *Herwig v. United States*, 105 F. Supp. 384, 385 (Ct. Cl. 1952) (because the plaintiff "designated herself by her maiden name . . . hereinafter she will be referred to by said maiden name"); *Trust Co. Bank of Nw. Ga., N.A. v. Manning*, 1993 WL 294184, at *2 n.1 (N.D. Ga. May 21, 1993); *White v. White*, 623 So. 2d 31, 33 (La. Ct. App. 1993); *In re Thorpe*, 2019 WL 3778359, at *1 (B.A.P. 9th Cir. Aug. 9, 2019) ("Douglas Thorpe ('Doug', as he prefers to be called)"); *In re Marriage of Whalen*, 2019 WL 1487637, at *1 n.1 (Iowa Ct. App. Apr. 3, 2019) (acquiescing to a litigant's preference to be called "D.J." instead of "Douglas").

6

This is neither novel, nor an area where the Supreme Court has been silent. In 1988, a federal judge apologized on the record to a married female lawyer for refusing to refer to her by her maiden name and the honorific "Ms." Associated Press, *Federal Judge Apologizes In Fight Over Use of 'Ms.'*, The New York Times (July 15, 1988), https://tinyurl.com/ra3u3z3. In doing so, the judge stated, "I recognize your right to be addressed in any manner in which you see fit, and I apologize for my comments and the resulting situation." *Id.* In 1964, the United States Supreme Court reversed an Alabama court's decision to hold in contempt Mary Hamilton, a Black civil rights activist, after she refused to answer the prosecutor's questions in which she was addressed only by her first name rather than as 'Miss' and her last name, as white litigants were. *See Ex parte Hamilton*, 156 So. 2d 926 (Ala. 1963), *rev'd sub nom. Hamilton v. Alabama*, 376 U.S. 650 (1964); *see also* Camila Domonoske, *When 'Miss' Meant So Much More: How One Woman Fought Alabama — And Won*, NPR (Nov. 30, 2017), https://tinyurl.com/ubw8sls.

But requiring the usage of pronouns consistent with a litigant's gender identity is not just about respect and courtesy; it is also about ensuring an appearance of objectivity, impartiality, and fairness in judicial proceedings. For example, the New York State Advisory Committee on Judicial Ethics has advised that permitting the wrong use of pronouns with regards to transgender litigants "could not only make them feel unwelcome but also distract from the adjudicative process," noting that "a judge must be careful to avoid any appearance of hostility to an individual's gender identity or gender expression." N.Y. Adv. Comm. on Jud. Ethics, Op. 21-09 (Jan. 28, 2021), https://tinyurl.com/yckhtptu.

7

And similarly, the Provincial Court of British Columbia has provided guidance noting that "[a]ccording people dignity and respect by using their correct titles and pronouns is one aspect of" "[p]roviding a forum of justice that is impartial, fair, consistent, and assures equal access for everyone." Provincial Court of British Columbia, *A change in how parties and lawyers should introduce themselves in court* (Dec. 16, 2020), https://tinyurl.com/5aryj8a7. The Court of Appeals of Indiana admonished a lower court along these lines when it stated,

> [W]e are obliged to address the fact that the trial court failed to treat R.E. with the respect R.E. deserves and that we expect from fellow judicial officers. Unfortunately, this is not the first such occasion we have had to publicly admonish one of our trial courts for such derision. In *In re M.E.B.*, we noted: "Throughout its order, the trial court fails or refuses to use [the petitioner's] preferred pronoun. The order is also permeated with derision for [the petitioner]. We would hope that the trial courts of this state would show far greater respect (as well as objectivity and impartiality) to all litigants appearing before them."

*Matter of R.E.*, No. 19A-MI-2562, 2020 WL 1173967, at *8 (Ind. Ct. App. Mar. 12, 2020) (citing *In Matter of M.E.B.*, 126 N.E.3d 932, 934, n.1 (Ind. Ct. App. 2019)); *cf. Middleton v. State*, 64 N.E.3d 895, 902 (Ind. Ct. App. 2016) (Plye, J., concurring) (finding counsel's use of racially-derogatory language impeded parties' rights "to the fair administration of justice"), *aff'd*, 72 N.E.3d 891 (Ind. 2017)..

At the end of the day, one of the most basic forms of courtesy is to address others respectfully, and refrain from addressing others in ways that are disrespectful or demeaning. "Considering how big of a social faux pas it is in our culture to misgender someone, and how apologetic people generally become upon finding out that they have

made that mistake, it is difficult to view . . . the deliberate misgendering of [a transgender person]—as anything other than an arrogant attempt to belittle and humiliate." Chan Tov McNamarah, *Misgendering as Misconduct*, 68 UCLA L. Rev. Disc. 40, 43 (2020) (quoting Julia Serano, Whipping Girl: A Transsexual Woman on Sexism and The Scapegoating of Femininity 185 (2007)). Intentionally misgendering a transgender litigant is thus "pure meanness." *T.B., Jr. by & through T.B., Sr. v. Prince George's Cty. Bd. of Ed.*, 897 F.3d 566, 577 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1307 (2019). It is "not a light matter, but one which is laden with discriminatory intent." *Doe v. City of New York*, 976 N.Y.S.2d 360, 364 (N.Y. Sup. Ct. 2013).

The Court should instruct all participants in this case, including litigants, witnesses, and lawyers, to use the pronouns that conform with a person's identity when referring to that person, including transgender Plaintiffs. *See*, *e.g.*, Letter Order, *Eller v. Prince George's Cnty. Pub. Sch.*, No. CV TDC-18-3649 (D. Md. Oct. 18, 2019) (Dkt. No. 44) (attached as Exhibit 1) (ordering that independent medical examination "be conducted in a 'trans-affirmative' manner and that [plaintiff's] gender identity be respected through the use of female pronouns"); *Canada v. Hall*, No. 18-CV-2121, 2019 WL 1294660, *1 n.1 (N.D. Ill. Mar. 21, 2019) (admonishing defendants' counsel for "careless disrespect for the plaintiff's transgender identity," in part through "consistent use of male pronouns to identify the plaintiff" when she did not identify as such); *United States v. Manning*, No. Army 20130739 Order (A. Ct. Crim. App. March 4, 2015) (ordering the use of neutral or feminine pronouns in all legal papers and proceedings in case involving transgender female

9

defendant) (attached as Exhibit 2); *Lynch*, No. 2014 WL 1813725 at *2 n.2 ("The Court *and Defendants* will use feminine pronouns to refer to the Plaintiff in filings with the Court.") (emphasis added); *cf.* Order, *Soule*, No. 3:20-cv-00201-RNC (Dkt. No. 121) ("I informed plaintiffs' counsel that I wanted them to refrain from continuing to refer to the transgender females involved in this case as 'males.'").

## CONCLUSION

For the foregoing reasons, the Court should grant the instant motion and instruct all participants in the case, including litigants, witnesses, and lawyers, to use the pronouns that conform with a person's identity when referring to that person, including transgender Plaintiffs.

Dated this 10th day of June, 2022.

Respectfully submitted,

/s/ Amy E. Richardson
Amy E. Richardson
(N.C. Bar No. 28768)
Lauren E. Snyder
(N.C. Bar No. 54150)
HARRIS, WILTSHIRE & GRANNIS LLP
1033 Wade Avenue, Suite 100
Raleigh, NC 27605-1155
Phone: 919-429-7386 | Fax: 202-730-1301
arichardson@hwglaw.com

Deepika H. Ravi*
Grace H. Wynn*
HARRIS, WILTSHIRE & GRANNIS LLP
1919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Phone: 202-730-1300 | Fax: 202-730-1301
dravi@hwglaw.com

/s/ Omar Gonzalez-Pagan
Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: 212-809-8585
Facsimile: 212-809-0055
ogonzalez-pagan@lambdalegal.org

Tara Borelli*
Carl S. Charles*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1 West Court Square, Ste. 105
Decatur, GA 30030
Telephone: 404-897-1880
Facsimile: 404-506-9320

Michael W. Weaver*
Adam M. Safer*
MCDERMOTT WILL & EMERY
444 W. Lake St., Suite 4000
Chicago, IL 60606
Phone: 312-984-5820 | Fax: 312-984-7700
mweaver@mwe.com

Dmitriy G. Tishyevich*
Warren Haskel*
MCDERMOTT WILL & EMERY
One Vanderbilt Avenue
New York, NY 10017-3852
Phone: 212-547-5534 | Fax: 646-417-7668
dtishyevich@mwe.com

Lauren H. Evans*
MCDERMOTT WILL & EMERY
One Vanderbilt Avenue
New York, NY 10017-3852
Phone: 202-756-8864 | Fax: 202-591-2900
levans@mwe.com

tborelli@lambdalegal.org

David Brown*
Ezra Cukor*
TRANSGENDER LEGAL DEFENSE AND
EDUCATION FUND, INC.
520 8th Ave, Ste. 2204
New York, NY 10018
Telephone: 646-993-1680
Facsimile: 646-993-1686
dbrown@transgenderlegal.org

*Counsel for Plaintiffs*

\* Appearing by special appearance pursuant to L.R. 83.1(d).

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief is in compliance with Local Rule 7.3(d)(1) because the body of this brief, including headings and footnotes, does not exceed 6,250 words as indicated by Microsoft Word, the program used to prepare this document.

Dated: June 10, 2022
/s/ Omar Gonzalez-Pagan
Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: 212-809-8585
Facsimile: 212-809-0055
ogonzalez-pagan@lambdalegal.org

# CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all registered users.

Dated: June 10, 2022
/s/ Omar Gonzalez-Pagan
Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: 212-809-8585
Facsimile: 212-809-0055
ogonzalez-pagan@lambdalegal.org