# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MAXWELL KADEL, *et al.*,<br><br>　　　　　　*Plaintiffs*,<br><br>　　*v.*<br><br>DALE FOLWELL, *et al.*,<br><br>　　　　　　*Defendants*. | No. 1:19-cv-272-LCB<br><br>**REPLY IN SUPPORT OF MOTION FOR STAY OF INJUNCTION PENDING APPEAL** |

**I. The Fourth Circuit's modification of its preliminary injunction analysis in *The Real Truth About Obama, Inc. v. FEC* does not affect the standard for assessing a stay pending appeal pursuant to *Long v. Robinson*.**

Plaintiffs assert that the Fourth Circuit's "modification to the preliminary injunction standard also altered the standard for a stay pending an appeal." Doc. No. 265 at 3 (citing *The Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355 (4th Cir. 2010). But as Plaintiffs acknowledge, *The Real Truth* was decided in context of a preliminary injunction, not a stay pending direct appeal. *See id.* Some district courts have concluded that *The Real Truth* requires an equivalent modification in the latter context, *see* Doc. No. 265 at 3–4, but others have taken the opposite approach, *see Ohio Valley Env't Coal., Inc. v. U.S. Army Corps of Eng'rs*, 890 F.Supp.2d 688, 692 (S.D. W. Va. 2012). The Fourth Circuit has not definitively addressed the matter. Given this lack of direct guidance, this Court should respect the Fourth Circuit's binding precedent in *Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970), until it is conclusively overruled.

## II. Defendants have established an adequate likelihood of success on the merits.

This Court should stay its injunction because Defendants are likely to succeed on their argument that it does not comply with the strict requirements of Federal Rule of Civil Procedure 65(d). Contrary to Plaintiffs' assertions, the critical issue is not that Defendants "have no idea what is excluded under their own exclusion," Doc. No. 265 at 6, but rather that the injunction leaves Defendants unable to determine precisely which of hundreds of possible surgeries, procedures, and prescriptions they must now cover—under penalty of contempt.[1] The medical community disagrees on the precise scope of "medically necessary services for the treatment of gender dysphoria," so Defendants are unable to compile the list of required surgeries, procedures, and prescriptions with any degree of scientific or legal confidence. Thus, the injunction is impermissibly vague because it fails to identify the specific services for which it requires Defendants to provide insurance coverage. Doc. No. 261 at 72.

---

[1] Civility is required in the Middle District of North Carolina. As the Honorable Catherine C. Eagles explained, "[t]he Court appreciates zealous advocacy, but all counsel are advised in any future briefing to focus on the facts and the law and to avoid adverbs and other unhelpful characterizations which are little more than opinions of counsel." *Baker v. Wake Forest University*, No. 1:19-cv-477-CCE (M.D.N.C. Sept. 20, 2019) (Doc. No. 30 at 2). This Court may determine whether and how to address Plaintiffs' repeated use of inflammatory language and *ad hominem* attacks, including derisive terms such as "farcical," "feigned ignorance," "absurd," "outrageous," "through the looking glass," and "poppycock."

Plaintiffs seem to assert that because the injunction instructs Defendants to "reinstate coverage," Defendants must simply restore coverage for any treatments that were covered in 2017. Doc. No. 265 at 8. Plaintiffs also suggest, in the alternative, that the injunction orders Defendants to follow the policy of their current third-party administrator. Doc. No. 265 at 9–10. But even if the text of the injunction did include these instructions, they would not resolve Defendants' dilemma. For example, WPATH and Plaintiffs' experts consider calf and buttocks implantation surgery to be medically necessary, but Defendants' current third-party administrator does not. *See* Doc. No. 181-1 at 194–195.[2] Would it violate the injunction for Defendants to follow their third-party administrator's policy and deny coverage for these treatments? As another example, the injunction offers no guidance as to whether facial transformation surgeries are medically necessary. The State Health Plan did not cover any of these procedures in 2017. The State Health Plan's current third-party administrator supports coverage for these procedures, but other industry-leading third-party administrators have deemed them medically

---

[2] WPATH considers calf implants, buttocks implants, hip/thigh/buttock lipofilling, laser hair removal, electrolysis hair removal, hair transplants/grafts, thyroid cartilage augmentations (Adam's apple implants), and voice modification surgeries to be medically necessary for the treatment of gender dysphoria. The Plan's current third-party administrator deems all of these to be experimental and medically unnecessary. *See* BLUECROSS BLUESHIELD OF NORTH CAROLINA, CORPORATE MEDICAL POLICY: GENDER AFFIRMATION SURGERY AND HORMONE THERAPY, *available at* https://perma.cc/M6YX-ACHX.

unnecessary.³ Could Defendants change to a third-party administrator that excludes coverage for facial transformation surgeries? Neither the text of the injunction nor Plaintiffs' Response provides a satisfactory answer to these simple questions.

Furthermore, the injunction completely ignores other facially neutral exclusions that collectively operate to deny coverage for all of Plaintiffs' desired procedures and prescriptions. Doc. No. 137 at 13–14. Thus, even if the disputed coverage exclusion is lifted, the Plan's benefits booklet still excludes nearly every "medically necessary service[ ] for the treatment of gender dysphoria," on facially neutral grounds. Yet the injunction does not reference these exclusions, much less enjoin the Plan from applying them. Rather than a "straw man," Doc. No. 265 at 10, these other facially neutral exclusions are a brick wall, and the injunction's failure to address them violates Rule 65(d).

Defendants have also shown a likelihood of success on their Equal Protection arguments. Plaintiffs contend that *Geduldig v. Aiello*, 417 U.S. 484 (1974), has no role to play in this case, but they fail to differentiate *Geduldig*'s reasoning from the context of alleged transgender discrimination. *See generally* Doc. No. 265 at 12–15. Plaintiffs attempt to limit *Geduldig* by

---

³ *See* UNITEDHEALTHCARE, MEDICAL POLICY: GENDER DYSPHORIA TREATMENT, *available at* https://perma.cc/7LEW-52QP; AETNA, GENDER AFFIRMING SURGERY, *available at* https://perma.cc/Z8VD-RRSB; CIGNA, MEDICAL COVERAGE POLICY: GENDER DYSPHORIA TREATMENT, *available at* https://perma.cc/Y5UB-TT48.

doubling down on their claim that pregnancy (and now abortion) can be defined without reference to a person's biological sex. *Id.* at 13–14. But the Supreme Court has already foreclosed this theory by explicitly defining pregnancy with reference to sex. 417 U.S. at 496 n.20. Moreover, nothing in the text of *Dobbs v. Jackson Women's Health Org.* supports Plaintiffs' view that the Supreme Court treats abortion as a "an objectively identifiable physical condition [as opposed to a treatment or procedure] that can be described without reference to sex." Doc. No. 265 at 13–15. To the contrary, the Court in *Dobbs* quoted *Geduldig* precisely because abortion, like pregnancy, is inextricably connected to a person's biological sex. "The regulation of a medical procedure that only one *sex* can undergo does not trigger heightened constitutional scrutiny unless the regulation is a 'mere pretext designed to effect an invidious discrimination against members of one sex or the other.'" 142 S. Ct. 2228, 2245–46 (2022) (quoting *Geduldig*, 417 U.S. at 496 n.20) (emphasis added).

Similarly, the injunction improperly applied *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). Defendants need not "strain to distinguish *Bostock*"; the analysis is straightforward. *Bostock* was limited to a statutory analysis of Title VII, and the Supreme Court has "never held that the constitutional standard for adjudicating claims of invidious racial [or gender] discrimination is identical to the standards applicable under Title VII." *Washington v. Davis*,

- 5 -

426 U.S. 229, 239 (1976). The *Bostock* Court's interpretation of a 1964 statute has no bearing on the original public meaning of the Fourteenth Amendment.

Finally, this Court improperly eliminated Plaintiffs' obligation to establish individuals with whom they are "similarly situated." Plaintiffs assert that "the unrebutted expert testimony showed" that "a person cannot suffer from gender dysphoria without identifying as transgender." Doc. No. 265 at 17 (quoting *Fain v. Crouch*, 2022 WL 3051015 (S.D.W.Va. Aug 2, 2022). But this claim was rebutted through the discovery in this case, as multiple experts testified that both transgender and cisgender people suffer from gender dysphoria, Doc. No. 197 at 27–28 (Ex. 17 at 241:24–243:20; Ex. 18 at 27:25–28:17), and that many transgender people do not suffer from gender dysphoria at all, *id.* (Ex. 16 at 28:11–13; Ex. 17 at 241:24–243:20). Plaintiffs are not entitled to argue their case on the basis of discovery and testimony from other cases, and Defendants are likely to succeed with this claim on appeal.

### III. Plaintiffs misunderstand the nature of Defendants' harm.

Plaintiffs assert that this Court's injunction does not impose irreparable injury on Defendants because Defendants' "financial injury claim" involves a relatively small dollar amount and does not affect the Plan's overall solvency. Doc. No. 265 at 18–19. Regardless of whether these claims are true, they have little bearing on the irreparable injury that Defendants actually raised. *See* Doc. No. 257 at 27–29. In fact, Defendants acknowledged that a "financial

- 6 -

Case 1:19-cv-00272-LCB-LPA   Document 266   Filed 08/31/22   Page 6 of 12

injury claim" is generally insufficient to establish irreparable injury, even if it "cannot be wholly recompensed or eradicated." *Id.* at 27 (quoting *City of Alexandria v. Helms*, 719 F.2d 699, 700 (4th Cir. 1983)).

Instead, Defendants contended that they would be harmed by the injunction in a "structural" and "practical" manner. Doc. No. 257 at 28–29. The Plan's effectiveness hinges on Defendants' ability to make complex actuarial and policy decisions. This Court's injunction irreparably distorts that decision-making process. The harm is not just that the State Health Plan now has <u>less</u> money to spend; the harm is that the State Health Plan no longer <u>knows</u> how much money it may spend, given its categorical obligation to provide coverage for an ever-expanding catalog of gender-affirming care. This is not a harm that can remedied with damages or restitution, so the specific dollar amount involved is irrelevant. *See* Doc. No. 265 at 18.

Likewise, Plaintiffs' reference to the Plan's "unfunded liability" only serves to highlight the injunction's interference with Defendants' fiduciary responsibilities. Doc. No. 265 at 18. North Carolina taxpayers have tasked the Plan and its administrators with allocating limited resources among countless coverage options—each affordable individually, but impossibly costly in the aggregate. By limiting the Plan's ability to make informed tradeoffs among these competing priorities, this Court's injunction irreparably undermines the state administrative process.

- 7 -

Case 1:19-cv-00272-LCB-LPA   Document 266   Filed 08/31/22   Page 7 of 12

Finally, Plaintiffs incorrectly suggest that the injunction's injury to the Plan "cannot outweigh the harm to [ ] many non-gender confirming members of the public." Doc. No. 265 at 19 (citing *Walker v. Azar*, 2020 WL 2729859, at *8 (E.D.N.Y. Aug. 17, 2020)). *Walker*—like *The Real Truth*, 575 F.3d 342—was decided in the context of a preliminary injunction. A stay pending appeal does not require that "the balance of equities tips in [the movant's] favor," as referenced in *Walker*. *The Real Truth*, 575 F.3d at 346; *compare Long*, 432 F.2d at 979. Instead, the effects on Plaintiffs and on the public are assessed at the third and fourth stages of the *Long* analysis, as discussed below.

Plaintiffs fail to rebut the structural nature of Defendants' irreparable injury beyond the conclusory and inflammatory assertion that it is "poppycock." Doc. No. 256 at 18. Accordingly, Defendants respectfully submit that the second *Long* factor weighs in favor of staying the injunction.

### IV. Plaintiffs' claims of being damaged by a stay are speculative.

Plaintiffs characterize Defendants' statement that "Plaintiffs do not identify any planned future surgeries" as "outrageous" and "absurd." Doc. No. 265 at 19–20. But Plaintiffs cite no evidence in the record in support of this characterization. In their affidavits, Maxwell Kadel, Connor Thonen-Fleck, Julia McKeown, Shelley K. Bunting, and Dana Caraway merely make conclusory assertions that they might seek further gender-affirming treatments in the future. Doc. No. 179-1 at 4; Doc. No. 179-2 at 4; Doc. No. 179-

- 8 -

Case 1:19-cv-00272-LCB-LPA   Document 266   Filed 08/31/22   Page 8 of 12

4 at 4; Doc. No. 179-8 at 7; Doc. No. 179-9 at 7–8. The other Plaintiffs make no reference to future treatments at all. *See* Doc. No. 179-3 at 1–5; Doc. No. 179-5 at 1–4; Doc. No. 179-6 at 1–6; Doc. No. 179-7 at 1–4. These allegations do not identify the specific symptoms that merit medical intervention, the specific medical procedures to be applied, or the specific timeframe and costs of such treatments. Without this information, this Court cannot possibly determine whether Plaintiffs have been "substantially harmed."

Plaintiffs suggest that any Constitutional violation constitutes "substantial harm." Doc. No. 265 at 19–20. If this were true, then one would have expected Plaintiffs to have moved for a preliminary injunction during the last four years. They have not, and yet they have obtained certain surgical and hormonal interventions nonetheless. More broadly, Fourth Circuit caselaw does not hold that any purported violation of Constitutional rights establishes "substantial harm"; otherwise, the third *Long* factor would be a mere formality. Instead, this Court must assess Plaintiffs' specific allegations. These allegations fall short, as discussed above, so the third *Long* factor favors a stay.

## V. Plaintiffs define "public interest" too narrowly.

Plaintiffs' misunderstanding of the harm caused by this Court's injunction is also evident in their discussion of the "public interest" under the fourth *Long* factor. As discussed above, the impact of this Court's decision reaches beyond mere "financial injury." *See* Doc. No. 265 at 21 (citing *Pashby*

*v. Delia*, 709 F.3d 307, 331 (4th Cir. 2013)). Instead, the "public interest" depends on authority for matters of North Carolina policy lying with the democratically appointed—and publicly accountable—authorities.

Plaintiffs claim the injunction benefits "all transgender individuals covered under [the Plan]." Doc. No. 265 at 21. But this is not a class action case, and the "public interest" includes all members of the broader community, not just Plan members with gender dysphoria. Otherwise, the third and fourth *Long* factors involve essentially the same considerations. In that light, the people of North Carolina have a strong interest in their limited public funds being administered by the policy experts to which they were entrusted through the democratic process. This is a meaningful consideration, separate and aside from the state's internal interest in financial solvency. Therefore, the fourth *Long* factor supports staying the injunction.

Respectfully submitted this the 31st day of August, 2022.

*/s/ John G. Knepper*
John G. Knepper
Wyo. Bar No. 7-4608
Law Office of John G. Knepper, LLC
1720 Carey Ave. Suite 590
Cheyenne, WY 82001
Telephone: (307) 632-2842
john@knepperllc.com

*/s/ Kevin G. Williams*
Kevin G. Williams
N.C. Bar No. 25760

*/s/ Mark A. Jones*
N.C. Bar No. 36215
BELL, DAVIS & PITT, P.A.
100 N. Cherry St. Suite 600
Winston-Salem, NC 27101
Telephone: (336) 722-3700
Facsimile: (336) 722-8153
kwilliams@belldavispitt.com
mjones@belldavispitt.com

## CERTIFICATE OF WORD COUNT

Pursuant to L.R. 7.3(d)(1), the undersigned certifies that this Reply complies with the Court's word limit as calculated using the word count feature of the word processing software. Specifically, this Reply contains less than 3,125 words. This count includes the body of the brief and headings, but does not include the caption, signature lines, this certificate, or the certificate of service.

This the 31st day of August, 2022.

*/s/ John G. Knepper*
John G. Knepper
Wyo. Bar No. 7-4608
Law Office of John G. Knepper, LLC
1720 Carey Ave. Suite 590
Cheyenne, WY 82001
Telephone: (307) 632-2842
john@knepperllc.com

*/s/ Kevin G. Williams*
Kevin G. Williams
N.C. Bar No. 25760

*/s/ Mark A. Jones*
N.C. Bar No. 36215
BELL, DAVIS & PITT, P.A.
100 N. Cherry St. Suite 600
Winston-Salem, NC 27101
Telephone: (336) 722-3700
Facsimile: (336) 722-8153
kwilliams@belldavispitt.com
mjones@belldavispitt.com

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notification to all counsel of record in this matter.

This the 31st day of August, 2022.

/s/ John G. Knepper
John G. Knepper
Wyo. Bar No. 7-4608
Law Office of John G. Knepper, LLC
1720 Carey Ave. Suite 590
Cheyenne, WY 82001
Telephone: (307) 632-2842
john@knepperllc.com

/s/ Kevin G. Williams
Kevin G. Williams
N.C. Bar No. 25760

/s/ Mark A. Jones
N.C. Bar No. 36215
BELL, DAVIS & PITT, P.A.
100 N. Cherry St. Suite 600
Winston-Salem, NC 27101
Telephone: (336) 722-3700
Facsimile: (336) 722-8153
kwilliams@belldavispitt.com
mjones@belldavispitt.com