IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MAXWELL KADEL, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | 1:19CV272 |
| DALE FOLWELL, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

This Court granted partial summary judgment on behalf of Plaintiffs and, in doing so, permanently enjoined Defendants Folwell and Jones, in their official capacities, from enforcing the State Health Plan's (the "Plan") coverage exclusion and ordered them to reinstate coverage for "medically necessary services for the treatment of gender dysphoria." (ECF Nos. 234 at 72; 261 at 72 (corrected version).) Before the Court is Defendants' Motion for Stay of Injunction Pending Appeal. (ECF No. 256.) For the reasons stated herein, Defendants' motion will be denied.

**I.  BACKGROUND[1]**

On June 10, 2022, this Court issued its Memorandum Opinion and Order granting Plaintiffs' motion for summary judgment on their equal protection claim; granting Defendant NCSHP's motion for summary judgment on Plaintiff Caraway's Title VII claim (thus denying

---

[1] In the interest of efficiency, the Court incorporates the factual and procedural backgrounds laid out in its summary judgment order. (ECF Nos. 234; 261.)

Plaintiff Caraway's motion for summary judgment on this claim as against NCSHP); and granting Plaintiff Caraway's motion for summary judgment on her Title VII claim against DPS (thus denying DPS's motion for summary judgment on this claim). (ECF No. 261 at 51, 57–58, 63, 72.) The Court reserved judgment on the motions related to Plaintiffs' claims arising under the ACA. (*Id.* at 65.) The Court also permanently enjoined Defendants Folwell and Jones, in their official capacities, from enforcing the Plan's exclusion and ordered them to reinstate coverage for "medically necessary services of treatment for gender dysphoria." (*Id.* at 67, 72.) The Court's order also addressed Plaintiffs' motions to exclude expert testimony, (ECF Nos. 202; 204; 206; 208; 212), and Plaintiffs' motions to seal, (ECF Nos. 182; 210). (ECF No. 261 at 12–36, 68–71.)

Following that order, Defendants gave notice of appeal, (ECF Nos. 245 & 250), and on July 27, 2022, Defendants filed the present motion requesting that this Court stay its injunction pending the Fourth Circuit's disposition of their appeal, (ECF No. 256).

Defendants raise three main arguments to support that they have established "a substantial case on the merits" sufficient to justify a stay of the injunction, including that (1) this Court's injunction is improperly vague in violation of Rule 65 of the Federal Rules of Civil Procedure; (2) this Court's equal protection analysis misapplies Supreme Court precedent; and (3) this Court's equal protection analysis improperly eliminates Plaintiffs' burden to prove that they are "similarly situated" to others privileged by the Plan's benefit design. (ECF No. 257 at 3–5.) Defendants also contend that they will suffer irreparable injury if the stay is denied and that the interests of other parties and of the public support a stay of the injunction. (*Id.* at 27–30.)

## II. STANDARD OF REVIEW

Rule 62(d) of the Federal Rules of Civil Procedure allows a court to suspend or modify an injunction "[w]hile an appeal is pending from an interlocutory order or final judgment that grants . . . an injunction." The granting of a stay pending appeal is "an extraordinary remedy." *Does 1-5 v. Cooper*, No. 13CV711, 2016 WL 10587195, at *1 (M.D.N.C. Mar. 2, 2016).

In *Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970), the Fourth Circuit established a four-factor balancing test for courts to apply when considering motions to stay a district order pending appeal. 432 F.2d at 979. That test requires that "a party seeking a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." *Id.* Some courts have applied a "sliding-scale" approach to these factors, while others have required that all four factors be definitively met. *Compare Rose v. Logan*, No. 12-25471, 2014 WL 3616380, at *1–2 (D. Md. July 21, 2014); *Does 1-5*, 2016 WL 10587195, at *1–2; *In re Kaiser Gypsum Co., Inc.*, No. 20-CV-537, 2021 WL 3476138, at *1 (W.D.N.C. Aug. 6, 2021) ("Failure to satisfy any of the four elements warrants denial of the [stay] motion."); *and Dale v. Butler*, No. 20-CV-184, 2021 WL 1305391, at *2 (E.D.N.C. Apr. 2, 2021) ("The movant must make a clear showing on each factor; the court does not engage in balancing test."), *with Ohio Valley Env't Coal., Inc. v. U.S. Army Corps of Eng'rs*, 890 F. Supp. 2d 688, 692 (S.D.W. Va. 2012) ("[T]he factors are balanced, such that a stronger showing on some of these prongs can make up for a weaker showing on others.").

Here, the Court need not determine precisely which test is appropriate because, as explained below, Defendants' motion must and will be denied regardless of whether a sliding-scale or rigid version of the *Long* test is used.

## III. DISCUSSION

### A. Whether Defendants Are Likely to Prevail on the Merits

The first factor is whether the moving parties are likely to prevail on the merits of their appeal. With respect to this factor, "[i]t is not enough that the chance of success on the merits be 'better than negligible' . . . '[m]ore than a mere "possibility" of relief is required.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Sofinet v. I.N.S.*, 188 F.3d 703, 707 (7th Cir. 1999)).

#### 1. Rule 65(d)

Defendants first maintain that they are likely to succeed on the merits of their appeal because this Court's injunction "does not comply with Rule 65(d)." Rule 65(d) of the Federal Rules of Civil Procedure requires courts granting injunctions to "describe in reasonable detail . . . the act or acts restrained or required." The Supreme Court has explained that Rule 65(d) "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). "[T]he specificity provisions of Rule 65(d) are no mere technical requirements," and "basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Id.*

Here, Defendants argue that the Court's injunction violated Rule 65(d) by not "'specifically' identify[ing] the coverage exclusion that Defendants cannot enforce." (ECF No. 257 at 11.) The Court finds this argument unpersuasive. The Court's Memorandum Opinion and Order discussed at length the relevant exclusion. (ECF No. 261 at 5–7.) The Court explained that the 2016 Plan excluded (1) psychological assessment and psychotherapy treatment in conjunction with proposed gender transformation; and (2) treatment or studies leading to or in connection with sex changes or modifications and related care. (*Id.* at 6.) Because that first exclusion was never implemented and no longer part of the Plan, the only

4

relevant exclusion here is the exclusion of treatment or studies leading to or in connection with sex changes or modifications and related care. (*Id.*) Defendants need not look anywhere but the Court's opinion to recognize the exclusion at issue in the injunction.

Defendants' argument that the Court failed to provide necessary "instructions on the precise extent and scope of 'medically necessary care for gender dysphoria'" is similarly unavailing. Defendants maintain that whether a service is "medically necessary care for gender dysphoria" is a "potentially boundless phrase" that "creates multiple unanswered questions." (ECF No. 257 at 13.) However, the Court's injunction simply maintains the status quo by restoring the last uncontested status between the parties from 2017, when Defendants covered medically necessary services for the treatment of gender dysphoria. (ECF No. 261 at 67.) As the Court noted, when the Plan covered "medically necessary services for the treatment of gender dysphoria" in 2017, NCSHP's third-party administrators, Blue Cross and CVS, appeared able to distinguish between medically necessary and unnecessary treatments. (*Id.* at 6, 51.) Indeed, this Court cited to Blue Cross' Corporate Medical Policy which distinguishes between medically necessary and unnecessary treatments for gender dysphoria. (*Id.* at 51; ECF No. 185-2 at 89–99.) If Blue Cross could make such coverage determinations in 2017, the Court finds that its injunction restoring the status quo and allowing Blue Cross to make such coverage decisions once again is sufficiently clear.

The Court also finds Defendants' reliance on *Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) inapposite. *Pashby* concerned a North Carolina DHHS policy, Policy 3E, which implemented stricter eligibility requirements for a Medicaid program providing in-home personal care. 709 F.3d at 313. The district court there granted an injunction prohibiting implementation of Policy 3E. *Id.* However, beyond the new eligibility requirements, Policy

5

3E contained several other unrelated provisions. *Id.* at 331. The Fourth Circuit thus held that "the district court has not described the enjoined conduct 'in reasonable detail'" and remanded the case for further clarification of the injunction. *Id.* at 331–32.

Here, the Plan's exclusion affected by the injunction does not contain any additional unrelated requirements or provisions like the policy in *Pashby*. The exclusion at issue here is a prohibition on treatment or studies leading to or in connection with sex changes or modifications and related care that encompasses "medically necessary services for the treatment of gender dysphoria." The Court has made that clear and described the enjoined conduct "in reasonable detail."

Last, Defendants take issue with various facially neutral exclusions not challenged by Plaintiffs—and consequently, not addressed by the terms of the injunction. (ECF No. 257 at 3, 15–16.) Such exclusions are simply not at issue; thus, the Court appropriately omitted them from its discussion of the terms and scope of the injunction.

### 2. Equal Protection Analysis

Defendants next argue that this Court's equal protection analysis was deficient. Specifically, Defendants contend that the Court misinterpreted *Geduldig v. Aiello*, 417 U.S. 484 (1974), and incorrectly determined that the Plan's coverage was a sex classification because its implementation "cannot be stated or effectuated without referencing sex." (ECF No. 257 at 17.)

This Court finds no error in its conclusion that the Plan's coverage exclusion is a sex classification. The Supreme Court in *Geduldig* held that a state health program that denied coverage for pregnancy did not discriminate based on sex, reasoning that the program did "not exclude anyone from benefit eligibility because of gender but merely remove[d] one

6

Case 1:19-cv-00272-LCB-LPA   Document 268   Filed 10/19/22   Page 6 of 12

physical condition—pregnancy—from the list of compensable disabilities." *Id.* at 494, 496 n.20. The Court explained that while "only women can become pregnant," the group of members who are not pregnant "includes members of both sexes." *Id.* at 494 n.20. Here, the Plan does not merely exclude a physical condition from coverage—it excludes treatments that are directly connected to sex—sex changes and modifications cannot be explained without reference to sex, gender, or transgender status. (ECF No. 261 at 47.)

The Court is not persuaded by the single district court that Defendants point to as holding the contrary. *Lange v. Houston County*, No. 19-CV-392, 2022 WL 1812306, at *8 (M.D. Ga. June 2, 2022). Other district courts, including one in this circuit, have issued opinions tracking with this Court's reasoning. *See, e.g.*, *Fain v. Crouch*, No. 20-cv-0740, 2022 WL 3051015, at *8 (S.D. W. Va. Aug. 2, 2022) (holding that an exclusion of gender-affirming care "precludes a specific treatment that is connected to a person's sex and gender identity" and not just an objectively identifiable physical condition); *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 950 (W.D. Wisc. 2018) ("[T]he Challenged Exclusion expressly *singles out and bars* a medically necessary treatment solely for transgender people suffering from gender dysphoria. In fact, by excluding 'transsexual surgery' from coverage, the Challenged Exclusion directly singles out a Medicaid claimant's transgender status as the basis for denying medical treatment."); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 997–1000 (W.D. Wis. 2018) ("[T]he Exclusion on its face treats transgender individuals differently on the basis of sex."); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1030 (D. Alaska 2020) ("[D]efendant's policy of excluding coverage for medically necessary surgery such as vaginoplasty and mammoplasty for employees, such a[s] plaintiff, whose natal sex is male while providing coverage for such

7

medically necessary surgery for employees whose natal sex is female is discriminatory on its face and is direct evidence of sex discrimination.").

Defendants also argue that the Court improperly eliminated Plaintiffs' burden to prove that they are "similarly situated" to others privileged by the Plan's benefit design. Defendants assert that no physician or benefits plan "can determine whether a treatment is 'medically necessary' without reference to the specific diagnosis that the physician intends to treat." (*Id.* at 25.) Defendants maintain that "the disputed exclusion affects only treatments for a specific diagnosis—gender dysphoria . . . not patient identities," so the Court was wrong to hold "that transgender Plan members are categorically denied coverage for the same medically necessary treatments." (*Id.*)

As the Court stated in its order, the factor used by the Plan to distinguish between covered and uncovered treatments is that the uncovered treatments "change or modify" the patient's assigned sex. (ECF No. 261 at 46.) The exclusion does not reference diagnosis; it only references the fact that the care is needed for sex changes or modifications and related care. (*Id.*); *see also Fain*, 2022 WL 3051015, at *6 ("Transgender people have access to the same surgeries for other diagnosis—the exclusion is aimed specifically at a gender change procedure. Thus, the exclusion targets transgender people because they are transgender.").

Further, this Court explained how even if the exclusion only applied to diagnoses of gender dysphoria, it would still be subject to intermediate scrutiny, as discrimination against those suffering from gender dysphoria is discrimination based on sex and transgender status. (ECF No. 261 at 44.) Gender dysphoria cannot be understood "without referencing sex" or a synonym. *See Grimm*, 972 F.3d at 608; *Fain*, 2022 WL 3051015, at *6 ("[A] person cannot suffer from gender dysphoria without identifying as transgender.").

8

### B. Whether Defendants Will Suffer Irreparable Harm

The second factor used when considering motions to stay an injunction pending appeal is the likelihood that the moving parties will suffer irreparable harm if a stay is not granted. "[S]imply showing some 'possibility of irreparable injury' . . . fails to satisfy the second factor." *Nken*, 556 U.S. at 434–35 (quoting *Abbassi v. I.N.S.*, 143 F.3d 513, 514 (9th Cir. 1998)).

Defendants argue that they will be irreparably harmed in two main ways if the injunction is continued to be enforced. First, Defendants argue "[t]he injunction permanently and fundamentally jeopardizes Defendants' ability to make what should be essential policy decisions as stewards of the Plan's state-allocated resources." (ECF No. 257 at 28.) Second, Defendants argue that the injunction "requires Defendants to provide additional coverage to Plan beneficiaries at a time when the Plan is already experiencing significant financial stress, distorting the Plan's policy determinations on how to allocate finite resources to their most efficient use." (*Id.* at 29.)

In its previous order, the Court determined that any harm suffered by Defendants would be "minimal," particularly given that Defendants and their third-party administrators were able to identify and cover medically necessary care in 2017. (ECF No. 261 at 66.) Additionally, when discussing whether Defendants could show that the exclusion furthered an important government interest, the Court noted how "the estimated $300,000–$900,000 saved by the exclusion per year pales in comparison to NCSHP's billion-dollar cash balance and saves each of the Plan's 740,000 members about one dollar each." (*Id.* at 48.) The Court found this "paltry limit" did not constitute an important governmental interest, nor does the Court find it sufficient to establish irreparable harm. (*Id.*)

9

Beyond any financial injury, Defendants also contend that they will face a "structural" and "practical" harm. (ECF No. 266 at 7.) They describe that harm as "distort[ion]" of Defendants' decision-making process because "the State Health Plan no longer knows how much money it may spend, given its categorical obligation to provide coverage for an ever-expanding catalog of gender-affirming care." (*Id.*) The Court does not find this allegation sufficient to establish irreparable harm. Such a speculative and abstract injury cannot be the basis for the "extraordinary remedy" of a stay pending appeal.

## C. Harm to Other Parties

The third factor requires that Defendants show "that other parties will not be substantially harmed by the stay." *Long*, 432 F.2d at 979. Defendants emphasize that Plaintiffs "will be in the same financial position" as they were when the exclusion went into effect and will thus "be unharmed by a stay of the injunction pending appeal." (ECF No. 257 at 30–31.) Plaintiffs counter that Defendants' focus on Plaintiffs' financial positions is improper, for "no amount of monetary damages can restore Plaintiffs to their rightful position of being able to access medical care at the time they need it, or undo the deprivation of equal treatment under law." (ECF No. 265 at 20.)

The Court reiterates its finding that "Plaintiffs have shown that they will require continued medical care to treat their gender dysphoria and that, barring judicial or legislative intervention, NCSHP intends to maintain the exclusion." (ECF No. 261 at 66.) It follows that the exclusion "will continue to force Plaintiffs and others delay or forgo medically necessary treatments." (*Id.*) Thus, it is not difficult to see how Plaintiffs will be harmed if their claims for "medically necessary" healthcare are denied via enforcement of the Plan's exclusion.

### D. Public Interest

Finally, Defendants must show that the public interest will be served by granting the stay. Defendants contend that "that the public will benefit from the allocation of North Carolina taxpayer dollars by the proper authorities unless and until the validity of the injunction is confirmed on appeal." (ECF No. 257 at 31.) Plaintiffs, on the other hand, argue that keeping the injunction in place "benefits the public by allowing *all* transgender individuals covered under NCSHP to receive 'medically necessary services for the treatment of gender dysphoria' during the pendency of the appeal—a benefit that outweighs Defendants' concern over the allocation of taxpayer dollars." (ECF No. 265 at 21.)

The Court agrees with Plaintiffs' assessment. The Court does not make light of the State's budgetary concerns and recognizes that Defendants "must make difficult decisions in an imperfect fiscal climate." *Pashby*, 709 F.3d at 331. However, it is clear to the Court that the public interest in this case lies with protecting public health by ensuring that all individuals covered under NCSHP receive "medically necessary services for the treatment of gender dysphoria." (ECF No. 261 at 67); *see also Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021) ("[I]t is well-established that the public interest favors protecting constitutional rights.").

\*   \*   \*

Considering all these factors, Defendants have not met their heavy burden of showing they are entitled to the "extraordinary remedy" of a stay pending appeal. Accordingly, Defendants' motion will be denied.

For the reasons stated herein, the Court enters the following:

11

# ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion for Stay of Injunction Pending Appeal, (ECF No. 256), is **DENIED**.

This, the 19th day of October 2022.

/s/ Loretta C. Biggs
United States District Judge