IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MAXWELL KADEL, et al.,

        *Plaintiffs*,

        v.

DALE FOLWELL, et al.,

        *Defendants*.

No. 1:19-cv-00272-LCB-LPA

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO COURT ORDER (Dkt. 269), IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (Dkt. 178), AND IN OPPOSITION TO NCSHP'S MOTION FOR SUMMARY JUDGMENT (Dkt. 136)**

The Court has requested additional briefing on Plaintiffs' claim under Section 1557 of the Affordable Care Act ("ACA"), namely, whether the term "health program or activity" encompasses health insurance and health plans, in light of recent rulemaking undertaken by the U.S. Department of Health and Human Services ("HHS"). The answer is unequivocally: **YES**.

**ARGUMENT**

**I.    The ACA's Text Is Unambiguous on this Question.**

Regardless of the various iterations of the federal regulations, under the plain language of Section 1557 and the ACA as a whole, the term "health program or activity" encompasses health insurance and health plans. *See* Dkt. 188 at 17-20; *see also C.P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*, 536 F.Supp.3d 791, 796 (W.D.

1

Wash. 2021) ("A claim of discrimination in violation of Section 1557 does not depend on an HHS rule."); *see also T.S. v. Heart of CarDon, LLC*, 43 F.4th 737, 743 (7th Cir. 2022) ("[I]t is unnecessary to determine which HHS rules are entitled to deference since we need not rely on them … Agency interpretation of a statute becomes relevant only where a court cannot discern clear meaning from the statute itself; that is not the case here.").

Here, Congress explicitly included health insurers that receive federal financial assistance within the purview of Section 1557:

> [A]n individual shall not … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, ***including*** credits, subsidies, or ***contracts of insurance***.

42 U.S.C. §18116(a) (emphasis added). This language was an intentional expansion over earlier anti-discrimination law that exempted "contracts of insurance." *See* 45 C.F.R. §84.3(h) (Rehabilitation Act regulation expressly excluded insurers from its reach). Congress's expansion of anti-discrimination law to health insurers that receive federal financial assistance was express and deliberate. *See SAS Inst., Inc. v. Iancu*, 138 S.Ct. 1348, 1355 (2018). After all, health coverage is what enables most Americans to access health care. It defies logic to argue that ***health*** insurance might not be a ***health*** program or activity. "It is unclear to whom this clause would apply if not health insurance issuers." *Fain v. Crouch*, 545 F.Supp.3d 338, 342 (S.D.W. Va. 2021).

In addition, this Court should not review the meaning of "health program or activity" in isolation; it should seek to ascertain the statutory term's meaning from its context. *See King v. Burwell*, 576 U.S. 473, 486 (2015); *see also Sierra Club v. United*

2

*States Army Corps of Engineers*, 909 F.3d 635, 645 (4th Cir. 2018) ("When considering the plain meaning of the statutory language, we also must consider the context in which the statutory words are used because we read statutes as a whole." (cleaned up)); *Fain*, 545 F.Supp.3d at 342 ("Although 'health program or activity' is not defined by the ACA, its meaning becomes evident as the Court widens its analytical lens beyond the phrase itself."). The Court therefore "must … interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into a harmonious whole." *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (cleaned up).

That "health program or activity" includes health insurance and health plans is evident from definitions of "health program" and "health care" contained within the ACA, which repeatedly refers to "health programs" and "health care entities" as including insurers and health plans in other provisions. *See Fain*, 545 F.Supp.3d at 342 (noting "[o]ther sections of the ACA provide further support"). For example, Section 1331 of the ACA permits states flexibility to provide a "basic ***health program***" by offering "1 or more standard ***health plans*** providing at least the essential health benefits described in section 18022(b) of this title to eligible individuals." 42 U.S.C. §18051(a)(1) (emphasis added). Similarly, Section 1553 defines "health care entity" to include "***a health maintenance organization***, ***a health insurance plan***, or any other kind of health care facility, organization, or ***plan***." 42 U.S.C. §18113(b) (emphasis added).

Furthermore, "[i]n interpreting a statute, the cardinal rule is that the intent of Congress is to be given effect." *Sierra Club*, 909 F.3d at 645 (cleaned up) (quoting

3

*N.L.R.B. v. Wheeling Elec. Co.*, 444 F.2d 783, 787 (4th Cir. 1971)). Accordingly, courts "must reject administrative constructions which are contrary to clear congressional intent." *Chevron, U.S.A, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984). Here, the inclusion of health insurance and health plans within "health program or activity" is apparent not just from the statutory text but also from statements of Congressional intent. *See* Dkt. 188 at 19. Indeed, the ACA is laser-focused on ending discrimination by health insurance companies. *See* Valerie K. Blake, *An Opening for Civil Rights in Health Insurance After the Affordable Care Act,* 36 B.C. J.L. & Soc. Just. 235, 237 (June 2016). HHS agrees. *See* Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47,824, 47,825 (proposed Aug. 4, 2022) ("[I]n enacting the ACA, Congress demonstrated a clear intent to protect individuals from discrimination in health insurance and other health-related coverage. As a general matter, the fact that Section 1557 is contained within the ACA—a law that predominantly regulates health insurance—indicates that Congress intended Section 1557 to apply to health insurance.").

In addition to Section 1557, the ACA prohibits health insurers from discrimination based upon health conditions in enrollment and re-enrollment. *See* 42 U.S.C. §§300gg-1; 300gg-2; 300gg-4. It ends the use of discriminatory pre-existing condition limitations in ACA-regulated health insurance. 42 U.S.C. §300gg-3. It prohibits insurers from using disability, health status and medical conditions as a basis of denying eligibility for coverage. 42 U.S.C. §300gg-4(a).

"Given this context, … 'health program or activity' under Section 1557 necessarily includes health insurance issuers." *Fain*, 545 F.Supp.3d at 342. Such has been the case since 2010 when the ACA was enacted. Accordingly, the Court should hold that NCSHP is covered by Section 1557 and reject NCHSP's invitation to narrow the definition of "health program or activity" to exclude health insurance.

## II. No Deference Is Owed to the 2020 Rule.

NCSHP argues that the 2020 Rule, which (inappropriately) excluded health insurance from the regulatory definition of "health program or activity," is entitled to deference under *Chevron*. Dkt. 137 at 29-30. Not so. As articulated above, there is no ambiguity as to whether "health program or activity" includes health insurance and health plans any part of which receive federal financial assistance. And, even if there were some ambiguity (there is none), the 2020 Rule's exclusion of health insurance is not entitled to deference under *Chevron* step two.

"At *Chevron*'s first step, a court looks to the 'plain meaning' of the statute to determine if the regulation responds to it." *King v. Burwell*, 759 F.3d 358, 367 (4th Cir. 2014) (quoting *Chevron*, 467 U.S. at 842–43), *aff'd*, 576 U.S. 473. At this step, courts look to "the plain language and context of the most relevant statutory sections, the context and structure of related provisions, and the legislative history of the Act." *Id.* at 372. Because here each of these three factors points to the inescapable conclusion that the term "health program or activity" encompasses health insurance, there is no ambiguity to resolve, and the inquiry ends.

5

To be clear, the inquiry at *Chevron* step one is issue specific. This Court need only proceed to the second step of the *Chevron* inquiry—whether the agency's interpretation is "based on a permissible construction of the statute"—if it finds that the statute is "silent or ambiguous ***with respect to the specific issue***." *Chevron*, 467 U.S. at 843; *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning ***with regard to the particular dispute in the case***." (emphasis added)); *Lawrence + Mem'l Hosp. v. Burwell*, 812 F.3d 257, 267-68 (2d Cir. 2016). Therefore, NCSHP's argument that regulation pertaining to other aspects of "health program or activity" would be precluded if the Court found the term to unambiguously encompass health insurance (Dkt. 137 at 31 n.6) falls flat. It would simply preclude the adoption of rules stating to the contrary.

Notwithstanding the above, even if the Court were to credit that there is some ambiguity in this regard (and there is not), the 2020 Rule is not entitled to deference under *Chevron* step two. At *Chevron* step two, the court asks whether the agency's interpretation "is based on a permissible construction of the statute." *Chevron*, 476 U.S. at 843. "An interpretation is unreasonable under *Chevron* deference if it is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Amaya v. Rosen*, 986 F.3d 424, 432 (4th Cir. 2021) (quoting *Chevron*, 467 U.S. at 844). As evidenced by the word "or," this standard requires courts to evaluate the reasonableness of an agency's decision in distinct ways. *Id.*

For one, the 2020 Rule's extrication of health insurance from the definition of "health program or activity" is manifestly contrary to the statute. *See* Section I, *supra*. For

6

another, the 2022 Proposed Rule makes clear the agency's view that the 2020 Rule was wrong in adopting such a narrow scope. *See* Section III, *infra*.

For another, the 2020 Rule is arbitrary and capricious. *See Judulang v. Holder*, 565 U.S. 42, 52 n.7 (2011) ("[U]nder *Chevron* step two, we ask whether an agency interpretation is 'arbitrary and capricious in substance.'" (citation omitted)). There are multiple reasons for this.

***First***, one of the primary purposes of enacting the ACA was ending discrimination in health insurance. It therefore defies logic that health insurance is outside the scope of the health anti-discrimination law enacted as part of the ACA.

***Second***, the 2020 Rule's interpretation also would lead to arbitrary and absurd results. Based on its argument for deference, NCSHP was liable for its sex discrimination under Section 1557 between 2016 and 2020 (when this case was filed and the 2016 Rule was in effect), was not liable under Section 1557 between 2020 and now (during some of the pendency of this case) and will be liable once again when the 2022 Proposed Rule is finalized. Of course, that is not and cannot be the case. The truth is health insurance is without a doubt a "health program or activity" and NCSHP's liability comes from the statute, not any regulation. That is why courts applied Section 1557 to health insurance even prior to any rulemaking. *See*, *e.g.*, *East v. Blue Cross & Blue Shield of La.*, No. 3:14-CV-00115-BAJ, 2014 WL 8332136, at *2 (M.D. La. Feb. 24, 2014). And why courts, including appellate courts, have applied Section 1557 to health insurance even during the existence of the 2020 Rule. *See*, *e.g.*, *T.S.*, 43 F.4th at 743-44 (applying Section 1557 to

7

health plan); *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1212 (9th Cir. 2020) (applying Section 1557 to employer-sponsored health plan), *cert. granted in part*, 141 S.Ct. 2882 (2021), *and cert. dismissed*, 142 S.Ct. 480 (2021); *Fain v. Crouch*, CV No. 3:20-CV-0740, 2022 WL 3051015, at *11-12 (S.D.W. Va. Aug. 2, 2022) (applying Section 1557 to state health plan); *E.S. v. Regence BlueShield*, No. 2:17-CV-01609-RAJ, 2022 WL 279028, at *2 (W.D. Wash. Jan. 31, 2022) ("Section 1557 of the ACA prohibits certain types of discrimination in health care … It does so by incorporating other nondiscrimination statutes and prohibiting discrimination on those grounds in the health care system, and specifically in health insurance contracts."); *C.P.*, 536 F.Supp.3d at 796-97 (applying Section 1557 to employer-provided health plan).

***Third***, the 2020 Rule's declaration that health insurers are not a "program or activity" under Section 1557 and not subject to Section 1557 because they are not "principally engaged in the business of providing healthcare," 85 Fed. Reg. 37,160, 37,244-45 (June 19, 2020), defies reason. To support its interpretation, the 2020 Rule contends that providing "health insurance" is different than providing "healthcare" and points to the definitions of "healthcare" and "health insurance" in unrelated statutes to support the distinction. *See id.* at 37,172-73. But, as articulated herein, Section 1557 plainly covers "health programs and activities," not just direct health care. And health insurance clearly is a health-related program or activity. It is what enables the majority of Americans to access health care.

What is more, the 2020 Rule's reliance on unrelated statutes for its interpretation is unavailing. For example, HHS points in the Rule to 42 U.S.C. § 300gg-91. *See id.* at 37,172. But 42 U.S.C. § 300gg-91, which defines terms for federal laws regulating health insurance, defines "health insurance coverage" to specifically include benefits consisting of medical care and acknowledges health insurance is one way of providing health care. Forced to acknowledge that "42 U.S.C. 300gg–91 explicitly encompasses payment, 'group health plans,' and 'definitions relating to health insurance,'" 85 Fed. Reg. at 37,172, the only response in the 2020 Rule was "that a health insurer is principally engaged in the business of providing coverage for benefits consisting in healthcare, which is not the same as the business of providing healthcare." *Id.* at 37,173. But this is a circular and irrational argument. Even assuming there is a distinction between a "healthcare" program and "health" program, Section 1557 prohibits discrimination by a "*health* program or activity," not a "*healthcare* program or activity." There is no rational explanation for 2020 Rule's position that *health* insurance is not a "*health* program or activity."

*Fourth*, NCSHP can point to no case holding that health insurance is not encompassed by the term "heath program or activity." The reason is simple. By adopting the broad term "health," Congress intended for Section 1557 to apply broadly, including health insurance. Such expansive language was necessary to effectuate the ACA's central statutory objective of expanding access to health care by eliminating various barriers to health coverage—including discriminatory policies and practices of health insurers. *See*

9

*King*, 576 U.S. at 478; *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 949, 955 (9th Cir. 2020).

In sum, the 2020 Rule is not entitled to any deference in this regard. The statutory text is unambiguous on this issue and even if it were (it is not), the 2020 Rule's definition of "health program or activity" to exclude health insurance is unreasonable.

**III. The 2022 Proposed Rule Lends Strong Support to Plaintiffs' Arguments.**

HHS's proposed regulations published on August 4, 2022 further support Plaintiffs' arguments. *See* 87 Fed. Reg. at 47,829. The 2022 Proposed Rule defines "health program or activity," in relevant part, as follows:

1) Any project, enterprise, venture, or undertaking to

   (i) Provide or administer health-related services, ***health insurance coverage***, or ***other health-related coverage***;

   (ii) Provide assistance to persons in obtaining health-related services, ***health insurance coverage***, or other ***health-related coverage***;

   …

*Id.* at 47,912 (to be codified at 45 C.F.R. §92.4) (emphasis added). This is consistent with the 2016 Rule. *See* 81 Fed. Reg. 31,375, 31,468 (May 18, 2016) (defining "health program or activity" as "the provision or administration of … health-related insurance coverage, or other health-related coverage, and the provision of assistance to individuals in obtaining … health-related insurance coverage"). HHS therefore has rejected and repudiated the 2020 Rule's definition of "health program or activity," challenges to which are pending in

three federal courts.[1] In doing so, HHS has communicated "the Department's view" that "the scope of application in the 2020 Rule is not the best reading of the statutory text of Section 1557" because "[t]he statutory text of Section 1557 demonstrates Congress' intent to apply Section 1557 to health insurance." 87 Fed. Reg. at 47,829.

Like Plaintiffs, HHS "believe[s] that the most natural reading of the language 'health program or activity' in the statute encompasses health insurance programs or activities." *Id.* at 47,844.

HHS explicitly rejects the 2020 Rule's legally challenged narrowing of the scope of Section 1557 as follows:

> In the preamble to the 2020 Rule, the Department emphasized that the provision of health-care *insurance* is not necessarily a form of health*care*. Whether or not that is true in any practical sense for purposes that bear on the application of nondiscrimination protections, the applicability of Section 1557 does not turn on whether a program or activity involves health care as such—it depends instead on whether the operations in question are a "*health program or activity*"—something that unequivocally describes the operations of health insurance issuers.

*Id.* at 47,844 (emphasis in original).

Aside from the above commonsense proposition, which shows why the 2020 Rule is entitled to no deference, HHS points to Section 1557's text as well as the whole statutory context of the ACA. *Id.* at 47,844–45. For example, HHS notes that "[i]n the description

---

[1] *Whitman-Walker Clinic v. U.S. Dep't of Health & Hum. Servs.*, No.20-11297-PBS (D.D.C.) (stayed, motion to dismiss pending); *New York v. U.S. Dep't of Health & Hum. Servs.*, No. 1:20-cv-5583-AKH (S.D.N.Y.) (stayed, motion for summary judgment pending); *Boston All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*, No. 20-11297-PBS (D. Mass.) (stayed).

11

of Federal financial assistance subject to Section 1557, the statute identifies three examples of Federal financial assistance, all of which pertain to health insurance: 'credits, subsidies, or contracts of insurance.'" *Id.* at 47,829. Thus, HHS concluded that it is only "logical to conclude that the inclusion of credits and subsidies in Section 1557's statutory language refers to the tax credits and cost-sharing subsidies provided for under the same title of the ACA (Title I) to assist people in purchasing health insurance coverage." *Id.*

"Given the ACA's focus on health insurance and other health-related coverage, if Congress intended to exclude health insurance from Section 1557's reach, it is logical to assume that it would have done so expressly." *Id.* at 47,844–45. As such, "the Department … believes the 2020 Rule limits application to health insurance and other health-related coverage in a manner inconsistent with the statute and Congressional intent." *Id.*

Simply put, the 2022 Proposed Rule provides strong support for Plaintiffs' arguments as to why health insurance and plans are within the scope of "health program or activity" under Section 1557. There is no ambiguity that "health program or activity" "***unequivocally*** describes the operations of health insurance issuers." 87 Fed. Reg. 47,844 (emphasis added). And, even if the Court were to accept NCSHP's contention that there is ambiguity (it should not), the 2020 Rule is entitled to no deference.

## **CONCLUSION**

For the reasons stated herein and Plaintiffs' other briefs, the Court should grant Plaintiffs' motion for summary judgment on their Section 1557 claim.

Dated: November 7, 2022

*/s/ Amy Richardson*
Amy E. Richardson
N.C. State Bar No. 28768
Lauren E. Snyder
N.C. State Bar No. 54150
HWG LLP
333 Fayetteville Street, Suite 1500
Raleigh, NC 27601
Phone: 919-504-9833 | Fax: 202-730-1301
arichardson@hwglaw.com

Deepika H. Ravi*
Grace H. Wynn*
HWG LLP
1919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Phone: 202-730-1300 | Fax: 202-730-1301
dravi@hwglaw.com

Michael W. Weaver*
Adam M. Safer*
MCDERMOTT WILL & EMERY
444 W. Lake St., Suite 4000
Chicago, IL 60606
Phone: 312-984-5820 | Fax: 312-984-7700
mweaver@mwe.com

Dmitriy G. Tishyevich*
Warren Haskel*
MCDERMOTT WILL & EMERY
One Vanderbilt Avenue
New York, NY 10017-3852
Phone: 212-547-5534 | Fax: 646-417-7668
dtishyevich@mwe.com

* Appearing by special appearance
pursuant to L.R. 83.1(d).

Respectfully submitted,

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: 212-809-8585
Facsimile: 212-809-0055
ogonzalez-pagan@lambdalegal.org

Tara L. Borelli
Carl S. Charles*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1 West Court Square, Ste. 105
Decatur, GA 30030
Telephone: 404-897-1880
Facsimile: 404-506-9320
tborelli@lambdalegal.org

David Brown*
Ezra Cukor*
TRANSGENDER LEGAL DEFENSE AND
EDUCATION FUND, INC.
520 8th Ave, Ste. 2204
New York, NY 10018
Telephone: 646-993-1680
Facsimile: 646-993-1686
dbrown@transgenderlegal.org

Lauren H. Evans*
MCDERMOTT WILL & EMERY
500 North Capitol Street, N.W.
Washington, D.C. 20001-1531
Phone: 202-756-8864
Fax: 202-591-2900
levans@mwe.com

*Counsel for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief is in compliance with Local Rule 7.3 and the Court's October 24, 2022 Order (Dkt. 269) because the body of this brief, including headings and footnotes, does not exceed 3,125 words as indicated by Microsoft Word, the program used to prepare this document.

Dated: November 7, 2022

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan\*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: 212-809-8585
Facsimile: 212-809-0055
ogonzalez-pagan@lambdalegal.org