# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MAXWELL KADEL, *et al.*, <br><br> *Plaintiffs,* <br><br> *v.* <br><br> THE NORTH CAROLINA STATE HEALTH PLAN FOR TEACHERS AND STATE EMPLOYEES, *et al.*, <br><br> *Defendants.* | No. 1:19-cv-272-LCB |

## STATE HEALTH PLAN'S SUPPLEMENTAL BRIEF ON AFFORDABLE CARE ACT CLAIMS

### INTRODUCTION

The North Carolina State Health Plan for Teachers and State Employees ("the Plan") respectfully contends that there is no reason to delay ruling on its motion for summary judgment regarding Plaintiffs' § 1557 claims. Docs. 136–37. As a matter of law, any new rule by the Department of Health and Human Services ("**HHS**") can be prospective only. No future rulemaking can create liability where, as here, none currently exists.

In its Memorandum Opinion and Order of June 10, 2022, Doc. 234, corrected August 10, 2022, Doc. 260–61, this Court explained that it would "reserve a ruling on claims alleged under the ACA." *Id*. at 2, 72. At the status conference on June 17, 2022, the Plan objected to the Court's reservation of its ruling regarding § 1557 and the continuance of the trial (if necessary) until December 2022. Doc. 259 at 5,10. The Plan was expressly concerned that "continuing [the] trial until there is a final rule will have the effect of causing an indefinite stay of these issues." *Id.*

Plaintiffs are not entitled to any relief under § 1557 because that statute does not unambiguously provide both that (1) the Plan is a "health program or activity" <u>and</u> (2) that the Plan "subjected [Plaintiffs] to discrimination" on a "ground prohibited" through its implementation of the single challenged exclusion. To find the Plan liable, this Court must conclude that § 1557 is unambiguous as to both issues.

Regardless of this Court's ruling, however, the current HHS rulemaking is of no consequence. If § 1557 is unambiguous, then the newly proposed HHS rule is irrelevant. If, on the other hand, § 1557 is ambiguous, then this Court must grant the Plan's motion for summary judgment because (1) the 2016 rule was enjoined and never went into

effect <u>and</u> (2) the current rule—in effect from August 18, 2020 to the present—precludes liability. Either way, the new rule—whenever it is finally promulgated—will not be retroactive and thus cannot affect Plaintiffs' potential recovery.

Finally, this Court should grant summary judgment to the Plan and dismiss Plaintiffs' Affordable Care Act claims because Plaintiffs are not entitled to any relief beyond what has already been obtained through these proceedings.

## ARGUMENT

### I. Legal Standard

Section 1557 of the Affordable Care Act, 18 U.S.C. § 18116, provides that:

> [1] an individual shall not, [2] on the ground prohibited under title VI of the Civil Rights Act of 1964, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, or section 794 of title 29, [3] be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, [4] any health program or activity, any part of which is receiving Federal financial assistance.

The Supreme Court recently held that under § 1557, a plaintiff can only recover "the <u>usual</u> contract remedies in private suits" for breach of contract, unless the text of the statute specifically provides otherwise. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1571

(2022) (emphasis in original). Therefore, in this case, Plaintiffs can potentially recover "compensatory damages" or an "injunction," *Barnes v. Gorman*, 536 U.S. 181, 187 (2002), but they cannot recover punitive damages, *id.*, or "emotional distress damages," *Cummings*, 142 S. Ct. at 1576. Nor can Plaintiffs recover attorneys' fees under § 1557, because such a remedy is not "traditionally available in suits for breach of contract." *See id.; Barnes,* 536 U.S. at 187.

For an entity receiving federal funds to be liable under the Affordable Care Act, it must have had notice of the potential liability in the first instance: "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Cummings*, 142 S. Ct. at 1570. To prove liability, then, Plaintiffs must show that § 1557 "unambiguously" entitles them to their requested damages from the Plan under the circumstances they allege.

The Secretary of Health and Human Services has authority to "promulgate regulations to implement" the provisions of § 1557. *See* 18 U.S.C. § 18116(c). This grant of rulemaking authority permits HHS to issue regulations that are entitled to deference under the familiar *Chevron* test. *Chevron v. Nat. Res. Def. Council*, 467 U.S 837 (1984).

Under *Chevron* step one, this court must determine whether Congress "has directly spoken to the precise question at issue" or whether the statutory term is instead ambiguous. *Othi v. Holder,* 734 F.3d 259, 265 n.4 (4th Cir. 2013). When a statutory phrase is ambiguous, *Chevron* step two asks only whether the interpretation "is based on a permissible construction of the statute." *Schafer v. Astrue,* 641 F.3d 49, 54 (4th Cir. 2011).

As such, even if § 1557 is ambiguous, a regulation that implements the provision is only lawful if it is consistent with the underlying legislation and otherwise reasonable. *See, e.g., Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 592 (1983) (opinion of White, J.) (holding that Title VI's prohibition against "discrimination" is inherently ambiguous, "at least to the extent of permitting, if not requiring," regulations prohibiting disparate impact under federal programs).

## II. Section 1557 does not unambiguously hold the Plan liable for the challenged coverage exclusion.

Plaintiffs challenge a single coverage exclusion before this Court, which limits payments for "[t]reatment or studies leading to or in connection with sex changes or modifications and related care," even if medically necessary. Doc. 137 at 13-14(PLANDEF-120636). To prevail at trial, Plaintiffs must prove first that the Plan unambiguously is a "health program or activity," and then that the Plan unambiguously "subjected [them] to discrimination" on a "ground prohibited" by the listed statutes through the challenged exclusion. Plaintiffs cannot rely upon the 2016 rulemaking by HHS, or the conclusions and evidence therein, to support a claim for damages against the Plan under § 1557.

In 2016, HHS stated that transition-related medical treatments could no longer be considered "cosmetic or experimental;" refusal to cover hormone treatment or surgery on such a basis was "recognized as outdated and not based on current standards of care." 81 Fed. Reg. 31376, 31429 (May 18, 2016). The final regulation included specific provisions that prohibited "a categorical coverage exclusion or limitation for all health services related to gender transition" for "health-

related insurance or other health-related coverage," *inter alia*. 81 Fed. Reg. 31471-72 (creating 45 C.F.R. § 92.207)

While the 2016 HHS rule could be interpreted to impose a federal grant condition upon the Plan, the rule's interpretation was enjoined nationwide before it went into effect. In *Franciscan Alliance v. Burwell*, the Northern District of Texas held that the 2016 rule's statutory interpretation was unlawful. *Franciscan All., Inc. v. Burwell*, 227 F.Supp.3d 660, 685–89 (N.D. Tex. 2016). Thus, the HHS regulation that prohibited discrimination on the basis of gender identity has always been without legal effect. *Id.* at 696. In 2019, the same court vacated this portion of the 2016 rule.[1] *Franciscan All., Inc. v. Azar*, 414 F.Supp.3d 928, 944–45 (N.D. Tex. 2019). Vacatur of an unlawful rulemaking "takes the unlawful agency action off the books" entirely. *Kiakombua v. Wolf*, 498 F.Supp.3d 1, 50 (D.D.C. 2020) (J. Ketanji Brown Jackson).

---

[1] In August 2022, the Fifth Circuit dismissed an appeal of the lower court's decision as moot because a 2020 HHS rulemaking eliminated the challenged regulatory provisions. However, the court explicitly <u>left the *vacatur* in place</u>. *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 375–76 (5th Cir. 2022). "Permitting important agency rules to flicker in and out of existence is detrimental to the rule of law." *Id.* at 375.

To the extent Plaintiffs claim that the Plan's decision not to cover certain treatments for gender dysphoria reflects discrimination "on the basis of sex," HHS has also expressly disavowed the factual analysis in its 2016 rule. HHS's revised 2020 rule examined this factual question, received extensive comment, and concluded that after a "review of the most recent evidence," the 2016 statement "was an erroneous assertion." 85 Fed. Reg. 37187 (June 19, 2020). The current Rule concludes that "there is, at a minimum, a lack of scientific and medical consensus to support this assertion," and the "lack of scientific and medical consensus—and the lack of high-quality scientific evidence supporting such treatments—is borne out by other evidence." *Id.*

Accordingly, Plaintiffs cannot demonstrate that § 1557 "unambiguously" imposes liability for the Plan's coverage exclusion. "[A] recipient may be held liable to third-party beneficiaries for intentional conduct that violates the clear terms of the relevant statute, but not for its failure to comply with vague language describing the objectives of the statute." *Barnes*, 536 U.S. at 187.

The Plan's exclusion cannot be held to "unambiguously" violate a spending clause condition imposed by § 1557 when a federal court both enjoined, and later vacated, that condition as inconsistent with law.

### A. Since August 2020, HHS has concluded that the Plan is not a "health program or activity" under § 1557, so the Plan is not liable under § 1557 for coverage decisions after that date.

When Plaintiffs brought this suit in 2019, HHS interpreted the term "health program or activity" in §1557 to include third-party health care payors, such as the Plan. *Nondiscrimination in Health Programs and Activities*, 81 Fed. Reg. 31376, 31467 (May 18, 2016) (promulgating 45 C.F.R. § 92.4). HHS's definition, at that time, extended to all operations of an entity "principally engaged" in "the provision or administration of . . . health-related coverage." 81 Fed. Reg. 31467.

HHS revised its rules, effective August 18, 2020, and re-defined "health program or activity" to specifically exclude entities such as the Plan. *Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority*, 85 Fed. Reg. 37160 (June 19, 2020). The phrase "health care program or activity" currently includes only those entities "engaged in the business of providing healthcare" and, further, "an entity principally or otherwise engaged in the business of

providing health insurance <u>shall not</u>, by virtue of such provision, be considered to be principally engaged in the business of providing healthcare." 45 C.F.R. § 92.3(b), (c) (2021) (emphasis added).

While the 2020 rule has been challenged in five federal district courts, and other provisions of that rule have been enjoined, <u>this dispositive provision remains in effect</u>. Of the district courts considering the 2020 rule, three have concluded that the plaintiffs lacked standing to challenge this portion of the regulation. *Whitman-Walker Clinic v. U.S. Dep't of Health & Hum. Servs.*, 485 F.Supp.3d 1, 31–33 (D.D.C. 2020); *Walker v. Azar*, 2020 WL 6363970 at *3 (E.D.N.Y. Oct. 29, 2020); *Wash. V. U.S. Dep't of Health & Hum. Servs.*, 482 F.Supp.3d 1104, 1121 (W.D. Wash. 2020).

Two district courts have allowed a challenge against this portion of the rule to the provision to proceed, but neither court issued an injunction, and both cases are currently stayed. *Boston All. Of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*, 2021 WL 3667760 at *9 (D. Mass. Aug. 18, 2021); *Boston Alliance v. HHS*, No. 20-11297-PBS (Oct. 29, 2021) (denying motion to remand but

staying further proceedings). *See also New York v. U.S. Dep't of Health & Hum. Servs.*, No. 1:20-cv-05583 (Doc. 145) (Aug. 23, 2021).

### B. The current HHS rule is entitled to *Chevron* deference.

The interpretation in the current HHS rule is entitled to deference under the familiar *Chevron* test. *Chevron v. Nat. Res. Def. Council*, 467 U.S. 837 (1984). Under *Chevron* step one, this court must determine whether Congress "has directly spoken to the precise question at issue" or whether, instead, the statutory term is ambiguous. *Othi v. Holder*, 734 F.3d 259, 265 n.4 (4th Cir. 2013). When a statutory phrase is ambiguous, *Chevron* step two asks only whether the interpretation "is based on a permissible construction of the statute." *Schafer v. Astrue*, 641 F.3d 49, 54 (4th Cir. 2011).

Section 1557 does not define "health program or activity," and two district courts in the Fourth Circuit have reached differing conclusions on the ambiguity of this term. *Compare Callum v. CVS Health Corp.*, 137 F.Supp.3d 817, 849–50 (D.S.C. 2015) (ambiguous) *with Fain v. Crouch*, 2021 WL 2657274, at *2-4 (S.D. W. Va. June 28, 2021) (unambiguous). This disagreement alone demonstrates the term's ambiguity. Moreover, courts considering other civil rights statutes defer

to agency interpretations that define the term "program or activity." *See Victim Rts. L. Ctr. v. Cardona,* 2021 WL 3185743 at *12 (D. Mass. July 28, 2021) (agency has authority to interpret "education program or activity" under Title IX); *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 467–68 (1999) (citing regulations defining scope of Title IX).[2]

Noting the complexity of the health insurance market, and recognizing the agency's distinction elsewhere between "health insurance" and "healthcare," HHS expressly concluded that entities like the Plan are not subject to § 1557 liability. 85 Fed. Reg. 37172-74. Under *Chevron,* "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844.

---

[2]  A court cannot find the same statutory term ambiguous in one case and not another. If this Court concludes "health program or activity" is unambiguous, it also necessarily concludes that HHS can never interpret that phrase, and that the agency was wrong to do so in both 2016 and 2020. Moreover, any future rulemaking on the subject would be invalid. Agency regulations can limit the reach of a statute, as here, but they can also expand the statutory scheme. *Currie v. Grp. Ins. Comm'n,* 290 F.3d 1, 6–7 (1st Cir. 2002) (Department of Justice rule extending Title II of the ADA to include employment within the scope of "public services, programs, activities").

Accordingly, Plaintiffs cannot seek damages from the Plan for any alleged violations of § 1557 occurring after August 18, 2020, because they cannot prove that the statute "unambiguously" applies to the Plan's coverage decisions. This means that no Plaintiff is entitled to any damages for any denial of coverage occurring after August 18, 2020.

**C. The proposed rulemaking issued by HHS in August 2022 is irrelevant to the disposition of Plaintiffs' claims by this Court.**

On August 4, 2022, HHS proposed a new rulemaking to replace its 2020 rule. *Nondiscrimination in Health Programs and Activities*, 87 Fed. Reg. 47824 (Aug. 4. 2022). Thus, it is clear that HHS—now for the third time—has indicated its position that the phrase "health program or activity" is ambiguous. If formally promulgated, that rule would reverse the 2020 rule's interpretation that the Plan is not a "health program or activity" under § 1557. *Id.* at 47868.

Critically, proposed rules "are suggestions made for comment; they modify nothing." *LeCroy Research Sys. Corp. v. Commissioner*, 751 F.2d 123, 127 (2d Cir. 1984). A proposed regulation "does not represent an agency's considered interpretation of its statute," and the "agency is entitled to consider alternative interpretations before settling

on the view it considers most sound." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 845 (1986). Accordingly, HHS's pending proposal has no legal effect. Formal promulgation is unlikely to occur within the next twelve months, and there is no reason to think the new rule will not be challenged and potentially enjoined as was the 2016 rule.

Further, the proposed rule cannot affect Plaintiffs' current claims for damages. "Well-settled law establishes that administrative rules do not apply retroactively unless Congress has explicitly authorized the agency to enact retroactive rules and the new rule in question expressly states its retroactive effect." *Bagliere v. Colvin*, 2017 WL 318834 at *4 (M.D.N.C. Jan. 23, 2017) (Auld, J.).

Nothing in Congress's grant of authority under § 1557 explicitly refers to retroactive rulemaking, stating only that the Secretary "may promulgate regulations to implement this section." 18 U.S.C. § 18116(c). This is far short of the "express statutory grant" required to establish the agency has such power from Congress. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 209 (1988); *Leland v. Fed. Ins. Adm'r*, 934 F.2d 524, 528–29 (4th Cir. 1991). Nor is there any claim to the contrary in the current proposed rulemaking.

## III. Plaintiffs' § 1557 claims should be dismissed entirely.

Should the Court conclude a trial is necessary, Plaintiffs have not provided sufficient evidence of damages on their § 1557 claims. During discovery, the Plan specifically asked Plaintiffs to identify their out-of-pocket costs, and they declined to do so:

> 18. Please identify with particularity and describe by type and amount the damages that Plaintiffs claim to have sustained as a result of the alleged acts and omissions of the Defendants.
>
> Response and Objections: Plaintiffs incorporate by reference each of the General Objections listed above. Subject to and without waiving their objections, Plaintiffs seek to recover out-of-pocket expenses and, pursuant to Federal Rule of Civil Procedure 33(d), will produce documents sufficient to identify the amount of those damages. Plaintiffs also seek to recover standard, garden variety emotional distress damages in an amount to be determined at trial.

Plaintiffs' First Supp. Obj & Resp. to SHP First Set of Interrogatories at 13 (May 5, 2021). In their motion for summary judgment, Plaintiffs alleged "financial harm," Doc. 75 at 42, 44–45, but they presented neither calculations nor medical bills

Currently, all Plaintiffs—except Plaintiff Caraway—have settled their claims against their employers. Doc. 110 at 2 (noting Plaintiffs and University Defendants reached a negotiated settlement of claims); Doc. 112 (Order dismissing claims against University Defendants). To the

extent Plaintiffs have suffered "compensatory damages," they are not entitled to double recovery under Title IX and § 1557. Before this Court decides the difficult and intricate legal questions regarding the interpretation of § 1557, each Plaintiff should be required to identify, with admissible evidence previously identified and produced in discovery, the compensatory damages they seek against the Plan. To the minimal extent Plaintiff Caraway has produced admissible evidence of procedures she obtained after January 1, 2018, the Plan is unable to identify a single bill for a procedure that was denied but which would have been approved in 2017. And critically, because the other Plaintiffs have settled with the University Defendants, they have already received a full recovery—based on the evidence they have produced during discovery. There is no reason to have a trial, nor prolong this litigation, when Plaintiffs can obtain no further relief.

## CONCLUSION

This Court should grant the Plan's motion for summary judgment, Docs. 136–37, and dismiss Plaintiffs' Affordable Care Act Claims.

Respectfully submitted this the 7th day of November, 2022.

| | |
|---|---|
| */s/ John G. Knepper* | */s/ Kevin G. Williams* |
| Wyo. Bar. No. 7-4608 | N.C. Bar No. 25760 |
| LAW OFFICE OF JOHN G. KNEPPER, LLC | |
| 1720 Carey Ave. Suite 590 | */s/ Mark A. Jones* |
| Cheyenne, WY 82001 | N.C. Bar No. 36215 |
| Telephone: (307) 632-2842 | BELL, DAVIS & PITT, P.A. |
| Facsimile: (307) 432-0310 | 100 N. Cherry St. Suite 600 |
| john@knepperllc.com | Winston-Salem, NC 27101 |
| | Telephone: (336) 722-3700 |
| | Facsimile: (336) 722-8153 |
| | kwilliams@belldavispitt.com |
| | mjones@belldavispitt.com |

## CERTIFICATE OF WORD COUNT

Pursuant to L.R. 7.3(d)(1), the undersigned certifies that this Supplemental Brief complies with the Court's word limit as calculated using the word count feature of the word processing software. This count includes the body of the brief and headings, but does not include the caption, signature lines, this certificate, or the certificate of service.

This the 7th day of November, 2022.

*/s/ John G. Knepper*
Wyo. Bar. No. 7-4608
LAW OFFICE OF JOHN G. KNEPPER, LLC
1720 Carey Ave. Suite 590
Cheyenne, WY 82001
Telephone: (307) 632-2842
Facsimile: (307) 432-0310
john@knepperllc.com

*/s/ Kevin G. Williams*
N.C. Bar No. 25760

*/s/ Mark A. Jones*
N.C. Bar No. 36215
BELL, DAVIS & PITT, P.A.
100 N. Cherry St. Suite 600
Winston-Salem, NC 27101
Telephone: (336) 722-3700
Facsimile: (336) 722-8153
kwilliams@belldavispitt.com
mjones@belldavispitt.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notification to all counsel of record in this matter.

This the 7th day of November, 2022.

| | |
|---|---|
| */s/ John G. Knepper* | */s/ Kevin G. Williams* |
| Wyo. Bar. No. 7-4608 | N.C. Bar No. 25760 |
| LAW OFFICE OF JOHN G. KNEPPER, LLC | |
| 1720 Carey Ave. Suite 590 | */s/ Mark A. Jones* |
| Cheyenne, WY 82001 | N.C. Bar No. 36215 |
| Telephone: (307) 632-2842 | BELL, DAVIS & PITT, P.A. |
| Facsimile: (307) 432-0310 | 100 N. Cherry St. Suite 600 |
| john@knepperllc.com | Winston-Salem, NC 27101 |
| | Telephone: (336) 722-3700 |
| | Facsimile: (336) 722-8153 |
| | kwilliams@belldavispitt.com |
| | mjones@belldavispitt.com |