IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MAXWELL KADEL, et al.,

    *Plaintiffs*,

v.

DALE FOLWELL, et al.,

    *Defendants*.

No. 1:19-cv-00272-LCB-LPA

**PLAINTIFFS' RESPONSE TO DEFENDANT NCSHP'S SUPPLEMENTAL BRIEF ON AFFORDABLE CARE ACT CLAIMS**

Pursuant to the Court's Order (Dkt. 269), Plaintiffs submit this response to Defendant NCSHP's supplemental brief on Plaintiffs' claims under Section 1557 of the ACA.

Plaintiffs' ACA claims arise under Section 1557's statutory text and not under any rule promulgated thereunder. Even if one were to look at the various rule iterations, one must conclude that Plaintiffs prevail on their ACA claims. Defendants misrepresent Section 1557's regulatory history and the litigation surrounding it, and the 2020 Rule's improper redefinition of "health program or activity" is not entitled to any deference. In sum, there is a present case or controversy for this Court to decide, even if a trial for damages is not necessary, and the Court should grant summary judgment to Plaintiffs on their ACA claims.

1

**ARGUMENT**

I. **NCSHP Misapprehends Plaintiffs' ACA Claim.**

Defendant NCSHP spends much ink trying to protect itself from liability under Section 1557 of the ACA by arguing about the various iterations of rulemaking pursuant to Section 1557. Unfortunately for NCSHP, however, Plaintiffs' claim is based on the statutory text of Section 1557 and does not depend on any particular rule.

NCSHP "argues that Plaintiffs cannot possibly prove discrimination because rules promulgated by the Department of Health and Human Services ('HHS') and case law demonstrate that categorical exclusions of treatment for gender dysphoria are not discrimination," but as the federal district court in *C.P. v. Blue Cross Blue Shield of Illinois* found: "This argument fails." *C.P. v. Blue Cross Blue Shield of Illinois,* 536 F.Supp.3d 791, 796 (W.D. Wash. 2021). That is because "[a] claim of discrimination in violation of Section 1557 does not depend on an HHS rule." *Id.* As the federal district court in *Tovar v. Essentia Health*, 342 F.Supp.3d 947 (D. Minn. 2018), held two years prior to the finalization of the 2020 Rule:

> Here, the Court's conclusion that Section 1557 prohibits discrimination based on gender identity relies solely on the plain, unambiguous language of the statute. The Court does not base its decision on the constitutionality of the DHHS regulation at issue in *Franciscan Alliance* [which challenged the 2016 HHS rule]. The ultimate resolution of *Franciscan Alliance* and any potential, new proposed DHHS regulation will not affect the resolution of this matter.

*Id.* at 957 (cleaned up); *see also Prescott v. Rady Children's Hosp.-San Diego*, 265 F.Supp.3d 1090, 1105 (S.D. Cal. 2017) ("[T]he ACA claim and the Court's decision under the ACA do not depend on the enforcement or constitutionality of the HHS's regulation.").

The Court can and should grant Plaintiffs' motion for summary judgment on their ACA claim and deny NCSHP's motion for summary on that same claim, based on Section 1557's statutory text, as explained in Plaintiffs' summary judgment briefs and supplemental brief. (*See* Dkt. 179, 188, 201, 270.)

## II. NCSHP Misrepresents the Litigation Regarding Section 1557 Regulations.

Although Plaintiffs' ACA claims arise under Section 1557's statutory text and do not depend on any regulation, to the extent the Court considers the various iterations of Section 1557 regulations, NCSHP's arguments are unavailing. For example, NCSHP's supplemental brief contains several misrepresentations and misleading statements regarding the status of litigation pertaining to the various iterations of Section 1557 regulations that must be corrected.

*First*, the nature of the preliminary injunction or ultimate outcome of the litigation in *Franciscan Alliance* is wholly irrelevant to the live questions before the Court, namely, whether NCSHP is "liable under the ACA because it is not a 'health program or activity.'" *Kadel*, 2022 WL 3226731, at *29.

*Second*, with regards to the regulatory definition of "on the basis of sex," as this Court previously found with respect to Plaintiffs' claims of sex discrimination, "[t]he test announced in *Bostock* is … the appropriate test to determine whether a policy discriminates

3

in violation of the ACA" and "there is no genuine issue of material fact disputing that the Plan discriminated against [Plaintiffs] on the basis of [] sex." *Kadel v. Folwell*, No. 1:19CV272, 2022 WL 3226731, at *29 (M.D.N.C. Aug. 10, 2022).[1]

Still, notwithstanding that whether the discrimination alleged in this case is discrimination on the basis of sex is a matter of statutory interpretation that this Court has already answered, NCSHP argues that it should prevail because the 2016 Rule which "prohibited discrimination on the basis of gender identity has ***always been without legal effect***." (Dkt. 271 at 7 (emphasis added).) Not true. To the extent one looks to the various iterations of these rules, the *preliminary injunction* decision by the court in *Franciscan Alliance, Inc. v. Burwell*, 227 F.Supp.3d 660 (N.D. Tex. 2016), did not vacate the 2016 Rule or leave the 2016 Rule without legal effect. By its very terms, the court simply enjoined "***Defendants … from enforcing*** the Rule's prohibition against discrimination on the basis of gender identity or termination of pregnancy." *Id.* at 696 (emphasis added). It is beyond peradventure that "no court can make a decree which will bind anyone but a party." *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930); *see also Haizlip v. Alston*, No. 1:14CV770, 2015 WL 8668230, at *1 (M.D.N.C. Dec. 11, 2015) (Auld, J.) (collecting cases). Here, NCSHP does not—and cannot—allege that Plaintiffs (who were

---

[1] Section 1557's prohibition on sex discrimination ***unambiguously encompasses*** discrimination based on gender identity or transgender status. "[D]iscrimination based on … transgender status necessarily entails discrimination based on sex," *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1747 (2020), "because to discriminate on these grounds requires [one] to intentionally treat individual [persons] differently because of their sex." *Id.* at 1742.

4

not parties to *Franciscan Alliance*) were prevented by the preliminary injunction in *Franciscan Alliance* from suing to enforce Section 1557 over the violation of their rights. Furthermore, it is, at minimum, debatable whether the 2016 Rule's definition of "on the basis of sex" to include gender identity remains in effect at present.[2]

Therefore, NCSHP is wrong to argue that the 2016 Rule's definition of "on the basis of sex" to include gender identity "was always without effect." Such regulatory provision was in effect prior to this case being brought, it was in effect when this case was brought, and it arguably remains in effect to this day, as per *Walker v. Azar*. Thus, to the extent one affords *Chevron* deference to the rules (and again, there is no need to), the various rules support Plaintiffs on this point.

***Third***, NCSHP misrepresents the status of some of the challenges against the 2020 Rule. For example, NCSHP states that the district court in *Whitman-Walker Clinic, Inc. v. U.S. Department of Health & Human Services*, 485 F.Supp.3d 1, 31 (D.D.C. 2020), held

---

[2] NCSHP points to *Franciscan Alliance*'s vacatur of portions of the 2016 Rule's that occurred in late 2019. But not only that decision solely sought to vacate the 2016 Rule "insofar as the Rule defines "On the basis of sex" to include gender identity and termination of pregnancy," Order, *Franciscan Alliance v. Azar*, No. 7:16-cv-00108-O (N.D. Tex. Nov. 21, 2019) (ECF No. 182), at 2, https://bit.ly/3UCQLps, but it occurred years *after* the 2016 Rule took effect and *after* the filing of this case in early 2019. Moreover, on August 17, 2020, the court in *Walker v. Azar* "stay[ed] the repeal of the 2016 definition of discrimination on the basis of sex," specifically held that "the definitions of 'on the basis of sex,' 'gender identity,' and 'sex stereotyping' currently set forth in 45 C.F.R. § 92.4 ***will remain in effect***," and "preliminarily enjoin[ed] the defendants from enforcing the repeal." *Walker v. Azar*, No. 20CV2834FBSMG, 2020 WL 4749859 (E.D.N.Y. Aug. 17, 2020) (emphasis added), *appeal withdrawn sub nom. Walker v. Becerra*, No. 20-3580, 2021 WL 5548357 (2d Cir. Nov. 22, 2021), *and appeal withdrawn*, No. 20-3580, 2021 WL 5548357 (2d Cir. Nov. 22, 2021). This decision remains in effect today.

5

that the plaintiffs in that case lacked standing to challenge the 2020 Rule's unlawful redefinition of "health program or activity." NCSHP is mistaken. The court in that case simply concluded that, "at th[e] juncture" of a preliminary injunction motion, it could not "conclude that [the plaintiffs] ha[d] stated a constitutionally cognizable injury." *Id.* at 31. The court, however, "d[id] not rule out the potential for Plaintiffs to better support their standing argument in the future with revamped allegations." *Id.* at 32. Indeed, the plaintiffs in *Whitman-Walker* have made such revamped allegations (*see*, *e.g.*, Pls.' Opp'n to Defs.' Mot. to Dismiss, *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 20-cv-01630-(JEB) (D.D.C. filed Dec. 18, 2020) (ECF 66)) and the court has withheld a decision on pending dispositive briefing specifically because of the 2022 rulemaking. *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 20-cv-01630-(JEB), 2021 WL 4033072, at *4 (D.D.C. Sept. 3, 2021). The only reason the 2020 Rule's definition of "health program or activity" remains on the books is because HHS has requested time to rewrite such unsupported and ill-advised redefinition, as the 2022 Proposed Rule makes clear.

**III.  NCSHP's Plea for Deference to the 2020 Rule Falls Flat.**

NCSHP makes a plea for deference to the 2020 Rule's improper narrowing of the scope of covered entities under Section 1557 regulations. But not only is Plaintiffs' claim not based on any iteration of these regulations (*see* Section I, *supra*), the fact is that Section 1557's statutory text, along with its statutory context, shows that the term "health program or activity" ***unambiguously encompasses health insurance and plans***. (Dkt. 270; *see also*

6

Dkt. 179 at 28, 188 at 16-23.) What is more, NCSHP does not explain *how* or *why* the 2020 Rule is entitled to *Chevron* deference on the issue of whether "health program or activity" encompasses health insurance and plans.

Because "[o]ur analysis begins with the language of the statute," *Esquivel-Quintana v. Sessions*, 137 S.Ct. 1562, 1569 (2017) (cleaned up), as articulated in Plaintiffs' supplemental brief, the term "health program or activity" unambiguously encompasses health insurance and plans. (Dkt. 270 at 1-2.) Section 1557 applies to "any **health** program or activity, any part of which is receiving Federal financial assistance, **including** credits, subsidies, or **contracts of insurance**." 42 U.S.C. §18116(a) (emphasis added).

Definitions of "health insurance" clearly demonstrate how "health insurance" falls within the scope of Section 1557:

- HealthCare.gov defines health insurance as "[a] contract that requires your health insurer to pay some or all of your health care costs in exchange for a premium";[3]

- The Centers for Medicare & Medicaid Services define "health insurance" as "[a] contract that requires your health insurer to pay some or all of your health care costs in exchange for a premium" and "plan" as "[a] benefit your employer, union or other group sponsor provides to you to pay for your health care services";[4] and

---

[3] Health Insurance, HealthCare.gov, https://bit.ly/3TywQa6 (accessed Nov. 12, 2022).
[4] Ctr. For Medicare & Medicaid Servs., Glossary of Health Coverage and Medical Terms, https://go.cms.gov/3A98vAA (accessed Nov. 12, 2022).

7

- Cambridge Dictionary defines "health insurance" as "an arrangement in which you make regular payments to an insurance company in exchange for that company paying most or all of the costs of your medical care" and "insurance for the cost of medical treatment if you are ill or injured, often paid for by companies for their employees."[5]

*Cf. Esquivel-Quintana*, 137 S.Ct. at 1569–70 (looking to dictionary definitions to determine whether term is ambiguous); *Pugin*, 19 F.4th at 449 (same); *id.* at 459 (Gregory, J., dissenting) (same). It is thus evident that health insurance and health plans are programs or activities related to ***health*** that involve ***contracts of insurance***.

The statutory context surrounding Section 1557 and other federal laws also supports the conclusion that the term "health program or activity" unambiguously encompasses health insurance and plans. (Dkt. 270 at 2-4.) *Cf. Esquivel-Quintana*, 137 S.Ct. at 1570 (looking to "[t]he structure of the INA, a related federal statute, and evidence from state criminal codes" to determine whether a term is ambiguous).

NCSHP argues that because one court held that "health program or activity" was ambiguous with regard to a completely different issue (whether retail pharmacies are a health program or activity), it must therefore be ambiguous with regards to the distinct and specific issue at hand (whether health insurance is a health program or activity). (Dkt. 271 at 11-12 (citing *Callum v. CVS Health Corp.*, 137 F.Supp.3d 817, 849–50 (D.S.C. 2015)).

---

[5] Health Insurance, Cambridge Dictionary, https://bit.ly/3EoM9h7 (accessed Nov. 12, 2022).

8

But that is not true.  The inquiry at *Chevron* step one is issue specific, meaning that the question is whether the statute is "silent or ambiguous ***with respect to the specific issue***." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (emphasis added).  (*See also* Dkt. 270 at 5-6.)  What is more, not only did the issue in *Callum* pertain to retail pharmacy outlets and not health insurance, but the court ***did not*** hold the term "health program or activity" to be ambiguous.  Rather, the court in *Callum* simply noted that the term was undefined and that "the parties disagree as to whether a retail pharmacy outlet … qualifies as one." *Callum*, 137 F.Supp.3d at 850.  *Callum* "did not consider whether an insurance issuer could be held liable under Section 1557 and instead applied the law to pharmacies." *Fain v. Crouch*, 545 F.Supp.3d 338, 341 n.2 (S.D.W. Va. 2021).[6]

For another, NCSHP fails to explain how, if one were to consider "health program or activity" to be ambiguous with regards to this specific issue (and it is not), the 2020 Rule is reasonable.  "To receive deference," the 2020 Rule's definition of "health program or activity "must be reasonable." *Pugin v. Garland*, 19 F.4th 437, 449 (4th Cir. 2021).  For the myriad of reasons outlined in Plaintiffs' supplemental brief, the 2020 Rule's improper redefinition of "health program or activity" is unreasonable, arbitrary, and capricious.  (Dkt. 270 at 6-10.)

---

[6] In any event, *Callum* ultimately concluded "that CVS provides and administers health programs or activities that fall within the meaning of Section 1557."  137 F.Supp.3d at 850. It is hard to see how a retail pharmacy is a "health program or activity" but ***health*** insurance is not.

9

### IV. The Court Can and Should Rule on Plaintiffs' ACA Claim.

NCSHP argues the Court should dismiss Plaintiffs' ACA claim because purportedly they "have not provided sufficient evidence of damages on their § 1557 claims." (Dkt. 271 at 15-16.) Nonsense. While Plaintiffs agree a trial is unnecessary, except with regards to Plaintiff Dana Caraway's claim, there is a present live case or controversy for this Court to decide.

*First*, NCSHP is a distinct party and Plaintiffs are entitled to injunctive relief under Section 1557 of the ACA against NCSHP. NCSHP's motion to correct this Court's June 10, 2022 decision granting Plaintiffs summary judgment on their Fourteenth Amendment claim illustrates that NCSHP and Defendants Folwell and Jones, in their official capacities, are distinct parties. (*See* Dkt. 248 at 2 (explaining that NCSHP, "an agency of the State of North Carolina, is not subject to suit under Section 1 of the Fourteenth Amendment to the United States Constitution, as enforceable pursuant to 42 U.S.C. § 1983.").) Indeed, the Court corrected its order along such lines. (Dkt. 255, 260.) Additionally, several elements and defenses against Plaintiffs' Fourteenth Amendment claim and Section 1557 claim differ. And because Defendants Folwell and Jones have appealed this Court's decision on Plaintiffs' Fourteenth Amendment claim (Dkt. 245), NCSHP cannot claim that injunctive relief would have no practical effect. It is therefore appropriate for the Court to provide injunctive relief against NCSHP under Section 1557.

*Second*, Plaintiffs are entitled to nominal damages for NCSHP's violation of Section 1557. NCSHP concedes that "under § 1557, a plaintiff can [] recover 'the usual

10

contract remedies in private suits' for breach of contract." (Dkt. 271 at 3.) Nominal damages are one such remedy. *See I.P. by Newsome v. Pierce*, No. 5:19-CV-228-M, 2020 WL 1976818, at *4 n.2 (E.D.N.C. Apr. 24, 2020) ("North Carolina law indicates that a breach of contract claim may survive where a technical breach is alleged and at least nominal damages are available.") (collecting cases), *reconsideration denied*, No. 5:19-CV-228-M, 2020 WL 3405209 (E.D.N.C. June 19, 2020); *Yacoubou v. Wells Fargo Bank, N.A.*, 901 F.Supp.2d 623, 637 (D. Md. 2012) ("It is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages." (cleaned up)), *aff'd sub nom. Adam v. Wells Fargo Bank*, 521 F. App'x 177 (4th Cir. 2013).

Finally, for purposes of clarification, Plaintiffs no longer press their claims for emotional distress damages under Section 1557 of the ACA.[7] Similarly, given their settlement with the University Defendants, Plaintiffs, with the exception of Dana Caraway, no longer press their claims for out-of-pocket damages.

Thus, because Plaintiffs are entitled to injunctive relief and nominal damages under Section 1557 of the ACA, the Court should grant summary judgment to Plaintiffs on their ACA claims.

Plaintiffs are also entitled to attorney's fees for their ACA claim. Section 1557 states, in relevant part, that "[t]he enforcement mechanisms provided for and available

---

[7] Plaintiffs' decision to not seek emotional distress damages should not be interpreted as a concession that such damages are not available under Section 1557 of the ACA.

under … title IX … shall apply for purposes of violations of this subsection." 42 U.S.C. § 18116(a). And 42 U.S.C. § 1988 "authorize[s] attorney's fees to certain private plaintiffs where the specified statute itself authorizes the relief sought by that plaintiff and the plaintiff proves his entitlement to such relief." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 n.6 (1979). Indeed, "[a]ll of the[] civil rights laws [referred to in § 1988] depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain." S. Rep. No.94–1011, p. 2 (1976); U.S. Code Cong. & Admin. News 1976, pp. 5908, 5910. As the Fourth Circuit held, "[t]he enforcement mechanism provided for and available under Title IX is one that permits states receiving federal financial assistance to be haled into court for money damages. And this is the enforcement mechanism that § 1557 incorporates by reference." *Kadel v. N. Carolina State Health Plan for Tchrs. & State Emps.*, 12 F.4th 422, 433 (4th Cir. 2021), *cert. denied*, 142 S.Ct. 861 (2022). The same holds true for attorney's fees, which are an enforcement mechanism provided for and available under Title IX.

## **CONCLUSION**

For the reasons stated herein and Plaintiffs' other briefs, the Court should grant Plaintiffs' motion for summary judgment on their Section 1557 claim.

12

Dated: November 14, 2022

Respectfully submitted,

*/s/ Amy Richardson*
Amy E. Richardson
N.C. State Bar No. 28768
Lauren E. Snyder
N.C. State Bar No. 54150
HWG LLP
333 Fayetteville Street, Suite 1500
Raleigh, NC 27601
Phone: 919-504-9833 | Fax: 202-730-1301
arichardson@hwglaw.com

Deepika H. Ravi*
Grace H. Wynn*
HWG LLP
1919 M Street N.W., 8th Floor,
Washington, D.C. 20036
Phone: 202-730-1300 | Fax: 202-730-1301
dravi@hwglaw.com

Michael W. Weaver*
Adam M. Safer*
MCDERMOTT WILL & EMERY
444 W. Lake St., Suite 4000
Chicago, IL 60606
Phone: 312-984-5820 | Fax: 312-984-7700
mweaver@mwe.com

Dmitriy G. Tishyevich*
Warren Haskel*
MCDERMOTT WILL & EMERY
One Vanderbilt Avenue
New York, NY 10017-3852
Phone: 212-547-5534 | Fax: 646-417-7668
dtishyevich@mwe.com

* Appearing by special appearance
pursuant to L.R. 83.1(d).

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: 212-809-8585
Facsimile: 212-809-0055
ogonzalez-pagan@lambdalegal.org

Tara L. Borelli
Carl S. Charles*
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1 West Court Square, Ste. 105
Decatur, GA 30030
Telephone: 404-897-1880
Facsimile: 404-506-9320
tborelli@lambdalegal.org

David Brown*
Ezra Cukor*
TRANSGENDER LEGAL DEFENSE AND
EDUCATION FUND, INC.
520 8th Ave, Ste. 2204
New York, NY 10018
Telephone: 646-993-1680
Facsimile: 646-993-1686
dbrown@transgenderlegal.org

Lauren H. Evans*
MCDERMOTT WILL & EMERY
500 North Capitol Street, N.W.
Washington, D.C. 20001-1531
Phone: 202-756-8864
Fax: 202-591-2900
levans@mwe.com

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief is in compliance with Local Rule 7.3 and the Court's October 24, 2022 Order (Dkt. 269) because the body of this brief, including headings and footnotes, does not exceed 3,125 words as indicated by Microsoft Word, the program used to prepare this document.

Dated: November 14, 2022

>*/s/ Omar Gonzalez-Pagan*
>Omar Gonzalez-Pagan\*
>LAMBDA LEGAL DEFENSE AND
>EDUCATION FUND, INC.
>120 Wall Street, 19th Floor
>New York, NY 10005
>Telephone: 212-809-8585
>Facsimile: 212-809-0055
>ogonzalez-pagan@lambdalegal.org