IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MAXWELL KADEL, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE NORTH CAROLINA STATE HEALTH PLAN FOR TEACHERS AND STATE EMPLOYEES, *et al.*, <br><br> *Defendants*. | No. 1:19-cv-272-LCB |

## STATE HEALTH PLAN'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF ON AFFORDABLE CARE ACT CLAIMS

Plaintiffs ask this Court to impose an interpretation upon § 1557 in place of what has been, admittedly, shifting interpretations by the U.S. Department of Health and Human Services ("HHS"). Administrative law, however, does not permit this Court to assume such a role because Congress has clearly delegated interpretive responsibility to the executive branch.

If "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Chevron, U.S.A., Inc. v. Nat. Res.*

*Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984). Section 1557 does not define "health program or activity." Moreover, the Supreme Court has expressly held that one "very good indicator of delegation meriting *Chevron* treatment" is when the statutory language includes "express congressional authorization[] to engage in the process of rulemaking or adjudication." *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001). Section 1557 includes an explicit delegation of authority to HHS to "promulgate regulations to implement" § 1557. 42 U.S.C. § 18116(c).

The straightforward application of *Chevron* therefore requires this Court to defer to the current HHS regulations, which exclude the North Carolina State Health Plan for Teachers and State Employees (the "State Health Plan" or the "Plan") from coverage under § 1557 for all claims or conduct arising after the rule's effective date of August 18, 2020.

## I. The text of Section 1557 does not explicitly require coverage of the State Health Plan as a "health program or activity."

As Plaintiffs acknowledge, current HHS regulations define "health program or activity" to exclude "an entity principally or otherwise engaged in the business of providing health insurance." 45 C.F.R. § 92.3(c). Because Congress chose not to define "health program or activity," but instead delegated authority to HHS to interpret this

2

phrase, this Court must defer to HHS' rulemaking unless it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. The current and controlling rule is neither arbitrary, capricious, nor manifestly contrary to the statute, and thus Plaintiffs are not entitled to any relief under § 1557: injunctive, nominal, or otherwise.

Plaintiffs make two arguments that the current § 1557 regulation is contrary to statute. Neither should prevail. First, Plaintiffs argue that the statute expressly covers insurance programs because it refers to "contracts of insurance." Doc. 270 at 2. This is a distortion of both the statute and the term "contracts of insurance," which has a long-understood meaning in civil rights law.

Section 1557 states, in part, that:

> [A]n individual shall not … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance ….

18 U.S.C. § 18116(a).

The phrase "contracts of insurance" has a commonly understood meaning in the civil rights context, and it does not refer to entities such as the State Health Plan. Title VI of the Civil Rights Act of 1964 does not

apply to "Federal financial assistance [that] is extended by way of a contract of insurance or guaranty." 42 U.S.C. § 2000d-4. As a result, since 1967, HHS has concluded that physicians who treat patients under Medicare Part B are not subject to Title VI's nondiscrimination requirements. Sidney D. Watson, *Section 1557 of the Affordable Care Act: Civil Rights, Health Reform, Race, and Equity*, 55 How. L.J. 855, 865-66 (2012). Section 1557's reference to "contracts of insurance" therefore addresses a separate participant in the health care system. It does not refer to group health plans, such as the State Health Plan. Instead, the phrase refers to physicians who treat patients covered by Medicare.

This interpretation is bolstered by the fact that the phrase "contract of insurance" in § 1557 modifies the phrase "federal financial assistance" not the phrase "health program or activity." 42 U.S.C. §18116(a). Under the rules of statutory construction, "the grammatical 'rule of the last antecedent'" states that "a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (internal punctuation omitted). Under this "quite sensible" approach to statutory interpretation, *id.*, the phrase in § 1557 "including credits, subsidies, or

4

contracts of insurance" provides examples of the various types of "Federal financial assistance" covered by the statute. This also makes common sense because a "contract[] of insurance" is a type of federal payment, defining what types of federal funding arrangements could trigger coverage.

The phrase Plaintiffs' have pulled out of its context does not define whether the recipient is a "health program or activity." Indeed, "credits, subsidies or contracts of insurance" from the United States exist under federal spending programs where all would admit there is no connection to health care or medicine. *See, e.g.,* 12 U.S.C. § 635(a) (The U.S. Export-Import Bank is to provide "loans, guarantees, insurance, and credits" to aid in financing international trade.) Thus, coverage under § 1557 depends on whether this type of federal financial assistance is provided to a "health program or activity," not on whether the form of subsidy is a 'contract of insurance' or a different type of federal government spending.

As a second argument, Plaintiffs ask this Court to interpret the phrase "health program or activity" by reference to other, unrelated statutory provisions. Doc. 270 at 2-3. Because the Affordable Care Act includes numerous mandates for health insurers, Plaintiffs argue that

Congress must have intended to apply § 1557 to the State Health Plan. But the Affordable Care Act does not treat all health benefits plans identically.

For example, Plaintiffs argue that the description of "basic health programs" that may be used to cover "essential health benefits" for some state residents is a parallel provision. Doc. 270 at 3 (citing 42 U.S.C. § 18051). This is not an analogous provision. A "group health plan," like the State Health Plan, is explicitly exempt from the coverage mandates for essential health benefits. 42 U.S.C. § 300gg-91(c). Plaintiffs also identify a separate antidiscrimination provision in the ACA, § 1553, that applies to every "health care entity" and includes providers *and* group health plans. Doc. 270 at 3. (quoting 42 U.S.C. § 18113(b)). That Congress explicitly defined "health care entity" broadly in § 1553, but chose not to do so in § 1557, is strong evidence that the phrase "health program or activity" in § 1557 has a different meaning.

Ultimately, this Court cannot infer that Congress has "spoken directly to the precise question" of whether § 1557 extends to group health plans, *Chevron*, 467 U.S. at 842, simply by citing to other scattered phrases in the 906-page Affordable Care Act. 124 Stat. 119

6

(2010). While "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007), *Chevron* does not allow a court to jumble similar phrases into a pastiche. The relevant canon of statutory construction states there is a "natural presumption that **identical** words used in different parts of the same act are intended to have the same meaning," *Atl. Cleaners & Dyers v. U.S.*, 286 U.S. 427, 433 (1932) (emphasis added). None of the phrases cited by Plaintiffs here, or in their earlier submissions to this Court, are identical and their context varies widely. *Compare* 42 U.S.C. § 18116 ("health program or activity") *with*, *e.g.*, Patient Protection and Affordable Care Act, 124 Stat. 119, 580 (data collection for "federally conducted or supported health care or public health program or activity"); 124 Stat. 199-201 ("basic health programs" under which States can offer "standard health plans"); 124 Stat. 331 (requiring panel members with expertise in "Federal safety net health programs" and, separately listed, "health plans and integrated delivery systems"); 124 Stat. 333 (referring to "Health programs operated by the Indian Health Service, Indian tribes, tribal organizations, and

7

Urban Indian organizations"); 124 Stat 382 (data measurement for quality improvement in "Federal health programs").

Without the ability to consider identical phrases, as required by this interpretive canon, this Court is left impermissibly "parsing … general terms in the text of the statute" in the hope that this somehow "will reveal an actual intent of Congress." *Chevron*, 467 U.S. at 861. *Chevron* forbids this. The Supreme Court has explicitly directed that lower courts cannot substitute their preferred interpretation; decisions about how best to accomplish the goals of the ACA and § 1557 have been delegated to the executive branch. This Court should respect the federal separation of powers and defer to the existing HHS definition of "health program or activity" for claims and conduct arising after the 2020 rule's promulgation.

## II. This Court should defer to the HHS's current regulations.

To avoid *Chevron*, Plaintiffs instead ask this Court to interpret "health program or activity" as an unreasonable interpretation in light of the "whole statutory context" of the Affordable Care Act. Doc. 270 at 11. The Supreme Court has held, however, that "overlapping" terms and "language [that] is not precisely directed to the question" do not provide

sufficient evidence of Congressional intent to overturn an agency rulemaking. 467 U.S. at 861. The Court should reject this argument.

When Congress enacted § 1557 it chose not to define "health program or activity." 42 U.S.C. § 18116. Such "[s]ilence on an issue so central to the statutory scheme suggests it is delegated to the implementing agency's discretion." *Miranda v. Garland*, 34 F.4th 338, 367 (4th Cir. 2022) (Richardson, J., concurring in part). *See also Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 997 (2005) ("[S]ilence suggests, instead, that [the agency] has the discretion to fill the consequent statutory gap.")

The agency's broad discretion to interpret § 1557 is bolstered by the Congress' explicit delegation of authority to HHS to issue regulations to "implement this section," 42 U.S.C. § 18116(c), just as Congress previously granted regulatory authority for other civil rights statutes, *e.g.*, 42 U.S.C. 2000d-1 (Title VI).

HHS's analysis in the 2020 rule, of the distinction between "health insurance" and "health care," is fully compatible with the text of the statute. *See* 85 Fed. Reg. 37172-74. In particular, as the 2020 rule's preamble points out, when Congress enacted the Civil Rights Restoration

9

Act of 1990, it redefined "program or activity" in the context of other civil rights laws, defining the term 'program' to be, *inter alia*, the "entire … private organization … which is principally engaged in the business of providing … health care." 20 U.S.C. § 1687(3)(A)&3(A)(ii). Congress has delegated to HHS the authority to make a "reasonable policy choice," *Chevron*, 467 U.S. at 845, to reject Plaintiffs' desired interpretation and to adopt the distinction advanced by a commenter that "**paying** for healthcare is not **providing** healthcare," 85 Fed. Reg. 37,172 (emphasis added).

Plaintiffs implicitly acknowledge this distinction when their argument shifts, subtly, to the assertion that "health insurance clearly is a health-**related** program or activity." Doc. 270 at 8 (emphasis added). Third-party payers, such as State Health Plan, may play an important role in the provision of healthcare, but paying claims is not the same thing as providing care to patients. One would not say that an auto insurance company provides transportation or that homeowner's insurance provides lodging. That same logic applies here. Congress delegated to HHS the authority to determine the scope of § 1557, and Supreme Court caselaw directs this Court to defer.

10

Using its explicitly delegated authority, HHS concluded in 2020 that § 1557 should not extend to group health plans. In 2016, HHS used the same explicitly delegated authority to exempt *some* employee health benefit plans from § 1557's scope but not others. 81 Fed. Reg. 31376, 31472 (May 18, 2016). Specifically, the 2016 version of the rule interpreted § 1557 to mean that an "employee health benefit plan" is covered *only* if the entity is "principally engaged in providing or administering health services" and "receives Federal financial assistance a primary objective of which is to fund the entity's employee health benefit program." 45 CFR § 92.208. HHS could not have promulgated this rule, however, unless it had concluded that the phrase "health program or activity" was—and thus remains—ambiguous. It is therefore incorrect to say, as Plaintiffs have, that HHS previously concluded that the phrase "health program or activity" in § 1557 unambiguously extends to all employee health benefit programs. It simply never has.

Even the 2022 proposed HHS rule—and this is only a proposal without any legal significance of its own—does not assert that the statutory text of § 1557 can only be interpreted in a manner that **requires** coverage of group health plans. *See Nondiscrimination in*

11

*Health Programs and Activities*, 87 Fed. Reg. 47824, 47843-45 (Aug. 4, 2022). Rather, the agency proposes only that extending § 1557 in this manner is, in its current view, "the most natural reading" of the term "health program or activity." *Id.* at 47844.

The proposed rule's use of the phrase "most natural reading" is legally important. Even when a particular interpretation is the 'most natural reading' of a statute, other interpretations are still reasonable under *Chevron* review. The Fourth Circuit has held that "[i]t is axiomatic that the Secretary's interpretation need not be the best or most natural one by grammatical or other standards.... Rather, the Secretary's view need be only reasonable to warrant deference." *Rehab. Ass'n of Virginia, Inc. v. Kozlowski*, 42 F.3d 1444, 1471 (4th Cir. 1994) (quoting *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 702 (1991)) (punctuation omitted). Further, the Fourth Circuit held in *Philip Morris USA, Inc. v. Vilsack*, 736 F.3d 284, 294 (4th Cir. 2013), that "although USDA's interpretation may not be the most natural reading of the statute, it is a reasonable one, and that is all that *Chevron* requires." Accordingly, the new 2022 proposed rule simply does not mean that the current rule has provided

12

an unreasonable interpretation of the phrase "health program or activity."

Nor is it persuasive that other courts have allowed cases against health insurers and group benefit plans to proceed under § 1557. Each of the cases noted by Plaintiffs appear to involve the adjudication of claims for conduct occurring before HHS promulgated the 2020 rule. *See East v. Blue Cross & Blue Shield of La.*, No. 3:14-CV-00115-BAJ, 2014 WL 8332136 (M.D. La. Feb. 24, 2014); *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1208 (9th Cir. 2020) (case filed in 2018, *see Doe One v. CVS Pharmacy, Inc.*, 348 F. Supp. 3d 967 (N.D. Cal. 2018)); *T.S. by & through T.M.S. v. Heart of CarDon, LLC*, 43 F.4th 737, 738 (7th Cir. 2022) (filed in 2020); *E.S. v. Regence BlueShield*, No. 2:17-CV-01609-RAJ, 2022 WL 279028 (W.D. Wash. Jan. 31, 2022) (dismissing claim brought in 2017).

Plaintiffs also note ongoing challenges, in other courts, to the 2020 HHS rule. However, as the Plan noted in its earlier brief, none of Plaintiff's cited cases have resulted in an injunction against the 2020 rule's interpretation of "health program or activity" even as other portions of the regulation have been enjoined. Doc. 271 at 10-11. This is

13

*prima facie* evidence that the interpretation in the 2020 HHS rule is reasonable and should be given the force and effect of law by this Court.

### III. Conclusion.

Congress chose not to define "health program or activity" but decided instead to delegate authority to HHS to implement § 1557 and interpret this phrase. This Court must thus faithfully apply the current and controlling rule. Per the controlling rule, Plaintiffs are not entitled to any relief under § 1557: injunctive, nominal, or otherwise. The current HHS rulemaking is no reason to continue the current indefinite stay or wait on that rule. Accordingly, this Court should grant the State Health Plan's motion for summary judgment regarding Plaintiffs' Affordable Care Act Claims.

14

Respectfully submitted this the 14th day of November, 2022.

*/s/ John G. Knepper*  
Wyo. Bar. No. 7-4608  
LAW OFFICE OF JOHN G. KNEPPER, LLC  
1720 Carey Ave. Suite 590  
Cheyenne, WY 82001  
Telephone: (307) 632-2842  
Facsimile: (307) 432-0310  
john@knepperllc.com

*/s/ Kevin G. Williams*  
N.C. Bar No. 25760

*/s/ Mark A. Jones*  
N.C. Bar No. 36215  
BELL, DAVIS & PITT, P.A.  
100 N. Cherry St. Suite 600  
Winston-Salem, NC 27101  
Telephone: (336) 722-3700  
Facsimile: (336) 722-8153  
kwilliams@belldavispitt.com  
mjones@belldavispitt.com

## CERTIFICATE OF WORD COUNT

Pursuant to L.R. 7.3(d)(1), the undersigned certifies that this Supplemental Brief complies with the Court's 3,125 word limit as calculated using the word count feature of the word processing software. This count includes the body of the brief and headings, but does not include the caption, signature lines, this certificate, or the certificate of service.

This the 14th day of November, 2022.

| | |
|---|---|
| */s/ John G. Knepper* | */s/ Kevin G. Williams* |
| Wyo. Bar. No. 7-4608 | N.C. Bar No. 25760 |
| LAW OFFICE OF JOHN G. KNEPPER, LLC | |
| 1720 Carey Ave. Suite 590 | */s/ Mark A. Jones* |
| Cheyenne, WY 82001 | N.C. Bar No. 36215 |
| Telephone: (307) 632-2842 | BELL, DAVIS & PITT, P.A. |
| Facsimile: (307) 432-0310 | 100 N. Cherry St. Suite 600 |
| john@knepperllc.com | Winston-Salem, NC 27101 |
| | Telephone: (336) 722-3700 |
| | Facsimile: (336) 722-8153 |
| | kwilliams@belldavispitt.com |
| | mjones@belldavispitt.com |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notification to all counsel of record in this matter.

This the 14th day of November, 2022.


*/s/ John G. Knepper*  
Wyo. Bar. No. 7-4608  
LAW OFFICE OF JOHN G. KNEPPER, LLC  
1720 Carey Ave. Suite 590  
Cheyenne, WY 82001  
Telephone: (307) 632-2842  
Facsimile: (307) 432-0310  
john@knepperllc.com

*/s/ Kevin G. Williams*  
N.C. Bar No. 25760

*/s/ Mark A. Jones*  
N.C. Bar No. 36215  
BELL, DAVIS & PITT, P.A.  
100 N. Cherry St. Suite 600  
Winston-Salem, NC 27101  
Telephone: (336) 722-3700  
Facsimile: (336) 722-8153  
kwilliams@belldavispitt.com  
mjones@belldavispitt.com