IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MAXWELL KADEL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:19CV272 |
| | ) | |
| DALE FOLWELL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

On June 10, 2022, this Court issued its Memorandum Opinion and Order ("Order") resolving various motions of the parties and permanently enjoining Defendants Folwell and Jones, in their official capacities, from enforcing the Plan's exclusion and ordering the reinstatement of coverage for "medically necessary services of treatment for gender dysphoria."[1] (ECF No. 234 at 72–73; 261 at 72–73 (corrected version).) In that Order, the Court expressly reserved judgment on the parties' cross motions for summary judgment related to Plaintiffs' claims arising under the Affordable Care Act ("ACA"). (ECF No. 261 at 65.) The Court withheld judgment given the U.S. Department of Health and Human Services' ("DHHS") indication that it would revisit its interpretation of the term "health program or activity," which under the 2020 Rule excluded entities "principally engaged in providing or administering . . . health insurance coverage." (*Id.* at 64–65.)

---

[1] The Court hereby incorporates its prior Order in full. (ECF No. 261 (corrected version).)

On August 4, 2022, DHHS published a Notice of Proposed Rulemaking on the issue. Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47824 (proposed Aug. 4, 2022) (to be codified at 45 C.F.R. pt. 92). In light of this proposed rulemaking, the Court invited supplemental briefing by both parties that might assist the Court in resolving the parties' cross motions. (ECF No. 269.) That briefing is now complete, and the Court finds it is now prepared to render its judgment on the outstanding summary judgment motions.

To begin, the Court recognizes that Defendants have given notice of their appeal of the Court's Order addressing their other summary judgment motions, (ECF Nos. 245 & 250); however, as noted, that Order expressly reserved the ACA issue and entered a permanent injunction independent of the unresolved ACA issue, (ECF No. 261 at 65). It is a well-established principle that an appeal divests a trial court of jurisdiction over "those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *see also Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 890 (4th Cir. 1999). However, the Fourth Circuit has noted an exception to this general rule, explaining that "the district court retains jurisdiction over matters 'in aid of the appeal.'" *Fobian*, 164 F.3d at 890 (quoting *In re Grand Jury Proc. Under Seal*, 947 F.2d 1188, 1190 (4th Cir. 1991)); *Lytle v. Griffith*, 240 F.3d 404, 407 n.2 (4th Cir. 2001). Here, the Court finds that resolving the outstanding summary judgment motions will be "in aid of the appeal" currently pending before the Fourth Circuit.

Under Section 1557 of the ACA, "an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 [or] title IX of the Education Amendments of 1972, . . . be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . ." 42 U.S.C. § 18116(a). The ACA explicitly incorporates Title VI and Title IX, and "[t]he Fourth Circuit

2

looks to Title VII . . . to guide the 'evaluation of claims under Title IX.'" *Hammons v. Univ. of Md. Med. Sys. Corp.*, 551 F. Supp. 3d 567, 590 (D. Md. 2021) (quoting *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020)). The test announced in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), is therefore the appropriate test to determine whether a policy discriminates in violation of the ACA. *See id.*

Here, the Court made clear in its Order that NCSHP's exclusion facially discriminates on the basis of sex and transgender status. (ECF No. 261 at 42.) The Court reasoned that like in *Grimm*, the exclusion "necessarily rests on a sex classification" because it cannot be stated or effectuated "without referencing sex." (*Id.*); *see also Grimm*, 972 F.3d at 608. The Court followed the Supreme Court's logic in *Bostock* and found it impossible to determine whether a particular treatment is connected to "sex changes or modifications and related care"—and thus, whether the exclusion applies—without comparing the member's biological sex before the treatment to how it might be impacted by the treatment. (ECF No. 261 at 42); *see also Bostock*, 140 S. Ct. at 1746. That analysis applies with equal force to Plaintiffs' ACA claim. Thus, there is no genuine issue of material fact as to whether NCSHP discriminated against Plaintiffs on the basis of sex.

The only remaining issue is whether NCSHP is in fact a "health program or activity" subject to ACA liability.[2] The ACA does not explicitly define "health program or activity." Although the 2020 Rule by DHHS remains in effect, Plaintiffs argue that it does not control this Court's analysis because "under the plain language of Section 1557 and the ACA as a whole, the term 'health program or activity' encompasses health insurance and health plans." (ECF No. 270 at 1.) The Court agrees with Plaintiffs and declines to defer to the 2020 Rule.

---

[2] There is no question that NCSHP receives federal funds.

3

An agency interpretation of a statute becomes relevant only where a court cannot discern a clear meaning from the statute itself. *See Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). This first step of the *Chevron* test asks, "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If the court determines Congress has done so, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. Only where "the statute is silent or ambiguous in expressing Congress' intent" must a court "defer to the agency's reasonable construction of the statute." *Yi v. Fed. Bureau of Prisons*, 412 F.3d 526, 530 (4th Cir. 2005) (citing *Chevron*, 467 U.S. at 843–44). At this first step, the Fourth Circuit has made clear that "a reviewing court should not confine itself to examining a particular statutory provision in isolation. Rather, [t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 759 F.3d 358, 368–69 (4th Cir. 2014) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007)).

Only where a statute is ambiguous must the court turn to "whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. Agency interpretations are controlling unless they are "arbitrary, capricious, or manifestly contrary to the statute." *PETA v. United States Dep't of Agric.*, 861 F.3d 502, 510 (4th Cir. 2017) (quoting *Chevron*, 467 U.S. at 844).

Here, the Court finds it need not go beyond the contours of ACA itself. The term "health program or activity" in Section 1557 plainly includes health insurance providers and plans. This Court finds its fellow district court's reasoning persuasive in *Fain v. Crouch*, 545 F. Supp. 3d 338 (S.D. W. Va. 2021):

> By extending nondiscrimination protections to individuals under "any health program or activity," Congress clearly intended to prohibit discrimination by

4

> any entity acting within the "health" system. Here, The Health Plan's role as a health insurance provider undoubtedly implicates the health of persons falling within the scope of ACA protections. For example, in the instant case, Plaintiff Martell alleges that The Health Plan's exclusion has limited his access to health care by virtue of its authority to design health benefits. Therefore, as the gatekeeper to Martell's health services, The Health Plan qualifies as a "health program" that Congress intended to rid of discrimination.

*Fain*, 545 F. Supp. 3d at 342.

Further, Section 1557 explicitly provides that a "health program or activity" receiving "Federal financial assistance" necessarily includes "contracts of insurance." 42 U.S.C. § 18116(a). It is also apparent that "when looking at the ACA as a whole, the Act clearly 'aims to increase the number of Americans covered by health insurance' by transforming the health insurance industry." *Fain*, 545 F. Supp. 3d at 342 (quoting *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012)). The ACA has "implemented substantial health insurance market reforms," leading this Court to conclude that "health program or activity" under Section 1557 necessarily includes health insurance providers and plans like NCSHP.

Moreover, while this Court need not weigh into the deference afforded to various agency rulemakings addressing the definition "'health program or activity," the Court finds the August 2022 proposed rulemaking by DHHS persuasive, nonetheless. Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47824 (proposed Aug. 4, 2022) (to be codified at 45 C.F.R. pt. 92). DHHS states that "[u]nlike under the 2020 Rule," it will interpret "health program or activity" as applying "to all the operations of a recipient entity principally engaged in the provision or administration of health insurance coverage or other health-related coverage." *Id.* at 47844 ("We believe that the most natural reading of the language 'health program or activity' in the statute encompasses health insurance programs or activities."); *see also id.* at 47829 ("The statutory text of Section 1557 demonstrates Congress' intent to apply

5

Section 1557 to health insurance. . . . [T]he fact that Section 1557 is contained within the ACA—a law that predominantly regulates health insurance—indicates that Congress intended Section 1557 to apply to health insurance. . . . Thus, the Department . . . believes the 2020 Rule limits application to health insurance and other health-related coverage in a manner inconsistent with the statute and Congressional intent.").

Accordingly, the Court will grant Plaintiffs' motion for summary judgment on their claims arising under the ACA. Any remaining questions as to damages—to the extent that there are any—are reserved for trial.[3] Defendants' motion on Plaintiffs' ACA claim will be denied.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Partial Summary Judgment as to Plaintiffs' ACA claims, (ECF No. 178), is **GRANTED**. The issue of damages, if applicable, is reserved for trial.

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment as to Plaintiffs' ACA claims, (ECF No. 136), is **DENIED**.

This, the 5th day of December 2022.

/s/ Loretta C. Biggs
United States District Judge

---

[3] As indicated by Plaintiffs, they "no longer press their claims for emotional distress damages under Section 1557 of the ACA." (ECF No. 272 at 11.) While Plaintiffs note that this "should not be interpreted as a concession that such damages are not available under Section 1557 of the ACA," the Court finds the Supreme Court's opinion in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022) instructive. *Cummings* explicitly bars the recovery of emotional distress damages and punitive damages under Section 1557 of the ACA. *Cummings*, 142 S. Ct. at 1576. As a result, Plaintiffs specify that they now only seek "injunctive relief and nominal damages" under the ACA and that "a trial is unnecessary." (ECF No. 272 at 10.) Thus, at this time, the sole remaining issue for trial—if necessary—appears to be damages for Plaintiff Caraway's Title VII claim against DPS.